Westlaw.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

**H**
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter. See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Tenth Circuit Rule 32.1.
(Find CTA10 Rule 32.1)

United States Court of Appeals,
Tenth Circuit.
Ernest Marvin CARTER, Jr., Petitioner-Appellant,
v.
Gary GIBSON, Warden, Oklahoma State Peniten-
tiary, Respondent-Appellee.
**No. 00-6177.**

Dec. 18, 2001.

Following affirmance of his conviction of felony
murder and death penalty on direct appeal, 879
P.2d 1234, and denial of his application for post-
conviction relief, 936 P.2d 342, petitioner sought
habeas corpus relief. The United States District
Court for the Western District of Oklahoma denied
relief, and petitioner appealed. The Court of Ap-
peals, Paul J. Kelly, Jr., Circuit Judge, held that: (1)
petitioner's due process rights were not violated by
information that did not set forth all elements of
crime; (2) any deficient performance by trial or
habeas counsel did not prejudice defendant; (3)
election, as opposed to appointment of state judi-
ciary did not deprive petitioner of fair trial; (4) sev-
erance of defendant's trial from that of co-defendant
was not constitutionally required; (5) petitioner's
*Bruton* rights were not violated; (4) petitioner had
no constitutional right to additional peremptory
challenges; (5) evidence was constitutionally suffi-
cient to show intent to rob to support felony murder
conviction; and (6) intent element of felony murder
was not inherently inconsistent with aggravator that
defendant committed murder to avoid arrest or pro-
secution.

Affirmed.

West Headnotes

**[1] Habeas Corpus 197 ☜768**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(C) Proceedings
            197III(C)4 Conclusiveness of Prior De-
terminations
                197k765 State Determinations in Fed-
eral Court
                    197k768 k. Presumptive Accuracy
of State Determination, and Rebuttal of Presump-
tion. Most Cited Cases
Federal habeas courts presume the state court's fac-
tual findings are correct, unless rebutted by clear
and convincing evidence. § 2254(e)(1). 28 U.S.C.A.
§ 2254(e)(1).

**[2] Habeas Corpus 197 ☜842**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)2 Scope and Standards of Re-
view
                197k842 k. Review De Novo. Most
Cited Cases

**Habeas Corpus 197 ☜846**

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)2 Scope and Standards of Re-
view
                197k846 k. Clear Error. Most Cited
Cases
If the state courts did not decide a habeas claim on
its merits, and the claim is not procedurally barred,
Court of Appeals reviews the district court's legal
conclusions de novo and its factual findings, if any,
for clear error. 28 U.S.C.A. § 2254.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

[3] Habeas Corpus 197 ⬤⟿842

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(D) Review
            197III(D)2 Scope and Standards of Review
                197k842 k. Review De Novo. Most Cited Cases
Habeas court's rejection of state prisoner's challenge to sufficiency of information was subject to de novo review by Court of Appeals, where courts had not considered claim on its merits. 28 U.S.C.A. § 2254.

[4] Habeas Corpus 197 ⬤⟿474

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k474 k. Indictment, Information, Affidavit, or Complaint. Most Cited Cases
Challenge to adequacy of information under Oklahoma law was question of state law that habeas court had no power to correct. 28 U.S.C.A. § 2254.

[5] Habeas Corpus 197 ⬤⟿447

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(A) Ground and Nature of Restraint
            197k447 k. Deprivation of Fundamental or Constitutional Rights; Miscarriage of Justice. Most Cited Cases
Habeas relief is available only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution. 28 U.S.C.A. § 2254 .

[6] Constitutional Law 92 ⬤⟿4581

92 Constitutional Law
    92XXVII Due Process
        92XXVII(H) Criminal Law
            92XXVII(H)4 Proceedings and Trial
                92k4578 Charging Instruments; Indict-

ment and Information
                92k4581 k. Form, Requisites, and Sufficiency. Most Cited Cases
    (Formerly 92k265)

Homicide 203 ⬤⟿850

203 Homicide
    203VIII Indictment and Information
        203k850 k. Killing in Commission Of, or with Intent to Commit, Other Unlawful Act. Most Cited Cases
    (Formerly 203k138)
Defendant was not deprived of protected liberty interest by state information that gave him sufficient notice of felony murder charge to defend against charge, but did not set forth all elements of crime, where state law was inconsistent at time of defendant's trial as to whether elements had to be pleaded, but clearly required only notice pleading by time of his post-conviction appeal. U.S.C.A. Const.Amend. 14.

[7] Habeas Corpus 197 ⬤⟿366

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                197k366 k. Direct Review; Appeal or Error. Most Cited Cases

Habeas Corpus 197 ⬤⟿406

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)5 Availability of Remedy Despite Procedural Default or Want of Exhaustion
                197k405 Cause or Excuse
                197k406 k. Ineffectiveness or Want

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

of Counsel. Most Cited Cases
Habeas petitioner's failure to raise ineffective assistance of trial counsel on direct appeal, and consequent treatment of claim as waived by state post-conviction court, was not procedural bar to consideration of claim on habeas review, where trial counsel had assisted appellate counsel on direct appeal. 28 U.S.C.A. § 2254.

**[8] Criminal Law 110 ☞1895**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1895 k. Indictment and Information. Most Cited Cases
   (Formerly 110k641.13(2.1))
Trial counsel did not perform deficiently in failing to anticipate state law decision that required setting forth all elements of crime in information to establish subject matter jurisdiction, particularly where decision had been overruled by time of defendant's post-conviction appeal. U.S.C.A. Const.Amend. 6.

**[9] Criminal Law 110 ☞1883**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)1 In General
            110k1879 Standard of Effective Assistance in General
               110k1883 k. Prejudice in General. Most Cited Cases
   (Formerly 110k641.13(1))
Prejudice is judged by current law in determining whether defendant was prejudiced by deficient assistance of counsel. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law 110 ☞1895**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues

            110k1895 k. Indictment and Information. Most Cited Cases
   (Formerly 110k641.13(2.1))
Any deficient performance by trial counsel in failing to challenge failure of indictment to set forth all elements of charge did not prejudice defendant where, by time of defendant's post-conviction appeal, state law clearly required only notice pleading. U.S.C.A. Const.Amend. 6.

**[11] Habeas Corpus 197 ☞486(5)**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k482 Counsel
            197k486 Adequacy and Effectiveness of Counsel
               197k486(5) k. Post-Trial Proceedings; Sentencing, Appeal, Etc. Most Cited Cases
State appellate court determination that defendant was not prejudiced by appellate counsel's failure to assert trial counsel's ineffectiveness in not challenging subject matter jurisdiction was not contrary to or unreasonable application of Supreme Court precedent, so as to warrant federal habeas relief, where defendant could not show he was prejudiced by trial counsel's inaction. U.S.C.A. Const.Amend. 6.

**[12] Constitutional Law 92 ☞2810**

92 Constitutional Law
   92XXIII Ex Post Facto Prohibitions
      92XXIII(B) Particular Issues and Applications
         92k2809 Criminal Proceedings
            92k2810 k. In General. Most Cited Cases
   (Formerly 92k199)

**Courts 106 ☞100(1)**

106 Courts
   106II Establishment, Organization, and Procedure

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

106II(H) Effect of Reversal or Overruling
106k100 In General
106k100(1) k. In General; Retroactive or Prospective Operation. Most Cited Cases
Applying case law that was not decided until shortly before review of denial of post-conviction relief to determine that information was sufficient to confer subject matter jurisdiction was not ex post facto violation, where state law was not clearly established at time of defendant's trial as to what was needed for adequate information. U.S.C.A. Const. Art. 1, § 10, cl. 1; U.S.C.A. Const.Amend. 14.

**[13] Habeas Corpus 197 ⊂319.1**

197 Habeas Corpus
197I In General
197I(D) Federal Court Review of Petitions by State Prisoners
197I(D)1 In General
197k319 Exhaustion of State Remedies
197k319.1 k. In General. Most Cited Cases
Claim that was never presented to state courts was unexhausted for purposes of habeas review. 28 U.S.C.A. § 2254.

**[14] Constitutional Law 92 ⊂963**

92 Constitutional Law
92VI Enforcement of Constitutional Provisions
92VI(C) Determination of Constitutional Questions
92VI(C)1 In General
92k963 k. Questions of Law or Fact. Most Cited Cases
(Formerly 92k45)
An alleged ex post facto violation is a question of law. U.S.C.A. Const. Art. 1, § 10, cl. 1.

**[15] Constitutional Law 92 ⊂3907**

92 Constitutional Law
92XXVII Due Process
92XXVII(B) Protections Provided and Deprivations Prohibited in General

92k3907 k. Retrospective Laws and Decisions; Change in Law. Most Cited Cases
(Formerly 92k253(4))
Test for deciding if a retroactive application of a judicial decision violates due process is one of foreseeability; judicial decision is unforeseeable and may not be given retroactive effect when it is unexpected and indefensible by reference to law in effect prior to conduct in issue. U.S.C.A. Const.Amend. 14.

**[16] Habeas Corpus 197 ⊂816**

197 Habeas Corpus
197III Jurisdiction, Proceedings, and Relief
197III(D) Review
197III(D)1 In General
197k816 k. Presentation and Reservation in Lower Habeas Court of Grounds of Review. Most Cited Cases
Arguments that were not raised in federal habeas petition would not be considered on appeal in absence of extraordinary circumstances. 28 U.S.C.A. § 2254.

**[17] Constitutional Law 92 ⊂4618**

92 Constitutional Law
92XXVII Due Process
92XXVII(H) Criminal Law
92XXVII(H)4 Proceedings and Trial
92k4617 Judges
92k4618 k. In General. Most Cited Cases
(Formerly 92k268(8))

**Judges 227 ⊂3**

227 Judges
227I Appointment, Qualification, and Tenure
227k3 k. Appointment or Election. Most Cited Cases
State's election, as opposed to appointment of its judiciary, did not deprive defendant of fair trial in fair tribunal in violation of due process. U.S.C.A. Const.Amend. 14.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

**[18] Constitutional Law 92 ☞4621**

92 Constitutional Law
  92XXVII Due Process
    92XXVII(H) Criminal Law
      92XXVII(H)4 Proceedings and Trial
        92k4617 Judges
          92k4621 k. Impartiality; Bias and Prejudice. Most Cited Cases
    (Formerly 92k268(8))

**Judges 227 ☞49(1)**

227 Judges
  227IV Disqualification to Act
    227k49 Bias and Prejudice
      227k49(1) k. In General. Most Cited Cases
Defendant's due process right to fair and impartial state judiciary was not violated by alleged lack of institutional safeguards, absent some support for allegations of bias or sufficiency of allegations to show actual bias or appearance of impropriety. U.S.C.A. Const.Amend. 14.

**[19] Habeas Corpus 197 ☞422**

197 Habeas Corpus
  197I In General
    197I(D) Federal Court Review of Petitions by State Prisoners
      197I(D)6 State's Reliance on or Waiver of Procedural Bar or Want of Exhaustion
        197k422 k. State Court Decision on Procedural Grounds, and Adequacy of Such Independent State Grounds. Most Cited Cases
State post-conviction court's determination that ineffective assistance of counsel claims were waived by failure to raise them on direct review was not a procedural bar that precluded habeas review, where trial counsel assisted appellate counsel on direct appeal and trial record did not contain all evidence necessary to resolve claim. 28 U.S.C.A. § 2254.

**[20] Criminal Law 110 ☞1936**

110 Criminal Law

  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1921 Introduction of and Objections to Evidence at Trial
          110k1936 k. Defendant as Witness. Most Cited Cases
    (Formerly 110k641.13(2.1))

**Criminal Law 110 ☞1955**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1952 Sentencing in General
          110k1955 k. Presentation of Evidence Regarding Sentencing. Most Cited Cases
    (Formerly 110k641.13(7))
Any deficient performance by trial counsel in allowing defendant to testify or in not better preparing him to testify did not prejudice defendant, given overwhelming evidence of his guilt and aggravating circumstance, such that outcome at either guilt or penalty phase of trial was unlikely to have been different if defendant had not testified. U.S.C.A. Const.Amend. 6.

**[21] Criminal Law 110 ☞1963**

110 Criminal Law
  110XXXI Counsel
    110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
        110k1958 Death Penalty
          110k1963 k. Other Particular Issues in Death Penalty Cases. Most Cited Cases
    (Formerly 110k641.13(7))
Juror's statement that jury would not have sentenced defendant to death but for his demeanor and attitude while testifying could not be considered in determining whether counsel provided ineffective assistance in preparing defendant to testify, as statement concerned deliberations and was in any event not specific or compelling. U.S.C.A. Const.Amend. 6.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

**[22] Criminal Law 110 ☜857(1)**

110 Criminal Law
   110XX Trial
     110XX(J) Issues Relating to Jury Trial
      110k857 Deliberations in General
       110k857(1) k. In General. Most Cited
Cases
Juror statement may not be used to impeach jury's
verdict.

**[23] Criminal Law 110 ☜1955**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1952 Sentencing in General
        110k1955 k. Presentation of Evid-
ence Regarding Sentencing. Most Cited Cases
   (Formerly 110k641.13(7))
Defendant did not show that he was prejudiced by
trial counsel's failure to present additional mitigat-
ing evidence about his childhood, mental health,
and head injury, where there was no reasonable
probability that jury's verdict would have been
altered, given callous nature of crime, which in-
volved execution-style murder of security guard for
sole purpose of stealing property worth approxim-
ately $500, equivocal and less-than-compelling
nature of omitted mitigating evidence, and strength
of state's case in both guilt and penalty stages.
U.S.C.A. Const.Amend. 6.

**[24] Criminal Law 110 ☜1955**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1952 Sentencing in General
        110k1955 k. Presentation of Evid-
ence Regarding Sentencing. Most Cited Cases
   (Formerly 110k641.13(7))
Counsel's performance was not deficient in prepar-
ing penalty phase witnesses, where each testified

about future contact with defendant and his past
generosity, friendliness, and helpfulness. U.S.C.A.
Const.Amend. 6.

**[25] Criminal Law 110 ☜1942**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1941 Argument and Conduct of
Defense Counsel
        110k1942 k. In General. Most Cited
Cases
   (Formerly 110k641.13(2.1))

**Criminal Law 110 ☜1963**

110 Criminal Law
   110XXXI Counsel
     110XXXI(C) Adequacy of Representation
      110XXXI(C)2 Particular Cases and Issues
       110k1958 Death Penalty
        110k1963 k. Other Particular Issues
in Death Penalty Cases. Most Cited Cases
   (Formerly 110k641.13(7))
Assuming counsel could be deemed to have
provided ineffective assistance by telling defendant
jokes during trial, inducing occasional laughter and
smiling, defendant was not prejudiced by any fault
of counsel in failing to help him maintain proper
demeanor, given overwhelming evidence of defend-
ant's guilt and of death penalty aggravator.
U.S.C.A. Const.Amend. 6.

**[26] Habeas Corpus 197 ☜487**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for
Detention in General
      197k482 Counsel
       197k487 k. Conflict of Interest; Joint
Representation. Most Cited Cases
State appellate court did not unreasonably apply
federal law in determining that no inherent conflict

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

of interest existed in county public defender's office when post-trial claims of ineffectiveness were raised against fellow employees. U.S.C.A. Const.Amend. 6; 28 U.S.C.A. § 2254(d).

**[27] Habeas Corpus 197 ☜478**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
      197k478 k. Joinder or Severance of Counts or Defendants. Most Cited Cases
Generally, severance is a question of state law not cognizable in federal habeas proceedings.

**[28] Criminal Law 110 ☜622.7(3)**

110 Criminal Law
   110XX Trial
     110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
       110k622.7 Grounds for Severance or Joinder
        110k622.7(3) k. Prejudice; Fair Trial. Most Cited Cases
    (Formerly 110k622.2(3), 110k622.1(1))
There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial.

**[29] Criminal Law 110 ☜622.7(3)**

110 Criminal Law
   110XX Trial
     110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
       110k622.7 Grounds for Severance or Joinder
        110k622.7(3) k. Prejudice; Fair Trial. Most Cited Cases
    (Formerly 110k622.2(3))

**Criminal Law 110 ☜622.7(6)**

110 Criminal Law
   110XX Trial
     110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
       110k622.7 Grounds for Severance or Joinder
        110k622.7(6) k. Antagonistic Defenses; Hostility. Most Cited Cases
    (Formerly 110k622.2(6))

**Criminal Law 110 ☜622.7(7)**

110 Criminal Law
   110XX Trial
     110XX(A) Preliminary Proceedings
      110k622 Joint or Separate Trials of Codefendants
       110k622.7 Grounds for Severance or Joinder
        110k622.7(7) k. Inculpation of Defendant by Codefendant; Conflicting Testimony. Most Cited Cases
    (Formerly 110k622.2(7))
Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another; rather, a petitioner must show "real prejudice."

**[30] Habeas Corpus 197 ☜478**

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
     197II(B) Particular Defects and Authority for Detention in General
      197k478 k. Joinder or Severance of Counts or Defendants. Most Cited Cases
State appellate court determination that habeas petitioner did not show real prejudice resulting from refusal to sever his trial from that of co-defendant who was not facing death penalty was not unreasonable application of federal law, and thus, federal habeas relief was not warranted, notwithstanding defendant's inability to introduce co-defendant's prior bad acts, where co-defendants' defenses were not antagonistic and both attempted to exculpate

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

themselves but not to inculpate other. 28 U.S.C.A. § 2254(d).

**[31] Habeas Corpus 197 ⬤⟿481**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k481 k. Conduct of Trial, in General. Most Cited Cases
State appellate court determination that habeas petitioner's *Bruton* rights were not violated by admission of co-defendant's statements when he was jointly tried with co-defendant was not contrary to or an unreasonable application of federal law, and thus, federal habeas relief was not warranted, where police officer was not allowed to testify as to portions of co-defendant's statements concerning defendant. U.S.C.A. Const.Amend. 6.

**[32] Jury 230 ⬤⟿136(5)**

230 Jury
    230V Competency of Jurors, Challenges, and Objections
        230k134 Peremptory Challenges
           230k136 Number
               230k136(5) k. Nature of Offense and Extent of Punishment. Most Cited Cases
Defendant's constitutional rights were not violated by trial court's refusal to give him additional peremptory challenges not enjoyed by his co-defendant, who was not facing death penalty, where their defenses were not mutually antagonistic or inconsistent and defendant received peremptory challenges he was entitled to under state law.

**[33] Habeas Corpus 197 ⬤⟿508**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k503 Judgment, Sentence, or Order
               197k508 k. Death Sentence. Most

Cited Cases
State appellate court determination that defendant was properly prevented from presenting evidence of co-defendant's unrelated, prior bad acts during penalty phase of defendant's capital murder trial was not contrary to or an unreasonable application of Supreme Court precedent, upon determination that co-defendant's bad acts would not have been mitigating as to defendant's participation in charged crime or relevant to defendant's character, and thus, defendant was not entitled to federal habeas relief. 28 U.S.C.A. 2254(d).

**[34] Habeas Corpus 197 ⬤⟿493(3)**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k489 Evidence
               197k493 Weight and Sufficiency
                  197k493(3) k. Particular Issues and Problems. Most Cited Cases
State appellate court determination that evidence was constitutionally sufficient to show intent to rob element of felony murder based on robbery was reasonable, precluding federal habeas relief, given evidence that defendant had talked about getting another wrecker for body shop, that he had borrowed bolt cutters of kind used to gain entrance to auction lot, that boot prints found near murder scene were consistent with his boots, that defendant had owned gun of same caliber used to kill lot's security guard, that defendant was seen in possession of wrecker taken from lot, and that defendant told two people he had killed man.

**[35] Homicide 203 ⬤⟿607**

203 Homicide
    203III Homicide in Commission of or with Intent to Commit Other Unlawful Act
        203III(B) Murder
            203k593 Particular Offenses and Conduct
               203k607 k. Robbery. Most Cited Cases
(Formerly 203k18(5))

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

**Sentencing and Punishment 350H ☜1682**

350H Sentencing and Punishment
   350HVIII The Death Penalty
      350HVIII(D) Factors Related to Offense
         350Hk1682 k. Escape or Other Obstruction of Justice. Most Cited Cases
Intent elements for felony murder, that defendant intended to commit robbery, and death penalty aggravator, that murder was committed to avoid arrest or prosecution under Oklahoma law, were not inherently inconsistent, inasmuch as intent to rob and intent to eliminate witness could exist simultaneously under Oklahoma law.

**\*938** Before KELLY, Circuit Judge, BRORBY, Senior Circuit Judge, and BRISCOE, Circuit Judge.

ORDER AND JUDGMENT [FN*]

> FN\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

PAUL KELLY, Jr., Circuit Judge.

**\*\*1** Appellant Ernest Marvin Carter, Jr., was convicted in Oklahoma County District Court of felony murder, *see* Okla. Stat. tit. 21, § 701.7(B), and sentenced to death. He now appeals the denial of his federal habeas petition seeking to overturn both the conviction and sentence. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c), we affirm.

BACKGROUND

On January 27, 1990, at 8:00 p.m., Eugene Manowski relieved Ben Richardson of security guard duties at the Oklahoma Auto Auction in Oklahoma City, Oklahoma. When Mr. Richardson left, Mr. Manowski was alone, and the business' gates were padlocked. Twelve hours later, when Mr. Richardson returned to work, the lights in the guard shack were off, the guard shack door was open, the gate to the auto yard was partially open, the gate lock had been bent or cut, and Mr. Manowski was lying on the ground with blood visible. He died from a hard contact gunshot wound to the head.

Mr. Carter had been fired from his employment at the Auction approximately two weeks before the murder. He was not bitter about the firing, because he believed he deserved to be fired for sleeping on the job.

Tammy Lewis, the former girlfriend of Mr. Carter's co-defendant, Charles Summers,[FN1] testified that on the evening of January 27, she, Mr. Carter and Mr. Summers drove from Chandler, Oklahoma, to the Oklahoma Auto Auction. During the ride, there was no discussion. After arriving at the Auto Auction, Mr. Carter left the car, taking bolt cutters. Ms. Lewis and Mr. Summers returned to Chandler. Approximately two hours later, Mr. Carter awakened Mr. Summers and Ms. Lewis, telling them he needed help with a truck and he had killed a man. Mr. Carter, Ms. Lewis and Mr. Summers drove to a white wrecker truck with the word "Auction" on it. The truck would not start. They towed it to Mr. Summers' body shop, where Mr. Carter and Mr. Summers tried to take the wrecker piece out of the truck bed. **\*939** Thereafter, Ms. Lewis left. Later, she assisted the two men in removing a black truck they had gotten stuck on Mr. Carter's step-grandfather's property. Ms. Lewis saw parts of the wrecker attachment next to the black truck. She observed Mr. Summers and Mr. Carter painting the "Auction" truck. A few days later, the three tried to burn that truck.

> FN1. Mr. Summers also was convicted of felony murder and received a life sentence.

Larry Denson, an automobile mechanic who occasionally did work for Mr. Summers and who was

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

his best friend, testified that Mr. Summers asked him to start a white pickup with a wrecker attachment. The second time Mr. Denson tried to start the truck, both Mr. Summers and Mr. Carter were present. Mr. Carter told Mr. Denson that a man saw him take the truck, but the man would not tell anyone because he "offed him." Trial Tr. vol. VI at 1374.

Charles Marshall testified that Mr. Summers had borrowed bolt cutters from him. Mr. Summers told Mr. Marshall he needed the bolt cutters for "a job." *Id.* vol. IV at 796. Sergeant Robertson, a ballistics and tool mark examiner, testified the characteristics of the borrowed bolt cutters were consistent with the marks left on the broken lock. Footprints near the Auction were consistent with boots owned by Mr. Carter. Also, he possessed bullets similar to the one used to kill the victim. The forensic pathologist who performed the autopsy on the victim testified that the victim died from a gunshot wound that entered his head approximately one inch in front of, and approximately four inches above, the left ear. According to the pathologist, the characteristics of the entrance wound conclusively indicated that the murder weapon was in direct contact with the victim's head when the fatal shot was fired.

**2 Mr. Carter testified that he was not involved in the murder or robbery. He admitted seeing the wrecker truck in Mr. Summers' body shop the same day he heard about the murder. Also, he admitted helping Mr. Summers paint the truck and remove the wrecker assembly, but he denied burning the truck. Mr. Carter testified that Mr. Summers had asked him whether he knew of anyone who could steal a wrecker from the Auction. Also, Mr. Carter testified that about one week before the murder Mr. Summers had offered a man $500 to obtain a wrecker and had also asked Mr. Carter to steal a wrecker. Although Mr. Carter did not believe Mr. Summers was at the murder, he thought someone had stolen the wrecker for him.

The jury found Mr. Carter guilty of felony murder, killing Mr. Manowski while committing a robbery

with a firearm, and sentenced him to death after finding he committed the murder to avoid arrest or prosecution. The Oklahoma Court of Criminal Appeals affirmed on direct appeal, *Carter v. State,* 879 P.2d 1234 (Okla.Crim.App.1994), *cert. denied,* 513 U.S. 1172, 115 S.Ct. 1149, 130 L.Ed.2d 1107 (1995), and denied post-conviction relief, *Carter v. State,* 936 P.2d 342 (Okla.Crim.App.1997). Thereafter, Mr. Carter unsuccessfully sought federal habeas corpus relief.

The federal district court granted a certificate of appealability (COA) to raise these claims on appeal: (1) the trial court's lack of subject matter jurisdiction; (2) ineffective assistance of trial and appellate counsel for failing to assert lack of subject matter jurisdiction; (3) ex post facto application of new law; (4) ineffective assistance of counsel at trial and on appeal; (5) the trial court's improper refusal to sever; and (6) the State's failure to prove an essential element of the crime charged *940 and/or the existence of the aggravating circumstance. After conducting a case management conference, this court granted Mr. Carter a COA to raise an additional issue: Oklahoma's failure to protect judges from public opinion influences.

### STANDARDS OF REVIEW

[1][2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this appeal. *See Williams v. Taylor,* 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under AEDPA, the applicable standard of review depends upon whether the state courts addressed the merits of a particular claim for relief. If the state courts decided the merits of a claim, Mr. Carter is entitled to habeas relief if the decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). Federal courts presume the state court's factual findings are correct, unless rebutted by clear and convincing

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

evidence. *Id.* § 2254(e)(1). If the state courts did not decide a claim on its merits, and the claim is not procedurally barred, this court reviews the district court's legal conclusions *de novo* and its factual findings, if any, for clear error. *McCracken v. Gibson,* 268 F.3d 970, 975 (10th Cir.2001).

## DISCUSSION

### I. Subject Matter Jurisdiction

**\*\*3** Mr. Carter argues the trial court lacked subject matter jurisdiction to try, convict and sentence him because the Information did not allege facts establishing every element of felony murder, including each element of the underlying robbery with a firearm. The Information stated:

> On or about the 28th day of January, 1990, A.D., the crime of murder in the first degree was feloniously committed in Oklahoma County, Oklahoma, by Ernest Marvin Carter Jr and Charles L Summers who while acting jointly in the commission of robbery with firearms wilfully and unlawfully killed Eugene Manowski by shooting him with a pistol inflicting mortal wounds which caused his death on 28th day of January, 1990, contrary to the provisions of section 701.7 of Title 21 of the Oklahoma Statutes, and against the peace and dignity of the State of Oklahoma.

O.R. vol. I at 1.

On post-conviction review, the Oklahoma Court of Criminal Appeals deemed this claim waived because Mr. Carter failed to raise it on direct appeal. *Carter,* 936 P.2d at 344.[FN2] Because it is easier to decide this claim on its merits rather than resolve the procedural bar issue, we proceed to the merits. *See Romero v. Furlong,* 215 F.3d 1107, 1111 (10th Cir.), *cert. denied,* 531 U.S. 982, 121 S.Ct. 434, 148 L.Ed.2d 441 (2000); *see also Johnson v. Gibson,* 169 F.3d 1239, 1251-52 (10th Cir.1999) (pre-AEDPA) (assuming, *arguendo,* similar claim was not procedurally barred).

FN2. Citing 28 U.S.C. § 2254(b)(2), the federal district court declined to apply procedural bar and instead proceeded to the merits. Section 2254(b)(2), however, permits a habeas court to address the merits of an unexhausted claim in order to deny relief. This section does not apply here, because the claim was exhausted.

[3] Since the state courts did not consider this claim on its merits, this court reviews the federal district court's decision *de novo. McCracken,* 268 F.3d at 975. **\*941** Relying on *Johnson,* the federal district court held that the Information did not violate Mr. Carter's constitutional rights because it sufficiently apprised him of the nature of the charges against him. We agree.

[4][5] A challenge to the adequacy of the Information under Oklahoma law is a question of state law, which this court has no power to correct. *Johnson,* 169 F.3d at 1252; *see also Knewel v. Egan,* 268 U.S. 442, 445, 45 S.Ct. 522, 69 L.Ed. 1036 (1925). Rather, this court may grant habeas relief only if the state court error deprived the defendant of fundamental rights guaranteed by the Constitution. *Knewel,* 268 U.S. at 446-47, 45 S.Ct. 522; *Johnson,* 169 F.3d at 1252. For example, an Information "may violate the Sixth Amendment by failing to provide" "adequate notice of the nature and cause of the accusations against" the defendant. *Johnson,* 169 F.3d at 1252.

[6] Mr. Carter maintains his claim does not, like *Johnson,* concern Sixth Amendment rights. Rather, he believes that for ninety years, Oklahoma law required the Information to recite every element of a charged crime. Thus, he argues he had a protected liberty interest, which the state courts ignored, thereby violating his Fourteenth Amendment due process rights. *See Vitek v. Jones,* 445 U.S. 480, 488, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ("state statutes may create liberty interests that are entitled to the procedural protections of the Due Process Clause of the Fourteenth Amendment"). Also, he argues that executing him without meeting subject

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

matter jurisdiction guaranteed under state law constitutes cruel and unusual punishment contrary to the Eighth Amendment.

**\*\*4** Contrary to Mr. Carter's assertion, however, at the time of Mr. Carter's trial, in 1991, Oklahoma law did not clearly require an Information to recite every element of the offense. At that time, some Oklahoma case law indicated an Information's failure to allege the facts constituting an offense did not affect the trial court's jurisdiction. *See Hatch v. State,* 924 P.2d 284, 294 (Okla.Crim.App.1996) (citing *Bruner v. State,* 612 P.2d 1375, 1380 (Okla.Crim.App.1980); *Holloway v. State,* 602 P.2d 218, 220 (Okla.Crim.App.1979)). Rather, an Information was sufficient so long as it did not mislead the defendant and did not expose him to the possibility of later being put in jeopardy a second time for the same offense. *See, e.g., Doyle v. State,* 785 P.2d 317, 326 (Okla.Crim.App.1989); *Jefferson v. State,* 675 P.2d 443, 445 (Okla.Crim.App.1984); *Nealy v. State,* 636 P.2d 378, 380 (Okla.Crim.App.1981). *See generally Miller v. State,* 827 P.2d 875, 880-83 (Okla.Crim.App.1992) (Lumpkin, Vice-Presiding J., concurring in part and dissenting in part) (recognizing, by citing several cases, that "diametric opposing lines of case law authority" exist, with one line suggesting that Information need not allege each element of offense charged because notice pleading is sufficient; distinguishing pleading elements from pleading facts), *majority opinion overruled by Parker v. State,* 917 P.2d 980 (Okla.Crim.App.1996).

In 1992, however, after Mr. Carter was tried but before disposition of his direct appeal, the Oklahoma appellate court noted that "[t]he requirement that the Information state facts to allege every material element of the crime charged has been firmly rooted in Oklahoma jurisprudence since the time of statehood." *Id.* at 877 (citing cases). *Miller* held Oklahoma requires the Information to set forth the essential elements of the charged offense, **\*942** and, if the Information does not recite facts to allege every material element of the crime charged, it fails

to confer subject matter jurisdiction on the district court. *Id.* at 877, 879; *see also, e.g., Tiger v. State,* 900 P.2d 406, 408 (Okla.Crim.App.1995), *overruled by Parker,* 917 P.2d 980; *Pickens v. State,* 885 P.2d 678, 684 (Okla.Crim.App.1994), *overruled by Parker,* 917 P.2d 980; *Allen v. State,* 874 P.2d 60, 65 (Okla.Crim.App.1994).

*Parker,* decided after Mr. Carter's direct appeal and after the trial court denied his post-conviction application, but before the Oklahoma Court of Criminal Appeals affirmed the denial of post-conviction relief, however, overruled *Miller's* requirement that the Information allege each element of the crime to be sufficient to confer jurisdiction and instead held that to satisfy due process concerns the Information need only provide notice of the charges and apprise the defendant of what he must defend against at trial. *Parker,* 917 P.2d at 985-86; *see also Miles v. State,* 922 P.2d 629, 630 (Okla.Crim.App.1996) (denying rehearing). The Oklahoma Court of Criminal Appeals later noted that *Parker* adopted one of at least two distinct paths Oklahoma case law had taken in interpreting Oklahoma statutes governing an Information. *Miles,* 922 P.2d at 631 & n. 5 (citing dissents in *Tiger* and *Miller* ).

**\*\*5** Thus, Oklahoma case law was not consistent at the time of Mr. Carter's trial. But the Oklahoma Court of Criminal Appeals had resolved any questions concerning subject matter jurisdiction and the sufficiency of an Information by the time it decided Mr. Carter's post-conviction appeal. We may not reexamine the state appellate court's determination of the state law questions; rather, we may decide only whether Oklahoma violated Mr. Carter's constitutional rights. *See Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

Here, there was no constitutional violation. The Information was adequate to give Mr. Carter notice of the charge against him. *See Johnson,* 169 F.3d at 1252. Moreover, he does not indicate he lacked notice of the charge against him. And the trial record clearly shows he was charged with and defended against felony murder. Mr. Carter therefore could

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

not have had a protected liberty interest requiring the Information to allege facts establishing every element of felony murder. Nor was his death sentence cruel and unusual punishment.

II. Counsel's Failure to Assert Lack of Subject Matter Jurisdiction

Mr. Carter argues his trial and appellate counsel provided ineffective assistance because they failed to argue lack of subject matter jurisdiction.

A. Ineffective assistance of trial counsel

[7] 1. Procedural bar. Mr. Carter raised this claim for the first time in his application for postconviction relief. The Oklahoma Court of Criminal Appeals deemed the claim waived because it could have been raised on direct appeal as it relied on facts discernable from the record. *Carter*, 936 P.2d at 345. This procedural bar will be adequate if (1) trial and appellate counsel differ and (2) the claim can be resolved solely on consideration of the record. *English v. Cody*, 146 F.3d 1257, 1264 (10th Cir.1998). In this case, it appears trial and appellate counsel did not differ. Although trial counsel David Autry's name is not on the direct appeal brief, he indicated*943 in an affidavit filed with the habeas petition that he was in fact assigned to write part of that brief. Fed. Dist. Ct. R. vol. 3, doc. 15, app. H at 4. Trial counsel's assistance with the brief, along with appellate counsel's failure to raise any ineffective assistance of trial counsel issues on direct appeal, suggests named appellate counsel was in an awkward position. *Cf. McCracken*, 268 F.3d at 977 (recognizing first *English* requirement was not met where trial counsel represented petitioner on direct appeal); *Smallwood v. Gibson*, 191 F.3d 1257, 1270 (10th Cir.1999) (rejecting conflict of interest argument where appellate counsel from same public defender's office raised ineffective assistance of counsel claim on direct appeal). Accordingly, we proceed to the merits of this claim.

2. Merits. To obtain habeas relief, Mr. Carter must

establish both that his trial attorneys' representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**6 [8] Mr. Carter cannot show counsel's failure to challenge the Information amounted to deficient performance. As indicated above, *Miller*, 827 P.2d 875, which was decided after Mr. Carter's murder trial and later overruled by *Parker*, 917 P.2d 980, was the first case to clearly state jurisdictional requirements for an Information. Thus, trial counsel was not ineffective for failing to anticipate the holding in *Miller*. *See Sherrill v. Hargett*, 184 F.3d 1172, 1175 (10th Cir.1999).

[9] Also, Mr. Carter cannot show prejudice. Prejudice is judged by current law. *Newsted v. Gibson*, 158 F.3d 1085, 1091 (10th Cir.1998). Under *Parker*, the Information was sufficient to provide Mr. Carter notice of the charge against him.

[10] Mr. Carter criticizes reliance on *Newsted*, because that case relied on *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), which he contends was limited by *Williams*, 529 U.S. at 391-93, 120 S.Ct. 1495. *Williams*, however, did not limit *Lockhart* on this basis. *See Williams*, 529 U.S. at 393, 120 S.Ct. 1495.

B. Ineffective assistance of appellate counsel

Ineffective assistance of appellate counsel claims are also governed by *Strickland*. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Thus, Mr. Carter must show that his appellate counsel was objectively unreasonable in failing to discover and raise this issue on appeal and that there is a reasonable probability that but for counsel's unreasonable failure to raise the issue he would have prevailed on appeal. *See id.*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

[11] Addressing this claim on post-conviction review, the Oklahoma Court of Criminal Appeals determined, without providing reasoning, that Mr. Carter failed to show either deficient performance or prejudice. *Carter,* 936 P.2d at 345-46 (citing *Strickland* ). Because Mr. Carter cannot show prejudice due to trial counsel's failure to challenge subject matter jurisdiction, it follows that he also cannot show prejudice by appellate counsel's failure to assert the issue. *See Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 (permitting court to affirm denial of habeas relief on whichever prong is easier to resolve). Accordingly, deferring to the state court's result, *944*Walker v. Gibson,* 228 F.3d 1217, 1241 (10th Cir.2000), *cert. denied,* 533 U.S. 933, 121 S.Ct. 2560, 150 L.Ed.2d 725 (2001), we conclude the Oklahoma Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Strickland, see* 28 U.S.C. § 2254(d)(1).

III. *Ex Post Facto* Application of New Law

[12] Mr. Carter argues the Oklahoma appellate court's applying of *Parker,* 917 P.2d at 986, to confer subject matter jurisdiction on his case violates *ex post facto* rules. Mr. Carter maintains *Parker* was unforeseeable, because *Tiger,* the most recent decision before *Parker,* reaffirmed that the Information must allege all elements of the crime. Accordingly, Mr. Carter argues applying *Parker* to his case is an impermissible retroactive application of new law.

[13][14] Because Mr. Carter never presented this issue to the Oklahoma courts, it remains unexhausted. *See Jones v. Gibson,* 206 F.3d 946, 955 (10th Cir.), *cert. denied,* 531 U.S. 998, 121 S.Ct. 496, 148 L.Ed.2d 467 (2000). Nevertheless, we can deny this claim on its merits. *See* 28 U.S.C. § 2254(b)(2). An alleged *ex post facto* violation is a question of law, *cf. Lustgarden v. Gunter,* 966 F.2d 552, 553 (10th Cir.1992), which we review *de novo, McCracken,* 268 F.3d at 975.

**7 [15] "[L]imitations on *ex post facto* judicial de-

cisionmaking are inherent in the notion of due process." *Rogers v. Tennessee,* 532 U.S. 451, 121 S.Ct. 1693, 1697, 149 L.Ed.2d 697 (2001). The test for deciding if a retroactive application of a judicial decision violates due process is one of foreseeability. *Fultz v. Embry,* 158 F.3d 1101, 1103 (10th Cir.1998). A judicial decision is unforeseeable and may not be given retroactive effect when it is unexpected and indefensible by reference to the law in effect prior to the conduct in issue. *See Bouie v. City of Columbia,* 378 U.S. 347, 354, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *see also Rogers,* 121 S.Ct. at 1700.

Here, there is no retroactivity or foreseeability problem. As discussed previously, prior to the crime, Oklahoma law had not clearly established what was needed for an adequate Information.[FN3]

> FN3. The Oklahoma Court of Criminal Appeals has expressly held that application of *Parker* does not violate *ex post facto* prohibitions. *Hatch,* 924 P.2d at 294; *Miles,* 922 P.2d at 631.

IV. Failure to Protect Judges from Public Opinion Influences

[16] Mr. Carter argues he received constitutionally defective judicial process during post-conviction proceedings. As proof, Mr. Carter cites the state appellate court's failure to grant him relief on his subject matter jurisdiction claim. He maintains the elected judiciary was not sufficiently independent of public opinion due to a lack of institutional safeguards. He further argues the Oklahoma system which places the judges at risk for loss of their income cannot and does not guarantee fair and impartial proceedings. [FN4]

> FN4. Mr. Carter also argues the Oklahoma Court of Criminal Appeals routinely finds issues waived or barred by res judicata without searching for constitutional error. And if the court is unable to avoid consti-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

tutional error, it routinely finds harmless error. He maintains the court approves repeated instances of prosecutorial misconduct. Finally, he asserts that Judge Charles Owens, the post-conviction trial judge, was biased because he had published his beliefs that post-conviction applications were frivolous and meritless.

Mr. Carter did not raise these arguments in his federal habeas petition. We do not consider these arguments, absent extraordinary circumstances. *See Fowler v. Ward,* 200 F.3d 1302, 1310 (10th Cir.), *cert. denied,* 531 U.S. 932, 121 S.Ct. 317, 148 L.Ed.2d 254 (2000). Mr. Carter presents no extraordinary circumstances.

Mr. Carter raised this claim for the first time in post-conviction proceedings. The **\*945** Oklahoma Court of Criminal Appeals deemed it waived because Mr. Carter could have, but did not, raise it on direct appeal. *Carter,* 936 P.2d at 344-45. Because it is easier to decide this claim on its merits than to resolve the procedural bar issue, we do so. *See Romero,* 215 F.3d at 1111.

[17][18] "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1955). Mr. Carter, however, has not shown he did not receive a fair trial. He has failed to cite any constitutional authority prohibiting states from publicly electing its judiciary. And the judicial rulings denying him post-conviction relief alone do not establish bias or partiality. *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Mr. Carter's allegations of bias are unsupported and do not show actual judicial bias or even an appearance of bias. We therefore conclude Mr. Carter has not proven his due process right to a fair and impartial state judiciary was violated by a lack of institutional safeguards.

V. Ineffective Assistance of Trial and Appellate

Counsel

Mr. Carter argues the Oklahoma County Public Defender's office was so overworked and underfunded that its attorneys could not devote the time and effort necessary to provide him a minimally effective defense at trial or on appeal. According to Mr. Carter, he met with trial counsel for approximately two hours, an inexperienced investigator devoted his time to guilt issues only, and appellate counsel was threatened with firing if she sought additional extensions of time to file the direct appeal brief. He submits he was prejudiced, for the reasons discussed below, by both trial and appellate counsel.

A. Ineffective assistance of trial counsel

**\*\*8** [19] Mr. Carter first argued ineffective assistance of trial counsel in his application for post-conviction relief. The Oklahoma appellate court deemed these claims waived because they could have been discerned from a review of the record or were based on facts within Mr. Carter's knowledge. *Carter,* 936 P.2d at 345. The State's procedural bar, however, is not adequate to preclude our review, because neither of the *English* requirements, *see* section II.A.1., *supra,* is met. First, trial counsel Autry had been assigned to help with the appellate brief. Second, the trial record does not contain all of the evidence necessary to resolve this claim. *Romano v. Gibson,* 239 F.3d 1156, 1180 (10th Cir.2001), *cert. denied,* 534 U.S. 1045, 122 S.Ct. 624, 151 L.Ed.2d 545 (2001). Thus, we review this claim *de novo. Id.*

1. Improperly advised Mr. Carter to testify and failed to prepare him to testify. Mr. Carter argues counsel neither spent sufficient time with him to properly advise him whether to testify nor provided practice sessions or advice regarding courtroom behavior and demeanor to prepare him to testify. To support these arguments, Mr. Carter points to counsel's acknowledgment that Mr. Carter made a **\*946** poor appearance before the jury and to a juror's statement to Mr. Autry that the jury would not have

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

sentenced Mr. Carter to death except for his demeanor and attitude while testifying.

[20][21][22] Even assuming Mr. Carter established deficient performance, the federal district court correctly concluded he had failed to show prejudice, *i.e.,* that if counsel had not committed the errors claimed, there is a reasonable probability that the case's outcome would have been different. *See Boyd v. Ward,* 179 F.3d 904, 915 (10th Cir.1999) (citing *Strickland* ). We agree. In light of the strong evidence supporting his conviction and the aggravating circumstance, Mr. Carter cannot show the outcome at either stage of trial probably would have been different if he had not testified or if he had been better prepared to testify. We give counsel's after trial assertion that Mr. Carter made a poor appearance before the jury little weight. Also, we may not consider the juror's statement. *See* Okla. Stat. tit. 12, § 2606(b) (prohibiting consideration of juror statements regarding matters affecting jury deliberations); *see also* Fed.R.Evid. 606(b). Even assuming this court could consider the juror's statement, *see Walker,* 228 F.3d at 1233 & n. 8, it is not compelling or specific. And it may not impeach the jury's verdict. *See Tanner v. United States,* 483 U.S. 107, 117, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *McDonald v. Pless,* 238 U.S. 264, 268-69, 35 S.Ct. 783, 59 L.Ed. 1300 (1915). Rather, the jury verdict, not an individual juror opinion expressed after trial, carries legal weight. *Walker,* 228 F.3d at 1233.

2. Failure to adequately investigate mitigation evidence. Mr. Carter argues trial counsel failed to adequately investigate and present mitigating evidence concerning his mental-health status, a prior head injury,[FN5] his "horrific childhood," physical and mental abuse and his violent childhood home environment. The federal district court found that Mr. Carter did not prove deficient performance because he never showed he conveyed this additional, but unused, mitigating information to his trial counsel. There is evidence in the record, however, that neither counsel nor the investigator focused on second-stage preparation. Also, there is no record

evidence that counsel or the investigator ever informed Mr. Carter what type of information might be useful in the second-stage proceedings. Based on the record, we cannot conclude trial counsel's performance was deficient.

> FN5. Dr. Murphy, a psychologist, indicated on post-conviction there was a suggestion of a head injury. P.C. O.R. vol. V. at 860.

**\*\*9** [23] The federal district court further found no prejudice because this mitigation evidence was slight compared to the callous nature of the crime-killing a security guard execution-style for the sole purpose of stealing a wrecker winch assembly, presumably for $500. We agree that Mr. Carter has not shown prejudice, *i.e.,* that the mitigating evidence he now points to probably would have changed the jury's sentencing determination. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052. In assessing prejudice, this court keeps in mind the strength of the State's case and the aggravating factor the jury found, along with all the mitigating evidence that might have been presented. *Walker,* 228 F.3d at 1234. Here, strong evidence, including Mr. Carter's own admissions, supported the conviction. Also, the evidence fully supported the jury's finding the avoid arrest or prosecution**\*947** aggravator. *See* section VII.C., *infra.* The newly asserted mitigating evidence is partially equivocal and overall not compelling. Furthermore, on numerous occasions, this court has determined evidence of a troubled childhood does not outweigh evidence supporting the conviction and aggravating circumstances. *See Foster v. Ward,* 182 F.3d 1177, 1189 (10th Cir.1999) (citing cases). This case is not an exception. If trial counsel had presented all of this mitigating evidence, it would have been insufficient to offset, explain, or justify the murder. *See Nguyen v. Reynolds,* 131 F.3d 1340, 1349 (10th Cir.1997). Given the strength of the State's case, the aggravating factor found by the jury and the callous nature of the crime, we conclude the later-identified mitigating evidence, along with the mitigating evidence

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

presented at sentencing, would not have created a reasonable probability the jury would not have sentenced Mr. Carter to death. *See Strickland,* 466 U.S. at 695, 104 S.Ct. 2052.

[24] 3. *Failure to prepare second-stage witnesses.* Mr. Carter argues the witnesses did not know he had been found guilty when they testified or, further, what information about his background would be helpful. The trial transcript, however, suggests these witnesses were prepared. Each witness answered similar questions concerning future contact with Mr. Carter and his past generosity, friendliness and helpfulness toward them and others. Even if counsel's performance was deficient, the callous nature of the crime and the strong evidence supporting the aggravator make it unlikely any further witness preparation probably would have changed the result of the trial's second stage. *See id.*

[25] 4. *Failure to maintain a proper demeanor.* Throughout trial, attorney Paul Faulk told Mr. Carter jokes, inducing occasional laughter and smiling. Mr. Carter asserts he was unable emotionally to understand the inappropriateness of such behavior and counsel's explanation that he was trying to relax Mr. Carter was inexcusable. Again, we cannot consider here the juror's statement that the jury would not have sentenced him to death except for his demeanor or attitude while testifying.

**10 During his trial testimony, Mr. Carter explained that he smiles a lot and he had been smiling occasionally during trial and laughing at the jokes Mr. Faulk had been making, but he was not laughing at the proceedings. Further, counsel stated in closing argument that Mr. Carter was not smiling or laughing at the proceedings, and that he did not smile when on the witness stand, unless it was appropriate. We conclude the jury convicted Mr. Carter of felony murder and imposed the death penalty due to the substantial evidence supporting guilt and the aggravator and not because Mr. Carter did not maintain a proper demeanor.

B. Ineffective assistance of appellate counsel

[26] Mr. Carter argues the Oklahoma County Public Defender's office has an inherent conflict of interest due to its structure. Specifically, he contends direct appeal counsel failed to raise significant issues concerning trial counsel's performance, inadequacy of resources, and improprieties placed on her by her boss. The Oklahoma Court of Criminal Appeals, however, held no inherent conflict exists within the Oklahoma County Public Defender's Office when claims of ineffectiveness are raised against fellow employees. *Carter,* 936 P.2d at 345. Without discussion, the court also concluded appellate counsel was *948 not ineffective for failing to assert on appeal ineffectiveness of trial counsel. *Id.* at 345-46. Mr. Carter has failed to demonstrate an actual conflict of interest or show that he was prejudiced by this representation. *See Chacker v. Petsock,* 713 F.Supp. 775, 785 (E.D.Pa.1989). Further, the federal district court considered the claims of ineffective assistance of trial counsel and inadequacy of resources on their merits and correctly decided they lacked merit. Accordingly, we conclude the Oklahoma Court of Criminal Appeals' decision was not unreasonable. *See* 28 U.S.C. § 2254(d).

VI. Severance

Before and during trial, both co-defendants repeatedly sought severance. Mr. Carter now argues the joint trial prejudiced him because (1) the co-defendants had to share the counsel table, thereby destroying confidentiality of legal consultation; FN6 (2) the jury always viewed the defendants together, subtly suggesting joint acts; (3) Mr. Summer's counsel claimed Mr. Carter's counsel was laughing at counsel table; (4) Mr. Carter was not given more peremptory challenges than Mr. Summers even though Mr. Summers was not on trial for his life; (5) evidentiary rulings stifled Mr. Carter's right to confront weaknesses in the State's theory and precluded evidence that Mr. Summers carried a gun, traded drugs, had stolen property, and had threatened a man with a gun; (6) Mr. Summers' at-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))

torney aggressively pursued the theory that the whole plan was exclusively carried out by Mr. Carter and Ms. Lewis; (7) Mr. Carter's attorney attempted to exculpate Mr. Carter by inculpating Mr. Summers; (8) Mr. Carter was unfairly prejudiced by Ms. Lewis' *de facto* immunity to present evidence against him; (9) Mr. Carter was prohibited from presenting stronger evidence because Mr. Summers exercised his right to remain silent; and (10) Mr. Summers did not face the death penalty.

> FN6. The trial court denied a request for separate tables due to space concerns. Trial Tr. vol. V at 971.

**\*\*11** [27][28][29] Generally, severance is a question of state law not cognizable in federal habeas proceedings. *Fox v. Ward,* 200 F.3d 1286, 1292 (10th Cir.) (citing *Cummings v. Evans,* 161 F.3d 610, 619 (10th Cir.1998)), *cert. denied,* 531 U.S. 938, 121 S.Ct. 329, 148 L.Ed.2d 264 (2000). There is no constitutional right to severance without a strong showing of prejudice caused by the joint trial. *See id.* Severance is not constitutionally required merely because defense theories conflict or because one defendant is attempting to cast blame on another. Rather, a petitioner must show "real prejudice." *Id.* at 1293. "Such ... prejudice is shown if the defenses are truly mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other." *Id.* (quotation omitted). " 'Mutually antagonistic defenses are not prejudicial *per se.* ' " *Id.* (quoting *Zafiro v. United States,* 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993)).

A. Mutually antagonistic defenses

[30] The Oklahoma Court of Criminal Appeals rejected Mr. Carter's argument that the co-defendants had mutually antagonistic defenses, and instead concluded both defendants denied involvement in the robbery and murder, but admitted conduct \*949 making them accessories after the fact. *Carter,* 879 P.2d at 1241-42.

In his testimony [Mr. Carter] admitted his involvement in attempting to get rid of the stolen wrecker from the Auto Auction. He testified to assisting [Mr. Summers] in repainting the truck, dismantling the winch assembly, and hiding the winch. When asked how he thought the wrecker got to [Mr. Summers'] shop, he said he thought someone had stolen it for [Mr.] Summers, he did not think [Mr.] Summers was actually at the Auto Auction. [Mr. Carter] further testified that when he assisted in the concealment of the truck he did not know that Mr. Manowski had been murdered. [Mr. Carter] in no way inculpated [Mr. Summers] in the murder.... Similarly ... [Mr.] Summers did not inculpate [Mr. Carter] in the murder. In pretrial statements to police, ... [Mr.] Summers admitted only to towing the wrecker from his shop to the outskirts of town. He denied any knowledge of the murder or that the wrecker had been stolen from the Auto Auction. Both men attempted to exculpate themselves but not by inculpating the other.

*Id.* at 1241.

Also, the court determined that defense counsel's conduct did not create antagonistic defenses. *Id.* The court recognized the co-defendants were hostile to each other only about peripheral issues and not the crime itself: both attempted to disparage the character of the other; Mr. Carter asserted Mr. Summers had access to guns and that he sold drugs from and acquired stolen property at his body shop; Mr. Carter had a reputation for violence; and both had intimate relationships with Ms. Lewis and she was biased in favor of the other. *Id.* Further, the court determined each co-defendant's counsel argued both that the evidence linked the other co-defendant to the crime and that the evidence linked others to the crime. *Id.* at 1241-42. But, however, neither assisted the State in proving its case against the other. *Id.* at 1242. We conclude the Oklahoma Court of Criminal Appeals' determination was not unreasonable. *See* 28 U.S.C. § 2254(d).

**\*\*12** Under the facts of this case, Mr. Carter has

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

not shown "real prejudice" required for severance. Because Mr. Carter and Mr. Summers both denied involvement in the robbery and murder but admitted conduct that would make them accessories after the fact, their theories were not mutually antagonistic. *Cf. United States v. Rose,* 104 F.3d 1408, 1416 (1st Cir.1997) (direct criminal appeal) (where one defendant argued he was no more than accessory after the fact and other defendant argued government did not meet burden of proof, theories were not irreconcilable). Each merely inferred that the other committed the robbery and murder.

Mr. Carter's inability to introduce evidence of Mr. Summers' "bad acts" also does not show prejudice. This irrelevant evidence did not specifically exculpate Mr. Carter or inculpate Mr. Summers.

B. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)

*Bruton* held that "a defendant is deprived of his rights under the Confrontation Clause when his codefendant's incriminating confession is introduced at their joint trial," regardless of any limiting instructions given the jury. *Cruz v. New York,* 481 U.S. 186, 187-88, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987).

The Oklahoma Court of Criminal Appeals determined Mr. Carter was not denied*950 his constitutional right to confront his accusers by the admission of an investigating officer's testimony concerning pre-trial statements made by Ms. Lewis and Mr. Summers. *Carter,* 879 P.2d at 1246. Because the statements did not make Mr. Summers a witness against Mr. Carter, the court concluded the statements were not the type prohibited by *Bruton. Carter,* 879 P.2d at 1246.

[31] Before this court, Mr. Carter does not develop his argument that his right to confront his accusers was violated by the denial of severance. *Cf. LaFevers v. Gibson,* 182 F.3d 705, 725 (10th Cir.1999) ("We have repeatedly warned litigants

that issues adverted to in a perfunctory manner and without developed argumentation are deemed waived on appeal."). Nonetheless, from our review of the record, we conclude the Oklahoma Court of Criminal Appeals' decision was not contrary to or an unreasonable application of *Bruton. See* 28 U.S.C. § 2254(d)(1). The trial court refused to allow Sergeant Mullenix to testify about what Mr. Summers told him about Mr. Carter. Instead, the trial court limited testimony concerning Mr. Summer's statement to Mr. Summers knowing nothing about the homicide and wrecker, he and Mr. Carter not painting the stolen wrecker in his body shop, and Mr. Summers towing the truck. *Bruton* therefore was not implicated. *See Fox,* 200 F.3d at 1292-93.

Ms. Lewis was not herself a defendant; she was a witness, albeit reluctantly, for the State. *Bruton* therefore again was not implicated. *See Cruz,* 481 U.S. at 187-88, 107 S.Ct. 1714.

C. Peremptory challenges
[32] Because the co-defendants did not present mutually antagonistic or inconsistent defenses, the Oklahoma Court of Criminal Appeals held that Mr. Carter was not entitled to a full complement of nine peremptory challenges. *Carter,* 879 P.2d at 1242-43 & 1243 n. 4 (citing Okla. Stat. tit. 22, § 655). Also, the court rejected Mr. Carter's further argument that he was prejudiced by receiving fewer than nine peremptory challenges because he was facing the death penalty. *Id.* at 1243.

**13 Mr. Carter has not challenged the jury's partiality,[FN7] he cannot show his defense was mutually antagonistic to Mr. Summers' defense, and he received the peremptory challenges he was entitled to under state law. Therefore, any constitutional challenge to the number of peremptory challenges he received fails. *See Ross v. Oklahoma,* 487 U.S. 81, 88, 89, 91, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *see also Cummings,* 161 F.3d at 619.

  FN7. Mr. Carter and Mr. Summers agreed

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

on the exercise of all peremptory challenges but the last one. The trial court then granted an additional peremptory challenge, therefore allowing a total of ten defense peremptory challenges. Trial Tr. vol. III at 589-90.

### D. Second stage

[33] Mr. Carter argues precluding evidence of Mr. Summers' "bad acts" denied the jury an opportunity to give individual consideration to Mr. Carter's circumstances in deciding whether to impose the death penalty. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality), and *Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) require "that a capital sentencer not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record, and any of the circumstances of the offense that the defendant proffers as a basis of a sentence less than death." *Boyd,* 179 F.3d at 921 (quotation omitted). Recognizing that, the Oklahoma Court of Criminal Appeals determined evidence*951 of Mr. Summers' unrelated "bad acts" would not have been mitigating as to Mr. Carter's participation in the crime or his character. *Carter,* 879 P.2d at 1249 (citing Supreme Court cases). Nor did exclusion of the evidence impede the jury's consideration of all relevant facets of Mr. Carter's character. *Id.* at 1249-50. This determination was not contrary to or an unreasonable application of Supreme Court precedent. *See* 28 U.S.C. § 2254(d)(1).

### VII. Proof of Intent Element of Robbery and of Aggravating Circumstance

According to Mr. Carter, the State failed to prove beyond a reasonable doubt either the necessary intent element of the underlying felony of robbery or the necessary intent element of the murder to avoid arrest or prosecution aggravator, or both, because they are inherently contradictory.

### A. Procedural bar

On direct appeal, the Oklahoma Court of Criminal Appeals reviewed the sufficiency of the evidence to support the felony murder conviction and the aggravator independently. *See Carter,* 879 P.2d at 1247-48, 1250-51. During post-conviction proceedings, Mr. Carter challenged these intent elements as contradictory as part of his ineffective assistance of appellate counsel claim. Without specifically discussing this issue, the Oklahoma Court of Criminal Appeals rejected this claim, finding Mr. Carter had failed to show either deficient performance or prejudice. *Carter,* 936 P.2d at 345-46 (citing *Strickland* ). Because the state court did so, we too reach the merits.

### B. Intent element of robbery

[34] On direct appeal, the Oklahoma Court of Criminal Appeals reviewed the sufficiency of the evidence to support the felony murder conviction under the standard set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See Carter,* 879 P.2d at 1247-48 (citing state law, but recognizing standard is whether, after reviewing evidence in light most favorable to State, rational trier of fact could have found existence of essential elements of crime beyond reasonable doubt). The court concluded competent evidence supported the verdict. *Id.* at 1248.

**\*\*14** The State presented evidence which clearly showed [Mr. Carter's] involvement in the robbery and homicide at the Oklahoma Auto Auction. [Mr. Carter] and [Mr.] Summers had talked about getting another wrecker for the body shop. [Mr. Carter] knew where a wrecker was located at the Oklahoma Auto Auction. [Mr. Carter] was in possession of bolt cutters, having borrowed them from a friend. Two (2) .38 caliber slugs, one taken from the decedent, were found at the scene. A few months earlier, [Mr. Carter] had borrowed .38 caliber bullets from Mr. Summers' father. [Mr. Carter] admitted owning a .38 caliber hand-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

gun, but said he had gotten rid of it five (5) months prior to the murder. Boot prints, consistent with boots worn by [Mr. Carter] were found along the fence line, and near a thirty (30) inch gap in the fence. A few hours after being left at the auction yard, [Mr. Carter] was seen in possession of a wrecker taken from the Auto Auction. [Mr. Carter] subsequently admitted to two different people he had killed a man. [Mr. Carter] attempted to dispose of the truck from the auction by removing the wrecker assembly, repainting the truck and eventually burning it.

**\*952** *Id.* The Oklahoma Court of Criminal Appeals reasonably concluded the jury could have found the elements of felony murder beyond a reasonable doubt. *See, e.g., Hale v. Gibson,* 227 F.3d 1298, 1335 & n. 17 (10th Cir.2000) (declining to decide whether sufficiency of the evidence is a legal or factual question), *cert. denied,* 533 U.S. 957, 121 S.Ct. 2608, 150 L.Ed.2d 764 (2001).

C. Avoid arrest or prosecution aggravator

In addressing the sufficiency of the evidence to support this aggravator, the Oklahoma Court of Criminal Appeals first cited Oklahoma law establishing that this aggravator focuses on the murderer's state of mind and requires a predicate crime separate from the murder for which the murderer seeks to avoid arrest or prosecution. *Carter,* 879 P.2d at 1250. Finding sufficient evidence, the court reasoned:

[Mr. Carter] had been fired from his job as a security officer at the Oklahoma Auto Auction approximately two (2) weeks before the murder. [Mr. Carter] knew of the existence of the wrecker at the auction, having driven it during his employment. The theft and murder were carried out during the early morning hours when the decedent was the sole person on the premises. There was no evidence of a struggle in the guard shack. The decedent was felled by one gunshot wound to the head. Soot found in the wound indicated the gun

had been held next to the skin when fired. The bullet passed completely through the decedent's brain. [Mr. Carter] told both [Mr .] Denson and [Ms.] Lewis that he killed a man because he had no other choice.

Despite evidence that [Mr. Carter] had never met the decedent and had left his employment at the auction amicably, sufficient circumstantial evidence exists to support a conclusion that [Mr. Carter] killed the decedent in order to avoid identification and arrest for the theft of the wrecker. The only way in or out of the Auto Auction was through the gate situated next to the guard house.... The evidence supports the conclusion that in order to avoid detection when entering the Auto Auction or leaving the site with a vehicle, [Mr. Carter] had to eliminate the person in the guard shack. Ample evidence was presented to support the jury's finding that this execution-style murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution.

**\*\*15** *Id.* at 1250-51.

Based on these facts, as well as Mr. Denson's testimony that Mr. Carter told him the person who saw him steal the wrecker would not tell on him because he "offed" him, a reasonable factfinder, viewing this evidence in the light most favorable to the State, would have found beyond a reasonable doubt that Mr. Carter murdered the victim to avoid arrest or prosecution. *See Lewis v. Jeffers,* 497 U.S. 764, 780-82, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990). Thus, the Oklahoma Court of Criminal Appeals' determination was reasonable. *See, e.g., Hale,* 227 F.3d at 1335 & n. 17.

D. Inconsistency of intent elements for offense and aggravator

[35] Mr. Carter argues that if he used the gun to take the wrecker, then the victim was dead before he left the Auction, precluding a killing to avoid arrest or prosecution. On the other hand, he argues

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.)))**

that if he used the gun to avoid arrest or prosecution, then he could not have used it **\*953** to take the wrecker and could not have committed a robbery with a firearm. In Oklahoma, however, the intent to rob and the intent to eliminate a witness can exist simultaneously and not be inconsistent. *See Spears v. State,* 900 P.2d 431, 440 (Okla.Crim.App.1995) ("killing may precede, coincide with or follow the robbery and still be done in the commission of a robbery with a dangerous weapon"); *see also Wackerly v. State,* 12 P.3d 1, 14 (Okla.Crim.App.2000) (robbery and murder can be contemporaneous and evidence may be sufficient to support finding murder was committed to avoid arrest or prosecution), *cert. denied,* 532 U.S. 1028, 121 S.Ct. 1976, 149 L.Ed.2d 768 (2001). *See generally Estelle,* 502 U.S. at 67-68, 112 S.Ct. 475 (holding federal courts are bound by state court determinations of state law). Here, the evidence of one gunshot wound to the victim's head, the illegal entry into the Auction and the theft of the wrecker suggest that Mr. Carter intended to rob the Auction and not leave a witness. Thus, Mr. Carter used the firearm both to commit a robbery and to avoid arrest or prosecution. Furthermore, the instructions set forth the separate elements of felony murder and the aggravator. *See* O.R. vol. I at 181, 182, 196. Accordingly, there was no inherent inconsistency of the intent elements.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

C.A.10 (Okla.),2001.
Carter v. Gibson
27 Fed.Appx. 934, 2001 WL 1612065 (C.A.10 (Okla.))

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.