**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

ANGELA JOHNSON,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 09-3064-MWB
(No. CR 01-3046-MWB)


**MEMORANDUM OPINION AND**
**ORDER REGARDING**
**RESPONDENT'S MOTION FOR**
**PSYCHIATRIC EXAMINATION OF**
**PETITIONER**

————————————

**TABLE OF CONTENTS**

*I.* **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    *A.* **Criminal Proceedings And § 2255 Motion** . . . . . . . . . . . . . . . . . . . . . 2
    *B.* **The Respondent's Motion For Psychiatric Examination** . . . . . . . . . . . 4

*II.* **LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    *A.* **Standards For Mental Examinations** . . . . . . . . . . . . . . . . . . . . . . . . 6
    *B.* **Application Of The Standards** . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        *1.* **The "in controversy" requirement** . . . . . . . . . . . . . . . . . . . 13
        *2.* **The "good cause" requirement** . . . . . . . . . . . . . . . . . . . . . 15
            *a.* **"Conditions" to be tested** . . . . . . . . . . . . . . . . . . . . 15
            *b.* **Tests to be used** . . . . . . . . . . . . . . . . . . . . . . . . . 17
            *c.* **Qualification of the respondent's examiner** . . . . . . . 21
        *3.* **Summary** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    *C.* **Other Issues** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        *1.* **Fifth Amendment concerns** . . . . . . . . . . . . . . . . . . . . . . . 22
        *2.* **Sixth Amendment issues** . . . . . . . . . . . . . . . . . . . . . . . . 24
        *3.* **Reports** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*III.* **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In these habeas proceedings pursuant to 28 U.S.C. § 2255, the respondent seeks authorization to conduct psychiatric examinations of the petitioner, who was sentenced to death for murders related to drug-trafficking crimes in violation of 21 U.S.C. § 848(e)(1)(A). The respondent contends that the petitioner has injected her mental condition into these proceedings as the basis for several claims for § 2255 relief, even though she precluded any inquiry into her mental state at the time of the offenses during the guilt or penalty phases of her criminal trial. The petitioner asserts that the respondent has provided insufficient information about the scope of the examinations the respondent's expert intends to do and has provided insufficient protection for the petitioner's Fifth and Sixth Amendment rights.

## I. INTRODUCTION

### A. Criminal Proceedings And § 2255 Motion

On May 24, 2005, a jury found petitioner Angela Johnson guilty of five counts of murder while engaging in a drug-trafficking conspiracy ("conspiracy murder"), in violation of 21 U.S.C. § 846(e)(1)(A) and 18 U.S.C. § 2, and five counts of murder while working in furtherance of a continuing criminal enterprise ("CCE murder"), also in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2, arising from the murders by Johnson and a separately-indicted accomplice, Dustin Honken, of two informants, a female friend of one of the informants, and the female friend's two young daughters. On May 31, 2005, the same jury found Johnson "eligible" for the death penalty on all ten counts and, on June 21, 2005, recommended a sentence of death on eight of the counts, relating to the murders of one of the informants, the female friend of one of the informants, and her two

children, and a sentence of life imprisonment without parole on the remaining two counts, relating to the murder of the other informant. Johnson did not assert any mental condition defenses at trial relating to her thinking or conduct at the time of the offenses. On December 20, 2005, the court sentenced Johnson in accordance with the jury's verdicts.[1]

Johnson exhausted her direct appeals and, on October 5, 2009, filed her Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (§ 2255 Motion) (Civ. docket no. 1). Johnson subsequently filed an Amended § 2255 Motion (Civ. docket no. 23) on January 12, 2010, and a Corrected Amended § 2255 Motion (Civ. docket no. 26) on January 21, 2010. Among her numerous grounds for § 2255 relief, Johnson asserts, *inter alia*, that counsel was ineffective in failing to investigate and to present evidence, in the guilt or penalty phases of her trial, of her mental state at the time of the offenses; that counsel was ineffective in failing to show how her mental problems would have made her particularly susceptible to the manipulations of her accomplice, Dustin Honken; that counsel was ineffective in failing to address the effects of her medication on her demeanor at trial and her ability to participate in her defense; that she was tried while incompetent; and that the Eighth Amendment precludes her execution, because she is mentally ill. Johnson now asserts that she suffers, and at the time of the offenses suffered, from temporal lobe dysfunction, bipolar disorder, and complex post-traumatic stress disorder (PTSD), among other mental problems. An evidentiary hearing on Johnson's Corrected Amended § 2255 Motion is set to begin on May 3, 2010.

---

[1]On June 11, 2009, the court vacated Johnson's multiplicitous convictions for "conspiracy murder" in Counts 1 through 5 of the Superseding Indictment.

### B. The Respondent's Motion For Psychiatric Examination

This case is before the court on the respondent's February 25, 2010, Motion For Psychiatric Examination Of Petitioner (Civ. docket no. 29) pursuant to Rule 35(a) of the Federal Rules of Civil Procedure. In a Resistance (Civ. docket no. 34), filed March 11, 2010, petitioner Angela Johnson asserted that she could not properly respond to the respondent's motion until she was advised of the nature and scope of the examinations and/or testing the respondent seeks to perform, and that the respondent's motion did not fully address Fifth and Sixth Amendment issues. Therefore, Johnson requested a hearing on the respondent's motion. The court agreed that oral arguments on the respondent's motion were appropriate, scheduled telephonic oral arguments for March 24, 2010, and directed the respondent to file a reply addressing issues raised in Johnson's Resistance by March 19, 2010. *See* Order (docket no. 35).

Shortly after the order setting oral arguments was filed, the respondent notified the court that the mental examinations in question had been scheduled for March 23 and 24, 2010, because the United States Marshal will be moving Johnson shortly thereafter to attend the evidentiary hearing on her Corrected Amended § 2255 Motion scheduled to begin on May 3, 2010. Therefore, the respondent requested that the court reschedule the oral arguments on its motion sufficiently in advance of the scheduled examinations to allow the examinations to go forward if the respondent's motion was granted. To facilitate the early disposition of its motion, the respondent filed a Reply (docket no. 36) in further support of its motion on March 15, 2010. The court rescheduled the oral arguments for March 18, 2010. On the morning of the oral arguments, Johnson filed a surreply—without authority under the Federal Rules of Civil Procedure or local rules and without obtaining permission of the court—styled a Response To Government's Reply To Resistance To Government's Motion For Psychiatric Examination Of Petitioner (docket no. 39).

At the oral arguments, petitioner Angela Johnson was represented by counsel Michael E. Lawlor, who presented most of Johnson's argument, Ilann Maazel, and Marta Kahn. The respondent was represented by Assistant United States Attorney C.J. Williams.

In support of its motion, the respondent argues that Johnson has placed in controversy her mental state at the time of the offenses for which she has been convicted, as well as her mental condition at the time leading up to, during, and after her trial by the nature of the claims that she has made in her Corrected Amended § 2255 Motion. Similarly, the respondent asserts that it has "good cause" to pursue such testing, because Johnson purports to rely on examinations recently performed by her own mental health expert. Thus, the respondent argues that it should now be permitted to examine Johnson, particularly with regard to areas (such as her mental state at the time of her offenses) where she previously prevented inquiry. The respondent also argues that Johnson waived her Fifth Amendment privilege against self-incrimination by making her mental condition an issue in this litigation and that she has no Sixth Amendment right to counsel in these proceedings. The respondent also appended to its Reply its expert's curriculum vitae and his identification of the tests that he intends to administer to Johnson. The expert's list of forty-four separate tests or batteries of tests, however, is prefaced with the expert's statement, "The tests to be administered will be selected from the list below based on the history obtained and the clinical indications at the time of the examination." Respondent's Reply (docket no. 36), Exhibit 2.

Johnson explains that her primary objections to mental examinations by the respondent are to the vagueness of the mental conditions that the respondent intends to test, the scope of the testing that the respondent's expert intends to perform and, consequently, to the sufficiency of the showing of good cause for whatever testing the respondent wants to do. She argues that the respondent should be required to show that the condition that each test is intended to examine is in controversy and that there is good cause to perform

each test.  For example, she argues that tests aimed at personality disorders or psychopathy are "out in left field" here, based on what she has alleged in her Corrected Amended § 2255 Motion about her mental conditions and their impact on her conviction and sentence.  She also argues that the respondent has sufficient other sources of the information it might obtain from new testing, either from the testing done by both Johnson and the prosecution prior to her criminal trial, or from access to the medical and psychiatric records that have accumulated during her incarceration for almost a decade. She points out that the respondent has not offered a declaration of any expert that the examinations contemplated are necessary.  Finally, she explains that her Fifth and Sixth Amendment concerns arise from the possibility of a new trial or resentencing, as a result of her Corrected Amended § 2255 Motion, at which her Fifth and Sixth Amendment rights would be resuscitated, so that the Fifth and Sixth Amendment concerns addressed in Rule 12.2 of the Federal Rules of Criminal Procedure, concerning mental examinations in criminal cases, are still relevant here.

## II.  LEGAL ANALYSIS

### A.  Standards For Mental Examinations

Rule 6 of the Rules Governing Section 2255 Proceedings For The United States District Courts (*Habeas* Rule 6)[2] provides for "discovery," in pertinent part, as follows:

> **(a) Leave of Court Required.**  *A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law.*  If

---

[2]Rule 6 of the Rules Governing Section 2254 Cases In The United States Courts is identical to Rule 6 of the § 2255 Rules, except that Rule 6 of the § 2254 Rules contains no reference to discovery pursuant to the Federal Rules of Criminal Procedure.  Hence, the court will refer to Rule 6 in both the § 2255 Rules and the § 2254 Rules as "*Habeas* Rule 6," unless the difference between them becomes significant.

necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

**(b) Requesting Discovery.** *A party requesting discovery must provide reasons for the request.* The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

R. § 2255 Pro. 6(a) & (b) (emphasis added).

Johnson contends that the respondent's motion raises issues similar to those that arise when a mental examination is sought in a criminal case pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure, including Fifth and Sixth Amendment issues. It is true that § 2255 Rule 6(a) does refer to discovery pursuant to either the Federal Rules of Criminal Procedure or the Federal Rules of Civil Procedure. It is also true that Rule 12.2 does raise complicated Fifth Amendment issues. *See, e.g., United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1085-92 (N.D. Iowa 2005). Nevertheless, Rule 12.2 is intended to address situations in which a criminal defendant asserts an insanity defense at trial, raises issues of her competence to stand trial, or indicates an intent to present expert evidence on her mental condition during capital sentencing proceedings. *See, e.g., Johnson*, 362 F. Supp. 2d at 1074-92. None of those situations is present here, where the mental examination issue arises in the context of Johnson's § 2255 proceedings, not in the context of her criminal trial. *See, e.g., United States v. Garcia-Delacruz*, 2009 WL 1740780, *1 (D. Neb. June 16, 2009) (although the § 2255 petitioner sought a psychiatric examination pursuant to 18 U.S.C. § 4242 and Rule 12.2 of the Federal Rules of Criminal Procedure, the court found that those provisions "describe potential pretrial procedures that must be followed, or are triggered, when a defendant seeks to raise the insanity defense," that "[t]he time for the invocation of these procedures has clearly passed," and that it was not appropriate to

"revive" them at the § 2255 stage of the proceedings). Moreover, Johnson has not cited, and the court has not found, any cases holding that Rule 12.2 of the Federal Rules of Criminal Procedure is applicable to mental health discovery in § 2255 proceedings.

Rather, the court finds that the procedural rule that is applicable here, via § 2255 Rule 6(a), is Rule 35 of the Federal Rules of Civil Procedure. Federal courts entertaining *habeas* proceedings have recognized Rule 35 as the authority for mental health discovery, both in *habeas* cases by state prisoners subject to § 2254 Rule 6, which only authorizes discovery pursuant to the Federal Rules of Civil Procedure, *see, e.g., Pizzuto v. Hardison*, 2010 WL 672754, *1 (D. Idaho Feb. 20, 2010) (finding that Rule 35 of the Federal Rules of Civil Procedure applied, via § 2254 Rule 6(a), to the respondent's request for mental examinations in the federal *habeas* proceedings of a state prisoner); *Wagner v. Jess*, 2009 WL 4755281, *2 (E.D. Wis. Dec. 4, 2009) (finding that Rule 35 of the Federal Rules of Civil Procedure applied to the request of a *habeas* petitioner for physical and mental examinations, via § 2254 Rule 6(a), but finding that the petitioner had not shown that his mental or physical condition was "in controversy"); *Holt v. Ayers*, 2006 WL 2506773 (E.D. Cal. Aug. 29, 2006) (denying the respondent's motion for mental examinations of a § 2254 petitioner pursuant to Rule 35 of the Federal Rules of Civil Procedure without prejudice to a renewal of the request addressing the requirements of Rule 35(a) in light of the order and deposition testimony of treating doctors), and in cases by federal prisoners subject to § 2255 Rule 6, which authorizes discovery pursuant to both the Federal Rules of Criminal Procedure and the Federal Rules of Civil Procedure. *See, e.g., United States v. Kerr*, 2005 WL 1640343, *1 (E.D. Mich. July 8, 2005) (finding that the § 2255 petitioner properly sought his own mental examination by invoking Rule 35(a) of the Federal Rules of Civil Procedure, but finding such an examination was "unnecessary"); *United States v. Johnson*, 2003 WL 1193257, *11-*12 (N.D. Ill. March 12, 2003) (although neither party cited any legal basis for the § 2255 petitioner's request to conduct

psychiatric or psychological testing, Rule 35(a) of the Federal Rules of Civil Procedure was applicable, and the petitioner's request did not comply with the requirements of that rule); *see also Smith v. United States*, 174 F. Supp. 828, 832-33 (S.D. Cal. 1959) (in a case decided before § 2255 Rule 6 was adopted (in 1976), holding that it was clear that § 2255 proceedings were "civil" proceedings, and that there was no doubt that the court could require a mental examination pursuant to Rule 35 of the Federal Rules of Civil Procedure). Thus, the court turns to the standards for mental examinations under Rule 35 of the Federal Rules of Civil Procedure.

That rule provides, in pertinent part, as follows:

**(a) Order for an Examination.**

> **(1)** *In General.* The court where the action is pending may order *a party whose mental or physical condition—including blood group—is in controversy* to submit to a physical or mental examination by *a suitably licensed or certified examiner*. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> **(2)** *Motion and Notice; Contents of the Order.* The order:
>
> > **(A)** May be made only on motion for *good cause* and on notice to all parties and the person to be examined; and
> >
> > **(B)** *must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.*

FED. R. CIV. P. 35(a) (emphasis added).

More than four decades ago, the United States Supreme Court considered the validity and construction of Rule 35 in *Schlagenhauf v. Holder*, 379 U.S. 104 (1964). As the Court explained,

> The courts of appeals in other cases have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. *This is obviously true as to the 'in controversy' and 'good cause' requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.* Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.
>
> Rule 35 . . . requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause,' which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. 321 F.2d, at 51. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

*Schlagenhauf*, 379 U.S. at 118-19 (emphasis added; footnote omitted).

In *Schlagenhauf*, the Court suggested that there are circumstances in which the pleadings alone are sufficient to meet the "in controversy" and "good cause" requirements,

such as a case in which the plaintiff in a negligence action asserts mental or physical injury and, thus, "places the mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury." *Id.* at 119. The Court found that the same would be true of a defendant who asserts his mental or physical condition as a defense to a claim. *Id.* On the other hand, the Court found that, where a party did not assert his mental or physical condition, either in support of or in defense to a claim, and his condition was only placed in issue by other parties, Rule 35 required those parties to "make an affirmative showing that . . . mental or physical condition [of the party to be examined] was in controversy and that there was good cause for the examinations requested." *Id.* (finding that the movants had failed to make that showing in the case before the Court). Moreover, the Court rejected an order authorizing one examination in each of four specialities (internal medicine, ophthalmology, neurology, and psychiatry), because "[n]othing in the pleadings or affidavit would afford a basis for a belief that Schlagenhauf was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological examinations." *Id.* at 120. The Court looked at the "specific allegations" made in support of the examinations to determine whether or not the examinations should be ordered. *Id.* at 121. In short, "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Id.* Only slightly more recently, the Eighth Circuit Court of Appeals recognized that "[t]he manner and conditions of a court-ordered medical examination [pursuant to Rule 35(a)], as well as the designation of the person or persons to conduct such an examination, are vested in the sound discretion of the trial court." *Sanden v. Mayo Clinic*, 495 F.2d 221, 225 (8th Cir. 1974).[3]

---

[3]The *Sanden* decision relied on a former version of Rule 35(a) that, nevertheless,
(continued...)

This court also notes that the requirements of Rule 35 must be viewed, in this *habeas* case, through the prism of *Habeas* Rule 6. "'A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" *Newton v. Kemna*, 354 F.3d 776, 783 (8th Cir. 2004) (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997)). Rather, *Habeas* Rule 6 "provides that "[a petitioner] shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.'" *Id.* (quoting former language of *Habeas* Rule 6(a)).[4] *Habeas* Rule 6, like Rule 35 of the Federal Rules of Civil Procedure, imposes a "good cause" requirement on discovery. *See* 6(a) R. § 2255 Pro. ("A judge may, for good cause, authorize a party to conduct discovery. . . ."); 6(a) R. § 2254 Pro. (same). The Eighth Circuit Court of Appeals has explained that, at least from the

---

[3](…continued)
was the same in essential content. At that time, Rule 35(a) provided as follows:

> (a) Order for examination. When the mental or physical condition * * * of a party * * * is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician * * *. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

*Sanden*, 495 F.2d at 225 n.6.

[4]*Habeas* Rule 6 was reworded "as part of a general restyling of the rules to make them more easily understood" in 2004, but "no substantive change [wa]s intended." 6 R. § 2255 Pro., Advisory Committee Notes, 2004 Amendments. As noted, *supra*, § 2254 Rule 6(a) only authorizes discovery pursuant to the Federal Rules of Civil Procedure, but § 2255 Rule 6(a) authorizes discovery pursuant to the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

perspective of the *habeas* petitioner, "The 'good cause' that authorizes discovery under Rule 6(a) requires a showing 'that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to [habeas] relief.'" *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009) (quoting *Bracy*, 520 U.S. at 909, with internal quotation omitted); *Newton*, 354 F.3d at 783 (also quoting *Bracy*). Thus, the court concluded that a state court's determination that the petitioner failed to show "more than a slight chance" that additional testing would yield a favorable result was not "'based on an unreasonable determination of the facts.'" *Id.* (quoting 28 U.S.C. § 2254(d)(2)).

There is no reason to suppose that a more lenient standard was intended for discovery *by the respondent* in *habeas* cases, which is what is at issue here, where the rule applies to authorizations for discovery by "a party." R. § 22554 P. 6(a). Thus, translating the requirements of *Habeas* Rule 6, as set out in *Rucker*, 563 F.3d at 771, to a discovery request by a respondent, the court believes that the respondent must also show "good cause" for the requested discovery, and that "good cause" requires a showing that, if the facts are fully developed, there is more than a "slight chance" that the respondent may be able to demonstrate that the petitioner is *not* entitled to relief.

### B. Application Of The Standards

#### 1. The "in controversy" requirement

The court has no hesitation finding that Johnson's mental condition is "in controversy" in these § 2255 proceedings. *See* FED. R. CIV. P. 35(a); *Schlagenhauf*, 379 U.S. at 118-19. Johnson has asserted among her claims for § 2255 relief that counsel was ineffective in failing to investigate and to present evidence, in the guilt or penalty phases of her trial, of her mental state at the time of the offenses; that counsel was ineffective in failing to show how her mental problems would have made her particularly susceptible to the manipulations of her accomplice, Dustin Honken; that counsel was ineffective in failing

to address the effects of her medication on her demeanor at trial and her ability to participate in her defense; that she was tried while incompetent; and that the Eighth Amendment precludes her execution, because she is mentally ill. Somewhat more specifically, Johnson now asserts that she suffers, and at the time of the offenses suffered, from temporal lobe dysfunction, bipolar disorder, and complex post-traumatic stress disorder (PTSD), among other mental problems. Moreover, she has argued with some specificity in her Corrected Amended § 2255 Motion the impact of her mental condition upon her conviction and death sentence. Thus, Johnson herself, not the respondent, has placed her mental condition at issue. *Compare Schlagenhauf*, 379 U.S. at 119 (the plaintiff in the negligence case before the court did not place his mental or physical condition, the other parties sought to place it in issue). Thus, more is at issue here than "mere conclusory allegations of the pleadings," and *at least some mental conditions* are "really and genuinely in controversy." *Schlagenhauf*, 379 U.S. at 118-19.

The problem is that, in its motion, the respondent has not attempted to identify *any* specific mental conditions or even a class or category of mental conditions for which its expert will test, let alone whether the mental conditions at issue in its request are limited to those specifically asserted by Johnson in her Corrected Amended § 2255 Motion, or whether they include other mental conditions that the respondent believes the record already adequately suggests that Johnson has. Nevertheless, the court concludes that, where the petitioner's § 2255 motion identifies with considerable specificity the mental conditions that she has put at issue, the respondent's request for mental examinations should be construed to be at least coterminous with the mental conditions that the petitioner has asserted. Moreover, where, as here, the record shows that the petitioner has put "in controversy" a wide range of psychiatric and neuropsychiatric conditions, the respondent need not make any further affirmative showing that particular mental conditions are "in controversy." *Cf. Schlagenhauf*, 379 U.S. at 119-120 (because the non-movant had not

14

put his condition at issue, other parties had sought to put his condition at issue, those parties were required to make an affirmative showing that petitioner's mental or physical condition was in controversy and that there was good cause for the examinations requested).

The respondent has satisfied the "in controversy" requirement of Rule 35.

## 2. The "good cause" requirement

### a. "Conditions" to be tested

The respondent also has not identified precisely what mental conditions it intends to test, in support of its contention that "good cause" supports the requested testing, just as it did not identify precisely what mental conditions are "in controversy." The question that is not immediately settled by the case law that the court has reviewed is how "particularly" each "particular examination" must be supported—as to a general category of conditions, such as "psychiatric" or even "neuropsychiatric" conditions, or more specifically as to each particular condition that the respondent's expert intends to test?

In *Schlagenhauf*, the Court concluded only that the record did not support examination in each of four specialities (internal medicine, ophthalmology, neurology, and psychiatry), and rejected "wide-ranging psychiatric or neurological examinations." *Id.* at 120. The record in Johnson's case, in contrast to the record in *Schlagenhauf*, would certainly support mental examinations of the temporal lobe dysfunction, bipolar disorder, and complex post-traumatic stress disorder (PTSD) that Johnson specifically asserts afflicted her at the time of the offenses and before, during, and after trial. Johnson has not cited any authority for the proposition that something more specific than a "categorical" identification of the mental conditions that the movant wishes to test—such as psychiatric or neuropsychiatric conditions—is required. Here, the court concludes that the record here, unlike the record in *Schlagenhauf*, is sufficient to support "wide-ranging psychiatric or neurological examinations," because of the scope of the mental conditions, including

but not limited to temporal lobe dysfunction, bipolar disorder, and PTSD, that Johnson has alleged and the length of time that she contends that those conditions have afflicted her. Indeed, as the respondent pointed out, Johnson's allegations in her Corrected Amended § 2255 Motion implicate more than temporal lobe dysfunction, bipolar disorder, and PTSD, they also suggest that her "affect" at trial was compromised by her medications, and that she suffered from mental conditions causing impulsive, irresponsible, and violent or aggressive behavior, as well as difficulties in relationships with others, opening the door to examination of her "affect" and psychopathy. Furthermore, the respondent's difficulties in identifying with greater specificity the mental conditions to be tested are due, at least in part, to Johnson's failure to disclose all of the conditions considered, all of the tests performed, or all of the test results used by her disclosed expert, Dr. Woods, as well as Johnson's complete failure to disclose her second mental health expert, the conditions for which that expert tested, or that expert's test results. Johnson's counsel asserted at the oral arguments that the second expert never produced a report, so that there was no report to disclose. The court takes no position, at this time, on whether or not the failure to require the second expert to produce a report was an intentional ploy to avoid disclosing that report to the respondent pursuant to Rule 35(b), but the court does observe that failure to produce a report from the second expert impeded the respondent's ability to respond to Johnson's mental health claims.

It is plain from this record that, if the facts are fully developed, there is more than a "slight chance" that the respondent may be able to demonstrate that the petitioner is *not* entitled to relief on the basis of the mental conditions that she asserts. *Cf. Rucker*, 563 F.3d at 771. Therefore, in this case, the respondent's failure to specify the conditions that it wants to test is not fatal to its request. *See Sanden*, 495 F.2d at 225 ("The manner and conditions of a court-ordered medical examination [pursuant to Rule 35(a)] . . . are vested in the sound discretion of the trial court.").

16

### b. Tests to be used

Just as the respondent has failed to identify the specific conditions that it wants to test, the respondent has not identified the specific tests that it wants to use, nor has the respondent attempted to show how each test its expert has identified as possible is related to a mental condition that is "in controversy." Instead, the respondent has identified a list of forty-four separate tests or batteries of tests, prefaced with the expert's statement, "The tests to be administered will be selected from the list below based on the history obtained and the clinical indications at the time of the examination." Respondent's Reply (docket no. 36), Exhibit 2. The question is, is this lack of specificity fatal to the respondent's request? Johnson contends that it is fatal, but the court disagrees.

In a *habeas* case involving a state prisoner convicted of murder and the respondent's request for a mental examination of the petitioner, the district court judge noted that "*Schlagenhauf* holds the movant must make an affirmative showing 'that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Holt*, 2006 WL 2506773 at *5. On the other hand, the court noted that "the party resisting a mental examination ordinarily is not entitled to know in advance what tests the movant's examiner will choose to administer . . . because 'preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted.'" *Id.* at *6 (quoting *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995)). The court posed the question, but did not decide, whether any specific tests would be allowed, because of the court's skepticism that Rule 35(a) authorized examinations to uncover mental states from the past and its concern that adequate contemporaneous evidence would suffice to make a forensic assessment of the petitioner's past mental state. *Id.* at *6-*7. The court did, however, grant the respondent leave to renew its request, if the respondent

demonstrated that depositions of treating physicians and mental health professionals were insufficient to assess the petitioner's past mental state. *Id.* at *7.

Another district court considering mental condition testing of the petitioner in a *habeas* case concluded that the issue of what particular tests were appropriate was not a question that had to be determined by the court in the context of a Rule 35 authorization, at least where reasonable mental health professionals may hold different opinions about which tests are necessary. *See Pizzuto*, 2010 WL 672754 at *2. Instead, the court found that the movant's expert had shown that the proposed testing was at least reasonably related to the question at hand. *Id.* The court declined to "preemptively pick sides and exclude certain tests before they occur," because it found that the resisting party's argument about the appropriateness of specific tests "is more appropriately taken up during cross-examination, or in a motion in limine to exclude irrelevant and prejudicial evidence from the evidentiary hearing," and because, if the respondent intended to use its expert's evidence, the petitioner would be permitted all of the discovery to which he was entitled under the Federal Rules of Civil Procedure, which would allow him to prepare fully for the evidentiary hearing. *Id.* at *2-*3.

The court concludes that the respondent's lack of specificity about which tests its expert will perform or how any of the tests in the list of possible tests offered by the respondent's expert are related to mental conditions in controversy is not fatal to the respondent's request for mental examinations, at least in the circumstances of this case. This is true, for several reasons.

First, this court agrees with the court in *Holt* that "the party resisting a mental examination ordinarily is not entitled to know in advance what tests the movant's examiner will choose to administer . . . because 'preference should be given to allowing the examiner to exercise discretion in the manner and means by which the examination is conducted.'" *Holt*, 2006 WL 2506773 at *6 (quoting *Ragge*, 165 F.R.D. at 609). In other

words, just as the movant must only demonstrate that a "category" of mental conditions—such as psychiatric or neuropsychiatric conditions—is "in controversy" and that there is "good cause" for tests relating to that category of mental conditions, the movant also must only demonstrate that the tests it intends to perform are related to that "category" of mental conditions, rather than show that specific tests are related to specific conditions.

Second, whether or not a particular test is appropriate or necessary is *not* a matter on which this court finds that it should "preemptively pick sides," but a matter that is more appropriately addressed by discovery authorized by the Federal Rules of Civil Procedure and then taken up during cross-examination or on a motion in limine to exclude irrelevant and prejudicial evidence from the evidentiary hearing. *See Pizzuto*, 2010 WL 672754 at *2-*3. Johnson's counsel could not articulate at the oral arguments any convincing reason why Johnson would be prejudiced by submitting to specific tests that the court might later determine were irrelevant to the disposition of Johnson's § 2255 claims. Although Johnson's counsel suggested that the "practice effect," which may reduce the validity of results of the same tests to which a person has already been subjected, was a problem, that concern is far outweighed by the reasonableness of the opposing party's desire to perform the same or similar tests to verify Johnson's expert's results. None of the tests that the respondent's expert proposes is physically intrusive or, for that matter, potentially physically or mentally injurious. All appear to be appropriate diagnostic tools, under the circumstances presented here. Again, to the extent that Johnson can show, for example, by cross-examination, that the tests performed were irrelevant to particular issues in the case or were invalid, the court will disregard the results of those tests.

Third, the respondent's difficulties in identifying with greater specificity the tests its expert will use, like its difficulty in identifying with greater specificity the mental conditions to be tested, are, at least in part, due to Johnson's failure to disclose all of the

conditions considered, all of the tests performed, or all of the test results used by her disclosed expert, Dr. Woods, as well as Johnson's complete failure to disclose her second mental health expert, the conditions for which that expert tested, or that expert's test results, and her failure to require her second expert to write a report and then to disclose it to the respondent.

Finally, the court is not convinced that the respondent has the ability to obtain the desired information by other means. *Schlagenhauf*, 379 U.S. at 118 (noting that "[t]he ability of the movant to obtain the desired information by other means is also relevant"). Although Johnson contends that the respondent has access to the records and evaluations of the mental examinations conducted prior to her criminal trial and accumulated during nearly a decade of incarceration, she precluded the prosecution from discovery concerning precisely the issue of the nature or effect of any mental conditions on her thinking or conduct at the time of the offenses. In other words, Johnson's Corrected Amended § 2255 Motion opens the door to an entirely new line of inquiry as to her mental conditions. It would be the height of unfairness to allow Johnson to interject such new issues and to rely upon new mental examinations by her own expert, then to prevent the respondent from performing necessary testing to respond to her new contentions and new evidence.

The court finds from the record that, if the facts are fully developed, using some or all of the specific tests proposed, there is more than a "slight chance" that the respondent may be able to demonstrate that the petitioner is *not* entitled to relief on the basis of the mental conditions that she asserts. *Cf. Rucker*, 563 F.3d at 771 ("good cause" standard). Therefore, in this case, the respondent's failure to specify the tests that it wants to conduct or their relationship to specific mental conditions at issue is not fatal to the respondent's request. *See Sanden*, 495 F.2d at 225 ("The manner and conditions of a court-ordered medical examination [pursuant to Rule 35(a)] . . . are vested in the sound discretion of the trial court."). The respondent has made sufficient showing that the

categories of examinations that it wishes to perform relate to the categories of psychiatric or neuropsychiatric conditions that Johnson asserts now afflict and did afflict her.

The respondent has shown "good cause" for the testing it seeks.

### c.    *Qualification of the respondent's examiner*

In her resistance to the respondent's motion, Johnson asserted that she could not properly assess the qualifications of the respondent's expert to conduct any of the testing he proposed.  It is true that Rule 35(a) provides for mental examinations "by a suitably licensed or certified examiner."  FED. R. CIV. P. 35(a).  The curriculum vitae of the respondent's expert, which is attached to the respondent's reply, demonstrates sufficiently that he is reasonably qualified to perform the testing that he proposes.  Any challenges to his qualifications or conclusions are, like any challenges to the necessity of any particular test, matters better addressed by discovery and cross-examination.  *Cf. Pizzuto*, 2010 WL 672754 at *2-*3 (so holding as to appropriateness of particular tests).

### 3.    *Summary*

The court finds that the respondent has satisfied the requirements of Rule 35 of the Federal Rules of Civil Procedure and *Habeas* Rule 6.  The respondent has demonstrated that Johnson's mental condition is "really and genuinely in controversy and that good cause exits for ordering each particular examination."  *Schlagenhauf*, 379 U.S. at 118.  Thus, the proposed testing may take place as scheduled on March 23 and 24, 2010, or at such other time as may be necessary.


## C.  Other Issues

The conclusion that the respondent has satisfied Rule 35 is not the end of the inquiry, however.  Johnson also asserts that there are Fifth and Sixth Amendment concerns and other issues that must be addressed.

### 1.      *Fifth Amendment concerns*

Johnson asserted in her Resistance that the respondent's request for mental examinations failed to address Fifth Amendment concerns. The respondent asserted in its Reply that Johnson waived any remaining Fifth Amendment rights as to her thinking and conduct at the time of the offenses by injecting into these proceedings her mental condition at the time of the offenses.

Johnson did not identify in her resistance the specific Fifth Amendment concerns that are at issue if the respondent conducts mental examinations. However, she did cite to the court's prior decisions concerning mental examinations in her criminal case. *See United States v. Johnson*, 383 F. Supp. 2d 1145 (N.D. Iowa 2005); *United States v. Johnson*, 362 F. Supp. 2d 1043, 1085-92 (N.D. Iowa 2005). In her oral arguments, Johnson also asserted that the Fifth (and Sixth) Amendment concerns arise, because of the possibility that she will obtain a new trial or resentencing as relief on her § 2255 claims.

In light of her reference to the Fifth and Sixth Amendment issues raised by her mental examinations prior to her criminal trial, the court understands Johnson's concerns, in the first instance, to be that the respondent's mental examination may exceed the scope of her limited waiver of her Fifth Amendment right against self-incrimination by exceeding the scope of what is necessary for the respondent's expert to rebut her mental condition evidence. The limited waiver of her Fifth Amendment rights in her criminal case, however, was based on Johnson's contention that she did *not* put at issue her thinking or conduct at the time of the charged offenses. *See Johnson*, 383 F. Supp. 2d at 1167. In her Corrected Amended § 2255 Motion, what Johnson specifically puts at issue *is* her thinking and conduct at the time of the charged offenses. Thus, Johnson has no remaining Fifth Amendment privilege as to those issues.

The Circuit Courts of Appeals were split on whether a defendant who has been convicted retains a Fifth Amendment privilege against self-incrimination until she has been

sentenced. *See, e.g., United States v. Velasquez*, 141 F.3d 1280, 1282 n.3 (8th Cir. 1995) (noting this split). Assuming, without deciding, that Johnson retained some Fifth Amendment privilege until sentencing, her sentencing on the federal charges against her occurred some time ago. Nothing about these collateral proceedings resuscitates that privilege as to the federal charges. Where Johnson has asserted that her mental condition at the time of the offenses is a ground for § 2255 relief, clearly waiving any Fifth Amendment privilege that she attempted to retain during her criminal trial, she cannot then attempt to limit the scope of the waiver or resuscitate some Fifth Amendment protection against appropriate mental examinations to assess her claims based on the possibility that she will obtain the § 2255 relief she seeks. Johnson has cited no authority, and the court has found none, for the proposition that filing a § 2255 motion, generating some possibility of a retrial or resentencing, resuscitates an otherwise expired Fifth Amendment privilege that a criminal defendant enjoyed prior to conviction and, possibly, prior to sentencing.

On the other hand, Johnson's conviction and sentencing on *federal* charges does not waive her Fifth Amendment privilege as to possible *state* charges for the same acts on which she was convicted in *federal* court. *See id.* at 1282 (noting the possibility of prosecution by dual sovereigns does not offend the Constitution). That possibility suffices to establish that Johnson has some continuing Fifth Amendment privilege not to testify against herself. *Id.* at 1282 & n.3.

Nevertheless, the court does not find that whatever Fifth Amendment privilege Johnson may have left is necessarily any impediment to the mental examinations contemplated here. In the first instance, the court will impose a confidentiality requirement on all results of mental examinations, barring their disclosure to any non-party, unless and until such confidentiality is waived by Johnson's use of the results of mental examinations in support of her Corrected Amended § 2255 Motion. Even if Johnson uses results of mental examinations, however, it will be up to her to litigate in any

future state proceedings—or on retrial or resentencing on federal charges as the result of these § 22555 proceedings—whether her use of mental health evidence in support of her claims for § 2255 relief waived her Fifth Amendment rights as to prosecution by a dual sovereign or on retrial or resentencing in federal court.

Johnson's Fifth Amendment concerns do not bar the mental examinations contemplated in these proceedings.

### 2.    *Sixth Amendment issues*

Johnson also asserts that the respondent's request for mental examinations did not address her Sixth Amendment protections.  The respondent argued in its reply that Johnson has no Sixth Amendment right to counsel outside of *criminal* proceedings, and certainly has no such right that extends to collateral proceedings, such as these § 2255 proceedings.

Johnson also failed to identify in her resistance what precise Sixth Amendment issues she believes are implicated by the mental condition testing requested by the respondent in this case.  At oral arguments, she also explained that her Sixth Amendment concerns, like her Fifth Amendment concerns, relate to the possibility of retrial or resentencing on federal criminal charges as § 2255 relief.

Assuming, as has the respondent, that the Sixth Amendment protection at issue is Johnson's right to counsel, it is well established that a movant in a § 2255 proceeding has no constitutional right under the Sixth Amendment to representation by counsel.  *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999) (citing *McClesky v. Zant*, 499 U.S. 467, 494 (1991)); *Murray v. Giarratano*, 492 U.S. 1, 8-9 (1989) (opinion of Rehnquist, C.J.) (there is no constitutional right to counsel in collateral proceedings for death row inmates; cases recognizing special constraints on capital proceedings have dealt with the trial stage).  Moreover, even in criminal proceedings, a defendant does not have a constitutional right to have counsel or another representative physically present during a mental evaluation.  *See Estelle v. Smith*, 451 U.S. 454, 470 (1981) (a defendant in a capital

case has a Sixth Amendment right to notice and to consult with counsel *before*, but not during, a psychiatric examination). Thus, even assuming that Johnson has some remaining Fifth Amendment privilege as to possible state prosecution or as to a possible federal retrial or resentencing for which she could invoke Sixth Amendment protection, her Sixth Amendment right would not extend to the presence of counsel or another representative during mental examinations. At most, Johnson is entitled to reasonable access to her counsel before and after an evaluation session, but neither her counsel nor any other representative will be permitted in the room during the examinations. *Accord Pizzuto*, 2010 WL 672754 at *2.

Whatever Sixth Amendment protections Johnson may still be entitled to invoke do not stand as any impediment to the mental examinations that the respondent has requested.

### 3. *Reports*

As the court indicated at the oral arguments, the court urges the parties to make full, voluntary, reciprocal disclosure of their mental health experts' files, guided by Rule 35(b) of the Federal Rules of Civil Procedure, but the court will intervene if the parties are unable to work out disclosures. For the reasons stated above, the disclosure requirements of Rule 12.2 of the Federal Rules of Criminal Procedure do not apply. The court draws the parties' particular attention to the requirements in Rule 35(b)(1), which requires the examining party, upon request of the examined party, to deliver a copy of the examiner's report; Rule 35(b)(2), which specifies that the examiner's report must include "the examiner's findings, including diagnoses, conclusions, and the results of any tests"; the reciprocal provisions of Rule 35(b)(3) concerning requests for reports of mental examinations by the non-movant; and Rule 35(b)(4), concerning waiver of privilege.

### III. CONCLUSION

Upon the foregoing, for good cause shown, the respondent's February 25, 2010, Motion For Psychiatric Examination Of Petitioner (Civ. docket no. 29), requesting an

order to compel Johnson to submit to a mental examination pursuant to Rule 35(a) of the Federal Rules of Civil Procedure, is **granted**. Such mental examinations may be conducted as scheduled on March 23 and 24, 2010, or at such other time as may be necessary, at the place of Johnson's incarceration; shall be conducted by Dr. Martell, the respondent's expert, with no other person present during the examinations, apart from any assistant to Dr. Martell; and shall include any of the tests listed in Exhibit 2 to the respondent's Reply as Dr. Martell may find necessary or appropriate, based on the history obtained and the clinical indications at the time of the examination. *See* FED. R. CIV. P. 35(a)(2)(B). The results of any mental examinations are not to be disclosed to anyone other than the parties, the parties' attorneys, and the parties' expert witnesses, without prior permission from the court.

 **IT IS SO ORDERED.**

 **DATED** this 18th day of March, 2010.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA