# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

ANGELA JOHNSON,      *

        *

     Petitioner,      *

        *         **No. C 09-3064-MWB**

v.         *         **CAPITAL CASE**

        *

UNITED STATES OF AMERICA,      *

        *

     Respondent      *

### MOTION TO RECONSIDER ORDER DENYING CONTINUANCE OF HEARING DATE AND APPOINTMENT OF COUNSEL AND TO ENSURE A FAIR AND THOROUGH CAPITAL HABEAS HEARING FOR ANGELA JOHNSON

ANGELA JOHNSON, by and through undersigned counsel, hereby respectfully moves the Court to reconsider its Order dated August 30, 2010, in which the Court declined to continue the evidentiary hearing in Ms. Johnson's capital § 2255 from its current date of October 4, 2010, and also denied the motion to appoint attorney Michael Burt to represent Ms. Johnson for the remainder of her postconviction proceedings. *See* Case No. C-09-3064-MWB, Doc. 63. Attorney Michael Lawlor has conferred with AUSA Charles J. Williams regarding the request that the evidentiary hearing in this case be continued until December 13, 2010, and is authorized to represent that the government does not object to this request.

Undersigned counsel regrets very much the untimeliness of attorney Michael Lawlor's email dated August 27, 2010, and its failure to address clearly questions posed by the Court in the telephonic oral arguments on August 25, 2010. With this submission, the undersigned endeavors to provide answers to any questions or concerns the Court may have about the status of Ms. Johnson's case and availability of counsel, including Mr. Burt, to begin a hearing on December 13, 2010. Counsel begs the Court's indulgence of this further attempt to protect the

1

rights of their capital client, Ms. Johnson, whose very life depends on the hearing being handled competently and thoroughly by attorneys, at least one of whom possesses the relevant expertise, who are available to devote adequate time to hearing preparation, and who will present the evidence to this Court in an organized, cohesive, and comprehensive manner. Anything short of such a presentation will compromise Ms. Johnson's right to a full airing and consideration of the constitutional violations that rendered her death penalty trial defective. With that fundamental principle in mind, and in support of this motion, Ms. Johnson respectfully states the following:

**I. Attorney Lawlor's August 27th E-mail to the Court was Poorly Worded and was Intended to Convey Acceptance of the Court's Offer to Continue the Evidentiary Hearing to December 13, 2010.**

In this Court's August 30th Order denying the undersigned's request for a continuance, this Court indicated that Mr. Lawlor's e-mail to the Court on August 27th was unresponsive to the question of whether "if the hearing is continued until December 13, 2010, all expert testimony and other evidence will be presented, either live, by video conference, or by video deposition, and that no further continuances will be requested except in the most extraordinary circumstances and also unresponsive as to whether Mr. Burt is available to participate in the case on the conditions set out by the court." Order at 2. The undersigned would like to take this opportunity to apologize for the inartful wording of the August 27th email, and to clarify its meaning.

Mr. Lawlor fully intended in that email to convey that he was representing on behalf of Mr. Burt and Mr. Maazel that they were accepting the Court's offer of a continuance until December 13, 2010.[1] Counsel again regrets any misunderstanding but would like to reiterate that

---

[1] Undersigned counsel understand that the choice presented to Ms. Johnson is to either accept the offer of continuing the evidentiary hearing until December 13, 2010, or to move forward with the

2

nothing in Mr. Lawlor's August 27th email was meant to flout the Court's request for a timely answer to its question concerning counsel's willingness to begin the hearing on December 13th under the conditions set forth by the Court, or to convey any uncertainty about acceptance of the Court's proposed December 13th hearing start date. Mr. Lawlor was attempting in good faith to answer the Court's question concerning willingness of Mr. Burt and Mr. Maazel to begin on December 13th, and the availability of experts, and undersigned counsel apologizes for any misunderstanding the email has caused. Counsel also apologizes for the untimeliness of the email.

## II.    A Continuation of the Hearing Until December 13th Would Not Represent Undue Delay in these Proceedings.

To the extent that it would be useful to this Court to put this case in the context of other capital § 2255 cases that have proceeded to an evidentiary hearing, the undersigned wishes to provide that context for the Court in order to demonstrate that a continuation of the evidentiary hearing until December 13, 2010, would not represent an undue delay in these proceedings. As the attached declaration from Richard Burr explains, the average length of time between the filing of a § 2255 motion and the commencement of an evidentiary hearing in a capital § 2255 proceeding is 776.58 days. *See* Declaration OF RICHARD BURR ("Burr Dec.") at ¶ 15 (attached as

---

hearing as scheduled on October 4, 2010. In light of the substantial postconviction investigation that the undersigned must complete in order to develop the necessary facts to present at a hearing (as detailed in the accompanying declaration from Professor Sean O'Brien and discussed *infra*), the October 4th date is clearly the less desirable alternative. Although the outstanding investigative tasks necessary to properly prepare this case for a hearing likely cannot be completed by December 13th, the additional two months of time would obviously be more beneficial to Ms. Johnson; this will be her only opportunity to develop the record in support of her claims challenging her convictions and death sentence, and therefore any additional time to prepare for the hearing is preferable to moving forward on October 4th.

3

"Exhibit A").  As Mr. Burr further explains, the presently scheduled hearing date of October 4th in Ms. Johnson's case would therefore make her case one of the fastest capital § 2255 cases to proceed to a hearing since the Federal Death Penalty Act was enacted:

> 16.      In Angela Johnson's case, the § 2255 motion was filed on October 5, 2009.  The evidentiary hearing is currently scheduled to commence on October 4, 2010.  Based on these dates, the number of days between the filing of the motion and the commencement of the hearing will be 364 days, indicating that Ms. Johnson's case is actually proceeding to a hearing much more rapidly than the average capital § 2255 case.  In fact, should Ms. Johnson's case proceed as planned, it would be the *third fastest* case to hearing, edging out only *Jones* (119 days) and *Battle* (168 days).
>
> 17.      Based on these data, it is evident that the pace at which Ms. Johnson's case is proceeding to an evidentiary hearing is at odds with the norm in capital § 2255 proceedings.  That is, Ms. Johnson's case is moving quite rapidly, both in relative and absolute terms.

Burr Dec. at ¶¶ 16-17.

Just to put this in context for the Court, the commencement of an evidentiary hearing in this case on December 13, 2010, would mean that the number of days between the filing of the motion and the commencement of the hearing would be 434 days.  That would still be well-below the average of 776.58 days, and would then make Ms. Johnson's case the *fourth fastest* case with respect to time between the filing of the § 2255 motion and the commencement of the hearing, edging out only *Jones* (119 days), *Battle* (168 days) and *Stitt* (419 days).  In light of these facts, it is respectfully submitted that a continuance until December 13th would not constitute an unreasonable delay in the proceedings.

**III.     Undersigned Counsel Are Not Prepared to Present Evidence at the Presently Scheduled October 4th Hearing Because the Postconviction Investigation Remains Substantially Incomplete.**

Undersigned counsel have an ethical and professional obligation to develop and present all reasonably available evidence in support of Ms. Johnson's § 2255 motion at her capital

4

habeas hearing. As the Supreme Court's recent decisions in a variety of capital habeas cases demonstrate, in order to establish a successful claim that trial counsel were ineffective for failing to adequately investigate and develop readily available mitigation and mental health evidence, a capital petitioner has the burden of presenting the newly discovered mitigation and mental health evidence that could have been presented at the time of trial in order to establish prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984).[2] In other words, *Strickland* prejudice cannot be determined in a vacuum; rather, postconviction counsel must conduct the "constitutionally sufficient mitigation investigation," *Sears v. Upton*, 561 U.S. ___, slip op. at 12 (2010) (*per curiam*), that trial counsel unreasonably failed to perform, and then present this mitigation evidence at the habeas hearing.

Although the undersigned performed an initial postconviction investigation between the time of appointment and the filing of the § 2255 motion, the undersigned must build on that foundation in order to properly develop all the available evidence in support of the claims

---

[2] *See, e.g.*, *Sears v. Upton*, 561 U.S. ___, slip op. at 12 (2010) (*per curiam*) ("A proper analysis of prejudice under *Strickland* would have taken into account the newly uncovered evidence of Sears' 'significant' mental and psychological impairments, along with the mitigation evidence introduced during Sears' penalty phase trial, to assess whether there is a reasonable probability that Sears would have received a different sentence after a constitutionally sufficient mitigation investigation"); *Rompilla v. Beard*, 545 U.S. 374, 391-93 (2005) (comparing the evidence that was presented at the original sentencing hearing with the mitigation evidence and testimony presented at a post-conviction hearing to conclude that the undiscovered mitigation evidence "might well have influenced the jury's appraisal of [the defendant's] culpability" and led to a different sentencing decision); *Wiggins v. Smith*, 539 U.S. 510, 535-38 (2003) (comparing the evidence adduced at trial with the evidence presented at the habeas proceeding regarding the petitioner's "excruciating life history" in finding that trial counsel's failure to investigate and present such evidence resulted in *Strickland* prejudice); *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000) (*Strickland* prejudice determination must take into account mitigation evidence adduced in post-conviction proceedings).

alleged in the motion for purposes of an evidentiary hearing.[3]  As is detailed in Professor Sean D.

O'Brien's declaration, undersigned counsel's postconviction investigation remains substantially

incomplete, and there are a number of witnesses that must be located and interviewed:

> 6.    In June and July, 2010, I obtained from Mr. Lawlor, Ms. Watson and Ms. Holdman select materials about the case so that I could give responsible advice and information.   The notes and memos of the trial team reflect that they identified by name a number of witnesses who possess potentially relevant knowledge of the crime and/or Ms. Johnson's background and character, yet they were never interviewed.    The un-interviewed witnesses consist of at least 45 friends, neighbors, employers, co-workers, fellow jail inmates and significant others. This includes a friend of Ms. Johnson's mother for more than 20 years and who lived in the home with the family, a couple who ran a church camp attended by Ms. Johnson and her siblings, neighbors in Leland, IA, ten friends who observed signs of both mania and depression, a former paramour, a life-long friend of Ms. Johnson's mother, five former employers who observed her inability to calculate math and her dependency on others for day-to-day living responsibilities, four former inmates at Linn County,  and four persons who know the motivations of a key prosecution witness to give false testimony.  In addition to these individuals, at least eight close relatives who have been identified as having relevant information.  In my experience, aunts, uncles, cousins and in-laws are some of the best sources of biographical information, particularly given the barriers to disclosure by immediate family members of information regarding

---

[3] The undersigned wishes to note that a substantial amount of time was necessary in this particular case for counsel to familiarize themselves initially with the extant record.  As this Court is aware, the record in Ms. Johnson's case is voluminous and included multiple volumes of transcripts, numerous pre-trial motions and other pleadings, and a trial file that included numerous bankers' boxes worth of documents and other discovery provided by the government. Moreover, Ms. Johnson had a co-defendant, Dustin Honken, and postconviction counsel necessarily had to familiarize themselves with the record in Honken's case, too, which is also quite voluminous.  Getting up to speed on the respective records in Ms. Johnson's and Honken's cases was an enormous and unavoidable task, as postconviction counsel could not possibly litigate an ineffective assistance claim properly without first understanding what former counsel did and did not do as part of their trial and appellate representation of Ms. Johnson.  Moreover, gaining a fundamental understanding of the trial record was a necessary pre-requisite to formulating a postconviction investigation plan, as it was impossible to identify and prioritize investigative tasks without first getting a handle on the facts presented at trial, identifying known and potential witnesses, and establishing both the efforts and omissions of former counsel in preparing for trial.

maltreatment, neglect and mental illness. Finally, trial counsel's notes of his interviews with Ms. Johnson contain a number of the above persons, and eleven additional people about whom trial counsel noted "obviously need to talk with." (The names of the witnesses can be provided *in camera* to the Court). After these interviews are conducted, but before the hearing, it will be necessary to interview the original trial team, investigator, mental health expert and mitigation specialist to address the implications of the more complete investigation on the issues of counsel's performance and resulting prejudice.

7. The postconviction investigation to date has barely scratched the surface. While Ms. Watson obtained sixteen witness declarations before her work was prematurely terminated, only five of those came from witnesses who had never previously been interviewed by trial counsel. The postconviction investigation has barely scratched the surface of the information that is potentially available. Further, the above-referenced witnesses do not include witnesses who were spoken to by trial counsel, but who will need to be re-interviewed if the investigation turns up additional areas of inquiry not previously explored. Some of the witness declarations obtained by Ms. Watson from witnesses who were interviewed by trial counsel reflect that trial counsel failed to inquire into areas that the limited investigation had failed to uncover. Although Ms. Holdman reviewed a number of records, interviewed the client, met with counsel and and started a life history investigation, she interviewed only six witnesses with relevant medical and psychiatric records before counsel stopped communicating with her. These interviews yielded cursory information that required follow up in order to be relevant to habeas claims, but Ms. Holdman received no guidance or direction from counsel in drafting declarations that the six witnesses signed.

DECLARATION OF SEAN D. O'BRIEN ("O'Brien Dec.") at ¶¶ 6-7 (attached as "Exhibit B").

Similarly, Professor O'Brien has identified a number of concrete investigative tasks which the undersigned must undertake immediately in order to develop the necessary and relevant evidence which is to be presented at Ms. Johnson's hearing:

8. The following investigative tasks should be undertaken immediately:

a) Interview school peers, neighbors, mom's ex boyfriends re Angela's seizures, dissociation, behavior during critical life stages

b) Locate and interview first grade and other elementary school teachers (Ms. Johnson withdrew from school in 8th grade to work for her mother).

c) Locate and interview restaurant customers and co workers when Angela was 13 - 20. Ms. Goody only interviewed recent employers,

although Ms. Johnson had good relationships with employers for whom she had worked in the more distant past.

d) Locate and interview maternal cousins and step siblings who observed Angela in childhood.

e) Interview and prepare trial defense experts: Hutchinson PhD, Cunningham, Logan MD, Gelbort PhD, and provide them with new materials developed by the postconviction investigation.

f) Interview Mary Goody, the trial mitigation specialist.

g) Continue Brady investigation regarding the Governments informants

h) Locate and interview the health care provider who administered increased doses of psychotropic medication prior to and during Ms. Johnson's trial, and inquire into whether trial experts knew the dose was increased.

i) Locate and interview ten named witnesses who observed Angela prior to trial who could describe her response and changed behavior due to change in meds. Incompetent to stand trial claim

j) Interview and prepare all trial counsel regarding their pretrial investigation and trial presentation, ineffective assistance of counsel claims, and effects of medication on Ms. Johnson's ability to understand and participate in her defense.

O'Brien Dec. at ¶ 8.

The undersigned must complete these identified tasks in order to properly advance the fact development of those mitigation issues already uncovered as part of the initial post-conviction investigation. As is explained in the attached declaration from Richard Burr, by necessity, postconviction counsel must continue to investigate the case after the § 2255 motion has been filed because an adequate postconviction investigation requires more time than is available within the one-year statutory filing period. Burr Dec. at ¶¶7, 10. For that reason, it is typical in a capital postconviction case that a substantial amount of investigation and fact development, including locating and interviewing witnesses, will be performed after the motion has been filed and leading up to the evidentiary hearing. Burr Dec. at ¶7. Although much

8

important work has been done in this case, much more works remains to be done in order to get Ms. Johnson's case to a place where it is ready for an evidentiary hearing. Thus, it is absolutely imperative that the witnesses mentioned in Professor O'Brien's declaration be located and interviewed, as the vast majority of them have never been contacted previously, either by trial counsel or postconviction counsel.[4] As Professor O'Brien explains, these witnesses are likely to possess critical mitigation information about Ms. Johnson's background and social history, as well as information about the conditions and events in her life that must be developed and provided to the undersigned's experts for purposes of obtaining an accurate and reliable mental health assessment of Ms. Johnson:

> 9. The witnesses whom have never been contacted by any lawyer acting on Ms. Johnson's behalf are likely to possess significant probative information critical to a life history investigation, including a former spouse, several ex-lovers, neighbors, close friends, employers and co-workers, cell mates, attorneys, physicians, aunts, uncles, cousins, former in-laws, jail guards and law enforcement officers. In my experience, many of these witnesses are likely to possess significant mitigating evidence, and likely witnessed conditions and events that would be quite relevant to assessing her mental and emotional functioning. It is quite likely that some of these individuals were sufficiently close to Ms. Johnson to have seen or experienced her positive qualities, which is an important aspect of presenting a thorough, probative and humanizing picture of Ms. Johnson's mental health.

O'Brien Dec. at ¶ 8.

The investigative tasks outlined in Professor O'Brien's declaration are essential components of a "constitutionally sufficient mitigation investigation," and absent completion of

---

[4] As is explained in the accompanying declarations by Professor O'Brien and the undersigned, Ilann Maazel, the ability to properly continue the postconviction investigation after the § 2255 motion was filed was hampered by a variety of factors including a breakdown in communication among the members of Ms. Johnson's defense team; the inability of the undersigned to lead the mitigation investigation and corral the required evidence due to his lack of capital habeas experience; and sensitive and difficult developments in Mr. Lawlor's family life.

9

those tasks, the undersigned will not be in a position to carry their burden of proof at the evidentiary hearing. *See* O'Brien Dec. at ¶ 14 ("Preparation for Ms. Johnson's hearing at this stage is more than a matter of reviewing documents and planning the direct and cross-examination of witnesses. As I explained to Mr. Lawlor, we don't know what we don't know. Witness interviews are critical to the development and proof of Ms. Johnson's claims for relief, particularly those claims that involve issues of background, character and mental health."). Moreover, the development and presentation of this evidence is absolutely critical in order to test the *reliability* of the death sentence imposed on Ms. Johnson, since the jury's verdict was made in the absence of significant mitigation and mental health evidence that would have been relevant to their sentencing determination. *See Penry v. Lynaugh*, 492 U.S. 302, 319 (1989) (sentencer must be able to consider and give effect to available mitigation evidence in order to insure that sentence "has made a reliable determination that death is the appropriate sentence"); *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (noting that *Strickland* prejudice standard "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable"). For the foregoing reasons, it is respectfully submitted that the undersigned cannot proceed to a hearing on October 4, 2010.

**IV.  Attorney Michael Burt Should Be Permitted to Substitute as Lead Counsel Because Attorney Lawlor's Continued Involvement in this Case is Impeding the Postconviction Investigation and Development of Necessary Mitigating and Mental Health Information.**

Ms. Johnson's final opportunity to test the fairness and reliability of her conviction and death sentence is on the cusp of being overshadowed by communication breakdowns among her counsel (O'Brien Dec. at ¶12; DECLARATION OF ILANN MAAZEL ("Maazel Dec.," attached as "Exhibit C") at ¶5), and between her counsel and mitigation specialist Scharlette Holdman and

neuropsychiatrist Dr. George Woods (O'Brien Dec. at ¶3), counsel's unwillingness to take advice from Resource Counsel from the Federal Capital Habeas Project, and tense relations between her counsel and this Court. Most importantly and of immediate concern is that Mr. Lawlor's falling out with Ms. Holdman and his resistance to heeding her advice, as well as that of Dr. Woods, resulted in a premature termination of the required postconviction investigation, leaving Ms. Johnson's social history and background unknown to the individuals charged with providing the Court with an accurate picture of her life, her culpability in light of her background, and the mental health and other mitigating issues present in her case. Id. at ¶3, 13.

Of particular concern is the fact that Attorney Lawlor has alienated Dr. Woods to the point that Dr. Woods has indicated to the undersigned that, ethically and professionally, he cannot work with Mr. Lawlor and will not participate in this case if Attorney Lawlor continues to be a member of the postconviction team. *See* Maazel Dec. at ¶¶ 4, 7; 9/3/10 LETTER FROM DR. GEORGE W. WOODS (attached as "Exhibit D"). Losing Dr. Woods would be enormously prejudicial to Ms. Johnson's case; as the Court is aware, a major element of Ms. Johnson's § 2255 litigation centers on trial counsel's failure to develop and present readily available mental health information, and Dr. Woods's continued participation in the case is therefore crucial for purposes of developing this claim and presenting evidence at the hearing.

Moreover, as this Court is aware, Mr. Lawlor's mother was admitted to Beth Israel Deaconess Medical Center in Boston, Massachusetts on August 17, 2010, has been diagnosed with cancer – specifically, acute leukemia and lymphoma -- and is currently undergoing aggressive, separate treatments for both conditions. Her treating physician, Dr. Matthew Yurgelun, has indicated that she will remain hospitalized for at least the next four to five weeks. Dr. Yurgelun has also explained to Mr. Lawlor that her condition is rare, complex, and tenuous

11

and has requested that he be available to visit and support her during her illness and treatment. Mr. Lawlor, whose mother is widowed (his father passed away years ago), expects to have to travel between his home in Maryland and Boston throughout September several times and upon short notice to be with his mother while she undergoes chemotherapy. In light of his need to tend to his current family situation, the effects of his mother's illness on his own health and ability to focus on Ms. Johnson's case, and his unpredictable schedule for the month of September, Mr. Lawlor, as lead counsel for Ms. Johnson, is unable to defend her adequately should the court proceed to hearing October 4, 2010. The undersigned, as supporting counsel, is moreover concerned about breaching ethical duties by undertaking the lead role in representing Ms. Johnson at her evidentiary without the requisite habeas expertise to do so.[5]

It is respectfully submitted that Ms. Johnson would be better served if Attorney Michael Burt were permitted to enter the case as lead counsel, in place of Mr. Lawlor. As Professor O'Brien explains in his declaration:

> 12. In my discussions with Mr. Lawlor, he is quick to admit that he is "in over his head" in this case, but his problem goes deeper than that. He seems to be falling apart because he is not able to take even simple, fairly routine steps to reinitiate the investigation. It is difficult to imagine that with his mother's health problems he will become more rather than less functional. Even with people such as myself, Scharlette Holdman, Lesa Watson and Ms. Friedman's project offering concrete help and advice in how to investigate and present the issues in Ms. Johnson's case, he has difficulty taking even the most basic steps forward on the investigation and preparation of this case. Everything that remained undone in June, 2010, remains undone at the present time, notwithstanding the availability of help and resources enabling Mr. Lawlor to perform. Although he has represented to the Court that his co-counsel, Ilann Maazel, has not contributed to Ms. Johnson's representation since the filing of the petition, I get a somewhat different picture from Mr. Maazel having to do with communication issues with

---

[5] Indeed, the undersigned wishes to inform the Court that even this present motion was written only because of, and with, the substantial assistance of Resource Counsel, as neither Mr. Lawlor nor the undersigned were in a position to draft this motion on their own.

12

> Mr. Lawlor.  He has alienated the 2255 project, his co-counsel, his mitigation investigator, his expert witnesses, and he has developed an antagonistic relationship with the Court as well.  I have grave concerns that he will rise to the occasion at the present time, especially with the recent added distraction of his mother's health problems. Because of these concerns, I sought assistance from experienced death penalty defense lawyers for Mr. Lawlor, and Michael Burt responded to my call.  Issues of expertise and experience aside, Ms. Johnson requires an attorney who will be able to prove to this Court, and ultimately to the Eighth Circuit, why trial counsel's omissions deprived the jury of information critical to their decision such that the death penalty imposed upon her is unreliable.  She also needs a lead attorney, such as Mr. Burt, who will approach her case with the utmost diligence and integrity.

O'Brien Dec. at ¶ 12.

Although undersigned counsel participated in the preliminary postconviction investigation, the undersigned recognizes that he is not qualified to act as lead counsel in a capital habeas case and has significant concerns about his ability to adequately and competently litigate Ms. Johnson's case without the assistance of qualified lead counsel.  Mr. Burt, on the other hand, has already provided assistance to the undersigned in this case, is well-versed in both capital jurisprudence and habeas law, and has particular expertise with respect to fact-development and litigation of mental health issues in capital cases.   In light of Mr. Lawlor's severely compromised ability to participate in Ms. Johnson's case as lead, it is respectfully submitted that this Court reconsider its prior order denying counsel's request that Mr. Burt substitute as lead counsel.[6]

---

[6] Although the undersigned recognizes that there is no constitutional right to effective assistance of habeas counsel, the undersigned is aware of at least three instances where the Eighth Circuit Court of Appeals has exercised its supervisory authority to replace post-conviction counsel due to what appears to be a failure to competently litigate the client's habeas petition.  In *Griffin v. Delo*, 961 F.2d 793, 794 (8th Cir. 1992), the Eighth Circuit vacated its prior order denying the capital habeas petition and remanded for further proceedings with new habeas counsel because the original court-appointed habeas counsel "may not have recognized and presented issues of constitutional dimension during the post-conviction and habeas proceedings" and "may have also

13

## V. Conclusion

The undersigned feels a tremendous pressure to litigate Ms. Johnson's § 2255 claims competently and thoroughly, especially considering the gravity of the consequences to Ms. Johnson if counsel's efforts fall short of what is ethically and professionally required in properly litigating a capital habeas case. The undersigned is not trying to test this Court's patience, and is sincerely motivated by the desire to insure that Ms. Johnson is not prejudiced by the shortcomings of the present state of the postconviction investigation. The evidentiary hearing in this case will be Ms. Johnson's one and only opportunity to develop and present evidence in support of the § 2255 motion, and the undersigned is determined not to allow the current deficiencies in the representation that she has received overwhelm the task of providing her with a constitutionally sufficient mitigation investigation, and presenting the results of that investigation to this Court.

The undersigned is mindful of the need to work with all possible speed and believes that, with the substitution of Mr. Burt as lead counsel, the postconviction investigation can be put

failed to adequately bolster claims actually raised." As the Court further noted: "In light of the death sentence under which appellant labors and our granting of permission for his second attorney to withdraw, we believe that a remand with directions to allow the petitioner to raise additional issues for consideration by the district court is the most prudent course." *Id.* *See also id.* ("We conclude that appellant should have a reasonable opportunity to present his claims of constitutional error, subject, of course, to all claims and defenses available to the appellee.").

Similarly, in *Murray v. Delo*, 34 F.3d 1367, 1373 (8th Cir. 1994), the Eighth Circuit took the extraordinary step of replacing court-appointed postconviction counsel with new counsel and remanding the case to the district court so that the claims which former postconviction counsel failed to raise and litigate could be included in the habeas petition. In *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997), the Eighth Circuit permitted a substitution of counsel between the time that it issued its original opinion affirming the denial of habeas relief and the filing of the rehearing petition, after which it granted relief. *See Clemmons v. Delo*, No. 96-1086, 12/31/96 Appellate Docket Entry.

14

back on track and that the newly reformulated team can build upon the foundation already in place and sufficiently develop the relevant facts to get the case where it needs to be for an evidentiary hearing.  As noted above, a continuation of the evidentiary hearing until December 13, 2010,  would still make Ms. Johnson's case one of the fastest capital § 2255 cases to proceed to an evidentiary hearing since the enactment of the FDPA, and therefore counsel genuinely believes that continuing the hearing until that date would not constitute an undue delay in the proceedings.  Moreover, AUSA Charles J. Williams has indicated that the government does not object to the request for a continuance.

PRAYER FOR RELIEF

IN LIGHT OF THE FOREGOING, Ms. Johnson respectfully requests that this Court reconsider its August 30th Order and grant a continuance of the currently-scheduled October 4, 2010 evidentiary hearing until December 13, 2010, and appoint Michael E. Burt to represent her along with undersigned counsel.

Respectfully submitted,

/s/ Ilann M. Maazel
Ilann M. Maazel
Emery, Celli Brinkerhoff & Abady, LLC
75 Rockefeller Plaza
20th Floor
New York, NY 10019

15