# EXHIBIT A

## DECLARATION OF RICHARD BURR

I, Richard Burr, declare under penalty of perjury that the following is true:

### *Background of Declarant*

1. I am an attorney in private practice in Houston, Texas. My practice has been devoted entirely to the trial, appellate, and post-conviction representation of defendants in capital cases since 1979. I have represented people in more than one hundred capital cases in twelve states during this time. Although my work has been heavily oriented toward post-conviction and habeas corpus proceedings, I have been trial counsel in three capital prosecutions, including *United States v. Timothy James McVeigh*, No. 96-CR-68 (D.Colo.) (the Oklahoma City bombing case), where I was lead counsel for the penalty phase and for penalty-related work. I have argued two capital cases in the Supreme Court of the United States, *Ford v. Wainwright*, 477 U.S. 399 (1986), and *Selvage v. Lynaugh*, 494 U.S. 108 (1990), and served as co-counsel on two others, *Hitchcock v. Dugger*, 481 U.S. 393 (1987), and *Tennard v. Dretke*, 542 U.S. 274 (2004).

2. Because of my experience, I have been retained by the Defender Services Division of the Administrative Office of the United States Courts, along with other similarly experienced attorneys, to serve through the Federal Death Penalty Resource Counsel project as an advisor and consultant to court-appointed and federal defender attorneys engaged in the defense of capital cases in the federal courts. Through this project, I work extensively with counsel appointed to represent people charged in federal capital cases. In a report by the Subcommittee on Federal Death Penalty Cases of the Committee on Defender Services of the Judicial Conference of the United States, FEDERAL DEATH PENALTY CASES: RECOMMENDATIONS CONCERNING THE COST AND QUALITY OF DEFENSE REPRESENTATION (May, 1998) – which was adopted by the Judicial Conference – the work of our project was found to be "essential to the delivery of high quality, cost-effective representation in death penalty cases...." *Id.* at 50.

3. When I first became a member of the Federal Death Penalty Resource Counsel project in 1997, I was the project member who had the most extensive experience in handling capital post-conviction and habeas cases. For eighteen years before 1997, capital habeas representation and consulting was my primary work. For this reason, I became the project member who tracked federal capital cases as they moved into 2255 proceedings and consulted most frequently with counsel in those proceedings. I was later joined in this effort by Kevin McNally's law partner, Margaret O'Donnell. When the Capital 2255 Resource Counsel project was initiated in 2005, Ms. O'Donnell and I worked very closely with Ruth Friedman and her colleagues to help the 2255 project in its early work. I have continued to work with the 2255 project as needed.

### *Purpose of this Declaration*

4. I submit this declaration in connection with the request by counsel for reconsideration of this Court's order denying the motion to reschedule the evidentiary hearing in the matter of *United States v. Angela Johnson*, Case No. 01-cr-3046 (N.D. Iowa). I have been informed that Ms. Johnson's § 2255 Motion was filed on October 5, 2009 and an evidentiary

1

hearing has been rescheduled for October 4, 2010 after previously having been set for May 3, 2010, and then July 12, 2010. My understanding is that current counsel are unprepared for an evidentiary hearing and I have been informed that, due to personal and professional issues, their representation of Ms. Johnson has been greatly compromised. I have also been told that Mr. Michael Burt is willing to be appointed to bring his expertise to Ms. Johnson's case. With that background information, I have been asked to discuss, based on my knowledge and experience, two issues: (1) the unique aspects of capital § 2255 litigation that require a thorough and adequate reinvestigation prior to an evidentiary hearing; and (2) how the pace at which Ms. Johnson's case is proceeding to an evidentiary hearing compares to the average capital § 2255 case.

### The Nature of Capital § 2255 Litigation and the Need for a Thorough and Adequate Reinvestigation of the Case Prior to Commencement of an Evidentiary Hearing

5. Despite a rich history of common law behind the traditional habeas corpus remedy, capital § 2255 litigation is a comparatively new field of litigation. The relative novelty of this area of the law has resulted in attempts to analogize it to other, more familiar types of post-trial and collateral litigation, such as direct appeals, non-capital § 2255 proceedings, and capital § 2254 proceedings. However, as this Court is aware, such analogies are inapt, as there are critical differences between these other proceedings and capital § 2255 litigation, but they often lead to unfortunate misunderstandings and expectations in capital § 2255 cases.

6. First, capital § 2255 litigation differs significantly from non-capital § 2255 litigation. As this Court knows, in a typical non-capital § 2255 case, issues regarding trial counsel's ineffectiveness with respect to sentencing usually concern alleged errors in the litigation of various aspects of the United States Sentencing Guidelines. Such claims almost always rely on *legal* argument regarding the applicability or availability of various Guidelines factors to the defendant's case based on the facts determined at trial or as part of a guilty plea. By contrast, the effectiveness of trial counsel's performance in a capital sentencing proceeding cannot be assessed based on the extant trial record, as such claims almost always involve errors of omission, such as an alleged failure to investigate, develop and present particular mitigating information. In capital cases, the prospect of the death penalty affects every aspect of trial, from indictment to pretrial motions to jury selection to instructions and finally, of course, to the penalty phase. Counsel, therefore, must examine every part of the trial against the backdrop of complex capital jurisprudence and practice. Additionally, capital §2255 cases necessarily require identification and investigation of claims related to *the penalty phase* of the underlying criminal trial proceeding, a feature unique to death penalty cases. Moreover, non-capital § 2255 cases frequently follow guilty pleas. By contrast, nearly every capital § 2255 case was preceded by a full trial on the issue of guilt, so the extant record will be more voluminous, and the scope of potential claims greater, than in the typical non-capital § 2255 case.

7. Second, because courts are most familiar with non-capital § 2255 cases (which often raise only record-based claims or allegations of ineffectiveness based on record-based claims, e.g. failure to object), capital § 2255 cases are sometimes thought of as almost a second direct appeal. Although this may be a valid description of many non-capital § 2255 cases,

2

*capital* § 2255 cases differ uniquely.  Representation in direct appeal cases is primarily focused on review of the trial record and legal research to identify potential issues based on the trial court's resolution of various motions and objections during the course of the pre-trial and trial litigation.  By contrast, a capital § 2255 case cannot be litigated competently in the same way; although a thorough knowledge of the trial record, as well as extensive legal research, is a necessary part of habeas litigation, close to none of the cognizable capital post-conviction claims can be identified or developed consistently with the requirements of Rule 2 of the RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS ("§ 2255 RULES") absent investigation into facts outside the existing record.  *See* § 2255 Rules, Rule 2(b)(2) (requiring that the § 2255 motion "state the facts supporting each ground [for relief]").  As this Court is aware, unlike a prisoner on direct appeal, a capital § 2255 litigant cannot establish a claim entitling him to relief absent the development of new facts outside the trial record.  *See Massaro v. United States*, 538 U.S. 500, 504-505 (2003) (holding that ineffective assistance of counsel claims are more appropriately brought in § 2255 proceedings rather than on direct appeal because such claims usually depend on factual development beyond the existing record).  Moreover, my experience has taught me that the investigation of a capital post-conviction case is an on-going process.  Often an area of investigation that at first appears unfruitful will later blossom in light of continuing investigation, providing new and unexpected support for claims.  Even after the initial pleading is filed, investigation and other fact development must continue.  I have found it typical, in a capital post-conviction case, that a substantial amount of investigation and fact development, including locating and interviewing witnesses, will be performed after the initial pleading has been filed and leading up to the evidentiary hearing.

8.     Capital § 2255 litigation also differs from capital § 2254 litigation in critical respects.  A capital § 2254 proceeding obviously is a challenge to a state-imposed conviction and sentence and, as this Court knows, the state courts have the first opportunity to review the case in collateral proceedings.  By the time a habeas petition is filed in federal court, state post-conviction proceedings are complete.  As a practical matter, that means that a § 2254 petitioner has already had the opportunity to thoroughly investigate, consult with experts, and often present evidence at an evidentiary hearing in state court.  The subsequent federal review is focused (and narrowed) by the findings of fact and conclusions of law prepared in state court.  If the § 2254 petitioner does not succeed in state court, she has one year under the federal statute of limitations to further develop her case and seek habeas relief in federal court, and sometimes presenting proof at an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (setting forth conditions for evidentiary hearing in § 2254 cases).[1]  By contrast, a § 2255 litigant only has one forum, and one

---

[1] It is difficult to establish a norm for the timing of evidentiary hearings in § 2254 cases for several reasons.  First, the right to an evidentiary hearing in § 2254 cases, unlike § 2255 cases, was severely circumscribed by the the Antiterrorism and Effective Death Penalty Act ("AEDPA") and thus hearings are relatively rare in § 2254 cases.  Second, in § 2254 cases, claims are frequently sent back to state court for exhaustion purposes so time comparisons based on filing of the original petition can be misleading.  However, based on my experience, I would be surprised if many § 2254 cases scheduled hearings within 1 year of the filing of the petition.  Even in § 2254 cases, where most factual development was conducted in state habeas and the state court previously entered factual and legal findings on the claims, the time between filing of the petition and an evidentiary hearing can be quite long   *See e.g. Eldridge v. Thaler*, 4:05-cv-01847  (S.D. Texas) (petition filed 5/23/05, evidentiary hearing commenced 6/13/07); *Draughon v. Dretke*, 4:02-cv-01679 (S.D. Texas) (petition filed 5/6/02, evidentiary hearing commenced 2/26/04); *Williams v.*

3

opportunity, to develop and present extra-record facts in support of the § 2255 motion – the federal district court.  In other words, the § 2255 district court is the first and last forum in which a capital § 2255 movant can develop any facts necessary to establish a claim for relief.

9.    As this Court also knows, the role of federal district courts is much more constrained in § 2254 cases than in § 2255 cases.  For example, under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal district courts usually lack authority to consider a § 2254 claim that was not previously raised and exhausted in the state court, *id*. at § 2254(b)(1)(A), and with respect to those claims that were previously raised and adjudicated on the merits, the scope of the federal court's review is circumscribed.  *Id*. at § 2254(d)(1) & (2) (federal court cannot grant writ on previously-adjudicated claim unless state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding").  By contrast, the federal district court has much more latitude in § 2255 litigation, both as a forum for fact-development, and with respect to the adjudication of the claims on the merits.[2]

10.    Consequently, I have found that post-conviction investigation in a capital § 2255 proceeding is much more wide-ranging: Myriad potential leads must be followed until all potential sources of information are exhausted.  Most federal courts are not familiar with this aspect of fact-development because, in the more common § 2254 case, such investigation has been completed in state post-conviction.  Because the only practical limitation on potential evidence in a § 2255 case is the completeness and quality of the post-conviction investigation, in my experience it can sometimes be very difficult to predict when an adequate investigation will be complete.  Every lead can potentially open new lines of investigation that can skew even the best-intentioned court schedule.  In Mr. McVeigh's case, for example, the Government discovered more than 3,000 pages of evidence less than a week before his scheduled execution which resulted in a stay of execution.

11.    Capital § 2255 litigation, and the concomitant need for a thorough and adequate reinvestigation of the case prior to commencement of an evidentiary hearing, requires that capital § 2255 litigants be afforded sufficient time and resources to conduct the relevant fact-development.  Ms. Johnson's evidentiary hearing is likely her last opportunity to present evidence challenging her conviction and sentence.  It would be tragic should she lose that one

---

*Thaler*, No. 4:03-cv-01508 (S.D. Texas) (reversed and remanded from circuit court for hearing 5/18/09; evidentiary hearing commenced 8/17/10); *Walbey v. Quarterman*, No. 3:99-cv-00496 (S.D. Texas) (reversed and remanded for hearing 8/7/04; evidentiary hearing commenced 11/14/05).

[2] Additionally, because motions under § 2255 can be based on violations of federal statutory criminal law and criminal procedure codes as well as the federal Constitution, they accordingly are subject to a wider range of potentially available federal legal claims than are state prisoner actions under § 2254.  *See* 28 U.S.C. § 2255(a) ("A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution *or laws of the United States* . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence") (emphasis added).  Thus, a § 2255 investigation must be broader and more far-ranging because the potential cognizable claims can be statutory in nature, rather than exclusively constitutional.

opportunity because of the failures of appointed counsel or lack of sufficient time.  The consequence to Ms. Johnson would be – quite literally – fatal.

***The Average Time Between the Filing of a Capital § 2255 Motion
and the Commencement of an Evidentiary Hearing***

12.     Capital § 2255 litigation is a relatively new phenomenon in the federal courts. Fewer than a dozen such cases have been litigated to completion since 1988, when the first post-*Furman* federal death penalty statute was enacted, compared with the thousands of capital § 2254 cases that have moved through the courts.  As a result, data regarding practices in capital § 2255 litigation – including the average time between the filing of a capital § 2255 motion and the commencement of an evidentiary hearing on the motion – is readily available.

13.     Since 1988, evidentiary hearings have been granted in twelve (12) capital § 2255 proceedings.[3]  Those cases are as follows:

* *United States v. Anthony Battle* (N.D. Ga.)
* *United States v. Alfred Bourgeois* (S.D. Tex.)
* *United States v. David Chandler* (N.D. Al.)
* *United States v. Chadrick Fulks* (D. S.C.)
* *United States v. Orlando Hall* (N.D. Tex.)
* *United States v. David Paul Hammer* (M.D. Pa.)
* *United States v. Norris Holder* (E.D. Mo.)
* *United States v. Louis Jones* (N.D. Tex.)
* *United States v. William Lecroy* (N.D. Ga.)
* *United States v. Arboleda Ortiz* (W.D. Mo.)
* *United States v. James Roane* (E.D. Va.)
* *United States v. Richard Stitt* (E.D. Va.)

14.     Based on publicly available information on PACER, it is possible to identify the precise dates on which the § 2255 motion was filed in each of these cases, as well as the date on which the evidentiary hearing on the motion commenced.  That information, as well as the number of days between the filing of the motion and the commencement of the hearing, is summarized in the table below:

---

[3] In addition to these 12 cases, evidentiary hearings have been granted in two other capital § 2255 proceedings, following remand by the circuit court of appeals.  These two cases – *United States v. Sinisterra* (W.D. Mo.) and *United States v. Keith Nelson* (W.D. Mo.) – have been excluded, because the intervening appeal and remand in those cases complicates the calculation of the time between the filing of the § 2255 motion and the commencement of the evidentiary hearing.  In *Sinisterra*, the Eighth Circuit Court of Appeals issued an opinion reversing and remanding the case to the district court on April 1, 2010, but the district court has not yet scheduled the evidentiary hearing.  In *Nelson*, the Eighth Circuit issued an opinion reversing and remanding the case to the district court on October 27, 2008, and the evidentiary hearing is scheduled to commence on October 4, 2010.

| CASE NAME | DATE ON WHICH § 2255 MOTION WAS FILED | DATE ON WHICH EVIDENTIARY HEARING COMMENCED | NUMBER OF DAYS BETWEEN FILING OF § 2255 MOTION AND COMMENCEMENT OF HEARING |
|---|---|---|---|
| *Battle* | October 1, 2001 | March 18, 2002 | 168 |
| *Bourgeois* | May 14, 2007 | September 20, 2010 | 1,225 |
| *Chandler* | March 20, 1995 | February 10, 1997 | 693 |
| *Fulks* | June 23, 2008 | February 22, 2010 | 609 |
| *Hall* | May 16, 2000 | June 7, 2004 | 1,483 |
| *Hammer* | March 19, 2002 | June 16, 2004 | 668 |
| *Holder* | July 9, 2003 | July 18, 2005 | 753 |
| *Jones* | August 15, 2000 | December 11, 2000 | 118 |
| *Lecroy* | April 22, 2008 | January 11, 2010 | 629 |
| *Ortiz* | December 7, 2004 | November 15, 2007 | 1,073 |
| *Roane* | June 1, 1998 | June 21, 2002 | 1,481 |
| *Stitt* | May 23, 2003 | July 15, 2004 | 419 |

15. The average (mean) number of days[4] in a capital § 2255 proceeding between the filing of the § 2255 motion and the commencement of the evidentiary hearing is 776.58 days.[5]

16. In Angela Johnson's case, the § 2255 motion was filed on October 5, 2009. The evidentiary hearing is currently scheduled to commence on October 4, 2010. Based on these dates, the number of days between the filing of the motion and the commencement of the hearing will be 364 days, indicating that Ms. Johnson's case is actually proceeding to a hearing much more rapidly than the average capital § 2255 case. In fact, should Ms. Johnson's case proceed as planned, it would be the *third fastest* case to hearing, edging out only *Jones* (119 days) and *Battle* (168 days).

17. Based on these data, it is evident that the pace at which Ms. Johnson's case is proceeding to an evidentiary hearing is at odds with the norm in capital § 2255 proceedings. That is, Ms. Johnson's case is moving quite rapidly, both in relative and absolute terms.

---

[4] I have calculated the mean by adding the total number of days (168 + 1,225 + 693 + 609 + 1,483 + 668 + 753 + 118 + 629 + 1,073 + 1,481 + 419 = 9,319) and dividing it by the total number of cases (12).

[5] If one were to exclude the two clear outliers of *Battle* (168 days) and *Jones* (118), in which less than six months elapsed between the motion being filed and the hearing, the average number of days between the filing of the motion and the commencement of the hearing is 903.1 days. (9,031/10).

6

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, this 3rd day of September, 2010.

Richard Burr