# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

ANGELA JOHNSON,                      *
                                     *
              Petitioner,            *
                                     *         No. C 09-3064-MWB
v.                                   *         CAPITAL CASE
                                     *
UNITED STATES OF AMERICA,            *
                                     *
              Respondent             *

## MEMORANDUM IN SUPPORT OF MOTION TO CONTINUE EVIDENTIARY HEARING UNTIL RESOLUTION OF FEDERAL BUDGET CRISIS

### I. BACKGROUND

As this Court is well aware, this case is presently set for an evidentiary hearing to be held in two stages. The first stage hearing is set to begin on March 7, 2011 and is scheduled to be completed on March 13, 2011. The second stage hearing is set to begin on June 13, 2011 and is scheduled to be be completed on June 21, 2011. [Doc. 106]

On February 10, 2011, in an *ex parte* hearing, counsel for Ms. Johnson informed the Court that the current attorney budget had been depleted and sought guidance from the Court. The Court ruled that a supplemental budget could be submitted following the first stage of the hearing, and that in the meantime the lawyers would have to rely on the Court's assurance that reasonable compensation for fees and expensese would be forthcoming. Pursuant to discussions with the Court, defense counsel promised the Court

1

that in an effort to cut costs it would proceed to the hearing without the participation of Mr. Mazell .

Following this hearing and based on the assurances of the Court, counsel then continued to devote all of their energies and resources, and the energies and resources of their associate counsel , investigators and staff, to the preparation of this case for evidentiary hearing. As the Court is well aware, the present case is factually and legally very complex and the lack of work product by predecessor habeas counsel has made the task of preparing this case for hearing even more difficult. The effort thus far expended to get the case ready by March 7, 2011 has been substantial, and putting on the hearing will no doubt involve a considerable amount of attorney, investigative, and expert time and many other expenses, including travel, lodging and meals, copy costs, etc.

In the midst of frantic efforts to meet the current schedule, on February 23, 2011, the Administrative Office of the United States Courts introduced a complicating factor that is beyond the control of Ms. Johnson or her attorneys, or even this Court. More specifically, in the memorandum attached to this motion as Exhibit A, the AO reports to all federal courts that because of the uncertainties surrounding the pendency of a FY 2011 House spending bill, drastic cuts must be made. The memorandum states in part:

> Another area of concern is in the Defender Services account. The House bill funds that account at the FY 2010 level, which is $50 million below the level needed to meet base program requirements. At this funding level, payments to private panel attorneys providing representation to indigents under the Criminal Justice Act would have to be suspended

for the last several weeks of the fiscal year. After consulting with federal defenders about cost reduction options, a hiring freeze was imposed on all federal defender organization positions beginning in January, and within the last few days, guidance has been issued to suspend all discretionary salary increases and cash awards.

The uncertain funding situation has presented the Defender Services account with both immediate and longer term challenges. **The funding provided for panel attorney payments in the current continuing resolution has been exhausted, requiring the suspension of all panel attorney payments until additional funding has been approved.**

(Exhibit A, p. 2)(emphasis in original)

The memorandum goes on to make it clear that it is by no means certain that the present budget crisis will be resolved in the near future:

The Senate is expected to take up the House bill when it returns from its recess on February 28. It is uncertain if the Senate will agree to the funding cuts in the House-passed bill; the President has indicated he would veto the House bill. In addition, the current continuing resolution expires March 4 so it will be necessary for Congress to pass a short-term extension in order to complete work on a FY 2011 full-year appropriations bill. You may have read press reports concerning the possibility of a government-wide shutdown if Congress and the White House fail to agree on terms for extending the continuing resolution. Although Congressional leaders have said they want to avoid a shutdown, we are developing contingency plans in the event a shutdown occurs. I will send out guidance to the courts on operating during such a shutdown within the next few days.

(Id.)

3

**II. Argument**

This Court pursuant to 18 U.S.C. § 3599 has appointed the undersigned counsel to represent Ms. Johnson in the investigation, preparation and litigation of her <u>Corrected, Amended Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody</u> [Doc. 26]. That section provides:

> In any post conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).

18 U.S.C. § 3599(a)(2).

18 U.S.C. § 3599(f) provides that upon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, "the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant and, if so authorized, shall order the payment of fees and expenses therefor..."

18 U.S.C. § 3599(g)(1) provides that "[c]ompensation shall be paid to attorneys appointed under this subsection..."

"On its face, this statute grants indigent capital defendants a mandatory right to qualified [and compensated] legal counsel and related services "[i]n any [federal] post conviction proceeding." *McFarland v. Scott,* 512 U.S. 849, 854-55 (1994). Congress'

4

provision of a right to counsel and ancillary defense services under this statute "reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of 'the seriousness of the possible penalty and ... the unique and complex nature of the litigation.' " *(Id.)*

In the early case of *United States v. Dillon*, 346 F.2d 633 (9th Cir.1965), the Ninth Circuit, relying on a historical analysis, held that an attorney had an ethical obligation to represent an indigent in a 2255 proceeding without payment of a fee, except as may be provided by statute, and that the Fifth Amendment Taking Clause provided no protection for the lawyer. The Eighth Circuit adopted the reasoning of the *Dillon* opinion in *Tyler v. Lark*, 472 F.2d 1077, 1079 (8th Cir.1973). At the time these cases were decided there was no statutory right to compensation for appointed counsel. However, with the adoption of the Criminal Justice Act , the situation changed. See, *Matter of Snyder*, 734 F.2d 334, 339 ( 8th Cir. 1984)("The CJA was a recognition by Congress that indigent criminal defendants should have an opportunity to receive the services of competent counsel. Although the compensation allowed by the Act was never intended to fully recompense the lawyer for the time spent on a case, Congress intended that the amount allowed would at least approach the cost of a lawyer's overhead.")

The constitutional and historical underpinnings of cases like *Dillon* have also been undermined. As recently pointed out by the Iowa Supreme Court in *Simmons v. State*

5

*Public Defender*, 791 N.W.2d 69, 86 (Iowa 2010) in the course of a comprehensive review of the issues raised in this motion:

> Modern scholarship, however, has persuasively discredited the *Dillon* view that historical traditions mandate attorneys to represent criminal defendants for free or for little compensation. See David Shapiro, *The Enigma of the Lawyer's Duty to Serve*, 55 N.Y.U. L.Rev. 735, 740-49 (1980) (noting that the duty in English law was limited to the very group of officers who had extraordinary privileges at court and did not apply to ordinary attorneys); see also [ *DeLisio v. Alaska Superior Ct.*, 740 P.2d 437, 441(Alaska 1987); *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 839-842 (1987) ; *State ex rel. Scott v. Roper*, 688 S.W.2d 757, 762-69 (Mo.1985).

> Further, the notion that the state's obligations can be satisfied indirectly through attorneys volunteering their time and effort arise from the days when a criminal trial was not a long and complicated affair and any generally trained lawyer could step in and handle a case or two without substantial financial sacrifice. Those days are long passed as the criminal law has increased in complexity, and the cost of operating a law office has risen dramatically. [*Makemson v. Martin County*, 491 So.2d 1109, 1114 (Fla.1986) ; *Jewell v. Maynard*, 181 W.Va. 571, 383 S.E.2d 536, 544 (1989) 542. The suggestion in [ *Lewis v. Iowa Dist. Ct.*, 555 N.W.2d 216, 218 (Iowa 1996) that authorities do not support a systemic right-to-counsel claim unless the substantial burden of indigent defense is born by lawyers was inaccurate at the time and is now out-of-step with present day realities in the legal profession.

In line with the sweeping language in *Simmons*, numerous courts have found constitutional flaws in indigent defense systems that provides no or insufficient fees to appointed counsel in criminal cases. As pointed out in *Simmons*, 791 N.W.2d at 80, some courts have invalidated fee caps on grounds that the fee caps amount to a taking of the property of attorneys in violation of due process of law. See, e.g., *DeLisio v. Alaska Superior Ct.*, 740 P.2d 437, 442-43 (Alaska 1987); *Arnold v. Kemp*, 306 Ark. 294, 813

S.W.2d 770, 775 (1991); *State ex rel. Stephan v. Smith*, 242 Kan. 336, 747 P.2d 816, 842 (1987); *State v. Lynch*, 796 P.2d 1150, 1158 (Okla.1990); see also *State ex rel. Partain v. Oakley*, 159 W.Va. 805, 227 S.E.2d 314, 319 (1976). As is also pointed out in *Simmons*, other courts have considered challenges to fee structures on due process and ineffective-assistance-of-counsel grounds. 791 N.W.2d at 81, citing *State v. Smith*, 140 Ariz. 355, 681 P.2d 1374, 1376 (1984).

Examining these cases and many others, the *Simmons* court summarized:

> While the structural ineffective-assistance-of-counsel cases involve multiple theories, there are several themes that run throughout them. First, the cases see a linkage between compensation and the provision of effective assistance of counsel. See, e.g., *Makemson*, 491 So.2d at 1114 ("The link between compensation and the quality of the representation remains too clear."); *Jewell v. Maynard*, 181 W.Va. 571, 383 S.E.2d 536, 544 (1989) (concluding that it is unrealistic to expect appointed counsel to remain "insulated from the economic reality of losing money each hour they work"). Second, they challenge the notion that members of the bar have an ethical obligation to pick up the gauntlet and provide assistance of counsel in light of the state's default. See, e.g., *Makemson*, 491 So.2d at 1114-15 (stating that pro bono implementation is haphazard, is unfairly imposed in practice, and causes attorneys to bear the burden of the state because of the increasing complexity and rising costs of cases); *Stephan*, 747 P.2d at 835-36 (explaining that the obligation to provide counsel for indigent defendants is that of the state); *Jewell*, 383 S.E.2d at 543 (declaring notion that lawyers had obligation to provide services to indigents free of charge has been "decimated" in recent scholarship establishing the narrowness of English tradition and lack of applicability in modern day setting). Third, they regard separation-of-powers concepts as not presenting an obstacle to judicial action to ensure that the right to counsel as guaranteed by state and federal constitutions is effectively honored. See, e.g., *Stephan*, 747 P.2d at 842-43 (finding no separation-of-powers issue in determining reasonable fee for indigent defense); [*Wilson v. State*, 574 So.2d 1338, 1342 (Miss.1990)(Robertson, J., concurring) ("If an adequate courthouse is essential to the administration of justice, so are competent counsel.");

> *Smith*, 394 A.2d at 838 (noting that if the obligation to represent indigent defendants springs from judicial authority, so too does authority to determine reasonable compensation).

791 N.W.2d at 81

Most, if not all of these cases are concerned with implementing the right to the effective assistance of counsel at trial or on appeal. But they are relevant here because in enacting 18 U.S.C. § 3599 Congress has recognized that "*quality* legal representation is necessary in capital habeas corpus proceedings in light of 'the seriousness of the possible penalty and ... the unique and complex nature of the litigation.' " *McFarland v. Scott,* 512 U.S. 849 at 855 (emphasis added). See also, *Harbison v. Bell*, __U.S.__, 129 S.Ct. 1481, 1491 (2009)("In authorizing federally funded counsel to represent their ... clients in [post-conviction] proceedings, Congress ensured that no prisoner would be put to death without meaningful access to the 'fail-safe' of our justice system.")

Defense lawyers and their investigators and experts, like everyone else, have families to feed and bills to pay. In a complex and time consuming capital case like the present one, "it is unrealistic to expect appointed counsel [and their agents] to remain 'insulated from the economic reality of losing money each hour they work'" and under the mandate of 18 U.S.C. § 3599 neither defense counsel nor his agents "have an ethical obligation to pick up the gauntlet and provide assistance of counsel in light of the [government's] default". *Simmons v. State Public Defender*, 791 N.W.2d at. 81. Most

8

importantly, under the statute Ms. Johnson is entitled to "quality" legal representation (*McFarland*) and "meaningful access to the 'fail-safe' of our justice system" (*Harbison*). Because "[t]he link between compensation and the quality of the representation remains too clear" (*Simmons*, *supra* at 81), her legal team should not be forced into a lengthy and costly evidentiary hearing until a funding mechanism is in place.

A continuance of the hearing until the budget crisis is resolved is the least restrictive remedy available to the Court at this time and should be utilized Cf., *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307 (trial court struck the death penalty when county auditor refused to obey an ancillary services funding order in a capital case because of a budget crisis).

For all of the foregoing reasons, this Court should enter an order continuing the evidentiary hearing in this case until the resolution of the recent budget crisis facing Congress.

DATED this 25th day of February, 2011.

Respectfully submitted,

By: s/Michael Burt

Michael Burt
Law Office of Michael Burt
600 Townsend Street, Suite 329E
San Francisco, California 94103
Telephone: 415- 522-1508
Facsimile: 415- 522-1506

9

michael.burt@prodigy.net

Ilann M. Maazel
Emery, Celli Brinkerhoff & Abady, LLC
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
Telephone: 212-763-5000
Facsimile: 212-763-5001
imaazel@ecbalaw.com

Marcia Morrissey
Law Office of Marcia Morrissey
2115 Main Street
Santa Monica, California 90405-2215
Telephone: 310-399-3259
Facsimile: 310-399-1173
MorrisseyMA@aol.com

10

## PROOF OF SERVICE

STATE OF CALIFORNIA      )

                                   )      ss.

COUNTY OF SAN FRANCISCO)

I am over the age of 18 and not a party to the within action; my business address is 600 Townsend Street, Suite 329-E San Francisco, California 94103.

I hereby certify that on February 25, 2011, I electronically filed the foregoing motion with the Clerk of the Court for the United States District Court for the Northern District of Iowa by using the court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

Executed on February 25, 2011 at San Francisco, California.

s/Michael Burt

MICHAEL BURT
*Attorney for Petitioner*

11