8/3/02

TC   Pat Reinert

he will be filing new indictment
~~for~~ correcting dismissed counts and indicting
death penalty factors under Ring

he asked for time to do bill of parts. in
light of new indictment, I agreed.

he wants to resolve case by plea. spoke of
need to clear any deal with families. he seemed
to agree with concept of Rule 11(e)(1)(CC) plea
to term of years arrived at by reduction for
substantial assistance being factored-in.
agreed to travel to DM for meeting since this
was central location for us.

Case 3:09-cv-03064-MWB-LTS   Document 160-2   Filed 03/01/11   Page 1 of 12

Johnson

c/w Pat Prenot, Tom Miller

8/21/02

* ⟶ discussion re: new admin. death committee

- need proffer for ability to sell plea of any kind
- multiple counts.
- lesser sentence than Honken.



years.

→ ex post facto →
→ double jeopardy →

12
(6)

(7)

They would have offered 10-15 years prior
to recovery of bodies.

TC Rogers — going to Honken 9/20

Case 3:09-cv-03064-MWB-LTS    Document 160-2    Filed 03/01/11    Page 2 of 12

Memo: 8/21/02 Plea Discussions

PREPARED BY

DATE

2 pm

@ Dean Stowers office, Des Moines, Iowa

Tom Miller          Pat Reinert.
Thomas H. Miller

proffer — interview tru

polygraph — maybe

Plea → to multiple counts involving
            each victim.
                Title 18 or Title 21 —
                    doesn't matter.

Reinert never specific on MOs. but we'll
fall apart. He claims to want death for
Honken + AJ cooperating but he can also do
double/ joint plea w/ Dustin getting LWOP —

☒ Miller Reflected that he + Pat R. had talked early on
about offering A.J. 10 – 15 yrs for info. leading to
recovery of the bodies. This pre-McVeese of
course suggests to me our high teens / low 20's
offer is not out of whack

PREPARED BY
DATE

WED.
NOON
6/30/04

re: Angela Johnson

Conv. w/ Charlie Rogers

Tom Miller wd. be happy to see a double plea with life imprisonment for Dustin Honken and 30 yrs. for Angela.

Told Charlie Angela needed 20 — would NEVER do 30. He expressed uncertainty as to we could get to 20 under the guidelines

12:28pm

Called Al + brought him up to date. Called Dean — in trial — LM, long message, on his voice mail.

6/30/04

MELLON & SPIES
ATTORNEYS AT LAW

SHARON A. MELLON
LEON F. SPIES

102 SOUTH CLINTON STREET, SUITE 411
IOWA CITY, IOWA 52240-4024

PHONE 319-337-4193
FAX 319-337-2396

July 17, 2004



Mr. Charles W. Larson, Sr.
United States Attorney
P.O. Box 74950
Cedar Rapids, IA 52407-4950

VIA FACSIMILE 319-363-1990 and FIRST-CLASS MAIL

Re:     United States v. Dustin Honken

Dear Mr. Larson:

This letter is to summarize our oral presentation to you, AUSA C.J. Williams, Special AUSA Thomas Miller and AUSA Richard Murphy on July 12, 2004. Of course, this letter and our oral presentation is and was subject to the protections of Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410.

In each of the many public positions you have held in this state, from being a member of the parole board to the director of the Department of Public Safety, you have consistently demonstrated your ability to be fair and compassionate. During the debate concerning reinstating the death penalty in Iowa you have been a voice of reason. When you served as Director of the Department of Public Safety under then Governor Robert Ray, you became intimately aware of his opposition to the death penalty. Once again, we are asking you to address this important issue in the manner we believe is consistent with the leadership role you have in our state. You are one of the few public or private individuals in Iowa who can speak with clarity, experience and authority to the decision makers in Washington regarding the value of a global resolution of this case in a manner that not only does justice but does it in a manner that is consistent with Iowa's history and principles. It is not by accident that Iowa stands as a beacon of fairness. It is because its citizens time and again choose wise, decent and compassionate leaders. We appreciate the opportunity to make this presentation to you, a prime example of such leaders.

During our videoconference with the Capital Case Review Committee, we were asked whether we agreed that the federal death penalty should be administered uniformly throughout the United States. Having given a great deal of thought to this issue, we believe that this type of nationwide uniformity is not necessarily a laudable goal, for the reasons set forth below.

First of all, that type of uniformity is not in keeping with principled conservatism. It is a fundamental conservative principle that, "he governs best who governs least," at least on the

federal level. Conservative philosophy embraces the ability of state and local jurisdictions to deal with issues in light of local culture and mores. Of course, federal criminal statutes are nationwide in scope, but there is no reason that federal officials should not exercise their discretion in a manner consistent with local values. There is no reason why the United States Attorney in Iowa should be expected to behave as if he were in Texas, or vice versa.

The framers of the Constitution recognized the importance of local cultural mores in the criminal law; the Sixth Amendment requires that a federal criminal jury be selected from the state and district where the crime occurred. In fact, throughout the development of the jury system and the grand jury system in Anglo-American jurisprudence, the jury and grand jury have played important roles in insuring that criminal laws are enforced in a manner consistent with local mores.

Moreover, the notion of nationwide uniformity in the administration of the death penalty is not attainable. Federal capital trials in non-death jurisdictions (for example, Michigan, New York, Puerto Rico) do not result in death verdicts, although federal capital trials on similar facts in heavily pro-death jurisdictions like Missouri and Texas sometimes do. As a rule, the actual death verdicts rendered follow local and state norms, not some sort of national consensus.

With regard to death qualifying jurors, which we all know tends to result in conviction-prone juries, there might be more of a problem excluding scrupled jurors where the cultural norms are against the death penalty. Since, we assume, in a non-death jurisdiction there are more jurors who oppose the death penalty, the exclusion of such jurors skews the pool of qualified jurors more than it would in a jurisdiction where the death penalty is regularly used.

With regard to the merits of this case, we remind you that this case is not a "slam dunk" with regard to establishing Mr. Honken's guilt, let alone with regard to obtaining a death sentence. There is no physical evidence which links Mr. Honken to the charged offenses. Rather, the government's case depends on a number of "jailhouse snitches" who are replete with credibility problems. The stories told by these witnesses are at odds with each other and with the physical evidence which does exist. Although we all have tried drug conspiracy cases where such conflicting testimony has sufficed to obtain convictions, murder cases are different. Mr. Rogers recently completed a six-month trial in the Southern District of Illinois where the jury was unable to agree as to the guilt of any defendant where the prosecution case was based not just on the testimony of cooperating inmates, but also on two correctional officers who witnessed at least part of the incident.

While we acknowledge the seriousness of the offenses with which Mr. Honken and Ms. Johnson are charged, including the murders of two children, we note that Terry Nichols, who was convicted of murdering many more children, was spared the death penalty in both federal and Mr.

state trials. Mr. Nichols' trials took place in Colorado and Oklahoma, both states which have had the death penalty in place for many years. It is our belief that in Iowa, where the cultural set against the death penalty is deep and longstanding, even if Mr. Honken is convicted of such serious offenses, at least one juror will hold out for a life sentence. Of course, under federal law, that will result in a sentence other than death.

At our meeting, we referred to mitigating circumstances in Mr. Honken's background. Our mitigation investigation is ongoing, and we ask you to consider those circumstances in light of the information provided by the government in discovery. Mr. Honken was raised by a father who was a criminal, and who raised Mr. Honken to engage in criminal behavior. Mr. Honken has no record of convictions for violent behavior. These offenses occurred a decade ago, and Mr. Honken has not engaged in any violence since that time.

We also discussed our feelings regarding the decedents' families, and offered the services of Ms. Lisa Rickert, our mitigation specialist, to meet with the families if the government thinks it would be helpful. It was our concern for the families which led us early on to consent to the release of the remains for burial, and it was not us but Ms. Johnson's team which delayed that release.

Our view is that families in these circumstances most desire closure, to know that the case is finally over for once and all and to know what actually happened to their loved ones. That need for closure would be met by a negotiated disposition of the case, but not by a capital trial. Even if Mr. Honken or Ms. Johnson were convicted and sentenced to death, there would be a decade of appeals and post-conviction proceedings before any execution. Even an eventual execution would not necessarily bring such closure, as studies following the execution of Timothy McVey demonstrated. On the other hand, a negotiated disposition which culminated in both Mr. Honken and Ms. Johnson accepting responsibility, explaining what happened and sincerely expressing their remorse to the families would go a long way to bringing true closure to the families, and would allow them to begin healing.

We are certain that both Mr. Honken and Ms. Johnson desire to achieve a negotiated disposition in this case, a disposition resolves the charges against both defendants. We have been in communication with Ms. Johnson's counsel and understand that both she and Mr. Honken would enter pleas of guilty if Mr. Honken received a life sentence (or group of life sentences) and Ms. Johnson's sentence totaled twenty years. We are asking you to request and persuade Attorney General Ashcroft to allow you to resolve this case in that manner.

Thank you for your efforts and courtesy in this regard.

Mr. Charles Larson, Sr.
July 17, 2004
Page 4

Yours very truly,

LEON F. SPIES

ALFREDO PARRISH

CHARLES ROGERS

cc:     Mr. Dustin Honken

Monday, 7/24/04
10:20 am
= 10:23 am

[Tel. Conf. w/ C.J. Williams]

Waiting on word from Justice Dept. Sent DOJ a proposal, but not one his office was recommending. (He didn't say, & I didn't ask, what the proposal was.).

10:23 am → then called Dean & Al re: this discussion w/ CJ, & setting up our trial schedule for Dean Stowers → watching Dustin's trial.

Pretrial

August                    16th  18th
                           ↑    ↑
              Al →   M, W, ~~F~~

                                    19 - 20
                                 Thursday + Friday
                                        PAT

              31st →                      DAILY TRANSCRIPT

                              23-25
Aug. 23rd → Good week for Dean    Fridays off for jurors.

Aug. 26-27 → Al        Jennifer — Bennett's

Al → 8/30
         AUG.
Pat → 31 - Sept. 3

Case 3:09-cv-03064-MWB-LTS   Document 160-2   Filed 03/01/11   Page 9 of 12

7/24/03

Thursday

11:05 am

Conf. Call w/ Leon Spies, Charley Rogers, Al Parrish, Al Willett, Dean Stowers, + Rich Murphy     (Cedar Rapids, AUSA)

Main Justice → hasn't responded to plea proposal

Spies → Local US Atty's Office

Rich → Mr. Larson in Bagdad.
Judy Whetstine, 1st Asst, is out — China Wall
                                    Miller
C.J. + Tom involved in trial prep.
        ^

Leon asked Rich what it would take to settle this case. Rich → DOJ wants offer from us — then they'll review.
DOJ wants Life + Life

#

/ This guy, when I last met him, was an

asshole, he still is.

Charley says

Tom Miller → will get life anyway in State court.

So, therefore Angela shd. be interested in plea to life.

Charley → puts Q to Rich, that Honken should be willing to plead to life and it is unfair not to let him plead. Otherwise, requiring Angela to also plead in order for

Honken!

Al Parrish → goes on + on about why Angela should plead

"Time is of the essence."

Rodney King → "Let's all work together."

Tom Miller
Rich → Has no authority to speak for the U.S.

① McNese appellate issue
② DOJ not decided or proposal already submitted.
③ Iowa only has a legitimate interest in life + Life.
If there, shd. relieve fed. considerably.

entitled to

for D.H.

D.O.J. considering life plus 20 for A.J. —
No response to this yet.

[This conference a complete waste of time. Murphy has
no authority to bind DOJ, doesn't know
what DOJ will want —— this whole thing
a fishing expedition for the Hawken defense
team.

Murphy → Doesn't think any deal for 20 years for
A.J. is acceptable to gov't.

Dean Howard → tells everyone this is pointless. If
Murphy has no authority, then what's the point.

END the conf. call.

11:29 Follow-up conf. call w/ AJ + Dean till 12:20pm

8/12/0