IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

ANGELA JOHNSON, )
)
      Petitioner/Defendant, )     No. C 09-3064-MWB
)
  vs. )
)
UNITED STATES OF AMERICA, )
)
      Respondent/Plaintiff. )

## GOVERNMENT'S RESISTANCE TO PETITIONER'S MOTION TO COMPEL DISCOVERY

The United States of America resists Petitioner's motion to compel discovery of internal government communication and attorney work product.

## I.    BACKGROUND

Petitioner filed her original petition on October 5, 2009.  On October 12, 2009, Petitioner provided the government with a "First Request for Discovery."  The first item of discovery included in this request was "all internal notes, memoranda, minutes concerning plea offers extended, plea offers received, or discussions of plea offers concerning either Angela Johnson or Dustin Honken within the office of the United States Attorney for the Northern District of Iowa" and a similar request for such communication "between the office of the United States Attorney for the Northern District of Iowa and the Department of Justice."[1]  The government told Petitioner's

_____

[1] Apparently, Petitioner never filed this request.  While Petitioner sought an extension of time to file discovery requests, Petitioner never filed a discovery motion,

1

lawyer, Michael Lawlor, that it would not produce documents pursuant to that request because it considered them privileged. Petitioner did not file a motion to compel production.

Rather, Petitioner waited until February 3, 2011, to again request internal government communication regarding plea negotiations. The government responded the same day to the request, again indicating it would not produce the documents because it considered such documents privileged. While in the meantime Petitioner filed a motion to continue the evidentiary hearing, she did not file a motion regarding this discovery request until yesterday, March 1, 2011, six days before the hearing in this matter.

## II.    ARGUMENT

Petitioner asserts she received ineffective assistance of counsel because her attorneys did not obtain a plea to less than death. To prevail on this claim, Petitioner must establish that her attorney's conduct fell below an objective standard of reasonableness, and that she suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The evidence will also show that Petitioner has always, and to this day, maintains her innocence. Thus, there could never have been a factual basis for a guilty plea. The evidence will also show that the government required, as a precondition to making any plea offer, that Petitioner provide an honest proffer about her participation in the murders. This, the Petitioner steadfastly refused ever to do. Nevertheless, Petitioner claims her counsel were ineffective for not securing a plea

nor sought a further extension of time for filing discovery motions after the deadlines expired.

2

deal.

Petitioner does not claim a need to obtain internal government work product in order to prove her counsel's performance was deficient, but does claim it is necessary to prove she was prejudiced. The government never provided Petitioner a plea offer. Petitioner never offered to plead guilty until on the eve of trial, and even then it was a conditional indication of a willingness to enter into a plea agreement if the government would take the death penalty off the table. Petitioner claims, however, that statements made by government counsel about what the government might accept as part of a plea deal constituted a plea offer. It appears that Petitioner relies on statements made by government counsel after June 2001 (see Memorandum in Support of Motion to Compel ("Memo"), pages 10-11). After June 2001, only the Attorney General could authorize a plea.

Petitioner claims a need to discover internal government communication because "if" there is documentation showing the United States Attorney's Office was recommending acceptance of a plea involving a sentence of less than death, it "would bolster petitioner's plea claim." (Memo, at 16). It is irrelevant, however, what the United States Attorneys' Office was recommending because its recommendation was not binding on the Attorney General. Even if the United States Attorney's Office had urged the Attorney General to accept a plea to less than death, it does not support Petitioner's position. The Attorney General was free to reject the recommendations of the United States Attorney's office.

Petitioner further claims that, "if" there is "official documentation . . . showing that it was not always the policy of the Department of Justice to require the approval of the

3

Attorney General for the acceptance of a plea in a death eligible case, then the existence and effective dates of that policy become highly relevant to the resolution of Petitioner's plea claim." (Memo, at 17). Petitioner's motion to compel, however, does not seek production of Department of Justice Policy. Rather, it seeks internal notes and communication. Access to the government's internal communication regarding plea negotiations will not provide Petitioner with "official documentation" reflecting Department of Justice policy.

Petitioner does not otherwise articulate how discovery of the government's internal communication would demonstrate that she was prejudiced by her attorneys' alleged ineffective assistance of counsel.

Defendants are not entitled to discovery regarding information or documents pertaining to the Department's protocol process because the protocol does not create substantive or procedural rights. See, e.g., *United States v. O'Reilly*, 545 F. Supp.2d 630, 644 (E.D.Mich. 2008) (rejecting defendant's request for discovery regarding protocol process); *United States v. Frank*, 8 F. Supp.2d 253, 284 (S.D.N.Y. 1998) (same); *United States v. Feliciano*, 998 F. Supp. 166, 169 (D. Conn. 1998) (same); *United States v. McVeigh*, 944 F. Supp. 1478, 1483 (D. Colo. 1996) (same); *United States v. Boyd*, 931 F. Supp. 968, 973 (D.R.I. 1996); *United States v. Roman*, 931 F. Supp. 960, 964 (D.R.I. 1996) (same). Internal Department of Justice documents generated by its attorneys regarding the decision-making process of whether to make or accept a plea offer are protected by the deliberative process and attorney work product privileges. Cf. *United States v. Taylor*, 608 F. Supp.2d 1263, 1269 (D.N.M.

4

2009) (holding that both the deliberative process and work product privileges applied to the prosecution memorandum and the death penalty evaluation form).

In rejecting a defendant's attempt to obtain discovery of internal Department of Justice documents relating to its decision-making on a capital case, the *Frank* Court explained the "strong policy reasons" for maintaining the confidentiality of the internal Department of Justice decision-making process regarding capital cases:

> There are strong policy reasons in favor of keeping confidential the internal deliberative process through which the Government decides whether to use its prosecutorial power to seek the most severe punishment possible. Through an unrestrained and multi-level review, which gives an opportunity for defense counsel participation at each stage of the deliberative process (both at the local United States Attorney's Office and at the Department of Justice in Washington, D.C.), prosecutors are encouraged and required to evaluate carefully the strengths as well as the weaknesses of their cases, along with the factors in favor of and opposed to the imposition of the death penalty. Defense counsel are given the opportunity to present to the Department of Justice any evidence of racial bias in the Government's administration of the federal death penalty. *Id.* [United States Attorney's Manual] at § 9-10.050. In determining whether to seek the death penalty, Government officials are instructed to consider any mitigating factor reasonably raised by the evidence in the light most favorable to the defendant and to satisfy themselves that there is sufficient admissible evidence of aggravating factors to both obtain a death sentence and to sustain it on appeal before filing a Notice of Intent to Seek the Death Penalty. *Id.* at § 9-10.080. Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty.

*Frank*, 8 F. Supp.2d at 284.

Petitioner seeks to go on a fishing expedition into the internal communications reflecting the Department's decision-making process in the vague hope of finding something there to bolster her conjectural claim that, had she offered at any time to plead guilty, the Department of Justice would have accepted such a plea.  The fact is,

5

she never has admitted guilt, never has offered to plead guilty, and the Department never made her a plea offer.  The strong policy interest in maintaining the confidentiality of internal Department of Justice communication regarding whether to seek the death penalty substantially outweighs Petitioner's conjectural interest in the possibility of finding something therein that would bolster her claim.

Petitioner asserts the government waived any privilege it had by its response to her motion.  (Memo, at 18).  The government's resistance to Petitioner's motion asserted that Petitioner cannot show prejudice because she cannot show she would have pled guilty.  (Government's Resistance, at 25).  The government also argued defendant cannot demonstrate that the government would have accepted a sentence less than death, even if she would have entered a guilty plea.  (Government's Resistance, at 26).  The government elaborated on this point, emphasizing that defendant offered nothing but conjecture that the Attorney General would have authorized a plea to less than death.  (Id.).  Petitioner claims this is a "factual assertion." (Memo, at 18).  To the contrary, it alleges no facts.  Rather, the government pointed out the Petitioner lacked facts to support her assertion that, had she offered to plead guilty, the offer would have been accepted.  The government's response did not cite internal government communication in support.  It did not rely on internal communication to argue the Attorney General would not have accepted a plea.  Rather, it simply pointed out the Petitioner's lack of evidence and, hence, conjecture, to support her position. Thus, the government's response did not put into issue internal communication within the United States Attorney's Office, or between the United States Attorney's Office and the Office of the Attorney General or other sections of the Department of Justice.

6

Petitioner asserts the government also waived any privilege when the undersigned AUSA "explicitly told Mr. Berrigan that the United States Attorney's Office was not recommending that D.O.J. accept the plea then under consideration." (Memo, at 19). Petitioner previously referenced this note, indicating "Mr. Williams let slip that his office was not even recommending that D.O.J. accept the plea." (Memo, at 12). The "plea" to which Petitioner refers was an offer Honken's counsel floated about a proposed joint plea by Honken and Johnson in which Honken would plead to a life sentence and Johnson would serve 20 years. (Id.).

Petitioner is inaccurate when she states the undersigned told Berrigan the United States Attorney's office was not recommending the plea offer. The complete Berrigan note says: "Waiting on word from Justice Department. Sent DOJ a proposal, but not one his office was recommending. (He didn't say, & I didn't ask, what the proposal was.)." Thus, the undersigned did not "say" and Berrigan "did not ask" what the proposal was that the United States Attorney's Office sent to the Justice Department. No internal communication was thus divulged to defense counsel. Moreover, this statement was with regard to a plea offer proposal made by Honken, not Petitioner.

Petitioner likewise claims that Tom Miller's comment that "D.O.J. was considering 'life plus 20 for A.J.' but that 'D.O.J. wants life + life'" constituted a waiver. (Memo, at 20). Petitioner asserts this note of what Berrigan claims Tom Miller said "disclosed both the local recommendation and what D.O.J. wanted." Petitioner presumes, without a factual basis, that Tom Miller was conveying internal Department of Justice communication. Assuming Tom Miller made the comment, Petitioner is wrong that it conveys the "local" recommendation. Moreover, it does not purport to be

7

based on personal knowledge, or reference to internal Department of Justice communication.  Tom Miller was a Special Assistant United States Attorney brought in on this case.  He was not an employee of the Department of Justice.  His opinion of what "D.O.J." wanted was just that, an opinion.  Moreover, and again, this statement was with regard to a plea offer proposal made by Honken, not Petitioner.

Finally, the Court should reject Petitioner's assertion that the Court should review the documents *in camera* to see if there is anything that would "bolster" her argument. Defendant relies on *United States v. Kee*, 2000 WL 863119, *4 (S.D.N.Y. 2000), for the proposition that such *in camera* review is appropriate.  *Kee* did not involve a discovery request seeking internal Department of Justice attorney work product reflecting communications about plea negotiations in a capital case.  Rather, the defendant in *Kee* claimed that the decision to seek the death penalty in his case was arbitrary and asserted, in part, that the United States Attorney never advised the Attorney General that the defendant did not personally commit the murder.  The district court requested the government provide for *in camera* review only "documents sufficient to show whether the evidence of this sort was in the Government's possession but not included in the Government's submission to the Attorney General."  This was a narrow request for documents showing what information was in the government's possession, not an order for *in camera* inspection of all internal communication within the Department of Justice regarding plea negotiations.

Moreover, all the policy reasons supporting the confidentiality of the internal communication within the Department of Justice continue to militate against disclosure

8

of that internal decision-making communication, even *in camera*.  If the Department of

Justice's internal communication is to be subject to judicial inspection, it would chill the

"open, frank and fair" discussion between the attorneys within the Department of

Justice.  *Frank*, 8 F. Supp.2d at 284.

## III.    CONCLUSION

For the reasons set forth above, the United States respectfully requests that the

Court deny Petitioner's motion to compel discovery.

Respectfully submitted,

STEPHANIE M. ROSE
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
401 First Street SE, Suite 400
Cedar Rapids, Iowa 52401
319-363-6333
(Fax 319-363-1990)
CJ.Williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on March 2, 2011.

UNITED STATES ATTORNEY

BY:  s/ S. Van Weelden

COPIES TO: Counsel of Record

9