# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

ANGELA JOHNSON,

        Petitioner,

vs.

UNITED STATES OF AMERICA,

        Respondent.

No. C 09-3064-MWB
(No. CR 01-3046-MWB)

**ORDER**

_____

This case is before me on reserved portions of petitioner Angela Johnson's March 1, 2011, Motion To Compel Discovery Or *In Camera* Inspection Of Governmental Communications Relevant To Claim III A.1 Of The Corrected, Amended Motion Under 28 U.S.C. § 2255 (docket no. 160). In her motion, Johnson originally sought five categories of evidence related to the prosecution's position in plea negotiations. By Order (docket no. 162), filed March 2, 2011, I granted the motion to the extent that I ordered the respondent to produce the documents in category (1)—that is, any correspondence or memoranda by members of the United States Attorney's Office for the Northern District of Iowa directed to defense counsel for Johnson or Honken relevant to plea negotiations in this case—which the respondent had agreed to produce. However, I reserved ruling on whether respondent must produce the documents in categories (2) through (5), either to Johnson or to the court for *in camera* review, until I had heard evidence about whether Johnson was ever amenable to a guilty plea, what steps, if any, trial counsel took to attempt to encourage Johnson to consider a guilty plea or to obtain from the prosecution a plea agreement to a sentence other than death, and whether the prosecution ever made any plea offers. After the first part of the evidentiary hearing on Johnson's § 2255

Motion, held on March 7 through 12, and 14 through 15, 2011, and further review of the parties' submissions on this motion, I am now prepared to rule on the reserved parts of the motion.

The remaining categories of information at issue are the following: (2) any correspondence or memoranda by members of the United States Attorney's Office for the Northern District of Iowa directed to Main Justice relevant to plea negotiations in this case; (3) any correspondence or memoranda by Main Justice directed to members of the United States Attorney's Office for the Northern District of Iowa relevant to plea negotiations in this case; (4) any correspondence or memoranda between members of the United States Attorney's Office for the Northern District of Iowa relevant to plea negotiations in this case; and (5) any correspondence or memoranda by Main Justice directed to members of the United States Attorney's Office for the Northern District of Iowa relevant to the date of when there was any change in policy regarding acceptance of pleas in death eligible cases.

Johnson argues that the remaining categories of information, like the first category, are directly relevant to rebutting the respondent's factual assertions that (1) there is no showing that the prosecution would ever have agreed to a sentence less than death; (2) there is nothing but conjecture to suggest the Attorney General of the United States would have agreed to take the death penalty off the table in exchange for a guilty plea; and (3) "[o]nly the Attorney General of the United States has the authority to authorize a plea offer in a death-eligible case." The respondent argues that the prosecution simply never made a plea offer to Johnson nor is there any evidence that it would have done so without a full and truthful proffer by Johnson about her participation in the murders, which she has never been willing to make. The respondent also argues that internal government communications are irrelevant, because no recommendation from the United States

2

Attorney's Office for the Northern District of Iowa was binding on the Attorney General, who had ultimate decision-making authority with regard to any plea offer. More generally, the respondent argues that internal documents generated by attorneys in the Department of Justice and the United States Attorney's Office for the Northern District regarding the decision-making process of whether to make or accept a plea offer are protected by the deliberative process and attorney work product privileges. The respondent denies that there has been any waiver of any applicable privilege as the result of the respondent's response to Johnson's § 2255 Motion.

I agree with the respondent. Much of the information in the remaining categories is simply irrelevant, where there is no showing that anyone other than the Attorney General had ultimate authority with regard to any plea offer in a capital case. *See* FED. R. EVID. 402. Moreover, if somehow relevant, the information in these categories is subject to work product and/or deliberative process privileges. As the First and Seventh Circuit Courts of Appeals have observed in other contexts, "'[F]ederal judges may not insist that prosecutors reveal deliberative or pre-decisional materials,' but must instead 'review outputs.'" *See In re United States*, 441 F.3d 44, 63 (1st Cir. 2006) (quoting *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005)). The requested materials are subject to various privileges. *See United States v. Zingsheim*, 384 F.3d 867, 871-72 (7th Cir. 2004) ("The attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government. See, e.g., *Swidler & Berlin v. United States,* 524 U.S. 399, 118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998); *In re Grand Jury Witness,* 288 F.3d 289 (7th Cir. 2002) (when legal advice is given to or for the benefit of a governmental body, it rather than an individual officeholder enjoys the benefit of this privilege). The work-product privilege applies to many other discussions between prosecutors and investigating agents, both state and federal. See, e.g., *FTC v. Grolier*

3

*Inc.,* 462 U.S. 19, 103 S. Ct. 2209, 76 L. Ed. 2d 387 (1983). The deliberative-process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. See, e.g., *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975). And the executive privilege shields recommendations to high-ranking officials. See *Cheney v. District Court,* 542 U.S. 367, 124 S. Ct. 2576, 159 L. Ed. 2d 459 (2004); *United States v. Nixon,* 418 U.S. 683, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974)."); *United States v. Taylor*, 608 F. Supp. 2d 1263, 1269 (D.N.M. 2009) (finding deliberative process and work product privileges applicable to prosecution materials relating to decision to seek death penalty); *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998) (same). I find no waiver of any applicable privilege.

THEREFORE, petitioner Angela Johnson's March 1, 2011, Motion To Compel Discovery Or *In Camera* Inspection Of Governmental Communications Relevant To Claim III A.1 Of The Corrected, Amended Motion Under 28 U.S.C. § 2255 (docket no. 160) is **denied** as to requested information in categories (2) through (5).

**IT IS SO ORDERED.**

**DATED** this 13th day of April, 2011.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA

4