GOVERNMENT
EXHIBIT
J J
09-CV-3064 MWB

PREPARED BY   P.L.
DATE

FED. D.P. CONF., SALT LAKE CITY, UTAH
Nov. 5-6, 2004
Little America Hotel

8:45 am

EXPANDING THE HORIZONS OF MITIGATION
by Dick Bur

Pillar #1 → Looking Back Thru Client's Life
Searching for What Went Wrong
— how did this person get to this point
— why did this happen

Archeology of our client's life — sifting through
the dust of our client's life.

Pillar #2 → Looking at What Went Right —
how, at times, our Clients have done Right
Poem → "To Create an Enemy" by Sam Keane(?)

Client is not just a disabled, abused, burnt person.
— this is part of mitigation that
provides jury w/ who are client's are,
what kind of person she is NOW

Pillar #3 → PRESENT MITIGATION. What is the
good that client is doing NOW. Maybe

JJ-P01

client is doing _well_ in prison, getting along w/
people, stuff, etc....

Can be more than client not being a problem —
maybe client can become an asset (teacher
A.A.D. to other inmates).

Pillar #4 → The Future. Notion is that
this person, who has had problems in the past,
has some insight now, and will make better
decisions in the future.

This person in the future will have redemptive
qualities. It's much the same as if we
are representing a juvenile —— here are the
qualities, Judge, that will be valuable to us all
in this client's future.

Pillar #5 → Outreach to V's. How do we
mitigate the crime?
We face up to it, acknowledge it.
Lives taken without reason, w/ holes in V's
lives, with emptiness that nothing will heal
them.
Approaching V's w/ idea that we don't want
anything from them, other than to acknowledge

JJ-P02

the incredible loss & pain the V's families have
suffered. To explain that we don't want to do
our job in a way that causes them more pain.

9:15 am   END Dick Barr.

THE FED. D.P. in 2003-2004   by Kevin McNally

89 Va, L.R.
1497   article by Judge Gleason

8ᵗ Cir. rejecting *Hayner* (TN) Instruction —
"you never have to give death"

John Williams — Jeff City atty.

11-5-01
10:30 am

## LITIGATING NEW RULE 12.2 MENTAL HEALTH ISSUES

by (1) David Bruck, (2) Julie Brain + Lisa Greenman
└ Fed. Defender's Off.
in Balt., Md.

Mental Health requirements:
(a) thorough social history
(b) experts to interpret, explain the findings,
the symptoms, + how this illness
makes client different from the rest of us

(Julie does case study — one of her cases — lecture.)

Scale for Assessment of Thought, Language +
_____ Disorders

✸ Bruck makes excellent pt. → Rule 12.2 is not a discovery
tool for gov't, or a way to drum up additional
aggravators — it is a _rebuttal_ evaluation,
done only to keep Δ's evaluation honest.
It allows the gov't the opportunity to _Rebut_ what
Δ affirmatively puts on — that's it!

Lisa Greenman

There should be nothing going on in gov't rebuttal eval.
that def. atty doesn't know: what measures will gov't take, what instruments
are to be used ", topics will be covered,

JJ-P04

Her advice — be aggressive in protecting the client, + the information you have.

✱ Angela Johnson → ==If we keep Bill Logan from interviewing AJ on the murders==, will that prevent (the) gov't from

❀ File a motion to seal the Notice of D under Rule 12.2 ! No Reason that this shd. be public — encourages speculations by public as to D's mental ~~bad~~ health, what ~~shd~~ evidence might be presented. Bad idea.

❀ Request to designate "Firewalled" prosecutors — the prosecutors handling the case shd. No absolutely Nothing! Order shd. have names of everyone authorized to see info.

❀ See sample orders in Kenyones, + Sampson cases.

There are VERY GOOD ORDERS! Get Them!

JJ-P05

See <u>Beckford</u> case on what disclosure is absolutely required.

— No diagnosis necessary

— No need to give basis of defendant's experts.

<u>Faulkr</u> case Notice read.

Dr. X, a neurologist from U. of _____, who will testify that ⊗ has cognitive deficits and other neurological impairments.

<u>Presence of Counsel</u>

Faulkr order

Get Notice of What Testing Gov't will do, + object to those tests.

Chance to

※ <mark>Don't do personality testing, + gov't won't be able to either,</mark>

※ <mark>The whole idea is to limit what gov't can do to pure rebuttal.</mark>

Get infor. on what gov't expert can talk to your client about.

✱ Move that Govt <u>not</u> get to see the govt
evaluation until:

① you're in penalty phase

and ② defense have seen gov't report,

and ③ defense has, after ① + ②, to still
go forward + ~~present~~ present mental health
evidence anyway.

<u>Location of Gov't Evaluation</u>

Unless it's at same place as where
your ~~expert~~ saw client, then gov't
should not get a superior opportunity to
observe the client.

Mc Clure Order also <u>very</u> good.

(This gal not a great <u>speaker</u>, but she sure has
<u>great</u> info... Check the
project's website for all these orders,
David Friedman's mental health mitigation
guide, + other good stuff.

✱✱✱ →

✱ Do we want actual mental health testimony? That is, could a social worker give outline of ∆'s social history without offering testimony on mental health diagnosis? In other words, if you keep Logan off the stand + put up Mary Goody to discuss the prior childhood + history of Angie Johnson, does that avoid Rule 12.2?

Brick says "yes" — Rule says "mental health" testimony.

12:10pm   END

JJ-P08

PREPARED BY

DATE

FRIDAY
11-5-04
1:15 pm

**THE NEIGHBORHOOD AS MITIGATION**

by
DAVID FREEDMAN

Social Institutions
Neighborhood
Family
Client

Ecological System (Model)

## NEIGHBORHOOD EFFECTS

Specifically density of poverty (if 40% below gov't poverty level,
that's concentrated poverty)

— clustering of poor neighborhoods
— % of vacant houses
— residential segregation
— poverty rates
— unemployment rates
— access to services (medical, employmt, etc)
+ transportation

Collective Efficacy — see CD. by Sampson, Morenoff +
Gannon-Rowley (2002)

belief of mutual trust, interaction, and feelings of
being a community of friends

(cont.)

Case 3:09-cv-03064-MWB-LTS    Document 245-40    Filed 05/05/11    Page 9 of 24

JJ-P09



**CLOSING** ✳ Gov't says D made a choice to commit crime,
choice to murder. It's an individual
choice (not destined to happen from
background).

— We know poor people commit more thefts — b/c of
their environment, their background, they're need.
It's Less of an individual choice to steal a bike or
a car if you're poor & not able to afford either.
Social Efficacy measurements:

— social participation (voting, PTA)
— vacancy/turnover in housing
— public assistance rates
— exposure to violence
— health records
— emergency response times


⚘ Great chart comparing birth rates, deaths, arrests
+ several more special factors for Greenmount
Avenue vs. City of Baltimore as a whole
**JAMAL SHAKIR** Very effective chart.
We could use something like this for Jamal's
case.

JJ-P10

**JAMAL SHAKIR**

Find the person who got _OUT_ of the neighborhood. This is the guy who can tell the jury about the break he got that enabled him to get out — and how your client didn't get that break.

**TAMAL HAKIR**

I bet this guy knows a lot about South Central LA. Talk to him about JAMAL's case!!

Advantage of the Neighborhood as Mitigation

— It differentiates your client from others.
—  "   helps humanize your client.
—  "   can be quantified (w/ statistics), & is therefore true & credible.
— Allows defense to talk about race & class in a new & different way. It's more than racial discrimination

JJ-P11

CAPITAL CASE COSTS — Q's BY JUDGES

Small Group Session → PLEA DISCUSSIONS UNDER ASHCROFT

Skip Gant + Jay T. McCamic

5 Stages of Grief :    by Kubler-Ross
        Denial
        Anger
        Bargaining
    Depression
        Acceptance

(* Angela made it to depression, HER attempted suicide, but not to acceptance).

WHAT TO DO FOR ANGELA :
    ① Contact Visit w/ Mellissa + MarVea

JJ-P12

### LEGAL DEVELOPMENTS IN 2003-2004

Joining Aggravators to Statutory Requirements of Death-Eligible Offense is a HUGE PROBLEM!

Bifurcation of Penalty Phase

recent case in Charlottsville

✻ Ask Dean to talk to DAVID BRUCK about this!

✻ Good Cases → See U.S. v. Gonzalez (D. of Conn.)

U.S. v. Green (J. Nancy Gertner) → Severance Cas

U.S. v. Perez → another good severance case.
(J. Atherton)

U.S. v. Ramon case in Puerto Rico → has to do w/ gov't ability to throw somebody in SHU (Special Housing Unit). Couldn't do it just because ▵ was death-eligible ▵. Throwing people in SHU for NO reason deprives ▵ of 8th A. right to provide Skipper evidence (good jail/prison conduct).

Deck v. Missouri → U.S. Sup. Ct. grants cert. to determine whether trial ct. can shackle ▵



at penalty phase for absolutely no reason other than it was a retrial after D had gotten death at first trial.

<u>U.S. v. Peoples</u> (8th Cir.) → 8th Cir. says D can be <u>death</u> retried after successful appeal where in first case D was charged capitally, but gov't waived death in the first trial.

<u>U.S. v. Ferraby</u> (4th Cir. 2003) → death notice must be filed a reasonable time b/4 trial & this <u>right</u> is independently appealable if not provided. If circuit decides notice was insufficient time wise, remedy is dismissal of death notice, <u>not</u> a delay in the trial to get ready.

COPY

<u>U.S. v. Sampson</u> (J. Wolf) → 250 pg. memorandum in F. Supp. 3d 166 (66 pages body opinion). 335 F. Supp 2d 166

testimonial hearsay is inadmissible unless
① witness is unavailable, <u>and</u>
② D had a prior opportunity to cross-examine the witness.

JJ-P14

Good habeas case

     Banks v. Dreadkey (Texas decision) 5th Cir. or Sup. Ct. ?

     Ct. discusses availability of prosecutor's prep. notes, in this case a transcript, to the defense in discovery.

Angela Johnson      File a motion for the prosecution's notes of witness preperations, and information about how, where when + how long

See Tennard case from U.S. Supreme Ct. — Upholding Penry and Lackett.

9:05 am END.      (V. gd. session)

P. Berrigan
11/2/04

p. 16.

1-6-04
9:05 am

## UNDERSTANDING POVERTY

Dr. Elizabeth Beck + Tim Sullivan

<u>What jurors think of the poor:</u>

– poor are lazy, unwilling to work
– " " unwilling to delay gratification
– " engage in irresponsible sexual behavior
– " are unwilling to play by the rules

– poor lack initiative + have a sense of
entitlement

Book → <u>When Work Disappears</u>, Jason dePavo
Wilson's book

As lawyers, we have to deconstruct all these
mistaken beliefs. How to do that is the challenge.
– if client worked, stress the difficulty of
that, how hard just to get there every day
given her environment

9 of 10 poor African Americans live in neighborhoods
that are 90% poor (below poverty level).

Case 3:09-cv-03064-MWB-LTS    Document 245-40    Filed 05/05/11    Page 16 of 24

JJ-P16



How to tell our client's story of Poverty:

— don't use the word "poverty". It's a loaded term that will cause the jurors to compare + contrast their life to your client's, or somebody else's life to your client's life.

— need to describe your client's daily existence in graphic, real + truthful narratives

— emphasize universal themes of empathy — such as food

— avoid loaded terms "section 8 housing", "welfare", "single mom"

— NEVER even SUGGEST that being poor is an excuse for committing a crime, particularly murder.

Think about having questions on JUROR QUESTIONNAIRE concerning the juror's views on the poor + poverty.

Think of a ranking Q: "IN describing the attributes of poor people, rank the terms below from one to five on what you believe best describes the poor people you know of (1 being most accurate)

lazy ——

sense of entitlement ——

—— unwilling to work

engages in irresponsible sexual behavior ——

unwilling to delay gratification ——

Ask questions of the investigating cops about the poor, the poverty of the neighborhood, facts you'll want to advance later in penalty phase.

11/4/04

END. 10 AM

JJ-P18

11/6/04
10:45am

JURY SELECTION in D.P. CASES

by DAVID BRUCK &
JOHN HOLDRIDGE

Website → Capdefnet.org

Capital Jury Project
① guilt issues predominate in penalty phase
② jurors tend to assume aggravating C's require the death penalty.
③ misunderstand & fail to apply mitigation

Witt → automatically no death or juror is substantially impaired in ability to give death.

Morgan ⇒ automatic no life

↳ fails to consider issue if whether jurors are substantially impaired in honestly considering a life sentence

State v. Miller (Louisiana)

LAW DOUBLE STANDARDS
(1) Witt → gov't can challenge based on facts of case.
(2) Morgan → Δ cannot challenge based on facts of case or even Q about facts of case.
but see State v. Ross

JJ-P19

Excellent discussion in <u>Simpson</u> case on jurors obligation

<u>Tennard</u>, 124 S. Ct. 2562 (2004) → Supreme Ct. found impaired intelligence to be a mitigating circumstance & <u>must</u> be considered as mitigating — not optional.

✳ Think about a <u>chart</u> for use in Angela's voir dire —— a ROAD ~~To~~ LIFE chart.

Mitigating factors
are factors tending to support a life sentence

Q→ Wd. you ~~pros~~ have a difficult time voting for a life sentence if government proved a statutory aggravating factor.?
If yes, need to follow up with:

— no matter what mitigating evidence was presented?

JJ-P20



If D intentionally kills
do you think his life story is irrelevant to whether
he should get the death penalty
— even if D not insane,
not self-defense, or

Some people think adults are responsible
for their actions and that mitigating
factors are just an excuse.
Do you feel that weigh?

If we prove D had mental impairments, even
if she is __not__ mentally retarded, would you consider
that evidence in assessing punishment,
even in a case of intentional, deliberate murder?
— consider it if gov't proved an agg. factor(s);

Even if members of the V's family testify that
they will never be able to recover from
the V's death?

11/16/04   <u>D.P. VOIR DIRE</u> (cont.)

Bruck makes a good argument that since
D in non-capital murder case gets
10 challenges & gov't gets only 6, where
in capital cases each side gets 20.

Should be same advantage in capital
trials!

If gov't gets 20, then D should have 33 1/3
        Keep the same RATIO!

Argument is that gov't benefits, not suffers,
    as a result of the decision to seek
    death!

$\frac{6}{10}$  $\frac{20}{}$

$\begin{array}{r} 33.1/3 \\ 6\overline{\smash{)}200} \\ \underline{18} \\ 20 \\ \underline{18} \\ 2 \end{array}$

Judge in <u>Kloner</u> did this!

                        majority
<u>Summerlin</u> ~~dissent~~ by Breyer (or Souter)

(A.J.) * Project has cases — list of ~~them~~ — where judges
    have <u>granted</u> additional peremptory challenges.
    This could be persuasive w/ J. Bennett!

11:05 END.

SAT.
11-6-04
11 AM

---
| WORKING WITH SURVIVORS |
---

~~Michell Branham~~,
Ms. Kelly _____,
~~Judy Clarke~~, +
Atty. Dick _____; + Tammy Krause

<u>See</u> Dick Burr's law review article

their journey in life has to do w/ their
support system, their process of
getting ~~through~~ this
— it comes from within the
person,

— Not from without, not from what
happens to this D, my client.
(the jury)
It's not anything <u>we</u> can do for
the victim by ~~the~~ sentencing verdict.

<u>Experts</u>: Why not use a grief counselor, psychologist,
or someone who deals w/ people who are
victims — even a priest, theologian — to
come in and testify about the grief process
+ how it is internal, not external —
not result of punishment to D.

Angela
Johnson



Sat. 11/6/04

1:10pm

STORYTELLING IN MITIGATION

Nancy Pemberton, Scharlette Holdman
+ Kevin McNally

2:15pm

INTEGRATING THEORIES BETWEEN THE 2 PHASES

3:30p — KEEPING CLIENT FROM PREVENTING MIT. EVID.

David Ruhnke, Neal Walker, + ~~David~~ Jim
Wyda

TTD Angela Johnson

① Send letter to family members re: upcoming interviews
+ mitigation

② Get ex parte motions + orders to J. Bennett on:
     (a) MARY ROODY
     (b) Steve Peterson (Hogan's partner).

- TAMAR
SHAKIR

4:15 - 5:10 pm Meet w/ Tom Bloom, Rick Kammen
+ Richard _____ (Eaton's atty)
+ discuss discovery J3.

JJ-P24