USA V HONKEN

TESTIMONY OF CHRISTY GAUBATZ

TUESDAY, APRIL 11, 2000

1-800-332-2225    KOOL & NYGREN, INC.    (319)362-2200



GOVERNMENT
EXHIBIT
*NN*
09-CV-3064 MWB

NN-P1

FEDERAL GRAND JURY PROCEEDINGS

UNITED STATES OF AMERICA, )
     vs. )
HONKEN. )
_____ )

TESTIMONY OF CHRISTY GAUBATZ,

taken before Sarah K. Hyatt, Certified Shorthand Reporter of the State of Iowa, in front of the Members of the Federal Grand Jury, at 215 Federal Building, Cedar Rapids, Iowa, on Tuesday, the 11th day of April, 2000, commencing at 3:45 p.m.

APPEARANCES:

RICHARD L. MURPHY, Assistant United States Attorney, and TOM MILLER, Special Assistant United States Attorney, U.S. Attorney's Office, Northern District of Iowa, P.O. Box 74950, Cedar Rapids, Iowa 52407-4950.

Kool & Nygren, Inc.
Certified Shorthand Reporters
422 Second Avenue, S. E.
Cedar Rapids, Iowa 52401

---

**Page 2**

CHRISTY GAUBATZ,
the witness, was duly sworn by the Foreperson of the Federal Grand Jury to testify to the truth, the whole truth, and nothing but the truth, was examined, and testified as follows:

EXAMINATION

BY MR. MILLER:

Q. Your full name, please.

A. Christy Marie Gaubatz.

Q. And, if you would, spell your last name for the Grand Jury.

A. G-A-U-B-A-T-Z.

Q. And that's pronounced?

A. Gaubatz.

Q. Your residence?

A. Rockwell.

Q. Your occupation?

A. Cook.

Q. Ms. Gaubatz, a couple preliminary matters first, and then we'll get right down to business and move this along. You've been before the Grand Jury before; is that correct?

A. Yes.

Q. And you understand that these folks are here for the purpose of investigating any violations of

---

**Page 3**

the federal criminal law; is that true?

A. Yes.

Q. And while you are under subpoena and are required to be here today, should any of the questions cause you to give answers which, unfortunately, would be privileged, such as an answer that may tend to incriminate you, you have a right to let us know that and assert that privilege. You understand that?

A. Yes.

Q. And you've had these things explained to you before as well; is that correct?

A. Yes.

Q. You recall having them explained to you, I'm sure?

A. Yes.

Q. You understand, of course, that if you fail to give truthful testimony or give false testimony, you could be subjected to prosecution for the crime of perjury?

A. Yes.

Q. And also that while you cannot have anyone here with you, you can, if you choose to, step out and try to consult with counsel or consult with any attorney of your choice at any point in the

---

**Page 4**

proceedings, if you so wish.

A. Yes, I understand.

Q. Do you understand that? And that's been explained to you before as well?

A. Uh-huh, yes.

Q. Okay. Very good. Getting down to business then, Ms. Gaubatz. You testified previously on two occasions, I believe once on February 20th of 1997 and again on May 14 of 1997. Do you recall testifying here?

A. Yes.

Q. And that was in connection with the Grand Jury's investigation of Dustin Honken. Do you recall that?

A. Yes.

Q. And on those occasions as well you were cautioned as to the seriousness of the matter, and the potential liability for perjury should you give false testimony?

A. Yes.

Q. Since that time have you also become apprised of the fact that before any Grand Jury acts or before any tribunal acts in any judicial matter, if a person who has given false testimony comes back before that body and corrects that

Case 3:09-cv-03064-MWB-LTS    Document 245-42    Filed 05/05/11    Page 2 of 3

NN-P2

Page 5

testimony, that he or she can clear himself or herself from any potential liability for perjury? That's been explained to you as well; isn't that true?

A. Yes.

Q. And it's for purposes of that very matter that we're here today; is that true?

A. Yes.

Q. Before we get into that, would you briefly describe for this Grand Jury your relationship with Angela Johnson.

A. We were best friends for a couple of years.

Q. When was that?

A. From '92 through '94, first part of '94.

Q. Where were you living at that time?

A. In Clear Lake.

Q. And Ms. Johnson?

A. Clear Lake also.

Q. How frequently would you two see each other?

A. Very often.

Q. What sort of things did you do together?

A. Go out to eat, shop, I babysat for her. She did the same for me.

Q. Were you close enough friends to have free access to one another's homes?

Page 6

A. Yes.

Q. How did you do that?

A. We had keys to each other's homes.

Q. Would you also feel free to use one another's telephones?

A. Yes.

Q. Ms. Gaubatz, when you testified before the Grand Jury on February 20, 1997, you were asked -- and I will state for the record that it appears on page 18, beginning at line nine -- the following question, Do you have any knowledge about what happened to Mr. Nicholson? And you answered, No. And you were further asked, Did she, Angie, referring to Angie Johnson, ever say anything to you about why Mr. Nicholson wasn't around?

Do you recall being asked those questions on February 20, 1997, or questions to that effect?

A. Yes.

Q. And do you wish here today to correct your responses to those questions as given back in '97?

A. Yes.

Q. Did you, in fact, come into possession of

Page 7

information regarding what happened to Mr. Nicholson from a conversation with Angie Johnson?

A. Yes.

Q. How did that conversation happen to come about, Ms. Gaubatz?

A. She had called me up one day and asked me to come over. She said she had to get something off of her chest. And when I got there, she proceeded to tell me what had happened to him.

Q. Can you describe what her apparent demeanor or apparent emotions were at that time, Ms. Gaubatz.

A. She was excited.

(Mr. Murphy enters the Grand Jury room.)

BY MR. MILLER:

Q. Emotional?

A. Yeah. Yes.

Q. Is she an emotional person, would you say?

A. No, not really.

Q. Okay. But she was on that day?

A. Yes.

Q. You went right over when she told you --

A. Yes.

Page 8

Q. -- told you she wanted to talk to you?

A. Yes.

Q. Can you give us any more specific idea as to when this conversation occurred?

A. The first part of '94.

Q. You went over to her place?

A. Yes.

Q. Is that the house she was living in on South 19th Street in Clear Lake?

A. Yes.

Q. Was anyone else present?

A. No.

Q. Please describe for the Jury what you can recall of the conversation you had with Angie Johnson at that time.

A. She had started off by saying -- asking if I remembered the night that her and Dustin had borrowed my car. And I had been babysitting for her that particular evening, and I remember that they had come in very late. I was expecting them hours before this, so I knew what night she was talking about.

Q. You remembered in particular the night that she and Dustin Honken had borrowed your car?

A. Right. And I knew that she and Dustin had been

Case 3:09-cv-03064-MWB-LTS  Document 245-42  Filed 05/05/11  Page 3 of 3

NN-P3