# BOP EXECUTION PROTOCOL



SENSITIVE - LIMITED OFFICIAL USE ONLY

FEDERAL BUREAU OF PRISONS
EXECUTION PROTOCOL MANUAL

Page

INTRODUCTION     General Provisions ............................. 1

     I.     Purpose of Manual ...................... 1
     II.    Organization........................... 1
     III.   Cross References....................... 1
     IV.    Policy ................................ 1


CHAPTER 1     Pre-Execution Checklist ...................... 4

     I.     General Provisions .................... 4
     II.    Establishing an Execution Date ........ 4
     III.   Period of Time Between Establishment
           of an Execution Date to Thirty Days
           Prior to the Execution ................ 6
     IV.    Period of Time Between Twenty-Nine
           to Fourteen Days Prior to the
           Execution ............................ 9
     V.     Period of Time Between Thirteen to
           Seven Days Prior to the Execution ...... 10
     VI.    Period of Time Between Six to Three
           Days Prior to the Execution ........... 11
     VII.   Period of Time Between Two Days to
           One Day Prior to the Execution ........ 12


CHAPTER 2     Execution Checklist ........................... 14

     I.     General Provisions .................... 14
     II.    Period of Time Between Twenty-Four to
           Twelve Hours Prior to the Execution .... 14
     III.   Period of Time Between Twelve to Three
           Hours Prior to the Execution .......... 15
     IV.    Period of Time Between Three Hours to
           Thirty Minutes Prior to the Execution .. 17
     V.     The Final Thirty Minutes Prior
           to the Execution ...................... 19
     VI.    Final Sequence of Events: Execution .... 20


CHAPTER 3     Post-Execution Checklist ...................... 22

     I.     General Provisions .................... 22

II.     Removing Witnesses from the Execution
        Facility ................................. 22

III.    Removal of the Body of the
        Condemned Individual ................... 23
IV.     Site Clean-up .......................... 23
V.      Returning to Routine Operations ........ 23


CHAPTER 4    Command Center ................................. 24

        I.      General Provisions ..................... 24
        II.     Location, Role and Function ........... 24
        III.    Command Center Staffing ............... 25
        IV.     Radio Communication ................... 25
        V.      Resources ............................. 25


CHAPTER 5    Contingency Planning ........................... 27

        I.      General Provisions ..................... 27
        II.     Specific Procedures ................... 27
        III.    Execution Witness Management .......... 29
        IV.     Reservation Security Plan ............. 31


CHAPTER 6    News Media Procedures .......................... 34

        I.      General Provisions ..................... 34
        II.     Condemned Individual Interviews........ 35
        III.    Media Orientation ..................... 35
        IV.     Media Center Operations................ 37
        V.      The Execution Information Center....... 42

CHAPTER 7    Stays, Commutations and Other Delays .......... 45

        I.      General Provisions ..................... 45
        II.     Presidential and Judicial Authority
                to Interrupt Execution ................ 45
        III.    Communication of Pardons, Stays,
                Commutations or Delays ................ 46
        IV.     Procedures to Implement Last-Minute
                Stays ................................. 47


APPENDICES   Appendix A - Memorandum of Agreement Between
             Federal Bureau of Prisons and Witness......... 48
             Appendix B - Media Witness Press Pool
                          Agreement ......................... 49
             Appendix C - Sample Letter to Media .......... 50

INTRODUCTION:  GENERAL PROVISIONS

I.    Purpose of Manual

The purpose of this manual is to outline Federal Bureau of Prisons (BOP) policy and procedures for planning and carrying out the execution of a person convicted of a capital offense.  These procedures should be observed and followed as written unless deviation or adjustment is required, as determined by the Director of the BOP or the Warden.  This manual explains internal government procedures and does not create any legally enforceable rights or obligations.

II.   Organization

This manual provides specific time related checklists for pre-execution, execution and post execution procedures as well as detailed procedures related to the execution process, command center operations, contingency planning, news media procedures, and handling stays, commutations and other delays.

III.  Cross References

A.    Title 28, Code of Federal Regulations, Chapter 1, Part 26

B.    Title 28, Code of Federal Regulations, Chapter 1, Part 1

C.    Inmate Systems Management - Program Statement 5800.13, Paragraph 807

D.    Searching, Detaining, Non-Inmates; Arresting Authority; Metal Detectors - Program Statement 5510.09

E.    Contact with News Media - Program Statement 1480.05

F.    Accounting Management Manual - Program Statement 2000.02, Chapter 10950

G.    Command Centers - Operations Memorandum 075.92

IV.   Policy

A.    It is the policy of the BOP that the execution of a person sentenced to death under Federal law by a court of competent authority and jurisdiction be carried out in an efficient and humane manner.

B.    The BOP will make every effort in the planning and preparation of an execution to ensure that the execution process:

1. faithfully adheres to the letter and intent of the law;

2. is handled in a manner that minimizes the negative impact on the safety, security, and operational integrity of the correctional institution in which it occurs and the BOP in general;

3. accommodates the public's right to obtain information concerning the event;

4. reasonably addresses the privacy interests of those persons for whom the law and BOP policy require such privacy;

5. provides sufficient contingency planning to ensure that unforeseen problems can be addressed and overcome;

6. allows for stays of execution, commutations and other delays in the execution countdown;

7. provides an opportunity for interested persons to exercise their First Amendment rights to demonstrate for or against capital punishment in a lawful manner; and

8. ensures a firm and adequate response to unlawful civil disobedience, trespass, or other violations of the law by persons attempting to disrupt or prevent the execution.

C. The BOP will seek the arrest and encourage the prosecution of persons, including but not limited to those who:

1. violate prohibitions against filming, taping, broadcasting, or otherwise electronically documenting the death of the condemned individual;

2. trespass or otherwise enter upon BOP property without proper permission and clearance from the Warden;

3. participate in unlawful demonstrations;

4. unlawfully attempt to disrupt, prevent, or otherwise interfere with the execution;

5. being inmates, are involved in disruptive, assaultive, or other lawfully proscribed behavior related to an execution; or

2

6.  unlawfully threaten, intimidate, or terrorize persons involved in the execution process.

D.  BOP staff involved in the execution will make every effort, within the limits of these policies and procedures and the laws of the United States, to:

1.  display appropriate levels of professionalism, restraint, and courtesy in interaction with witnesses, demonstrators, news media, and other non-staff persons during the execution process;

2.  prevent emotion or intimidation from hindering efforts to carry out assigned duties; and

3.  conduct themselves at all times in a manner reflecting the solemnity and sensitivity of the occasion.

E.  BOP Mental Health and Religious Services personnel will be available for counseling sessions with all personnel participating directly in an execution process, before and after an execution.

F.  Each execution will be fully evaluated by the institution, region, and Central Office staff.  If warranted, recommendations will be made and considered in order to improve procedures.

3

CHAPTER 1:  PRE-EXECUTION CHECKLIST

I.   <u>General Provisions</u>

   A.   <u>Purpose of Chapter</u>

      1.   The purpose of this chapter is to provide a checklist of procedures and events that should occur between the period of time prior to the establishment of an execution date and 24 hours prior to the execution.

      2.   Full detail will not be provided for each procedure or event in this chapter.  For detail, refer to specific chapters which follow.

      3.   This chapter covers the following time periods:

         a.   prior to the execution date being established;

         b.   establishment of the execution date to thirty days prior to the execution;

         c.   twenty-nine to fourteen days prior to the execution;

         d.   thirteen to seven days prior to the execution;

         e.   six to three days prior to the execution; and

         f.   forty-eight to twenty-four hours prior to the execution.

   B.   <u>Policy</u>

      1.   A systematic countdown to execution must be completed to ensure that all procedures and events necessary to adequately prepare for the execution are completed in a timely manner.

      2.   Absent intervention by the court system or the President as noted in Chapter 7, delays in the countdown process will only occur in extraordinary situations relating to the security and good order of the institution as approved by the Director of the BOP.

II.   <u>Establishing an Execution Date</u>

   After a sentencing hearing is conducted in a United States District Court resulting in a determination that a criminal defendant be sentenced to death for commission of an offense

described in a Federal statute, and the sentencing judge signs the appropriate Judgment and Order:

A.    Except to the extent a court orders otherwise, the Director of the BOP will designate a date, time, and place for the execution of the sentence.  On June 18, 1993, the Director of the BOP established the United States Penitentiary, Terre Haute, Indiana, as the site of such executions.  The following individuals/offices will be advised in writing of the execution date: the sentencing judge, Attorney General, Office of the Deputy Attorney General, Office of the Pardon Attorney, the Assistant Attorney General for the Criminal Division, the Chief of the Capital Case Unit, Director of the United States Marshals Service (USMS), the Office for Victims of Crime, Assistant Director for Correctional Programs Division, Assistant Director for General Counsel and Review Division, appropriate Regional Director, United States Attorney's Office for the district of conviction, United States Attorney's Office for the Southern District of Indiana and Warden of USP Terre Haute.

B.    Under current federal regulations, the date established will be no sooner than 60 days from the entry of the judgment of death (28 C.F.R. § 26.3(a)(1)) and notice of it must be given to the defendant no later than 20 days before the execution (28 C.F.R. § 26.4(a)).  If the date designated passes by reason of a stay of execution, then a new date will be promptly designated by the Director of the BOP when the stay is lifted.

C.    The Warden of USP Terre Haute will notify, in writing, the condemned individual under sentence of death, of the date designated by the Director for execution at least 90 days in advance.  If the designated execution date is stayed, notice of the new execution date must be given no later than 20 days before the execution, if time permits and if not, as soon as possible. If the execution date is set by a judge, the Warden will notify the condemned individual, in writing, as soon as possible.  The Warden will include information concerning the clemency application process in the written notice.  Under 28 C.F.R. §1.10(b), a petition for commutation of sentence should be filed no later than 30 days after the condemned individual has received notification from the Warden of the execution date.

D.    Unless the President interposes, the execution of the sentence will not be stayed on the basis of the condemned individual filing a petition for executive clemency.

III.  **Period of Time Between Establishment of an Execution Date to Thirty Days Prior to the Execution**

The following procedures should be completed between the time an execution date is set and 30 days prior to the execution.

A.  **Briefing the Condemned Individual**

As soon as practical after establishment of the execution date, the Warden at USP Terre Haute or designee, will personally brief the condemned individual regarding relevant aspects of the execution process including information contained in items C through F of this section. A briefing sheet outlining these aspects of the execution will be given to the condemned individual. If requested, a copy of the briefing sheet will be given to a representative identified by the condemned individual. In addition, the Warden will ascertain the inmate's religious preference.

B.  **Condemned Individual's Choice of Witnesses**

When the condemned individual is informed by the Warden of the execution date, he/she will be advised that he/she may designate not more than one spiritual adviser, two defense attorneys, and three adult friends or relatives (at least 18 years old) to be present at the execution. The condemned individual will be asked to submit the list of his/her witnesses to the Warden no later than 30 days after notification of the date of the scheduled execution.

C.  **Disposition of Personal Property and Accounts**

The Warden will review the options available to the inmate for property/account distribution and will ask the condemned individual to provide instructions, no later than 14 days prior to the execution, concerning the disposition of the personal property and funds in any accounts controlled or administered by the BOP. If the condemned individual fails to provide instructions for such disposition, the property/accounts will be disposed of in accordance with the Accounting Management Manual and Inmate Systems Management Manual.

D.  **Organ Donation**

The condemned individual's body will not be used for organ donation.

E.  **Disposition of Body**

The Warden will review options available to the condemned individual following the release of the body to the Vigo County Coroner. The Warden will ask the condemned

6

individual to provide instructions concerning the disposition of his/her body no later than 14 days prior to the execution.  If the condemned individual fails to provide instructions, the body will be handled in accordance with the Accounting Management Manual.

F.    <u>Designation of Persons Required to Assist with the Execution</u>

1.    Those persons necessary to carry out the execution will be identified.

a.    The Warden, with the assistance of the Director, USMS, and the Director, BOP, will be responsible for identifying, selecting and obtaining the services of the individuals administering the lethal injection.

b.    The Warden is responsible for selection of the persons involved in perimeter security, transportation, and command post operations, as well as crowd control, support functions and access screening.

2.    Individuals will be identified for placement in all vital or important positions.  Alternates will also be identified.  The Assistant Director, Correctional Programs Division, Regional Director, and the Warden will determine which positions require alternates and will ensure adequate coverage is provided

3.    No officer or employee of the Department of Justice will be required to be in attendance at or participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee. Staff participation in the execution process must be on a voluntary basis.

G.    <u>Other Approved Witnesses</u>

1.    In addition to the United States Marshal designated by the Director of the USMS (hereafter called the "Designated United States Marshal") and the Warden, the following persons will be present at the execution.

a.    Necessary personnel selected by the Designated United States Marshal and the Warden.

b.    Those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary.

7

c.  Not more than the following numbers of persons selected by the Warden:

(1)  eight citizens (in identifying these individuals, the Warden, no later than 30 days after the setting of an execution date, will ask the United States Attorney for the jurisdiction in which the condemned individual was prosecuted to recommend up to eight individuals who are victims or victim family members to be witnesses of the execution); and

(2)  ten representatives of the press.

2.  No other person will be present at the execution, unless such person's presence is granted by the Director of the BOP.  No person younger than 18 years of age will witness the execution.

3.  The Warden will notify all witnesses of the date, time and place of the execution as soon as practicable before the designated time of execution.

H.  Contact with the Vigo County Coroner

1.  The Warden will contact the Vigo County Coroner to coordinate the Coroner's role.

2.  The Vigo County Coroner will be requested to provide direction concerning:

a.  transfer of custody of the body of the executed individual from the Warden to the Vigo County Coroner;

b.  transportation of the body from the Execution Room to the Vigo County Coroner's facility; and

c.  security arrangements during the transfer.

I.  Briefing of Institution Staff

1.  It is necessary to maintain, as nearly as possible, normal prison operations throughout the execution process.

2.  Local prison administrators should be briefed by the Warden, as appropriate, on plans for the execution, restrictions on access, crowd control, additional security procedures, etc., on an on-going basis.

8

3.    As soon as plans begin to evolve which will affect general prison operations, briefings should begin and continue until operations return to normal.

IV.    <u>Period of Time Between Twenty-Nine to Fourteen Days Prior to the Execution</u>

A.    <u>Witnesses</u>

1.    To the extent possible, the Warden will develop a final list of citizen and condemned individual's witnesses.

2.    All witnesses/participants will be required to sign an agreement prior to being cleared and added to the witness list.  Included in the document will be an agreement to be searched before entering the Execution Facility and not to photograph or make any other visual or audio recording of the execution (see Appendix A).

B.    <u>Qualified Person</u>

The Warden will finalize arrangements for a qualified person to be present at the execution and to declare the executed individual deceased.

C.    <u>Condemned Individual's Property and Accounts</u>

The Warden will finalize arrangements for disposition of the condemned individual's property and accounts no later than 14 days prior to the scheduled execution date.

D.    <u>Disposition of Body</u>

The Warden will finalize arrangements with the Vigo County Coroner for disposition of the body, security for the Vigo County Coroner's vehicle, and transfer of custody of the body in accordance with appropriate State and local laws.

E.    <u>Selection of Executioner(s)</u>

The Warden, with the assistance of the Director, USMS and Director, BOP, will finalize the selection of executioner(s) and their alternates.

F.    <u>Training</u>

1.    The Warden will ensure that appropriate training sessions are held for persons involved in the various aspects of the execution event.

9

2.    Not all of the persons involved need to practice together.  Individual teams will practice as units, with inter-team practices scheduled, as necessary by the Warden, to facilitate coordination and smooth interaction.

V.    <u>Period of Time Between Thirteen to Seven Days Prior to the Execution</u>

A.    <u>Condemned Individual's Property and Accounts</u>

All paperwork regarding disposition of property and accounts should be completed.

B.    <u>Food Services</u>

At least seven days prior to execution, the Warden or designee will contact the condemned individual to arrange for his/her last meal.

C.    <u>Purchase of Substances to be Used in Lethal Injection</u>

The Warden will ensure the purchase of lethal substances to be used in the execution.  Once purchased, these lethal substances will be secured in the institution until called for by the Warden.

D.    <u>Law Enforcement Coordination</u>

1.    The Warden will meet with Federal, State, and local law enforcement personnel to coordinate support related to the execution.

2.    Joint practices should be conducted between law enforcement staff involved to ensure coordination and interaction is well defined and understood.

E.    <u>Restrictions on Condemned Individual's Visitors</u>

Beginning seven days prior to the designated date of execution, the condemned individual will have access only to his/her spiritual advisers (not to exceed two), his/her defense attorneys, members of his/her family,  and designated officers and employees of the BOP. Upon approval of the Director of the BOP, the Warden may grant access to such other proper persons as the condemned individual may request.

VI.    **Period of Time Between Six to Three Days Prior to the Execution**

A.    **Witnesses**

Non-media witness agreements should be signed by the witnesses and reviewed by the Warden or designee.

1.    The Warden will provide a final list of witnesses to the:

    a.    Assistant Director, Correctional Programs Division;

    b.    Assistant Director, Information, Policy, and Public Affairs Division;

    c.    Regional Director;

    d.    Director, USMS; and

    e.    Designated United States Marshal

    f.    United States Attorney's Office - district of conviction

    g.    United States Attorney's Office - Southern District of Indiana

2.    Persons who refuse to sign agreements will not be allowed to attend the execution.

B.    **Brief Affected Law Enforcement Agencies**

The Warden will ensure that staff from other law enforcement agencies who have not participated in practice sessions or have not otherwise been briefed previously will be briefed and their responsibilities explained.

C.    **Condemned Individual's Property and Accounts**

Verify arrangements are complete.

D.    **Executioner(s)**

An individual designated by the Warden will:

1.    review with executioner(s) and alternates arrangements for their transportation and escort to the Execution Facility; and

2.    review with participants' arrangements for security of executioner(s) and protection of their identities.

E.    <u>Equipment Check/Inventory</u>

All equipment necessary to conduct the execution will be inventoried and checked at least 72 hours prior to the execution by individuals designated by the Warden.

VII.  <u>Period of Time Between Two Days to One Day Prior to the Execution</u>



(b)(2) & (b)(7)(F)

12

(b)(2) & (b)(7)(F)

B.    **Practices**

Final practices will be conducted as directed by the Warden.

C.    **Equipment Checks**

Maintenance staff should verify necessary installation of and test electrical, heating/air conditioning and communications equipment in:

1.    BOP Execution Facility;

2.    Command Center.

D.    **Warden Contacts**

1.    To ensure that coordination efforts are in place, the following entities will be contacted by the Warden:

a.    Department of Justice Command Center (to ensure communications, if required, by the Attorney General, the Supreme Court, the President of the United States and the affected United States Attorneys Offices);

b.    BOP Director's Office;

c.    USMS Director's Office; and

d.    affected law enforcement agencies.

2.    Identify specific individuals who are contact persons for the entities/individuals listed in Subsection 1 above.

E.    **Equipment Check Verification by Warden**

1.    The Warden will ensure completion of pre-execution inventory and equipment check in the BOP Execution Facility.

2.    The Warden will verify that the Execution Facility's equipment checks have been completed.

13

CHAPTER 2:  EXECUTION CHECKLIST

I.    General Provisions

    A.    Purpose of Chapter

        1.    This chapter provides a checklist of procedures and events that should occur during the final 24 hours prior to the execution.

    B.    Policy

        1.    It is the policy of the BOP that the countdown to the execution will be accomplished in a carefully coordinated manner.

        2.    The execution will be carried out in a manner consistent with Federal law.

II.   Period of Time Between Twenty-Four to Twelve Hours Prior to the Execution



(b)(2) & (b)(7)(F)

    B.    Condemned Individual Communication

        1.    Excluding calls to the condemned individual's Attorney(s) of Record and calls specifically approved by the Warden, the condemned individual's telephone privileges will be terminated 24 hours prior to the execution.

        2.    The condemned individual's Attorney(s) of Record, spiritual adviser(s), immediate family members or other persons approved by the Director of the BOP, will be given visiting privileges during the final 24 hours as determined by the Warden.  Visiting privileges will be suspended when preparations for the execution require suspension.

    C.    Food Services

    The Warden will contact the condemned individual to finalize arrangements for his/her final meal and ensure that it is properly prepared and served by staff.

D.    <u>Maintenance Response Team</u>

Beginning eight hours prior to an execution, the Facility Manager or other appropriate individual will ensure that a Maintenance Response Team is available to provide necessary maintenance and repair of systems at the Execution Facility or in other areas of the institution.

E.    <u>Access to the Execution Facility</u>



(b)(2) & (b)(7)(F)

III.    <u>Period of Time Between Twelve to Three Hours Prior to the Execution</u>

A.    <u>Final Briefing</u>

(b)(2) & (b)(7)(F)

2.    A final briefing will be held, attended by senior BOP and Marshals Service staff, the Warden, and representatives deemed appropriate by the Warden.  The Warden will conduct the meeting, with senior staff providing guidance and policy decisions, as needed.

3.    During the briefing, participants will:

a.    identify problems, develop solutions, and specify time lines;

b.    provide status reports;

c.    coordinate support services involvement; and

d.    conduct a final review of procedures.

15

B.   <u>Food Service</u>

The condemned individual will be served a final meal at a time determined by the Warden.

C.   <u>Visits</u>

Visits by family, attorneys, religious representatives, and other persons approved by the Director of the BOP, will be at the discretion of the Warden.

D.   <u>Restricting Access to Prison Property</u>

1.   During the final 12 hours prior to the execution, access to prison property will be limited to:

a.   on-duty staff;

b.   on-duty contract workers;

c.   volunteers deemed necessary by the Warden;

d.   approved delivery vehicles;

e.   law enforcement personnel on business-related matters;

f.   routine inmate visitors; and

g.   other persons approved by the Warden.

2.   During the final eight hours:

a.   all off-duty Department of Justice personnel will be required to leave institution property;



(b)(2) & (b)(7)(F)

E.   <u>Establishment of Command Center</u>

(b)(2) & (b)(7)(F)

IV.  <u>Period of Time Between Three Hours to Thirty Minutes Prior to the Execution</u>

    A.  <u>Pre-Execution Procedures</u>

       1.  The Warden will ensure that all countdown procedures for required activities and actions are progressing.

       2.  Immediate action to complete any unfinished required procedures will be initiated.

       3.  The Warden will designate a recorder who will begin logging execution activities in the official execution log book commencing three hours prior to the scheduled execution.  The log will reflect, at a minimum, the time each of the following events occurs:

          a.  Condemned individual removed from Inmate Holding Cell;

          b.  Condemned individual strapped to gurney;

          c.  Arrival of government/community witnesses;

          d.  Arrival of condemned individual's authorized witnesses;

          e.  Arrival of media witnesses;

          f.  Opening of drapes;

          g.  Last statement by condemned individual;

          h.  Reading of statement conveying inmate's sentence of death;

          i.  Upon Designated United States Marshal's approval, the execution process begins;

          j.  Signal by Executioner(s) that lethal substances have been administered;

          k.  Determination of condemned individual's death through the EKG readout by designated qualified person;

          l.  Announcement of death of condemned individual;

          m.  Closing of drapes;

          n.  Notification to outside media and demonstrators of condemned individual's death;

o.   Removal and transportation of media witnesses to media center;

p.   Removal of condemned individual's authorized witnesses;

q.   Removal of government/community witnesses;

r.   Restraint Team/Vigo County Coroner enter Execution Room to remove body;

s.   Removal of body to Vigo County Coroner's vehicle;

t.   Performance of any necessary cleaning chores;

u.   Directive by Warden to secure Execution Facility.

B.   <u>Execution Room Staff Assemble</u>

1.   The Executioner(s) will be escorted into the Execution Facility and will inventory supplies and ensure that everything is ready.



(b)(2) & (b)(7)(F)

3.   All other Execution Room staff will be assembled on-site for final instructions at least forty-five minutes prior to the scheduled execution.

C.   <u>Contact with the Department of Justice Command Center</u>

(b)(2) & (b)(7)(F)



(b)(2) & (b)(7)(F)

## V.    The Final Thirty Minutes Prior to the Execution

### A.    Final Sequence of Events:  Preparation

1.    **Bringing the Condemned Individual to the Execution Room**

At the appropriate time, the condemned individual will be:

a.    removed from the Inmate Holding Cell by the Restraint Team;

b.    strip-searched by the Restraint Team and then dressed in khaki pants, shirt, and slip-on shoes.

c.    secured with restraints, if deemed appropriate by the Warden;

d.    escorted to the Execution Room by the Restraint Team.

2.    **Restraint Team Procedures**

In the Execution Room the ambulatory restraints, if any, will be removed  and the condemned individual will be restrained to the Execution Table.

3.    **Admit Witnesses**

a.    Subsequent to appropriate search procedures, witnesses will be admitted to the witness rooms.

b.  The government/community witnesses will then enter and will be escorted to their assigned area.  The escorts will remain with the witnesses.

c.  The authorized witnesses invited by the condemned individual will be admitted and  escorted to their assigned area.

   1.  If any of the condemned individual's invited witnesses wish to be on-site, but not actually witness the execution, accommodations will be made for them by the Warden.

   2.  Escorts will remain with the condemned individual's witnesses.  There will be a minimum of two escorts for each witness group.

d.  The last witnesses to be admitted will be the news media representatives.  The members of the news media selected to witness the execution will be escorted to their assigned area.  Escorts will remain with the news media witnesses and ensure their separation from the other witnesses while at the Execution Facility.  Media witnesses will not be permitted to interview or question staff or other witnesses while at the Execution Facility.

VI.  Final Sequence of Events:  Execution

A.  Staff Witnesses

   1.  Staff participating in the preparation for the execution will exit the Execution Room but stand by in an adjacent area.

   2.  Staff members participating in and/or observing the execution will include the:

      a.  Designated United States Marshal;

      b.  Warden;

      c.  Executioner(s);

      d.  Other staff authorized by the Director of the BOP.

B.    <u>Countdown</u>

1.    Once the condemned individual has been secured to the table, staff inside the Execution Room will open the drapes covering the windows of the witness rooms.

2.    The condemned individual will be asked if he/she has any last words or wishes to make a statement.  The condemned individual will have been advised in advance that this statement should be reasonably brief.

3.    At the conclusion of the remarks, or when a determination is made to proceed, the documentation deemed necessary to the execution process will be read.  Once the Designated United States Marshal makes a final determination that the execution is to proceed, the executioner(s) will be directed to administer the lethal injection.

4.    If the execution is ordered delayed ████████ (b)(2) & (b)(7)(F) ████████ the Designated United States Marshal will instruct the Executioner(s) to step away from the execution equipment and will notify the condemned individual and all present that the execution has been stayed or delayed.

C.    <u>Determination of Death</u>

1.    After the lethal injection has been administered:

a.    The EKG will be monitored until apparent signs of life have ceased;

b.    The time of death will be announced prior to the drapes being closed.

2.    The Designated United States Marshal will complete and sign the Return described in Section 26.2(b) of 28 C.F.R. and will file such document with the sentencing court.

CHAPTER 3:  POST-EXECUTION CHECKLIST

I.  General Provisions

A.  Purpose of Chapter

The purpose of this chapter is to:

1.  provide the procedures to be followed after the execution, of the condemned individual;

2.  identify the responsibilities for tasks to be completed; and

3.  provide for the transfer of the body of the condemned individual from the custody of the BOP.

B.  Policy

It is the policy of the BOP that:

1.  the condemned individual will be examined by a specified qualified person following the administration of the lethal substances to ensure that death has occurred;

2.  When the qualified individual is satisfied that death has occurred, the time of death will be announced to the witnesses;

3.  the witnesses to the execution will then be removed from the Execution Facility and returned to their individual staging areas so that they may leave the institution.  News media witnesses will be removed to a secondary press location where they will participate in a press conference;

4.  the body of the condemned individual will be surrendered to the Vigo County Coroner;

5.  after removal of the body, the site will be cleaned and restored to its previous condition.

II.  Removing Witnesses from the Execution Facility

A.  After the pronouncement of death, the witnesses will be escorted from the facility in the following order:

1.  news media witnesses;

2.  condemned individual's authorized witnesses; and

3.  government/community witnesses.

B.    Each group of witnesses will be kept separate from the others and escorted to waiting vehicles to be driven to separate designated sites.

III.  Removal of the Body of the Condemned Individual

A.    After the witnesses have departed, the restraints will be removed from the condemned individual's body.

B.    The Vigo County Coroner or designee will be escorted into the Execution Facility.  The body will be removed by the Vigo County Coroner, who will place it in a coroner's vehicle for transportation.

IV.   Site Clean-Up

A.    Under the supervision of an individual designated by the Warden, staff will clean and secure the Execution Facility.

B.    Institution staff will be trained in infectious disease preventive practices and utilize appropriate precautions in cleaning up the Execution Facility.

C.    The Execution Facility will be locked and secured when the Warden is satisfied that clean-up has been completed.

V.    Returning to Routine Operations

A.    Following the execution, Department of Justice and BOP staff involved in the execution will be deactivated, as appropriate, under direction of the senior departmental, BOP and USMS staff on-site.

B.    The Warden's designated public affairs representative will determine when to secure the media assembly site after the news conference is complete.

C.    The Warden will bring the institution security back to routine operations as he/she sees fit.

CHAPTER 4:  Command Center

I.    General Provisions

    A.    Purpose of Chapter

        The purpose of this chapter is to:

        1.    identify the role and function of the Command Center;

        2.    specify the individuals authorized to staff the Command Center; and

        3.    provide an inventory of the minimum resources required in the Command Center.

    B.    Policy

        It is the policy of the BOP that:

        1.    the Bureau operate a local, emergency Command Center during the execution operation to:

            a.    coordinate security, transportation, crowd control, access and other processes;

            b.    provide policy and procedural advice, as needed, or upon request;

            c.    coordinate inter-agency functions; and

            d.    serve as an information processing and operations nerve center for the execution;

(b)(2) & (b)(7)(F)

        3.    sufficient resources be available in the Command Center to permit staff there to function efficiently.

II.   Location, Role and Function

    A.    The Command Center will be operational prior to the scheduled execution and maintained for the duration of the execution operation, in an area identified by the Warden.

    B.    The roles and functions of the Command Center include:
        1.    coordinating the various personnel, components and elements of the execution operation;

(b)(2) & (b)(7)(F)



## III.  Command Center Staffing

    A.    Command Center staff should include the following positions:



    B.    The Command Center Director may include such other persons as may be needed, for the period of time required.  During that time, an additional temporary pass will be issued to and worn by the person so admitted.

    C.    Access to the Command Center will be limited to persons specifically authorized by the Command Center Director or Warden.

## IV.  Radio Communication

    A.    The official radio frequency for communication with personnel involved in the execution process will be determined by the Warden.

    B.    Non-cellular telephones must be used for critical or confidential communications.



## CHAPTER 5:   CONTINGENCY PLANNING

I.    General Provisions

A.    Purpose of Chapter

The purpose of this chapter is to:

1. aid in the development of a predetermined contingency plan to assist staff in the management of the execution event and in responding to related emergency situations;

2. identify the role and function of staff needed to formulate and activate the plan, if needed; and

3. identify specific areas to stage staff and equipment. The location of witness processing will be pre-determined by the Warden on a case-by-case basis.

B.    Policy

It is the policy of the BOP to:

1. prepare and test contingency plans;

2. identify all security measures needed to protect staff and inmates of an institution as well as BOP property; and

3. coordinate all resources to ensure the safety of the public, staff, and inmates.

II.   Specific Procedures

A.    An individual identified by the Warden will prepare contingency plans related to an emergency occasioned by the execution, such as an institution disturbance, hostage taking, outside demonstration, outside assault on the facility, etc.  All plans will be reviewed and approved by the Warden and the Regional Director.

B.    Plans will include provisions for:



(b)(2) & (b)(7)(F)

27



(b)(2) & (b)(7)(F)

28

III.  **Execution Witness Management**



(b)(2) & (b)(7)(F)

4.    No pat or visual search of any witness will be
      conducted unless the Warden has reasonable suspicion

29

to believe the witness is concealing weapons, drugs, audio or visual recording devices, or any other item not expressly authorized and the witness agrees to be searched.  If the witness refuses to be searched, he/she will not be permitted to serve as a witness.

5.   Staff at each staging area will notify the Command Center when all execution witnesses are accounted for and processed.

6.   Escorts will remain at their assigned staging areas until the Command Center directs them to transport the witnesses to the Execution Facility.

B.   <u>Transportation to the Execution Facility</u>



(b)(2) & (b)(7)(F)

3.   Escorts will ensure that witness groups do not come into contact with each other.

4.   Escorts will transport witnesses to the Execution Facility and notify the Command Center when each group of witnesses is secured in the assigned observation area.

5.   Once each group is secured, the next group will be moved as directed by the Command Center.

6.   The Command Center will be notified by the appropriate staff member when all groups are in place.

7.   The Command Center, in turn, will notify the Warden or designee.

C.   <u>Transportation from the Facility</u>

(b)(2) & (b)(7)(F)

30



(b)(2) & (b)(7)(F)

2.    The groups will be returned to the staging areas by the escorts, who will ensure that no group comes in contact with another group.

3.    Escorts will notify the Command Center as each group returns to the staging area.

4.    The Command Center will direct each move to expedite departures and also to prevent groups from encountering one another in the parking lot.

5.    Media witnesses will be returned to the Media Center to have a press pool briefing as outlined in Chapter 6.

(b)(2) & (b)(7)(F)



32

3.   The escort Lieutenant and escort teams will be
     available and will accompany execution witnesses.

(b)(2) & (b)(7)(F)

33

CHAPTER 6:   NEWS MEDIA PROCEDURES

I.   General Provisions

A.   Purpose of Chapter

This chapter describes the procedures and requirements for allowing representatives of the news media access to an inmate sentenced to death, as well as procedures for news media access to the execution.  This chapter also provides procedures for releasing information relating to the execution.

B.   Policy

The BOP recognizes the desirability of establishing procedures which afford the public information about its operations through the news media.  In accordance with established policy, reasonable efforts will be made to accommodate representatives of the news media before, during, and after a scheduled execution.  Media representatives will be treated in a fair and consistent manner in accordance with current policies and procedures of the BOP.  The agency has the responsibility, however, to ensure the orderly and safe operation of its institutions, and therefore must regulate media access.

C.   Roles

1.   Representatives of the news media are those individuals described in Program Statement 1480.03, Contact with News Media, whose principal employment is to gather and report news.

2.   The Warden will designate a specific staff member as the official representative to the news media regarding death penalty issues and the scheduled execution.

3.   The BOP Assistant Director, Information, Policy and Public Affairs Division, will coordinate the release of information to the news media and assist the Warden in the selection of individual news media witnesses.  The Department of Justice Office of Public Affairs will be kept informed of these matters.

34

II.    Condemned Individual Interviews

    A.    Purpose

        As stated in Program Statement 1480.03, Contact with News Media, it is not the BOP's intent to provide publicity for an inmate or special privileges for the news media, but rather to ensure a better informed public.

    B.    Limits

        With this in mind, representatives of the news media may be permitted to conduct interviews with condemned individuals. Guidelines regarding the frequency and length of interviews, as well as accompanying security, will reflect BOP/institution policy and will be established by the Warden, who will take into account available resources.

    C.    Prohibition

        Ordinarily, no media interviews will be permitted with the condemned individual once the execution date is within seven days.

III.    Media Orientation

    A.    Definition

        No later than eight days before a confirmed execution date, the institution will hold a Media Orientation to provide media representatives with information on the scheduled execution.  No other press conference or Media Orientation regarding the execution will be scheduled or held until after the scheduled execution, except as provided below in subsection B.  Every effort will be made by the Warden's representative to notify local, State, and national media representatives of the scheduled Media Orientation.  Central Office Public Affairs staff will provide assistance to institution personnel in this area.

        1.    All persons, including media representatives, must have appropriate identification to enter the institution on any occasion.  Media representatives must have appropriate press credentials.  This requirement includes camerapersons, sound technicians, and reporters.

        2.    All individuals will be advised that they are subject to search of their person and equipment prior to entering and prior to leaving a BOP facility.

35

B.    Updates Prior to the Execution

Following activation of the Media Center, the Warden's representative will provide the news media with regular briefings or updates of the execution process.

1.    No later than eight hours prior to the scheduled execution, a Media Center will be activated. Telephone lines, tables, risers for cameras and outlets for electrical equipment and cameras will be available.  Restroom facilities (and if possible, vending machines) will also be provided.

2.    The Warden's designated representative will be present in the Media Center to provide regular announcements.

C.    Media Orientation Releases

During the Media Orientation, the following information will be made available to members of the media: .

1.    General information regarding the scheduled execution and about the individual scheduled for execution.

2.    Specific information regarding procedures to be followed by the media on the date of the scheduled execution.

3.    Media representatives will be reminded that there are obvious security concerns about aircraft flying over Federal correctional facilities and therefore, their assistance and cooperation in this matter is expected.

4.    Media representatives will be informed of how the press pool will be established (see paragraph IV D 2) and advised that if they are selected as press pool witnesses to the execution, they will agree prior to the execution to:

a.    sign the document designated as the Media Witness Press Pool Agreement (see Media Witness Press Pool Agreement, Appendix B);

b.    be subject to a metal detection scanning;

c.    not make any photographic, visual or audio recordings of the execution (each media witness will be provided only paper and a pencil or pen while in the execution witness area); and

36

> d.   return to the Media Center after the execution to answer questions of all other media represented concerning their observations during the execution.

5.   After the Warden's representative, media pool witnesses and appropriate Department of Justice staff, if available, have addressed the media in the Media Center, the press briefing will be terminated and all media personnel will leave the Media Center.

## IV.   Media Center Operations

### A.   Requesting Authorization

1.   After an execution date is set by the court/Director of the BOP, and no sooner than twenty days prior to the scheduled execution, news media representatives will be advised, in writing, by the Warden's designated representative that they may request, in writing, authorization to participate in the institution's Media Center activity in the hours preceding the scheduled execution (see Sample Letter to Media, Appendix C).

The requests, which must be in writing, should be received by the Warden no later than ten days prior to the execution. Requests must include names, social security numbers, and dates of birth for each representative of a media organization and his/her support staff. Only those media organizations submitting written requests, within the stated time frame, will be considered for participation in Media Center activities.

2.   Requests for consideration may be granted by the Warden, provided they demonstrate that the requesting individual falls within the definition of "member of the press and broadcast media" set forth in BOP Program Statement 1480.03, Contact with News Media.

### B.   Possible Limitations

The number of media representatives may be limited by the Warden due to space and safety considerations, but care will be taken to include representatives from both the print and broadcast media.

### C.   Briefing Packets and Updates

1.   Packets

Following activation of the Media Center, the Warden's representative will provide press briefing packets for

reporters in the Media Center. The contents of the press briefing packet will include, but not be limited to, releasable information on the condemned individual, pool reporters (once selected), the sequence of events, and the history of Federal executions.

2.    Updates

Written updates generally will be distributed to the press on a regular basis following activation of the Media Center. Updates will include:

a.    a summary of activities related to the execution and sequence of events; and

b.    a summary, cleared by the Warden, of the condemned individual's activities during his/her final twenty-four hours.

D.    News Media Witness Selection

1.    Number in Attendance

The Warden will permit no more than 10 members of the media to witness the execution. The number of additional media representatives authorized to remain in the Media Center on the day of the execution may be limited, due to space and safety concerns.

2.    Pool Selection Process

a.    Press pool members will be selected by their peers at least three hours prior to the scheduled execution. Representatives from each of the following categories must be included:

(1)    one local media source (located within the city or town of the institution);

(2)    three television news programs of a station or network holding an FCC license (at least two being national broadcast stations);

(3)    two media sources from the area where the crime was committed;

38

      (4)   one wire service;

      (5)   one radio station; and

      (6)   two print media organizations.

b.     Press pool witnesses will be selected from qualified media representatives who have been admitted into the institution's Media Center and who have provided staff with proper identification.  A list of media representatives will be compiled by the Warden's representative and furnished to the media for their review in the selection process.

3.    **Signed Agreement**

Media selected as press pool witnesses will then be required to agree to:

a.     act as a pool representative as described further in this chapter; and

b.     abide by all established conditions, rules, and regulations while in attendance at the execution; to include allowing a metal detector scan of their person.

4.    **Supplemental Representatives**

In the event the media are unable to identify witnesses in each of the above described categories, the Warden's designated representative may name other qualifying media representatives to attend, with a maximum of 10 being named.

E.    **Media Witnesses to the Execution**

1.    **Search Process**

Each media pool witness attending the execution will be scanned by a metal detector prior to admittance to the Execution Facility.

a.     No pat or visual search of any media pool witness will be conducted unless the Warden has reasonable suspicion to believe the media representative is concealing weapons, drugs, audio or visual recording devices, or any other items not expressly authorized and the media

39

representative agrees to be searched.  If the representative refuses to be searched, he/she will not be permitted to serve as a media witness.

1.  Electronic or mechanical recording devices include, but are not limited to, still, moving picture or video tape cameras, tape recorders or similar devices, and radio/television broadcasting devices.

2.  The representative will only be permitted paper and a pencil or pen as provided by institution staff.

2.  <u>Witness Briefing</u>

The 10 selected members of the news media will be required to sign both the witness agreement (Appendix A) and the Media Witness Press Pool Agreement (Appendix B).  They must also attend the pre-execution briefing at the Media Center.  This briefing, conducted by a representative of the Warden, will provide specific information on the event and expectations regarding their conduct.  This will include:

a.  a review of approved materials that can be taken to the Execution Room;

b.  search procedures;

c.  escort procedures; and

d.  the role of pool reporters.

3.  <u>Prohibition of Substitutes</u>

No substitute media pool witness will be permitted after this briefing is conducted.

4.  <u>Segregation after the Search</u>

After the search, all witnesses will be segregated and escorted to the Execution Facility.  Media witnesses will not be permitted to have physical  contact with any other persons during this time.

40

5. **Excluding Witnesses**

The Warden will not exclude any media witness duly selected in accordance with this chapter from attendance at the execution or cause a selected media witness to be removed from the media pool witness area unless the media witness:

a. refuses to submit to a reasonable search as outlined in these regulations;

b. faints, becomes ill, or requests to be allowed to leave during the execution;

c. causes a disturbance within the media pool witness area that disrupts the orderly progress of the execution as determined by the Warden's representative on site; or

d. fails to abide by the provisions of the Witness Agreement.

6. **The Execution Process**

The selected media pool witnesses will be escorted as a group to the execution location prior to the execution and will be allowed to remain there throughout the execution process. The Warden will designate a BOP Spokesperson to remain with the media pool witnesses throughout the process and to answer questions.

F. **Death Announcement**

Immediately following the execution and prior to the post-execution press pool briefing, a Warden's representative will read the following prepared statement to the press and demonstrators:

41

SAMPLE STATEMENT

(To be read at post execution press briefing and to any assembled members of the public.)

_____, Warden of _____,

reports that pursuant to the sentence of the United States

District Court in _____, _____
                                     (Condemned Individual's Name)

has been executed by lethal injection.


_____ was pronounced dead at
        (Condemned Individual's Name)

_____ on _____.
     (Time)              (Date)

    G.    Press Pool Post-Execution Briefing

All news media press pool witnesses will, after being returned from the execution to the Media Center, immediately brief other media representatives covering the event. The pool witnesses will provide an account of the execution and will endeavor to answer all questions asked of them by other media representatives. They will not report their observations regarding the execution to their respective news organizations until after the non-witness media representatives have had the benefit of the pool representatives' accounts of the execution.

    H.    Post Execution Press Conference

If deemed necessary and appropriate, representatives of the Department of Justice, USMS and BOP will answer questions from the assembled media for no more than 30 minutes after the press briefing.

V.    The Execution Information Center

    A.    Responsibility

The Warden's representative will establish and operate an Execution Information Center.

42

B.    Purpose

The Execution Information Center:

1.    is a central processing point for all incoming media and public interest telephone calls pertaining to the scheduled execution;

2.    allows the institution's staff to handle normal and routine business;

3.    handles "crank" calls and bomb threats in accordance with BOP policy; and

4.    establishes a log of calls for future reference, investigation and evaluation.

C.    Location

1.    The Execution Information Center will be located in an area identified by the Warden.

2.    Only persons authorized by the Warden will be allowed in the Center's operational area. Center staff are responsible for keeping the area clear of unauthorized personnel.

D.    Schedule

1.    The Execution Information Center will commence operations approximately two working days prior to the scheduled execution.  The Information Center will operate twelve hours a day on the days prior to the scheduled execution and for the eighteen hours immediately preceding the scheduled execution.  The Center will remain in operation until approximately one hour after the execution.

2.    The Warden's representative will arrange coverage of telephones, based on the volume of calls.

3.    Staffing for the Execution Information Center will be coordinated by the Warden's representative.

43

E.    Screening Calls

1.    Types of Calls

a.    Business Calls

Calls from BOP staff or other Federal agencies relating to the execution; or fromBOP staff relating to operational issues affected by the execution which may need to be forwarded to the Command Center.

b.    Personal Calls

Calls intended for individuals (staff or witnesses) connected with the execution.

c.    Inquiry Calls

Execution-related calls from the general public.

1.    Staff will endeavor to answer every call in a professional, courteous and efficient manner.

2.    If bomb threats are received, the staff member receiving the call will utilize established procedures.  Bomb threats will be communicated to the Command Center immediately.

3.    If possible, all "crank" calls and calls considered to be an emergency, should be recorded and traced.

44

**CHAPTER 7:  STAYS, COMMUTATIONS AND OTHER DELAYS**

I.    **General Provisions**

    A.    **Purpose of Chapter**

        The purpose of this chapter is to:

        1.    cite the entities capable of causing execution stays, commutations, and other delays;

        2.    specify the manner of communicating such delays/commutations; and

        3.    provide the procedures for implementing the delay/commutation.

    B.    **Policy**

        It is the policy of the BOP that:

        1.    procedures must be in place to receive and ensure proper handling of legal interruptions of the execution countdown;

        2.    staff understand their roles and the BOP's responsibilities in the event of such interruptions; and

        3.    contingency plans provide methods for responding to:

            a.    temporary delays;

            b.    lengthy delays; and

            c.    commutations.

II.    **Presidential and Judicial Authority to Interrupt Execution**

    A.    **President**

        1.    The United States Constitution confers upon the President the power to grant reprieves and pardons for offenses against the United States.  This has been held to include the power to grant conditional pardons and commute sentences.

        2.    Neither Congress nor a State legislature can limit the President's power to pardon.

B.    **Courts**

A Federal court of competent jurisdiction may issue a stay of execution or invalidate a sentence of death as a result of appellate or collateral proceedings.

III.    **Communication of Pardons, Stays, Commutations or Delays**

A.    **Prior to Final Execution Countdown**

If the BOP receives an order from a Federal court of competent jurisdiction or the President ordering a respite, reprieve, stay, commutation, pardon or other action which requires the suspension or termination of the execution:

1.    the Attorney General's Office will be contacted for consultation; and

2.    a decision will be made by the Director of the BOP concerning the status of planning and preparation for the execution.

B.    **During Final Execution Countdown**

1.    During the final twenty-four hours, the BOP and the USMS will maintain frequent contact with the Attorney General's Office through the



(b)(2) & (b)(7)(F)            (b)(2) & (b)(7)(F)

C.    **Final Clearance for Execution**

At an appropriate time prior to the execution [redacted] the Designated United States Marshal will verify clearance to continue with the execution [redacted]

(b)(2) & (b)(7)(F)

46

IV.    <u>Procedures to Implement Last-Minute Stays</u>

    A.    Upon receiving a stay during the final countdown, the first effort will be to determine the probable length of the delay.

    B.    If the witnesses have not been moved from their staging areas, they will be held in those locations until further instructions are received from the Warden to proceed with or terminate the execution.

    C.    If witnesses are already at the Execution Facility and the condemned individual is restrained:

        1.    If the delay appears to be relatively lengthy, the condemned individual will be returned to the Holding Cell by the Restraint Team.  The witnesses will be returned to their staging areas in the order listed. There they will await further information.

        2.    If the delay is likely to be relatively short in duration, the witnesses will remain in place. The drapes will be closed and the condemned individual will remain restrained on the table.

        3.    If the execution is indefinitely stayed, set for re-sentencing, commuted, or halted by pardon, the execution will be halted, and the condemned individual and witnesses will be immediately advised.  Witnesses will be returned to their staging areas and the condemned individual returned to appropriate quarters in the institution.

47

Appendix A

MEMORANDUM OF AGREEMENT
BETWEEN
FEDERAL BUREAU OF PRISONS
AND WITNESS

This agreement is made between the Federal Bureau of Prisons and the following witness:

_____

In accordance with Title 28, Code of Federal Regulations, Section 26.4, the Federal Bureau of Prisons may allow you, as a witness, to be present at the execution. However, your presence at the execution is not a right and, in order to be entitled to be present, you will be required to agree to the following conditions:

1. You will not bring onto institution grounds anything constituting legal or illegal contraband under any applicable statute, regulation or policy, including, but not limited to, firearms, weapons, explosives, metal cutting tools, narcotic drugs, alcoholic beverages, or any item creating a threat to institution safety, security, or good order;

2. You agree to submit to a reasonable search for contraband and other searches as considered necessary by the Bureau of Prisons for entry into the institution;

3. You will conduct yourself in a lawful and orderly manner;

4. You will comply with all lawful directives of correctional personnel while on institution grounds;

5. You will not bring onto institution grounds any photographic or other visual or audio recording device; and

You have read, understand, and agree to the above. By signing this agreement, you agree to comply with its conditions and understand that failure to abide by them will result in your removal from institution grounds and could lead to prosecution for violation of Federal laws.

| | |
|---|---|
| _____ | _____ |
| (Witness) | (Date) |
| _____ | _____ |
| (Agency Representative) | (Date) |

48

## Appendix B

### MEDIA WITNESS PRESS POOL AGREEMENT

In consideration of having been selected as an official witness

to the execution of _____ on

_____, I, _____,

hereby agree to act as a pool reporter and, not to interview non-

media witnesses or Department of Justice staff at the Execution

Facility.  Following the execution, I agree to return immediately

to the Media Center to brief my colleagues there regarding the

execution and answer their questions.  I also agree to file my

story only after I have completed my responsibilities as a pool

reporter.

NAME:            _____
                            (Signature)

ORGANIZATION:    _____

DATE:            _____


                        _____

                            (BOP Staff Witness)


49

Appendix C

SAMPLE LETTER TO MEDIA
(Re:  Media Center Operations)
In accordance with the provisions of 28 C.F.R., Part 26,
Implementation of Death Sentences in Federal Cases,

_____ is scheduled to be executed
     (Condemned Individual's Name)

at _____ on _____.
    (Institution)         (Date)

No later than eight hours preceding the scheduled execution, a Media
Center will be established at the _____ in
                                     (Location)
Terre Haute, Indiana, and telephones will be available.  Should you
desire to cover the event from the Media Center, or if selected, be a
media pool witness, please submit your written request to me, via fax
or by mail, so that it is received in my office no later than

_____.
             (Date 10 days prior to execution)

The request must include your name, the names of all support
staff (sound technician, cameraperson, etc.) who may accompany
you on this day.  Social security numbers and dates of birth for all
participants, including yourself, must also be furnished in your
letter so that appropriate security checks can be completed.  You will
be notified promptly if we have any concerns with your request.  Space
is limited and admittance to the Media Center will have to be on a
first-come, first-accommodated basis.

Should you desire to be considered to be a media pool witness to the
execution, you will also be required to sign agreements consenting to
a search prior to entering the execution facility, and agreeing to
abide by all relevant conditions, rules and regulations.  Should you
participate, your name is subject to being released to the media.

Please note that all media representatives will be required to sign a
log and show proper press credentials in order to be admitted to the
Media Center.

                             Sincerely,
                             Name
                             Title

50