June 2011

**WILLIAM SEARLE LOGAN, M.D.**

Logan & Peterson, P.C.

428 W. 42nd Street        and    231 S. Bemiston Ave. Suite 800
Kansas City, Missouri 64111       Clayton, Missouri 63105
(816) 842-2500                    Phone: (314) 236-4914
Fax: (816) 842-9980               Fax:   (314) 236-4992

**EDUCATION:**

New Mexico State University, Las Cruces, New Mexico, 1972
    Bachelor of Art:  Psychology
    Bachelor of Science:  Biology, emphasis in Microbiology
    University Honor Society Program participant
    National Honor Society (Phi Kappa Phi) member
    Selected for Western Interstate Commission for Higher Education
        Program to do a sociological survey of the California State
        Psychiatric Hospital System.  Spent three months at Camarillo
        Hospital, Camarillo, California and Pacific State Hospital,
        Pamona, California

University of Texas Health Science Center, Dallas, Texas, 1977
    Southwestern Medical School Graduate
    United States Public Health Service Scholarship
    Externships in Psychiatry at Presbyterian Hospital
        Day Hospital, 1973
        Inpatient Unit, 1974

Timberlawn Psychiatric Hospital, Dallas, Texas
    Residency Program in Psychiatry, July 1977 to June 1981
    Residency training included the following rotations:
    Inpatient administrative care of severely disturbed adult and
        adolescent psychiatric patients (July 1977 through June 1979)
        Extensive course work in adolescent and adult psychiatry
    Internal Medicine Internship (March to June 1978) and Neurology
        Residency (May to June 1981) at Baylor University Medical
        Center, Dallas, Texas
    Timberlawn Psychiatric Hospital, Dallas, Texas.  July 1978 to
        June 1981.  Inpatient and outpatient psychotherapy
    Baylor University Medical Center, Dallas, Texas. July 1979 to
        January 1980.  Psychiatric Consultation-Liaison Services,
        teaching psychiatric rotation to senior medical students
        at Southwestern Medical School;  Consultation to psychiatric
        staff of adult and adolescent inpatient units
    Dallas County Mental Health and Mental Retardation Services,
        Dallas, Texas.  January to June 1980.  Outpatient Services,
        staff education and evaluations
    Timberlawn Foundation, Dallas, Texas.  June 1980 to April 1981.
        Rotation, completed research project on the long-term
        follow-up of hospitalized adolescents
    Southwest Family Institute, Dallas, Texas.  June 1980 to
        April 1981.  Family and marital therapy
    University of Texas, Southwestern Medical School, July to
        December 1980.  Rotation in child psychiatry
    Southern Methodist University, January to April 1981.  Rotation
        in short-term psychotherapy, college and graduate students
    Co-leader, adolescent therapy group, June 1978 to December 1979

LOG000001

**EDUCATION**: (continued)

The Menninger Foundation, Topeka, Kansas
Post Residency Fellowship in Forensic Psychiatry, Department of
Law and Psychiatry, July 1984 to June 1985.  Fellowship
included training in civil and criminal forensic evaluations,
consultation, research, and teaching

**LICENSURE**:

Texas State Board of Medical Examiners
License No. E8670, August 1977
Registered in Dallas and Tarrant Counties
Missouri State Board of Registration for the Healing Arts
License No. R7B57, August 1981
Kansas State Board of Healing Arts
License No. 20745, December 1984
Nebraska State Bureau of Examining Boards
License No. 18364, December 1990
U.S. Department of Justice, Drug Enforcement Administration
Licensed to dispense controlled substances 1978 to present

**BOARD CERTIFICATION**:

Psychiatry:  American Board of Psychiatry and Neurology
November 1982
Forensic Psychiatry:  American Board of Forensic Psychiatry
October 1987
Examiner: American Board of Forensic Psychiatry oral examination
San Antonio, Texas, October 19,1993
Forensic Psychiatry-Added Qualifications, American Board of
Psychiatry and Neurology, October 11, 1994. Recertified March 26,
2003, Certificate #136.

**EMPLOYMENT**:

Logan & Peterson, P.C. – President
Forensic and general psychiatry for adults and adolescents.
Evaluation and treatment of psychiatric disorders with
specialization in cases with need for opinions on legal
issues such as personal injury; workers compensation; child
custody; disability; testamentary capacity; conservatorship/
guardianship; malpractice; criminal competencies, mental
state at time of crime, sentencing evaluations, mitigation,
etc.  Also hospital consultations concerning evaluation,
treatment, suitability for release, need for continued care,
discharge planning, etc.  Continued consultation for the
Menninger Clinic as well as teaching and supervising
residents in the Karl Menninger School of Psychiatry and
Mental Health Sciences from July 1993 through June 2001; and
the University of Missouri Medical School Psychiatric
training program (2001).  Consultation in correctional mental
health with jails and prisons.  Sexual Predator Evaluations
in Kansas, Missouri, Texas and Iowa.  Internet Sex offenses
in Kansas, Missouri, Texas, Nebraska, Pennsylvania and
Missouri.  Including trial work disability evaluations for
Ford, Sprint, Government workers, U.S Post Office, V.A, etc.
The Menninger Clinic, Topeka, Kansas July 1985 to July 1993
Director, Department of Law and Psychiatry and Director of
Forensic Training, Karl Menninger School of Psychiatry and
Mental Health Sciences.
Evaluation of referrals from attorneys on issues
such as workman's compensation, personal injury, malpractice,
contested civil commitment, testamentary capacity,
conservatorship/guardianship, child custody, employment
evaluations, competency to stand trial, criminal responsibility,

LOG000002

**EMPLOYMENT**: **(continued)**

diminished capacity and sentencing.  Consultation provided to state and federal psychiatric hospitals, police department, corrections systems, C.F. Menninger Memorial Hospital, Kansas State Board of Healing Arts, Community Corrections.  Teaching of forensic issues to psychiatric trainees (residents), child fellows and forensic fellows.  Testimony and research.  Also carried caseload of individual therapy patients providing direct psychiatric care.  Served as Federal Court Monitor in prison mental health care.  Administrative duties in running the department

Medical Center for Federal Prisoners, Springfield, Missouri
July 1981 to July 1984.  Forensic Psychiatrist
Completed 540 evaluations for the Federal District Courts regarding competency to stand trial, sanity at the time of the offense, dangerousness and post-sentence psychiatric evaluations.  Also evaluated correctional personnel for fitness for duty and evaluations on emotionally disturbed inmates for the Bureau of Prisons.  Finally, provided psychiatric consultation to medical and surgical units as well as outpatient treatment to the inmate population.

Testified as an expert witness in 10 Federal Judicial Circuits and 27 U.S. District Courts on 47 occasions.

Nominated Attorney General's Award for Distinguished Service

Tarrant County Mental Health and Mental Retardation Services
Fort Worth, Texas January 1980 to June 1981.
Provided outpatient treatment, evaluation, and staff consultation (part-time)

Dallas County Mental Health and Mental Retardation Services
Dallas, Texas August 1979 to June 1981
Provided outpatient treatment (part-time)

John Peter Smith Hospital, Fort Worth, Texas, May 1978 to
September 1979. Provided weekend psychiatric emergency room coverage, admission and treatment of patients on acute units, and hospital consultations (part-time)

**TESTIMONY**

Have provided psychiatric expert testimony on a variety of issues related to mental health in both state and federal courts on an average of 25 to 30 times a year.

Federal Courts:  Alabama, Arkansas, California, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Minnesota, Montana, Nebraska, New Mexico, Nevada, Oklahoma, Texas, Utah, Virginia and Wyoming (23 states)

State Courts: Arizona, California, Colorado, Idaho, Illinois, Iowa, Kansas, Michigan, Missouri, Nebraska, South Dakota, New York, North Carolina, Ohio, Oklahoma, Texas, Arkansas, Louisiana and Wyoming (19 states)

**POST RESIDENCY CONFERENCES AND COURSES:**

American Psychiatric Association Annual Meeting
May 1981 New Orleans, Louisiana
Courses:  Testifying as an Expert Witness (4 hours)
          Juvenile Issues in Forensic Psychiatry (6 hours)
American Academy of Child Psychiatry Annual Meeting
October 1981 Dallas, Texas

**POST RESIDENCY CONFERENCES AND COURSES:   (continued)**

Harvard Medical School Department of Continuing Education
   June 1982 Boston, Massachusetts (22 hours)
   Course:  Psychiatric Medicine
American Academy of Psychiatry and the Law Regional Meeting
   March 1983 Tampa, Florida (11 hours)
   The Psychiatric Expert
American Psychiatric Association Annual Meeting
   May 1983 New York City
   Courses:  The Psychiatrist as an Expert Witness (4 hours)
             Assessment and Management of the Violent Patient
             (4 hours)
American Academy of Psychiatry and the Law Annual Meeting
   October 1983 Portland, Oregon (15 hours)
   Courses:  Detection of Malingering (3 hours)
             Forensic Psychiatry Review (20 hours)
American Academy of Psychiatry and the Law
   Midwest Chapter Scientific Meeting March 1984
   Chicago, Illinois (11.5 hours)
   Psychic Trauma and Psychic Harm
American Academy of Psychiatry and the Law Annual Meeting
   October 1984 Nassau, Bahamas (20 hours)
   Courses:  Forensic Psychiatry Review (21 hours)
             Mental Disability Evaluation in the Civil Court
             (4 hours)
American Psychiatric Association Annual Meeting
   May 1985 Dallas, Texas (24 hours)
   Course:  Mental Disability Benefits (6 hours)
American Academy of Psychiatry and the Law, Midwest Chapter
   Scientific Meeting, "The Child Witness in Sexual Abuse"
   Minneapolis, Minnesota, September 6-7, 1985 (8 hours)
American College of Legal Medicine
   "Medical-Legal Aspects of Psychic Disability"
    Albuquerque, New Mexico, October 9-10, 1985 (11.5 hours)
American Academy of Psychiatry and the Law 16th Annual Meeting
   Albuquerque, New Mexico, October 10-13, 1985 (8.5 hours)
American Academy of Psychiatry and the Law
   Midwest Chapter, Scientific Meeting
   "Health Care Law and the Forensic Psychiatrist:  Hospital and
   Practice Issues"  Chicago, Illinois, April 4-5, 1986
   (8.5 hours)
American Academy of Psychiatry and the Law 17th Annual Meeting
   (25 hours), Forensic Board Review Course (20 hours)
   Philadelphia, Pennsylvania, October 14-18, 1986
American Academy of Psychiatry and the Law Scientific Program
   Cincinnati, Ohio, April 3-4, 1987 (10 hours)
Menninger Foundation Symposium, "Children:  Victims of
   Violence, Topeka, Kansas, April 9-10, 1987 (5 hours)
American Psychiatric Association, Annual Meeting
   Chicago, Illinois, May 9-14, 1987  (27 hours)
Menninger Foundation/Bureau of Prisons Conference
   "Crime Control Compliance"  Springfield, Missouri
   September 24-25, 1987 (8.5 hours)
American Academy of Psychiatry and the Law, 18th Annual Meeting
   Ottawa, Canada, October 15-18, 1987 (17.25 hours)
American Academy of Psychiatry and the Law, Midwest Chapter,
   Scientific Meeting, Minneapolis, Minnesota
   April 8-9, 1988 (11.0 hours)
University of Missouri, Kansas City School of Medicine
   "Liability Prevention for the Clinician"
   May 26, 1988 (4.0 hours)

LOG000004

**POST RESIDENCY CONFERENCES AND COURSES:** (continued)

CME, Inc. "Improving Your Clinical Success: Integrating Psychodynamics and Psychology" San Diego, California June 24-26, 1988 (18.0 hours)

American Academy of Psychiatry and the Law Annual Meeting San Francisco, California, October 20-22, 1988 (23.5 hours)

Menninger Clinic, "The Psychopathic Mind" Topeka, Kansas January 27, 1989 (3.5 hours)

American Academy of Forensic Sciences, Law Vegas, Nevada February 16-18, 1989 (12.75 hours)

University of Florida/St. Joseph's Hospital, "Legal Issues in Psychiatric Medicine" Tampa, Florida March 9-10, 1989 (12.0 hours)

Midwestern Chapter American Academy of Psychiatry and the Law Scientific Meeting,"Rights and Responsibilities in Mental Health Service Delivery" Madison, Wisconsin, April 14-15, 1989 (8.5 hours)

American Psychiatric Association Annual Meeting, San Francisco, California, May 7-11, 1989 (25.5 hours)

American Academy of Psychiatry and the Law 20th Annual Meeting, Washington, D.C., October 19-22, 1989 (24.5 hours)

Midwestern Chapter American Academy of Psychiatry and the Law Scientific Meeting, Kansas City, MO; April 6-7, 1990 (8.0 hrs)

American Academy of Psychiatry and the Law 21st Annual Meeting, San Diego, California, October 25-27, 1990 (21.5 hours)

Bureau of Prisons Conference on Forensic Psychiatry, Rochester, Minnesota, October 30, 1990 (6.0 hours)

NOVA University/Charter Hospital, "The Clinical and Forensic Assessment of Malingering and Deception" Miami, Florida, April 26-28, 1991 (21.0 hours)

Midwestern Chapter American Academy of Psychiatry and the Law, Scientific Meeting, "The Standard of Care in Psychiatry: What Is It?" Chicago, Illinois, April 12-13, 1991 (6.0 hours)

American Psychiatric Association 144th Annual Meeting, "Our Children: Our Future" New Orleans, Louisiana, May 11-16, 1991 (14.5 hours)

American Academy of Psychiatry and the Law, 22nd Annual Meeting, Orlando, Florida, October 17-20, 1991 (24.0 hours)

Menninger Clinic: Ethical Issues in Psychiatry, Topeka, KS March 13, 1992 (1.0 hour)

Case Western Reserve University School of Medicine Current Issues in Forensic Psychiatry, Cleveland, Ohio April 3, 1992 (3.75 hours)

Bureau of Prisons: Prediction of Violence, Detection of Malingering, Expert Testimony, Springfield, Missouri, July 24, 1992 (7 hours)

American Academy of Psychiatry and the Law, 23rd Annual Meeting, Boston, Massachusetts, October 15-17, 1992 (18 hours)

University of Missouri-Columbia School of Medicine, Advances in the Treatment of Depression, St. Louis, Missouri, December 12, 1992 (6.6 hours)

American Academy of Psychiatry and the Law, Midwest Chapter; Forensic Fantasy vs Legal Reality; Chicago, Illinois, April 16-17, 1993 (10.0 hours)

American Psychiatric Association, 24th Annual Meeting, San Francisco, California, May 22-27, 1993 (32.0 hours)

American Academy of Psychiatry and the Law, 24th Annual Meeting (sponsored by the University of Connecticut) San Antonio, Texas, October 21-23, 1993 (14.75 hours)

AAPL Forensic Board Review Course, Atlanta, GA; April 15-17, 1994 (22.5 hours)

Practical Reviews in Psychiatry, May 1994 (15.0 hours)

Progress in Psychosis: Serotonin-Dopamine Antagonists, Portland OR; March 25, 1995 (4 hours)

LOG000005

POST RESIDENCY CONFERENCES AND COURSES:   (continued)

       Childhood Sexual Abuse and Memories: Current Controversies, University of Kansas Medical Center, Kansas City, KS; March 31-April 1, 1995 (13 hours)

       American Psychiatric Association 148th Annual Meeting; Miami, FL May 22-24, 1995 (19 hours)

       American Academy of Psychiatry and the Law (AAPL) 26th Annual Meeting; Seattle, WA; October 19-22,1995 (24.75 hours)

       AAPL Midwest Chapter Meeting; St. Louis, MO; April 20, 1996 (3 hours)

       American Psychiatric Association 149th Annual Meeting; New York, NY; May 4-7, 1996 (24 hours)

       American Academy of Psychiatry and the Law (AAPL) 27th Annual Meeting; San Juan, Puerto Rico; October 17-20, 1996 (24.75 hours)

       American Academy of Forensic Sciences (AAFS), 49th Annual Meeting; New York, New York; February 19-22, 1997 (17.25 hours)

       American Psychiatric Association (APA) 150th Annual Meeting; San Diego, California; May 17-22, 1997 (12 hours)

       American Academy of Psychiatry and Law (AAPL) 28th Annual Meeting; Denver, Colorado; October 23-26, 1997 (21.25 hours)

       American Academy of Forensic Sciences; 50th Annual Meeting; San Francisco, California; February 9-14, 1998 (16 hours)

       American Academy of Psychiatry and the Law (AAPL); 29th Annual Meeting; New Orleans, Louisiana; October 18-25, 1998 (20 hours)

       American Academy of Forensic Science, 51st Annual Meeting; Orlando, Florida; February 15-20, 1999 (8.5 hours)

       Rush Medical College, Violence and the Forensic Expert; Chicago, Illinois; April 16-17, 1999 (9 hours)

       American Psychiatric Association, 152nd Annual Meeting, The Clinician; Washington, DC; May 15-20, 1999 (41.5 hours) including course on Psychiatric Disorders Related to Epilepsy (4 hours)

       University of Arizona College of Medicine; the 9th Annual Psychopharmacology Review-Current clinical Practice; Tucson, Arizona; February 21-25, 2000 (26.5 hours)

       American Psychiatric Association; 153rd Annual Meeting – The Doctor-Patient Relationship; Chicago, Illinois; May 13-18, 2000; (22.5 hours)

       American Neuropsychiatric Association, Twelfth Annual Meeting; Fort Meyers, Florida; February 24-27, 2001 (17.25 hours)

       University of Arizona College of Medicine, Eighth Annual Psychiatric Symposium; Santa Fe, New Mexico July 3-5, 2002 (11.5 hours)

       Sex Offenders Evaluation and Treatment; Specialized Training Services, Inc. St. Peters, Missouri, October 2-3, 2002 (14 hours)

       Continued Medical Education in Borderline Personality Disorder; Mood Disorders in Women; Medication side effects, cardiovascular and metabolic risk associated with Schizophrenia, ADHD; Bipolar Disorders; Depression; Anxiety and Panic Disorders, and Personality Dysfunction, June through December 2002 (25 hours).

       American Psychiatric Association; 156th Annual Meeting – "The Promise of Science; The Power of Healing"; San Francisco, California; May 17-22, 2003; (52 hours); Included four hour course on "Assessing the Risk of Violence in Both Forensic and Sex Offender Settings" on 5/21/03.

       American Academy of Psychiatry and the Law 34th Annual Meeting; San Antonio Texas; October 16-19, 2003 (28.75 hours)

POST RESIDENCY CONFERENCES AND COURSES:  (continued)

FCG Institute for Continuing Education:  Treatment of Long Term
  Depression: Striving toward a Substance Response: Overland
  Park, Kansas; March 4, 2004 (1.5 hours)
Tulane University Forensic Psychiatric Conference: New Orleans,
  LA; April 16-18, 2004 (14.75 hours)
University of Oklahoma: Medical Ethics; August 2004 (2 hours)
American Academy of Psychiatry and the Law
  35th Annual Meeting: Scottsdale, Arizona; October 21-24, 2004;
  (29.25 hours)
Tulane University School of Medicine: Brain and Behavior:
  Traumatic Brain Injury Revisited; New Orleans, LA; December
  11-12, 2004 (9.25 hours)
WEI: Neuroscience Education Institute
  Psychopharmacology and Pain Management; San Diego,
  California; February 17-20,2005 (24 hours)
University of Arizona Health Sciences Center
  11th Annual Santa Fe Psychiatric Symposium; Santa Fe, NM; June
  29 to July 1, 2005 (8 hours)
Psychiatric Annals – Childhood Anxiety Disorders (9/05); The
  Social Brain (10/05); PTSD (11/05); Treatment Resistant
  Depression (12/05); Psychotic Major Depression (1/06);
  Infections & Psychiatry (2/06); Prescription Opiates (6/06);
  OCD (7/06) Vindico Medical Education (24.0 hours)
American Academy of Psychiatry and the Law Annual Meeting;
  Chicago, Illinois October 26-29, 2006 (30.0 hours)
Tulane University Health Science Center: Brain and Behavior:
  Advances in Neuroimaging, New Orleans, LA December 7-8, 2007
  (9.5 hours)
Psychiatric Annals – Catatonia Research; Child Stress; Child
  and Adolescent Psychopharmacology; Case Reports 5th Annual
  Symposium; Effective Treatments; Suicide Risk Factors and
  Prevention; Psychiatric Aspects of Chemicals and Toxins
  Vindico Medical Education December 2007 (21.0 hours)
Tulane University Health Science Center: Forensic Psychiatry
  New Orleans, LA April 11-13,2008 (11.75 hours)
Psychiatric Annals: Long Term Consequences of Hurricane
  Katrina; Treating Depression Viddico Medical Education
  (6.0 hours)
University of Oklahoma College of Medicine: Medical Ethics
  Today (2.0 hours)
University of North Texas Health Science Center: Management-
  Based Care Strategies for Depression November 15, 2008 (5.0
  hours)
Tulane University Health Science Center: Forensic Psychiatry:
  Antisocial Personality Disorder, New Orleans, LA April 17-19,
  2009 (17 hours)
American Psychiatric Association, 162 Annual Meeting San
  Francisco, CA May 17 to 20, 2009 (28 hours) including
  Assessing and Treating Adult Sex Offenders (4 hours); Advances
  in Neuropsychiatry (6 hours), Psychopathic Disorders,
  Pathophysiology of ADHD; Treatment Resistant Depression;
  Bipolar Disorder; Infanticide and Post-partum Psychosis;
  Political Distortion of Science; Personality Disorder
  Advances; Doctor-Patient Relations in Cyberspace; Medical
  Update for psychiatrists; and Evaluating Problematic Internet
  Behaviors.
Psychiatric Annals: 2009-2010, Narcissistic Personality
  Disorders (3); Synchronicity (3); Post-traumatic Stress
  Disorder (3); Military Mental Health (3); Psychotherapy in
  Late Life (3); Bipolar Disorder (3); Treatment of Treatment
  Resistant Depression (1.25); Brain-Body Interactions (3);
  Geriatric Psychiatry (3); Schizophrenia and Bipolar Disorder
  Continuum (4.75); Child and Adolescent Psychopharmacology (3);
  Cases in Psychosis (2) total: (35.0 CME hrs.) Vindico Medical

Education.
CNS Spectrums:  Practical Dosing Strategies n the Treatment of
     Schizophrenia (2.0 hrs) Mount Sianai School of Medicine
Tulane University Health Science Center: Back to Basics:
     A primer in Forensic Psychiatry/Psychology, New Orleans,LA
     4/9-11/2010 14.5 CME.
 Psychiatric Annals 2010-2011 (23 hours)
   Psychiatric Care of the Elderly (June 2010-2 hours);
   .    Body Dymorphic Disorder (July 2010-3 hours);
        Cases in Depression (September 2010-3 hours);
        Deep Brain Stimulation (October 2010-3 hours);
        Traumatic Brain-Injury (November 2010-3 hours);
        Pharmacology and Current Treatments (December 2010-3
        hours);
        Assessment and Treatment of ADHD: An Update (January 2011-
        3 hours);
        Generalized Anxiety Disorder (February 2011-3 hours)
        Vindico Medical Education Thorofare, New Jersey
Medscope Education (CME @ Medcope.net) (7.25 CME)
   .    Loss Grief and Bereavement in Cancer Patients and their
        Families (1.25 hours 6/5/11)
   .    Electronic Medical Records: From Meaningful Use to
        Meaningful Care (.5 hr, 6/5/11)
   .    Treatment of ADHD (1.o hr on 6/5/11)
   .    Intimate Partner Violence and Substance Abuse (.5 hr
        6/5/11)
   .    Essential Tremor – A Neurodegenerative Disorder with
        Cognitive Deficits? (1.0 hrs on 6/5/11)
   .    Cognitive Problems in "Oldest Old" Women (.25 hr on
        6/5/11)
   .    Breastfeeding and Childhood Behavioral Problems (.25 hr on
        6/5/11)
   .    Abdominal Migraines in Children (.25 hr on 6/5/11)
   .    Circadian Rhythm Disorder and Health (.5 hr on 6/4/11)
   .    Dual Antidepressant vs. Monotherapy (.25 hr on 6/4/11)
   .    Teen Self Embedding Behavior (.25 hr on 6/4/11)
   .    Therapy for Schizophrenia (1.25 hrs on 4/24/11)
 Tulane University Health Science Center;
 (cme@tulane.edu) (13 hours)
 Brain and Behavior 2010 New Orleans, Louisiana December 3-4,2010

 Joslin Diabetes Center: Cardiometabolic Risk: Assessment and
 Interventions in Clinical Practice, Kansas City, Missouri, June,
 2011 (4.0 hours)

**PROFESSIONAL CONTRIBUTIONS:**


**Membership in Professional Organizations:**

American Psychiatric Association, 1979 to present
American Academy of Psychiatry and the Law, July 1983 to present
   Member, Committee on Institutional Psychiatry
        July 1987 to 1991
   Member, Committee on Psychiatric Services to Correctional
        Facilities 1987 to 1991
American Academy of Psychiatry and the Law Midwest Chapter
        1983 to present
Kansas State Representative May, 1985
   Chairman, State Delegate Committee, April 1986
   Councillor, April 1986 to April 1987
   Secretary, April 1987 to April 1989
   President-Elect, April 1989 to April 1990
   President, April 1990 to 1991

Association of Directors of Forensic Psychiatry Fellowships
   June 1986 to July 1993
   Chairman, Curriculum Committee October 1986 to 1991
Kansas Psychiatric Society, August 1984 to present
American Academy of Forensic Sciences 1989-present
Ozark Society of Psychiatrists, September 1982 to July 1984
   Treasurer 1983 to 1984
Texas Psychiatric Society, 1979 to 1984
Texas Medical Association, 1979 to 1981
Dallas County Medical Society, 1979 to 1981
American Medical Association, 1977 to 2009

## Hospital Affiliations:

C.F. Menninger Memorial Hospital, Clinical Staff 1984 to 1993
   Applications Committee 1986 to 1991
   Outpatient Council, 1991 - 1993
Larned State Hospital and State Security Hospital, consulting
staff, 1984 - 1994
Osawatomie State Hospital, consulting staff, 1986 – 2001.
U.S. Medical Center for Federal Prisoners, July 1981 to 1992
   Comprehensive Psychiatric Program Planning Committee
   May 1982 to July 1984
   Pharmacy and Therapeutics Committee, August 1982 to July 1984
   Library Committee, March 1982 to July 1984
Timberlawn Psychiatric Hospital, July 1977 to June 1981
   Emergency Committee, 1977 to 1978
   Admissions Committee, 1977 to 1978
   Medical Audit Committee, 1979 to 1981

## Consultations:

National Institute of Corrections
   August 1985 to 1989, prison mental health care
Department of Justice, Bureau of Prisons, 1984 to 1993.
   Medical Center for Federal Prisoners, Springfield, MO
   Member of group to study the implementation of Title 18
   USC Chapter 313 "Offenders with Mental Disease or Defect"
   Washington, D.C., November 1984
United States Penitentiary, Leavenworth, Kansas
   March 1987 to 1991
Commonwealth of Virginia Department of Corrections
   August 1985 and December 1987, development of a mental
   health treatment program for inmates
Missouri Attorney General, March-May 1986,
   Evaluation of Capital Punishment Unit, Missouri State
   Penitentiary, and recommendations concerning health care
   services
U. S. Department of Justice, Bureau of Prisons -
   Received grant to study psychological effects of high security
   confinement, U.S.P. Marion, IL, 1986 and later testified about
   findings in Federal Court case.
Nevada Department of Prisons, April-June 1986,
   Development of a mental health care treatment system
   Nevada Department of Prisons, May 1988 to present
   Special monitor Federal Court,
   Taylor v Wolff, stipulated settlement
U. S. Department of Justice, Bureau of Prisons -
   Consultant on psychological effects of close confinement,
   women's high security unit FMC Lexington, KY, June 1988
State of Kansas, Legislative Coordinating Counsel:  Consultant
   on Mental Health in Corrections, May-July 1989
Topeka Police Department, Topeka, Kansas 1984 to 1993
   Evaluation, treatment, teaching, case consultation;
   evaluation of recruits, response team and criminal
   intelligence unit

Community Corrections, Topeka, Kansas 1984-1986, 1988 to 1991
Evaluation of nonviolent offenders for placement in
community programs
Kansas State Board of Healing Arts
Examined impaired physicians, 1988-1990
Patton State Hospital, San Bernadino, California,
November 2-3, 1989
Pine Rest Christian Hospital, Grand Rapids, Michigan, June 1991
Review of suicides at hospital during last three years
Louisiana Department of Mental Health, Baton Rouge, LA
June 2-5, 1992 and August 19, 1992
Mortality reviews at five state hospitals
Texas Department of Mental Health-Terrell State Hospital
Creation of a new unit for mentally ill offenders for Dallas
County, May 1992
C.F. Menninger Memorial Hospital, 1984 to 1993
Forensic psychiatric evaluations
Menninger Foundation Children's Division
September 1985 to 1993, forensic issues
Incest Treatment Program, Adult Psychotherapy Service
The Menninger Foundation, June 1985 to 1994
Kansas State Security Hospital, Larned, Kansas 1984 to present
Larned State Hospital, Larned, Kansas, March 1986 to 1994
forensic and clinical issues
Osawatomie State Hospital, Osawatomie, Kansas,
January 1986 to 2001, forensic and clinical treatment issues
Medical Consultants Network-2004 to present. Evaluation of
employees on short term disability.
National IME Network (NIMEN); Quality Medical Evaluations (QME)
2005-Present IME Return to Work Evaluations for Ford Motor
Company.
QTC – Evaluation of Disabled Employees for OWCP (Postal
Employees) 2008-Present

<u>**Educational Activity**</u> **(courses taught):**

Faculty, course in basic psychiatry for correctional officers,
Lectured on basic psychiatric interviewing techniques.
Medical Center for Federal Prisoners
(January, April, and June 1984)

Director of Forensic Training, <u>Karl Menninger School of</u>
<u>Psychiatry and Mental Health Sciences</u>, July 1985 to 1993;

Faculty, <u>Karl Menninger School of Psychiatry</u> 1993-2001.

Director, Forensic Psychiatry Fellowship Program, Karl Menninger
School of Psychiatry, July 1987 to 1993.
Supervised forensic fellows E. Ross Taylor, M.D. (1987-88) and
Stephen E. Peterson, M.D. (1990-91); Japanese fellow (1990-91)

Faculty, Law and Psychiatry Workshop, Karl Menninger School
of Psychiatry. Lectured psychiatric residents on informed
consent, wrongful discharge and competence to stand trial
(September, October, November 1984).
Director, Law and Psychiatry Workshops, Karl Menninger School
of Psychiatry (KMSP) for Psychiatric Residents, 1985-1993.

A. Forensic Issues in Psychiatric Practice

-- September 1985 - Lectured on Involuntary
Hospitalization, Civil Commitment and Patients Rights
-- July 1986 - Lectured on Confidentiality, Evaluation
of Dangerousness, and the Capacity to Make Rational
Treatment Decisions
-- July 1987 - Lectured on Prediction of Dangerousness

Case 3:09-cv-03064-MWB-LTS     Document 234-2     Filed 06/23/11     Page 10 of 100

LOG000010

and Capacity to Make Treatment Decisions
-- July 1988 - Lectured on Informed Consent, The Evaluation of Capacity to Make Treatment Decisions, Confidentiality, and the Prediction of Dangerousness and Harm
-- July 1989 - Lectured on Informed Consent, Confidentiality, Capacity to Make Treatment Decisions, Duty to Protect, Evaluation of Dangerousness
-- July 1990 - Lectured on The evaluation of Dangerousness and Capacity to Make Treatment Decisions
-- July 1991 - Lectured on The Evaluation of Dangerousness and Capacity to Make Rational Treatment Decisions.  Also provided case material and commentary on psychiatric testimony for mock civil commitment hearing
-- July 1992 - Lectured on Forensic Issues in Clinical Psychiatry
-- July 1993 - Lectured on Evaluation of Dangerousness and Ability to Make Treatment Decisions

B.  Civil Issues in Psychiatric Practice

-- October 1985 - Lectured on Psychiatric Aspects of Family Law
-- October 1986 - Lectured on Family Law and the Juvenile Court
-- October 1987 - Lectured on the Role of Psychiatry in the Juvenile Justice System
-- September 1988 - Lectured on Divorce, The Evaluation of Child Custody and the Role of Psychiatry in the Juvenile Justice System
-- September 1989 - Lectured on Juvenile Justice System
-- September 1990 - Lectured on Malpractice
-- September 1991 - Organized seminar on Civil Forensic Evaluations
-- September 1992 - Organized seminar on Civil Forensic Evaluations

C.  Criminal Forensic Psychiatry

-- November 1985 - Lectured on Competency to Stand Trial and Post Trial Issues:  Incarceration, Parole, Release and Dangerousness
-- November 1986 - Lectured on Competence to Stand Trial and the Evaluation of Dangerousness for Sentencing and Release
-- November 1987 - Lectured on Psychiatric Testimony and Post Trial Psychiatric Evaluations
-- November 1988 - Lectured on Competency to Stand Trial, Post-Trial Psychiatric Evaluations, Organized Mock Insanity Defense Trial with Washburn Law School
-- November 1989 - Lectured on Post Trial Psychiatric Evaluations; Organized mock trial with Advanced Trial Techniques Class, Washburn Law School
-- November 1990 - Organized mock trial with Washburn Law School Legal Clinic
-- November 1991 - Lectured on Introduction to Criminal Forensic Evaluations and organized mock trial with Washburn Law School Trial Advocacy Course
-- November 1992 - Lectured on Competency to Stand Trial evaluations and organized mock trial at Washburn Law School.
-- November 1993 - Lectured on Introduction to Criminal Forensic Evaluations and Competence to Stand Trial

LOG000011

-- November 1994 - KMSP PGY-IV Law & Psychiatry Workshop for KMSP and Washburn Law School students
-- September 1995 - KMSP PGY-IV Law & Psychiatry Workshop for KMSP and Washburn Law School students (Expert witness testimony, competency, post-trial issues: incarceration, parole, release, dangerousness, sentencing/mitigation) and commentary on mock trial
-- September 1996 – KMSP PGY IV Law and Psychiatry Workshop for KMSP and Washburn Law School (Expert Witness testimony and forensic evaluations in the criminal justice system.)
-- September 1997 KMSP PGY IV Law and Psychiatry Workshop for KMSP and Washburn Law School (The Psychiatrist/Mental Health Specialist in Criminal Proceedings with particular discussion of competence to stand trial, and Post Trial issues; Incarceration, parole, release, dangerousness, and mitigation.)
-- September 1998 KMSP Law and Psychiatry Workshop for Psychiatric residents, psychology Post Doctoral Fellows and Social Work Interns (The Psychiatrist as Expert Witness; Trial Practice, Rules of Evidence and The Psychiatrist Mental Health Specialist in Criminal Proceedings) with Stephen E. Peterson, M.D.
-- September 1999 and 2000: KMSP Law and Psychiatry Workshop for Psychiatric Residents, Psychology Post Doctoral Fellows and Social Work Interns.  Topics include Psychiatrists as Expert Witnesses: Trial practice, Rules of Evidence; and the Psychiatrist/Mental Health Specialist in Criminal Proceedings with discussion of competency to stand trial and post trial issues:  Incarceration, Parole, Release, Dangerousness, and Mitigation Co-taught with Stephen E. Peterson, MD.

Director of Law and Psychiatry Workshop for Child Fellows, Karl Menninger School of Psychiatry
-- January 1986 - Lectured on Introduction to Child Forensic Psychiatry, Child Forensic Psychiatric Evaluations and Testifying as an Expert Witness
-- April 1986 - Lectured on Child Custody Evaluations to staff and child fellows of the Menninger Foundation Childrens Division
-- April 1987 - Lectured on the Forensic Evaluation of the Juvenile Offender
Faculty, Principles and Techniques of Outpatient Diagnostic Work for postdoctoral psychology fellows
Lectured on Issues in Providing Courtroom Testimony.
(April 1987 and April 1988)  KMSP PSY 202
Faculty, Abnormal Personality Course KMSP GR-205.  Lectured on Clinical and Forensic Aspects of Personality Disorders
(April-May 1988; 3 lectures) (April 1989; one lecture)
Faculty, Personality Disorders Course for psychiatric residents.
Lectured on The Clinical and Forensic Aspects of Personality Disorders (February 1991, February 1992)
Faculty, Emergency Psychiatry Course, KMSP GR-209
Legal Issues in Emergency Psychiatry (July 1987, July 1988)
Faculty, Seminar on Ethics in Psychiatry, KMSP KM-308
September-November 1988 (6 lectures)
Lectured on Confidentiality Part I&II, Patient-Therapist Sexual Contact, the Psychiatrist and the Law, Right to Refuse Medication
October 1989 - Lectured on Confidentiality vs Protection of the Public
October 1990 - Lectured on Ethical Issues in Forensic Psychiatry

Director of Elective in Forensic Psychiatry for PGY-4
   psychiatric residents, Karl Menninger School of Psychiatry,
   April to June 1987
Examiner, Mock Psychiatric Boards, Kansas Psychiatric Society,
   Topeka, Kansas, December 1985
Judge,  Washburn Client Counseling Competition, Washburn
   University Law School (February 1986) (February 1989)
Faculty, Washburn Law School/Menninger Clinic joint certificate
   program in Mental Health & Law (1992-93)
Faculty, Karl Menninger School of Psychiatry - teaching and
   supervision of psychiatric residents in forensic psychiatry
   (1993 - Present), including community consultation at Washburn
   Law School by PGYIV Residents (2000-2001).
Assistant Clinical Professor, University of Missouri at Columbia
   School of Medicine, Department of Psychiatry – Supervision of
   4th year psychiatric resident in forensic psychiatric elective
   for (2000-2001)
University of Kansas Medical Center, Volunteer Physician
   Educator 2001.)

## Presentations:

1.  American Academy of Child Psychiatry Annual Meeting
      October 1981, Dallas, TX.
      Topic:  "The Prognostic Significance of Adolescent
              Interpersonal Relationships During Psychiatric
              Hospitalization"
2.  Forensic Psychiatry Seminar, April 1982
      Medical Center for Federal Prisoners, Springfield, MO.
      Topic:  "Psychiatric Evaluation of Criminal Responsibility"
3.  Abnormal Behavior Seminar, October 1982, Springfield, MO.
      Topic:  "What is Abnormal Behavior"
4.  Ozark Society of Psychiatrists, November 1982, Springfield, MO.
      Topic:  "Forensic Psychiatric Evaluations"
5.  Ozark Nurses Association, April 1983, Springfield, MO.
      Topic:  "Forensic Psychiatry and the Care of Mentally Ill
              Offenders"
6.  Ozark Society of Psychiatrists, October 1983, Springfield, MO.
      Topic:  "The APA Position on the Insanity Defense"

7.  Karl A. Menninger School of Psychiatry Colloquium, Sept. 1984
      The Menninger Foundation, Topeka, KS.
      Topic:  "Psychiatric Practice in a Correctional Setting"
8.  Prison Fellowship, October 13, 1984, Overland Park, KS.
      Topic:  "Psychological Aspects of Incarceration,
              Rehabilitation, and Repentance"
9.  Participant, Panel Discussion, American Academy of Psychiatry
      and the Law, October 1984, Nassau, Bahamas.
      Topic:  "Accreditation of Forensic Fellowships: Another View"
10. Forensic Study Group, December 4, 1984, Topeka, KS.
      Topic:  "Review of Implications of New Federal Legislation
              on Forensic Decisions - Incompetence, Insanity,
              and the Disposition of Mentally Ill Offenders"
11. C.F. Menninger Memorial Hospital Education Meeting,
      January 29, 1985
      Topic:  "Presidential Threateners"
12. C.F. Menninger Memorial Hospital, Diagnostic Service
      Inservice Education Meeting, February 13, 1985
      Topic:  "Problems Encountered in Forensic Outpatient
              Evaluations"
13. C.F. Menninger Memorial Hospital, Religion and Psychiatry Dept.
      February 25, 1985
      Topic:  Case Consultant - "Role of Pastoral Counseling with
              the Prisoner"
14. Kansas Trial Lawyers Association, Topeka, KS  March 8, 1985
      Panelist:  "Treatment and Evaluation of Sexual Offenders"

LOG000013

15. Larned State Hospital, Larned, KS  March 14, 1985
       Topic:  "Malingering and Factitious Illness"
16. Oklahoma State University, Department of Applied Behavioral
       Studies Rehabilitation Counselor Education Program,
       March 27, 1985
       Topic:  "Psychological Factors Affecting Physical Recovery--
                Secondary Gain"
17. Kansas Psychiatric Society, Residents Conference,
       Kansas University Medical School, Kansas City, KS
       April 13, 1985
       Topic:  "Forensic Psychiatry and the Practice of Psychiatry
                in a Correctional Setting"
18. U.S. Medical Center for Federal Prisoners, Springfield, Mo
       April 18, 1985
       Topic:  "The Expert Witness in Federal Court" (4 hour course)
19. WIBW TV News, Topeka, KS  June 28, 1985
       Topic:  Child Molesters - Pedophilia
20. Larned State Hospital, Larned, KS  July 1985
       Topic:  "Evaluation of Dangerousness"
21. Medical Center for Federal Prisoners, Springfield, MO
       August 1985
       Topic:  "Dangerousness Prediction:  Current Trends"
22. Larned State Hospital, Larned, KS  October 1985
       Topic:  "Psychodynamics of the Borderline Patient"
23. Menninger Foundation Rehabilitation Department, Topeka, KS
       Seminar on Disability Management, October 1985
       Topic:  "Psychological Implications of Workers Compensation"
24. Larned State Hospital, Larned, KS  November 15, 1985
       Topic:  "Paranoid Disorders"
25. Osawatomie State Hospital, Osawatomie, KS  February 1986
       Topic:  "Competency To Stand Trial"
26. Menninger Foundation Seminar:  Approaches to
       Understanding the Incest Victim, March 13, 1986, Topeka, KS
       Topic:  Moderator and Discussant on panel "The Treatment
                Network" -- Role of the forensic psychiatrist in
                incest cases
27. Osawatomie State Hospital, Osawatomie, KS  March 1986
       Topic:  "Evaluation and Prediction of Dangerousness"


28. American Academy of Psychiatry and the Law, Midwest Chapter
       Meeting, April 4-5, 1986, Chicago, IL  "Health Care Law
       and the Forensic Psychiatrist:  Hospital and Practice Issues"
       Topics: "Role of Forensic Psychiatric Evaluation of the
                Impaired Professional", "Expert Witness", mock
                trial of impaired professional
29. Topeka Psychoanalytic Society Seminar for Shawnee County Kansas
       Court Services, Topeka, KS  April 14, 1986
       Topic:  "Introduction to Sex Offenders:  Definitions,
                Legal Issues, Statistics"
30. Kansas Psychiatric Society Career Opportunities in Psychiatry
       Workshop, Kansas City, KS  April 19, 1986
       Topic:  "Forensic and Correctional Psychiatry"
31. Topeka Psychoanalytic Society Seminar for Shawnee County Kansas
       Court Services, Topeka, KS  May 5, 1986
       Topic:  "Sex Offenders:  Treatment, Management and Outcome"
32. Osawatomie State Hospital, Osawatomie, KS  May 16, 1986
       Topic:  "Evaluation and Treatment of Sex Offenders"
33. Kansas City Star Newspaper, July 1986
       Interview:  "Children Who Commit Acts of Violence"
34. Larned State Hospital, Larned, KS January 22-23, 1987
       Topic:  "Therapeutic Response to Patients Who Assault Staff"
                "Tardive Dyskinesia"

LOG000014

35. Forensic Study Group, Topeka, KS January 1987
    Topic:  "Research in Corrections:  Introduction to Research
            on the Psychological Effects on Inmates of High
            Security Confinement"
36. Topeka Psychoanalytic Society Seminar for Shawnee County Court
    Judges, Topeka, KS  February 2, 1987
    Topic:  Recidivism and the Prediction of Dangerousness"
37. C.F. Menninger Memorial Hospital Education Meeting,
    March 17, 1987
    Topic:  "Staff Reactions to Assaultive Patients"
38. Menninger Foundation Department of Continuing Education Seminar,
    Children:  The Forgotten Victims of Violence, Topeka KS
    April 10, 1987
    Topic:  "The Psychopathology of the Child Abuser"
39. U.S. Department of Justice, Federal Bureau of Prisons Conference
    on the Comprehensive Crime Control Act of 1984:  Implications
    for Mental Health.  Springfield, MO, September 24, 1987
    Presentations:  Panel Chairman,  Prediction of Dangerousness
    Panel Member, Informed Consent and Forced Treatment
    Emergencies.
40. Kansas Law Enforcement Training Center Lecture, "The Psychology
    of Right Wing Extremists", Hutchinson, KS,
    November 17, 1987
41. American Academy of Psychiatry and the Law, Midwest Chapter
    Scientific Meeting,  "The Right to Refuse Medication and
    the Charters Decision"  Minneapolis, MN, April 9, 1988
42. University of Missouri Kansas City School of Medicine seminar:
    moderator panel discussion, "Liability Prevention for the
    Clinician"  May 26, 1988
43. Menninger Clinic Hospital Educational Meeting, "Confidentiality
    in Everyday Practice"  Topeka, KS, September 20, 1988
44. Menninger Clinic Hospital Educational Meeting, "Malpractice
    Prevention:  Wrongful Discharge"  Topeka, KS,
    December 6, 1988
45. Moderator:  Research Section on General Forensic Issues of the
    Section on Psychiatry and Behavioral Sciences of the American
    Academy of Forensic Sciences Annual Meeting,
    February 16, 1989
46. Kansas Legislative Special Committee on Corrections and Mental
    Illness, "Mental Health Care Delivery in the Kansas
    Department of Corrections", July 17, 1989, Topeka, KS
47. Kansas State Finance Counsel, "Legislative Consultation on
    Mental Health Care in the Kansas Department of Corrections"
    and "Intermediate Plan for the Evaluation, Triage and
    Treatment of Segregated Mentally Ill Inmates in the Kansas
    Department of Corrections"; "Long-Term Plan for the Care of
    the Mentally Ill in the Kansas Department of Corrections."
    June 26, 1989 and July 21, 1989, Topeka, KS
48. American Academy of Psychiatry and the Law Annual Meeting,
    Group Leader in Course on Forensic Report Writing presented
    by Phillip Resnick, M.D., Washington, D.C., October 22, 1989
49. Osawatomie State Hospital, Hospital Education Meeting,
    "Prediction of Violent Behavior", Osawatomie, KS,
    October 26, 1989
50. Washburn University Seminar on Child Sexual Abuse, "The
    Psychiatric Evaluation of the Incest Offender", Topeka,
    KS, October 27, 1989
51. Patton State Hospital, "Prediction of Dangerousness" and
    Maternal Neonaticide and Infanticide, San Bernadino,
    CA November 2-3, 1989
52. Bulletin Menninger Clinic, manuscript reviewer, 1989.
    Osawatomie State Hospital, "Evaluation of Potential Violence on
    Discharge and Quality Assurance."  February 20, 1990.

53. American Academy of Psychiatry and the Law Midwest Chapter
    Scientific Meeting, "The Devil in New Garb, The Insanity
    Defense in the Biochemical Age" with Glenn S. Lipson, Ph.D.
    Kansas City, MO, April 6, 1990
54. Federal Bureau of Prisons Conference on Forensic Psychiatry,
    "The Evaluation of Informed Consent"; "Pretrial Preparation
    for Effective Testimony"; panel member on "Ethical Issues in
    Forensic Evaluations," Rochester, MN, October 30, 1990
55. Kansas University Medical Center Grand Rounds, "Involuntary
    Intoxication: The Insanity Defense of the Biochemical Age,"
    Kansas City, MO, January 11, 1991.
56. Iowa Association of Private Investigators "Through The Mind's
    Eye: Private Investigation From a Psychiatric Perspective"
    Cedar Rapids, Iowa, Friday, April 12, 1991
57. Interview with Walter Rogers, ABC News on "Effects of High
    Security Confinement" June 20, 1991
58. Presentation for Menninger Clinic Trustees on "Forensic
    Psychiatry" June 1991
59. Pine Rest Christian Hospital, Seminar and Peer Review of eight
    suicides with presentation on "The Prevention of Hospital
    Suicides" Grand Rapids, Michigan, June 6, 1991
60. Shawnee County Youth Center and Shawnee County Court Services
    Inservice lecture: "Juvenile Homicides" Topeka, Kansas,
    September 11, 1991
61. NBC - L.A. Law: Consulted with script writers Matthew W. Kiene
    and Joseph A. Reinkemeyer, Jr. on adaptation of Perry v.
    Louisiana III skt. 449 (1990). Program aired November 7, 1991
62. Kansas Association of Criminal Defense Lawyers, "Pitfalls in
    State Forensic Mental Examinations" Wichita, Kansas,
    October 11, 1991
63. American Academy of Psychiatry and the Law 22nd Annual Meeting:
    Presented paper on "Evaluation of Impaired Physicians"
    Orlando, Florida, October 17, 1991
64. KTKA - Channel 49, Topeka, Kansas, Interview on topic of
    "Sexual Homicides" November 1991
65. Karl A. Menninger School of Psychiatry Residents Colloquium
    February 1992. The Menninger Clinic, Topeka, Kansas
    Topic: "Confidentiality and the Duty to Report Crimes"
66. Menninger Military Conference, March 30, 1992, Topeka, Kansas
    Topic: "The Mind of the Terrorist"
    with Stephen E. Peterson, M.D.
67. Society for Personality Assessment; March 19, 1993; San
    Francisco, California. Topic: "Medication, Adverse Reactions
    and Involuntary Intoxication" with Glenn Scott Lipson, Ph.D.
68. Jackson County Department of Corrections Annual Caseworker
    Training; January 6-7, 1994 (16 hours). Sponsored by the
    University of Kansas. Introduction to Forensic Psychiatry,
    criminal responsibility (Yokelson/Samenow Model),
    identification of high risk detainees, screening for high risk
    detainees, special issues (DUI and severely mentally ill), and
    case discussions. Faculty Drs. Logan and Peterson.
69. Osawatomie State Hospital; November 16, 1995; Panel Member on
    The Sexual Predator Act: Issues and Answers. Topic: Lectured
    on Recidivism in Sex Offenders
70. Kansas Trial Lawyers Association; April 19, 1996; Overland Park,
    Kansas. Topic: Seminar on The Insanity Defense Changes in
    Kansas Law. Topic: The Psychiatric Evaluation of Specific
    Intent (with Stephen E. Peterson, M.D.).
71. Inns of Court; Thurgood Marshall Inn; March 4, 1997, Omaha,
    Nebraska. Topic: Competence to Stand Trial: In Whose Best
    Interest, with Steven E. Achelpohl, J.D.
72. Vanguard Club, September 4, 1997; Kansas City, Missouri. Topic:
    The Role of the Forensic Psychiatrist in the Legal System.

73. University of Missouri – Kansas City School of Law Worker's
    Compensation Seminar; October 17, 1997, Kansas City, Missouri.
    Topic:  Psychiatric Assessment in Worker's Compensation.  (CLE)
    with Stephen E. Peterson, M.D.
74. American Psychiatry and Law Society, March 5, 1998, Redondo
    Beach, California.  Topic:  Dilemmas in the Wake of Hendricks,
    panel discussion with Mary Alice Conroy, PhD, David Mrad, PhD
    and Phillip Lyons, PhD, JD.
75. Osawatomie State Hospital, April 2, 1998, Osawatomie, Kansas.
    The Forensic Patient (staff training in treating forensic
    patients, assessment of dangerousness, writing reports for the
    court, expert testimony.)
76. Lacoursiere, R. B.; Logan, W.S. and Peterson, S.E., Grappling
    with Sexually Violent Predator Evaluations in Kansas; Kansas v.
    Hendricks accepted for presentation at the American Academy of
    Psychiatry and Law Annual Meeting, New Orleans, Louisiana,
    October 22, 1998.
77. Texas Special Prosecution Unit – Civil Division, Sexual
    Predator Evaluations, August 19, 2000.
78. UMKC School of Law and the Kansas City Metropolitan Bar
    association Workers Compensation Institute; Psychiatric
    Analysis of mental/mental and physical/mental injuries in the
    State of Missouri, Overland Park, Kansas, October 13, 2000.
79. Pembroke Hill School; Forensic Psychiatry: Issues and
    Applications of Psychiatry in the Legal System, Prairie
    Village, KS January 9, 2002.
80. Inns of Court, Recreation of Leopold & Loeb Trial-Psychiatric
    Aspects of the Defense; Prairie Village, KS March 12, 2002.
81. Expert Evaluation and Testimony in Capital Habeas Proceedings.
    The National Institute for Trial Advocacy; The Habeas
    Assistance and Training Counsel; the Administrative Office of
    the U.S. Courts.  The Habeas Institute, Kansas City, Missouri
    April 9, 2006.  (Provided Mock testimony.)

**Publications**:

Logan, W.S., Barnhart, F.D., and Gossett, J.T.:
    The Prognostic Significance of Adolescent Interpersonal
    Relationships During Psychiatric Hospitalization.  In
    Adolescent Psychiatry, Vol. X, Chicago:  The University
    of Chicago Press, 1982, 484-493.

Logan, W.S., Reuterfors, D.L., Bohn, M.J., and Clark, C.L.:
    The Description and Classification of Presidential
    Threateners.  Behavioral Science and the Law, 1984, Vol. 2,
    No. 2, 151-168.
Review:  Informed Consent:  A Study of Decision-Making in
    Psychiatry by Charles W. Lidz, Alan Meisel, Eviatar
    Zerubauel Mary Carter, Regina M. Sestak, and Loren H. Roth.
    Bulletin of the Menninger Clinic  Vol. 49, No. 6, November
    1985.

Logan, W.S., The Evaluation of the Impaired Physician.  In
        Legal Implications of Hospital Policies and Practice
    Ed. Miller, R.M. New Directions in Mental Health Sciences.
    No. 41, Spring 1989, 33-53.

Bresler, S.A., Logan, W.S., Washington, DC.  Hyperthyroidism and
    psychosis: Possible prelude to murder. J. Forensic Sci:
        2000:45(3): 728-731.

LOG000017

# WILLIAM SEARLE LOGAN, M.D.

Logan & Peterson, P.C.

428 W. 42nd Street          and          231 S. Bemiston Ave. Suite 800
Kansas City, Missouri 64111              Clayton, Missouri 63105
(816) 842-2500                           Phone: (314) 236-4914
Fax: (816) 842-9980                      Fax:   (314) 236-4992

## EDUCATION:

New Mexico State University, Las Cruces, New Mexico, 1972
    Bachelor of Art:  Psychology
    Bachelor of Science:  Biology, emphasis in Microbiology
    University Honor Society Program participant
    National Honor Society (Phi Kappa Phi) member
    Selected for Western Interstate Commission for Higher Education
        Program to do a sociological survey of the California State
        Psychiatric Hospital System.  Spent three months at Camarillo
        Hospital, Camarillo, California and Pacific State Hospital,
        Pamona, California

University of Texas Health Science Center, Dallas, Texas, 1977
    Southwestern Medical School Graduate
    United States Public Health Service Scholarship
    Externships in Psychiatry at Presbyterian Hospital
        Day Hospital, 1973
        Inpatient Unit, 1974

Timberlawn Psychiatric Hospital, Dallas, Texas
    Residency Program in Psychiatry, July 1977 to June 1981
    Residency training included the following rotations:
    Inpatient administrative care of severely disturbed adult and
        adolescent psychiatric patients (July 1977 through June 1979)
        Extensive course work in adolescent and adult psychiatry
    Internal Medicine Internship (March to June 1978) and Neurology
        Residency (May to June 1981) at Baylor University Medical
        Center, Dallas, Texas
    Timberlawn Psychiatric Hospital, Dallas, Texas.  July 1978 to
        June 1981.  Inpatient and outpatient psychotherapy
    Baylor University Medical Center, Dallas, Texas. July 1979 to
        January 1980.  Psychiatric Consultation-Liaison Services,
        teaching psychiatric rotation to senior medical students
        at Southwestern Medical School;  Consultation to psychiatric
        staff of adult and adolescent inpatient units
    Dallas County Mental Health and Mental Retardation Services,
        Dallas, Texas.  January to June 1980.  Outpatient Services,
        staff education and evaluations
    Timberlawn Foundation, Dallas, Texas.  June 1980 to April 1981.
        Rotation, completed research project on the long-term
        follow-up of hospitalized adolescents
    Southwest Family Institute, Dallas, Texas.  June 1980 to
        April 1981.  Family and marital therapy
    University of Texas, Southwestern Medical School, July to
        December 1980.  Rotation in child psychiatry
    Southern Methodist University, January to April 1981.  Rotation
        in short-term psychotherapy, college and graduate students
    Co-leader, adolescent therapy group, June 1978 to December 1979

LOGO00068

**EDUCATION**: (continued)

> The Menninger Foundation, Topeka, Kansas
>> Post Residency Fellowship in Forensic Psychiatry, Department of Law and Psychiatry, July 1984 to June 1985. Fellowship included training in civil and criminal forensic evaluations, consultation, research, and teaching

**LICENSURE**:

> Texas State Board of Medical Examiners
>> License No. E8670, August 1977
>> Registered in Dallas and Tarrant Counties
> Missouri State Board of Registration for the Healing Arts
>> License No. R7B57, August 1981
> Kansas State Board of Healing Arts
>> License No. 20745, December 1984
> Nebraska State Bureau of Examining Boards
>> License No. 18364, December 1990
> U.S. Department of Justice, Drug Enforcement Administration
>> Licensed to dispense controlled substances 1978 to present

**BOARD CERTIFICATION**:

> Psychiatry:  American Board of Psychiatry and Neurology
>> November 1982
> Forensic Psychiatry:  American Board of Forensic Psychiatry
>> October 1987
> Examiner: American Board of Forensic Psychiatry oral examination
>> San Antonio, Texas, October 19,1983
> Forensic Psychiatry-Added Qualifications, American Board of Psychiatry and Neurology, October 11, 1994. Recertified March 26, 2003, Certificate #136.

**EMPLOYMENT**:

> Logan & Peterson, P.C. - President
>> Forensic and general psychiatry for adults and adolescents. Evaluation and treatment of psychiatric disorders with specialization in cases with need for opinions on legal issues such as personal injury; workers compensation; child custody; disability; testamentary capacity; conservatorship/ guardianship; malpractice; criminal competencies, mental state at time of crime, sentencing evaluations, mitigation, etc.  Also hospital consultations concerning evaluation, treatment, suitability for release, need for continued care, discharge planning, etc.  Continued consultation for the Menninger Clinic as well as teaching and supervising residents in the Karl Menninger School of Psychiatry and Mental Health Sciences from July 1993 through June 2001; and the University of Missouri Medical School Psychiatric training program (2001).  Consultation in correctional mental health with jails and prisons.  Sexual Predator Evaluations in Kansas, Missouri, Texas and Iowa.

> The Menninger Clinic, Topeka, Kansas July 1985 to July 1993
>> Director, Department of Law and Psychiatry and Director of Forensic Training, Karl Menninger School of Psychiatry and Mental Health Sciences.
>> Evaluation of referrals from attorneys on issues such as workman's compensation, personal injury, malpractice, contested civil commitment, testamentary capacity, conservatorship/guardianship, child custody, employment evaluations, competency to stand trial, criminal responsibility,

LOG000049

## EMPLOYMENT:  (continued)

diminished capacity and sentencing.  Consultation provided to state and federal psychiatric hospitals, police department, corrections systems, C.F. Menninger Memorial Hospital, Kansas State Board of Healing Arts, Community Corrections.  Teaching of forensic issues to psychiatric trainees (residents), child fellows and forensic fellows.  Testimony and research.  Also carried caseload of individual therapy patients providing direct psychiatric care.  Served as Federal Court Monitor in prison mental health care.  Administrative duties in running the department

Medical Center for Federal Prisoners, Springfield, Missouri
July 1981 to July 1984.  Forensic Psychiatrist
Completed 540 evaluations for the Federal District Courts regarding competency to stand trial, sanity at the time of the offense, dangerousness and post-sentence psychiatric evaluations.  Also evaluated correctional personnel for fitness for duty and evaluations on emotionally disturbed inmates for the Bureau of Prisons.  Finally, provided psychiatric consultation to medical and surgical units as well as outpatient treatment to the inmate population.

Testified as an expert witness in 10 Federal Judicial Circuits and 27 U.S. District Courts on 47 occasions.

Nominated Attorney General's Award for Distinguished Service

Tarrant County Mental Health and Mental Retardation Services
Fort Worth, Texas January 1980 to June 1981.
Provided outpatient treatment, evaluation, and staff consultation (part-time)

Dallas County Mental Health and Mental Retardation Services
Dallas, Texas August 1979 to June 1981
Provided outpatient treatment (part-time)

John Peter Smith Hospital, Fort Worth, Texas, May 1978 to September 1979. Provided weekend psychiatric emergency room coverage, admission and treatment of patients on acute units, and hospital consultations (part-time)

## TESTIMONY

Have provided psychiatric expert testimony on a variety of issues related to mental health in both state and federal courts on an average of 25 to 30 times a year.

Federal Courts:  Alabama, Arkansas, California, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Minnesota, Montana, Nebraska, New Mexico, Nevada, Oklahoma, Texas, Utah, Virginia and Wyoming (23 states)

State Courts: Arizona, California, Colorado, Idaho, Illinois, Iowa, Kansas, Michigan, Missouri, Nebraska, South Dakota, New York, North Carolina, Ohio, Oklahoma, Texas, Arkansas, Louisiana and Wyoming (19 states)

## POST RESIDENCY CONFERENCES AND COURSES:

American Psychiatric Association Annual Meeting
May 1981 New Orleans, Louisiana
Courses:  Testifying as an Expert Witness (4 hours)
            Juvenile Issues in Forensic Psychiatry (6 hours)
American Academy of Child Psychiatry Annual Meeting
October 1981 Dallas, Texas

LOG000040

POST RESIDENCY CONFERENCES AND COURSES: (continued)

Harvard Medical School Department of Continuing Education
    June 1982 Boston, Massachusetts (22 hours)
    Course:  Psychiatric Medicine
American Academy of Psychiatry and the Law Regional Meeting
    March 1983 Tampa, Florida (11 hours)
    The Psychiatric Expert
American Psychiatric Association Annual Meeting
    May 1983 New York City
    Courses:  The Psychiatrist as an Expert Witness (4 hours)
              Assessment and Management of the Violent Patient
              (4 hours)
American Academy of Psychiatry and the Law Annual Meeting
    October 1983 Portland, Oregon (15 hours)
    Courses:  Detection of Malingering (3 hours)
              Forensic Psychiatry Review (20 hours)
American Academy of Psychiatry and the Law
    Midwest Chapter Scientific Meeting March 1984
    Chicago, Illinois (11.5 hours)
    Psychic Trauma and Psychic Harm
American Academy of Psychiatry and the Law Annual Meeting
    October 1984 Nassau, Bahamas (30 hours)
    Courses:  Forensic Psychiatry Review (21 hours)
              Mental Disability Evaluation in the Civil Court
              (4 hours)
American Psychiatric Association Annual Meeting
    May 1985 Dallas, Texas (24 hours)
    Course:  Mental Disability Benefits (6 hours)
American Academy of Psychiatry and the Law, Midwest Chapter
    Scientific Meeting, "The Child Witness in Sexual Abuse"
    Minneapolis, Minnesota, September 6-7, 1985 (8 hours)
American College of Legal Medicine
    "Medical-Legal Aspects of Psychic Disability"
    Albuquerque, New Mexico, October 9-10, 1985 (11.5 hours)
American Academy of Psychiatry and the Law 16th Annual Meeting
    Albuquerque, New Mexico, October 10-13, 1985 (8.5 hours)
American Academy of Psychiatry and the Law
    Midwest Chapter, Scientific Meeting
    "Health Care Law and the Forensic Psychiatrist:  Hospital and
    Practice Issues"  Chicago, Illinois, April 4-5, 1986
    (8.5 hours)
American Academy of Psychiatry and the Law 17th Annual Meeting
    (25 hours), Forensic Board Review Course (20 hours)
    Philadelphia, Pennsylvania, October 14-18, 1986
American Academy of Psychiatry and the Law Scientific Program
    Cincinnati, Ohio, April 3-4, 1987 (10 hours)
Menninger Foundation Symposium, "Children:  Victims of
    Violence, Topeka, Kansas, April 9-10, 1987 (5 hours)
American Psychiatric Association, Annual Meeting
    Chicago, Illinois, May 9-14, 1987  (27 hours)
Menninger Foundation/Bureau of Prisons Conference
    "Crime Control Compliance"  Springfield, Missouri
    September 24-25, 1987 (8.5 hours)
American Academy of Psychiatry and the Law, 18th Annual Meeting
    Ottawa, Canada, October 15-18, 1987 (17.25 hours)
American Academy of Psychiatry and the Law, Midwest Chapter,
    Scientific Meeting, Minneapolis, Minnesota
    April 8-9, 1988 (11.0 hours)
University of Missouri, Kansas City School of Medicine
    "Liability Prevention for the Clinician"
    May 26, 1988 (4.0 hours)

LOGO00021

**POST RESIDENCY CONFERENCES AND COURSES:** (continued)

CME, Inc. "Improving Your Clinical Success: Integrating
   Psychodynamics and Psychology" San Diego, California
   June 24-26, 1988 (18.0 hours)
American Academy of Psychiatry and the Law Annual Meeting
   San Francisco, California, October 20-22, 1988 (23.5 hours)
Menninger Clinic, "The Psychopathic Mind" Topeka, Kansas
   January 27, 1989 (3.5 hours)
American Academy of Forensic Sciences, Law Vegas, Nevada
   February 16-18, 1989 (12.75 hours)
University of Florida/St. Joseph's Hospital, "Legal Issues
   in Psychiatric Medicine" Tampa, Florida
   March 9-10, 1989 (12.0 hours)
Midwestern Chapter American Academy of Psychiatry and the Law
   Scientific Meeting, "Rights and Responsibilities in Mental
   Health Service Delivery" Madison, Wisconsin, April 14-15,
   1989 (8.5 hours)
American Psychiatric Association Annual Meeting, San Francisco,
   California, May 7-11, 1989 (25.5 hours)
American Academy of Psychiatry and the Law 20th Annual Meeting,
   Washington, D.C., October 19-21, 1989 (24.5 hours)
Midwestern Chapter American Academy of Psychiatry and the Law
   Scientific Meeting, Kansas City, MO; April 6-7, 1990 (8.0 hrs)
American Academy of Psychiatry and the Law 21st Annual Meeting,
   San Diego, California, October 25-27, 1990 (21.5 hours)
Bureau of Prisons Conference on Forensic Psychiatry, Rochester,
   Minnesota, October 30, 1990 (6.0 hours)
NOVA University/Charter Hospital "The Clinical and Forensic
Assessment of Malingering and Deception" Miami, Florida,
   April 26-28, 1991 (21.0 hours)
Midwestern Chapter American Academy of Psychiatry and the Law,
   Scientific Meeting, "The Standard of Care in Psychiatry:
   What Is It?" Chicago, Illinois, April 12-13, 1991 (6.0 hours)
American Psychiatric Association 144th Annual Meeting, "Our
   Children: Our Future" New Orleans, Louisiana, May 11-16, 1991
   (14.5 hours)
American Academy of Psychiatry and the Law, 22nd Annual Meeting,
   Orlando, Florida, October 17-20, 1991 (24.0 hours)
Menninger Clinic: Ethical Issues in Psychiatry, Topeka, KS
   March 13, 1992 (1.0 hour)
Case Western Reserve University School of Medicine
   Current Issues in Forensic Psychiatry, Cleveland, Ohio
   April 3, 1992 (3.75 hours)
Bureau of Prisons: Prediction of Violence, Detection of
Malingering, Expert Testimony, Springfield, Missouri, July 24,
1992 (7 hours)
American Academy of Psychiatry and the Law, 23rd Annual Meeting,
   Boston, Massachusetts, October 15-17, 1992 (18 hours)
University of Missouri-Columbia School of Medicine, Advances in
   the Treatment of Depression, St. Louis, Missouri, December 12,
   1992 (6.6 hours)
American Academy of Psychiatry and the Law, Midwest Chapter;
Forensic Fantasy vs Legal Reality, Chicago, Illinois,
April 16-17, 1993 (10.0 hours)
American Psychiatric Association 24th Annual Meeting, San
Francisco, California, May 22-27, 1993 (32.0 hours)
American Academy of Psychiatry and the Law, 24th Annual Meeting
   (sponsored by the University of Connecticut) San Antonio,
   Texas, October 21-23, 1993 (14.75 hours)
AAPL Forensic Board Review Course, Atlanta, GA; April 15-17,
   1994 (22.5 hours)
Practical Reviews in Psychiatry, May 1994 (15.0 hours)
Progress in Psychosis: Serotonin-Dopamine Antagonists, Portland
   OR; March 25, 1995 (4 hours)

**POST RESIDENCY CONFERENCES AND COURSES:** (continued)

Childhood Sexual Abuse and Memories: Current Controversies,
University of Kansas Medical Center, Kansas City, KS;
  March 31-April 1, 1995 (13 hours)
American Psychiatric Association 148th Annual Meeting; Miami, FL
  May 22-24, 1995 (19 hours)
American Academy of Psychiatry and the Law (AAPL) 26th Annual
  Meeting; Seattle, WA; October 19-22,1995 (24.75 hours)
AAPL Midwest Chapter Meeting; St. Louis, MO; April 20, 1996
  (3 hours)
American Psychiatric Association 149th Annual Meeting; New York,
  NY; May 4-7, 1996 (24 hours)
American Academy of Psychiatry and the Law (AAPL) 27th Annual
  Meeting; San Juan, Puerto Rico October 17-20, 1996 (24.75
  hours)
American Academy of Forensic Sciences (AAFS), 49th Annual
  Meeting; New York, New York; February 19-22, 1997 (17.25
  hours)
American Psychiatric Association (APA) 150th Annual Meeting; San
  Diego, California; May 17-22, 1997 (12 hours)
American Academy of Psychiatry and Law (AAPL) 28th Annual
  Meeting; Denver, Colorado; October 23-26, 1997 (21.25 hours)
American Academy of Forensic Sciences; 50th Annual Meeting; San
  Francisco, California; February 9-14, 1998 (16 hours)
American Academy of Psychiatry and the Law (AAPL); 29th Annual
  Meeting; New Orleans, Louisiana; October 18-25, 1998 (20
  hours)
American Academy of Forensic Science, 51st Annual Meeting;
  Orlando, Florida; February 15-20, 1999 (8.5 hours)
Rush Medical College, Violence and the Forensic Expert;
  Chicago, Illinois; April 16-17, 1999 (9 hours)
American Psychiatric Association 152nd Annual Meeting, The
  Clinician; Washington, DC; May 15-20, 1999 (41.5 hours)
  including course on Psychiatric Disorders Related to Epilepsy
  (4 hours)
University of Arizona College of Medicine; the 9th Annual
  Psychopharmacology Review-Current clinical Practice; Tucson,
  Arizona; February 21-25, 2000 (26.5 hours)
American Psychiatric Association 153rd Annual Meeting – The
  Doctor-Patient Relationship; Chicago, Illinois; May 13-18,
  2000; (22.5 hours)
American Neuropsychiatric Association, Twelfth Annual Meeting;
  Fort Meyers, Florida; February 24-27, 2001 (17.25 hours)
University of Arizona College of Medicine, Eighth Annual
  Psychiatric Symposium; Santa Fe, New Mexico July 3-5, 2002
  (11.5 hours)
Sex Offenders Evaluation and Treatment; Specialized Training
  Services, Inc. St. Peters, Missouri, October 2-3, 2002 (14
  hours)
Continued Medical Education in Borderline Personality Disorder;
  Mood Disorders in Women; Medication side effects,
  cardiovascular and metabolic risk associated with
  Schizophrenia, ADHD; Bipolar Disorders; Depression; Anxiety
  and Panic Disorders, and Personality Dysfunction, June through
  December 2002 (25 hours).
American Psychiatric Association 156th Annual Meeting –
  "The Promise of Science; The Power of Healing"; San Francisco,
  California; May 17-22, 2003; (12 hours); Included four hour
  course on "Assessing the Risk of Violence in Both Forensic and
  Sex Offender Settings" on 5/21/03.
American Academy of Psychiatry and the Law
  34th Annual Meeting; San Antonio Texas; October 16-19, 2003
  (28.75 hours)

LOG000043

**POST RESIDENCY CONFERENCES AND COURSES:** (continued)

FCG Institute for Continuing Education: Treatment of Long Term
  Depression: Striving toward a Substance Response: Overland
  Park, Kansas; March 4, 2004 (1.5 hours)
Tulane University Forensic Psychiatric Conference: New Orleans,
  LA; April 16-18, 2004 (14.75 hours)
University of Oklahoma: Medical Ethics; August 2004 (2 hours)
American Academy of Psychiatry and the Law
  35th Annual Meeting: Scottsdale, Arizona; October 21-24, 2004;
  (29.25 hours)
Tulane University School of Medicine: Brain and Behavior:
  Traumatic Brain Injury Revisited; New Orleans, LA; December
  11-12, 2004 (9.25 hours)
WEI: Neuroscience Education Institute
  Psychopharmacology and Pain Management; San Diego,
  California; February 17-20,2005 (24 hours)
University of Arizona Health Sciences Center
  11th Annual Santa Fe Psychiatric Symposium; Santa Fe, NM; June
  29 to July 1, 2005 (8 hours)
Psychiatric Annals – Childhood Anxiety Disorders (9/05); The
  Social Brain (10/05); PTSD (11/05); Treatment Resistant
  Depression (12/05); Psychotic Major Depression (1/06);
  Infections & Psychiatry (2/06); Prescription Opiates (6/06);
  OCD (7/06) Vindico Medical Education (24.0 hours)
American Academy of Psychiatry and the Law Annual Meeting;
  Chicago, Illinois October 26-29, 2006 (30.0 hours)


**PROFESSIONAL CONTRIBUTIONS:**

**Membership in Professional Organizations:**

American Medical Association, 1977 to present
American Psychiatric Association, 1979 to present
American Academy of Psychiatry and the Law, July 1983 to present
  Member, Committee on Institutional Psychiatry
    July 1987 to 1991
  Member, Committee on Psychiatric Services to Correctional
    Facilities 1987 to 1991
American Academy of Psychiatry and the Law Midwest Chapter
    1983 to present
Kansas State Representative May, 1985 to Present
  Chairman, State Delegate Committee, April 1986 to present
  Councillor, April 1986 to April 1987
  Secretary, April 1987 to April 1989
  President-Elect, April 1989 to April 1990
  President, April 1990 to 1991
Association of Directors of Forensic Psychiatry Fellowships
    June 1986 to July 1993
  Chairman, Curriculum Committee October 1986 to 1991
Kansas Psychiatric Society, August 1984 to present
American Academy of Forensic Sciences 1989-present
Ozark Society of Psychiatrists, September 1982 to July 1984
    Treasurer 1983 to 1984
Texas Psychiatric Society, 1979 to 1984
Texas Medical Association, 1979 to 1981
Dallas County Medical Society, 1979 to 1981

**Hospital Affiliations:**

C.F. Menninger Memorial Hospital, Clinical Staff 1984 to 1993
    Applications Committee 1986 to 1991
    Outpatient Council, 1991 – 1993
Larned State Hospital and State Security Hospital, consulting
staff, 1984 – 1994

Osawatomie State Hospital, consulting staff, 1986 – 2001.
U.S. Medical Center for Federal Prisoners, July 1981 to 1992
   Comprehensive Psychiatric Program Planning Committee
   May 1982 to July 1984
   Pharmacy and Therapeutics Committee, August 1982 to July 1984
   Library Committee, March 1982 to July 1984

**Hospital Affiliations:**   (continued)


Timberlawn Psychiatric Hospital, July 1977 to June 1981
   Emergency Committee, 1977 to 1978
   Admissions Committee, 1977 to 1978
   Medical Audit Committee, 1979 to 1981

**Consultations:**

National Institute of Corrections
   August 1985 to 1989, prison mental health care
Department of Justice, Bureau of Prisons, 1984 to 1993.
   Medical Center for Federal Prisoners, Springfield, MO
   Member of group to study the implementation of Title 18
   USC Chapter 313 "Offenders with Mental Disease or Defect"
   Washington, D.C., November 1984
United States Penitentiary, Leavenworth, Kansas
   March 1987 to 1991
Commonwealth of Virginia Department of Corrections
   August 1985 and December 1987, development of a mental
   health treatment program for inmates
Missouri Attorney General, March-May 1986,
   Evaluation of Capital Punishment Unit, Missouri State
   Penitentiary, and recommendations concerning health care
   services
U. S. Department of Justice, Bureau of Prisons –
   Received grant to study psychological effects of high security
   confinement, U.S.P. Marion, IL, 1986 and later testified about
   findings in Federal Court case.
Nevada Department of Prisons, April-June 1986,
   Development of a mental health care treatment system
   Nevada Department of Prisons, May 1988 to present
   Special monitor Federal Court,
   Taylor v Wolff, stipulated settlement
U. S. Department of Justice, Bureau of Prisons –
   Consultant on psychological effects of close confinement,
   women's high security unit FMC Lexington, KY, June 1988
State of Kansas, Legislative Coordinating Counsel:  Consultant
   on Mental Health in Corrections, May–July 1989
Topeka Police Department, Topeka, Kansas 1984 to 1993
   Evaluation, treatment, teaching  case consultation;
   evaluation of recruits, response team and criminal
   intelligence unit
Community Corrections, Topeka, Kansas 1984-1986, 1988 to 1991
   Evaluation of nonviolent offenders for placement in
   community programs
Kansas State Board of Healing Arts
   Examined impaired physicians, 1988–1990
      Patton State Hospital, San Bernadino, California,
   November 2-3, 1989
Pine Rest Christian Hospital, Grand Rapids, Michigan, June 1991
   Review of suicides at hospital during last three years
Louisiana Department of Mental Health, Baton Rouge, LA
   June 2-5, 1992 and August 19, 1992
   Mortality reviews at five state hospitals
Texas Department of Mental Health–Terrell State Hospital
   Creation of a new unit for mentally ill offenders for Dallas
   County, May 1992

LOG000025

C.F. Menninger Memorial Hospital, 1984 to 1993
    Forensic psychiatric evaluations
Menninger Foundation Children's Division
    September 1985 to 1993, forensic issues
Incest Treatment Program, Adult Psychotherapy Service
    The Menninger Foundation, June 1985 to 1994

**Consultations:  (continued)**

Kansas State Security Hospital, Larned, Kansas 1984 to present
    Larned State Hospital, Larned, Kansas, March 1986 to 1994
    forensic and clinical issues
Osawatomie State Hospital, Osawatomie, Kansas,
    January 1986 to 2001, forensic and clinical treatment issues
Medical Consultants Network-2004 to present.  Evaluation of
    employees on short term disability.
National IME Network (NIMEN); Quality Medical Evaluations (QME)
    2005-Present IME Return to Work Evaluations for Ford Motor
    Company.

**Educational Activity (courses taught):**

Faculty, course in basic psychiatry for correctional officers,
    Lectured on basic psychiatric interviewing techniques.
    Medical Center for Federal Prisoners
    (January, April, and June 1984)

Director of Forensic Training, Karl Menninger School of
Psychiatry and Mental Health Sciences, July 1985 to 1993;

Faculty, Karl Menninger School of Psychiatry 1993-2001.

Director, Forensic Psychiatry Fellowship Program, Karl Menninger
School of Psychiatry, July 1987 to 1993.
    Supervised forensic fellows E. Ross Taylor, M.D. (1987-88) and
    Stephen E. Peterson, M.D. (1990-91); Japanese fellow (1990-91)

Faculty, Law and Psychiatry Workshop, Karl Menninger School
    of Psychiatry.  Lectured psychiatric residents on informed
    consent, wrongful discharge and competence to stand trial
    (September, October, November 1984).

Director, Law and Psychiatry Workshops, Karl Menninger School
    of Psychiatry (KMSP) for Psychiatric Residents, 1985-1993.

    A.  Forensic Issues in Psychiatric Practice

        -- September 1985 - Lectured on Involuntary
           Hospitalization, Civil Commitment and Patients Rights
        -- July 1986 - Lectured on Confidentiality, Evaluation
           of Dangerousness, and the Capacity to Make Rational
           Treatment Decisions
        -- July 1987 - Lectured on Prediction of Dangerousness
           and Capacity to Make Treatment Decisions
        -- July 1988 - Lectured on Informed Consent, The
           Evaluation of Capacity to Make Treatment Decisions,
           Confidentiality, and the Prediction of Dangerousness
           and Harm
        -- July 1989 - Lectured on Informed Consent,
           Confidentiality, Capacity to Make Treatment
           Decisions, Duty to Protect, Evaluation of
           Dangerousness
        -- July 1990 - Lectured on The evaluation of
           Dangerousness and Capacity to Make Treatment
           Decisions

LOG000026

-- July 1991 - Lectured on The Evaluation of Dangerousness and Capacity to Make Rational Treatment Decisions.  Also provided case material and commentary on psychiatric testimony for mock civil commitment hearing
-- July 1992 - Lectured on Forensic Issues in Clinical Psychiatry
-- July 1993 - Lectured on Evaluation of Dangerousness and Ability to Make Treatment Decisions

B.  Civil Issues in Psychiatric Practice

-- October 1985 - Lectured on Psychiatric Aspects of Family Law
-- October 1986 - Lectured on Family Law and the Juvenile Court
-- October 1987 - Lectured on the Role of Psychiatry in the Juvenile Justice System
-- September 1988 - Lectured on Divorce, The Evaluation of Child Custody and the Role of Psychiatry in the Juvenile Justice System
-- September 1989 - Lectured on Juvenile Justice System
-- September 1990 - Lectured on Malpractice
-- September 1991 - Organized seminar on Civil Forensic Evaluations
-- September 1992 - Organized seminar on Civil Forensic Evaluations

C.  Criminal Forensic Psychiatry

-- November 1985 - Lectured on Competency to Stand Trial and Post Trial Issues:  Incarceration, Parole, Release and Dangerousness
-- November 1986 - Lectured on Competence to Stand Trial and the Evaluation of Dangerousness for Sentencing and Release
-- November 1987 - Lectured on Psychiatric Testimony and Post Trial Psychiatric Evaluations
-- November 1988 - Lectured on Competency to Stand Trial, Post-Trial Psychiatric Evaluations, Organized Mock Insanity Defense Trial with Washburn Law School
-- November 1989 - Lectured on Post Trial Psychiatric Evaluations; Organized mock trial with Advanced Trial Techniques Class, Washburn Law School
-- November 1990 - Organized mock trial with Washburn Law School Legal Clinic
-- November 1991 - Lectured on Introduction to Criminal Forensic Evaluations and organized mock trial with Washburn Law School Trial Advocacy Course
-- November 1992 - Lectured on Competency to Stand Trial evaluations and organized mock trial at Washburn Law School.
-- November 1993 - Lectured on Introduction to Criminal Forensic Evaluations and Competence to Stand Trial
-- November 1994 - KMSP PGY-IV Law & Psychiatry Workshop for KMSP and Washburn Law School students
-- September 1995 - KMSP PGY-IV Law & Psychiatry Workshop for KMSP and Washburn Law School students (Expert witness testimony, competency, post-trial issues: incarceration, parole, release, dangerousness, sentencing/mitigation) and commentary on mock trial
-- September 1996 - KMSP PGY IV Law and Psychiatry Workshop for KMSP and Washburn Law School (Expert Witness testimony and forensic evaluations in the criminal justice system)
-- September 1997 KMSP PGY IV Law and Psychiatry Workshop

for KMSP and Washburn Law School (The Psychiatrist/Mental Health Specialist in Criminal Proceedings with particular discussion of competence to stand trial, and Post Trial issues; Incarceration, parole, release, dangerousness, and mitigation.)

-- September 1998 KMSP Law and Psychiatry Workshop for Psychiatric residents, psychology Post Doctoral Fellows and Social Work Interns (The Psychiatrist as Expert Witness; Trial Practice, Rules of Evidence and

The Psychiatrist Mental Health Specialist in Criminal Proceedings) with Stephen E. Peterson, M.D.

-- September 1999 and 2001: KMSP Law and Psychiatry Workshop for Psychiatric Residents, Psychology Post Doctoral Fellows and Social Work Interns. Topics include Psychiatrists as Expert Witnesses: Trial practice, Rules of Evidence; and the Psychiatrist/Mental Health Specialist in Criminal Proceedings with discussion of competency to stand trial and post trial issues: Incarceration, Parole, Release, Dangerousness, and Mitigation Co-taught with Stephen E. Peterson, MD.

Director of Law and Psychiatry Workshop for Child Fellows, Karl Menninger School of Psychiatry
-- January 1986 - Lectured on Introduction to Child Forensic Psychiatry, Child Forensic Psychiatric Evaluations and Testifying as an Expert Witness
-- April 1986 - Lectured on Child Custody Evaluations to staff and child fellows of the Menninger Foundation Childrens Division
-- April 1987 - Lectured on the Forensic Evaluation of the Juvenile Offender

Faculty, Principles and Techniques of Outpatient Diagnostic Work for postdoctoral psychology fellows Lectured on Issues in Providing Courtroom Testimony. (April 1987 and April 1988) KMSP PSY 202

Faculty, Abnormal Personality Course KMSP GR-205. Lectured on Clinical and Forensic Aspects of Personality Disorders (April-May 1988; 3 lectures) (April 1989; one lecture)

Faculty, Personality Disorders Course for psychiatric residents. Lectured on The Clinical and Forensic Aspects of Personality Disorders (February 1991, February 1992)

Faculty, Emergency Psychiatry Course, KMSP GR-209 Legal Issues in Emergency Psychiatry (July 1987, July 1988)

Faculty, Seminar on Ethics in Psychiatry, KMSP KM-308 September-November 1988 (6 lectures) Lectured on Confidentiality Part I&II, Patient-Therapist Sexual Contact, the Psychiatrist and the Law, Right to Refuse Medication October 1989 - Lectured on Confidentiality vs Protection of the Public October 1990 - Lectured on Ethical Issues in Forensic Psychiatry

Director of Elective in Forensic Psychiatry for PGY-4 psychiatric residents, Karl Menninger School of Psychiatry, April to June 1987

Examiner, Mock Psychiatric Boards, Kansas Psychiatric Society, Topeka, Kansas, December 1985

Judge, Washburn Client Counseling Competition, Washburn University Law School (February 1986) (February 1989)

Faculty, Washburn Law School/Menninger Clinic joint certificate program in Mental Health & Law (1992-93)

LOG000028

Faculty, Karl Menninger School of Psychiatry – teaching and
supervision of psychiatric residents in forensic psychiatry
(1993 – Present), including community consultation at Washburn
Law School by PGYIV Residents (2000-2001).

Assistant Clinical Professor, University of Missouri at Columbia
School of Medicine, Department of Psychiatry – Supervision of
4th year psychiatric resident in forensic psychiatric elective
for (2000-2001)

University of Kansas Medical Center, Volunteer Physician
Educator 2001.)

## Presentations:

1. American Academy of Child Psychiatry Annual Meeting
   October 1981, Dallas, TX.
   Topic:  "The Prognostic Significance of Adolescent
           Interpersonal Relationships During Psychiatric
           Hospitalization"
2. Forensic Psychiatry Seminar, April 1982
   Medical Center for Federal Prisoners, Springfield, MO.
   Topic:  "Psychiatric Evaluation of Criminal Responsibility"
3. Abnormal Behavior Seminar, October 1982, Springfield, MO.
   Topic:  "What is Abnormal Behavior"
4. Ozark Society of Psychiatrists, November 1982, Springfield, MO.
   Topic:  "Forensic Psychiatric Evaluations"
5. Ozark Nurses Association, April 1983, Springfield, MO.
   Topic:  "Forensic Psychiatry and the Care of Mentally Ill
           Offenders"
6. Ozark Society of Psychiatrists, October 1983, Springfield, MO.
   Topic:  "The APA Position on the Insanity Defense"

7. Karl A. Menninger School of Psychiatry Colloquium, Sept. 1984
   The Menninger Foundation, Topeka, KS.
   Topic:  "Psychiatric Practice in a Correctional Setting"
8. Prison Fellowship, October 13, 1984, Overland Park, KS.
   Topic:  "Psychological Aspects of Incarceration,
           Rehabilitation, and Repentance"

9. Participant, Panel Discussion, American Academy of Psychiatry
   and the Law, October 1984, Nassau, Bahamas.
   Topic:  "Accreditation of Forensic Fellowships: Another View"
10. Forensic Study Group, December 4, 1984, Topeka, KS.
    Topic:  "Review of Implications of New Federal Legislation
            on Forensic Decisions - Incompetence, Insanity,
            and the Disposition of Mentally Ill Offenders"
11. C.F. Menninger Memorial Hospital Education Meeting,
    January 29, 1985
    Topic:  "Presidential Threateners"
12. C.F. Menninger Memorial Hospital, Diagnostic Service
    Inservice Education Meeting, February 13, 1985
    Topic:  "Problems Encountered in Forensic Outpatient
            Evaluations"
13. C.F. Menninger Memorial Hospital, Religion and Psychiatry Dept.
    February 25, 1985
    Topic:  Case Consultant - "Role of Pastoral Counseling with
            the Prisoner"
14. Kansas Trial Lawyers Association, Topeka, KS  March 8, 1985
    Panelist:  "Treatment and Evaluation of Sexual Offenders"
15. Larned State Hospital, Larned, KS  March 14, 1985
    Topic:  "Malingering and Factitious Illness"
16. Oklahoma State University, Department of Applied Behavioral
    Studies Rehabilitation Counselor Education Program,
    March 27, 1985
    Topic:  "Psychological Factors Affecting Physical Recovery--
            Secondary Gain"

LOGO000029

**Presentations:** (continued)

17. Kansas Psychiatric Society, Residents Conference,
    Kansas University Medical School, Kansas City, KS
    April 13, 1985
      Topic:  "Forensic Psychiatry and the Practice of Psychiatry
              in a Correctional Setting"
18. U.S. Medical Center for Federal Prisoners, Springfield, Mo
    April 18, 1985
      Topic:  "The Expert Witness in Federal Court" (4 hour course)
19. WIBW TV News, Topeka, KS  June 2?, 1985
      Topic:  Child Molesters - Pedophilia
20. Larned State Hospital, Larned, KS  July 1985
      Topic:  "Evaluation of Dangerousness"
21. Medical Center for Federal Prisoners, Springfield, MO
    August 1985
      Topic:  "Dangerousness Prediction:  Current Trends"
22. Larned State Hospital, Larned, KS  October 1985
      Topic:  "Psychodynamics of the Borderline Patient"
23. Menninger Foundation Rehabilitation Department, Topeka, KS
    Seminar on Disability Management, October 1985
      Topic:  "Psychological Implications of Workers Compensation"
24. Larned State Hospital, Larned, KS  November 15, 1985
      Topic:  "Paranoid Disorders"
25. Osawatomie State Hospital, Osawatomie, KS  February 1986
      Topic:  "Competency To Stand Trial"
26. Menninger Foundation Seminar:  Approaches to
    Understanding the Incest Victim, March 13, 1986, Topeka, KS
      Topic:  Moderator and Discussant on panel "The Treatment
              Network" -- Role of the forensic psychiatrist in
              incest cases
27. Osawatomie State Hospital, Osawatomie, KS  March 1986
      Topic:  "Evaluation and Prediction of Dangerousness"
28. American Academy of Psychiatry and the Law, Midwest Chapter
    Meeting, April 4-5, 1986, Chicago, IL "Health Care Law
    and the Forensic Psychiatrist:  Hospital and Practice Issues"
      Topics: "Role of Forensic Psychiatric Evaluation of the
              Impaired Professional", "Expert Witness", mock
              trial of impaired professional
29. Topeka Psychoanalytic Society Seminar for Shawnee County Kansas
    Court Services, Topeka, KS  April 14, 1986
      Topic:  "Introduction to Sex Offenders:  Definitions,
              Legal Issues, Statistics"
30. Kansas Psychiatric Society Career Opportunities in Psychiatry
    Workshop, Kansas City, KS  April 19, 1986
      Topic:  "Forensic and Correctional Psychiatry"
31. Topeka Psychoanalytic Society Seminar for Shawnee County Kansas
    Court Services, Topeka, KS  May 5, 1986
      Topic:  "Sex Offenders:  Treatment, Management and Outcome"
32. Osawatomie State Hospital, Osawatomie, KS  May 16, 1986
      Topic:  "Evaluation and Treatment of Sex Offenders"
33. Kansas City Star Newspaper, July 1986
      Interview:  "Children Who Commit Acts of Violence"
34. Larned State Hospital, Larned, KS January 22-23, 1987
      Topic:  "Therapeutic Response to Patients Who Assault Staff"
              "Tardive Dyskinesia"
35. Forensic Study Group, Topeka, KS  January 1987
      Topic:  "Research in Corrections:  Introduction to Research
              on the Psychological Effects on Inmates of High
              Security Confinement"
36. Topeka Psychoanalytic Society Seminar for Shawnee County Court
    Judges, Topeka, KS  February 2, 1987
      Topic:  Recidivism and the Prediction of Dangerousness"

Case 3:09-cv-03064-MWB-LTS    Document 234-2    Filed 06/23/11    Page 30 of 100
LOG000030

## Presentations:   (continued)

37. C.F. Menninger Memorial Hospital Education Meeting, March 17, 1987
    Topic:   "Staff Reactions to Assaultive Patients"
38. Menninger Foundation Department of Continuing Education Seminar, Children: The Forgotten Victims of Violence, Topeka KS April 10, 1987
    Topic:   "The Psychopathology of the Child Abuser"
39. U.S. Department of Justice, Federal Bureau of Prisons Conference on the Comprehensive Crime Control Act of 1984:   Implications for Mental Health.  Springfield, MO, September 24, 1987 Presentations:  Panel Chairman, Prediction of Dangerousness Panel Member, Informed Consent and Forced Treatment Emergencies.
40. Kansas Law Enforcement Training Center Lecture, "The Psychology of Right Wing Extremists", Hutchinson, KS, November 17, 1987
41. American Academy of Psychiatry and the Law, Midwest Chapter Scientific Meeting,  "The Right to Refuse Medication and the Charters Decision" Minneapolis, MN, April 9, 1988
42. University of Missouri Kansas City School of Medicine seminar: moderator panel discussion, "Liability Prevention for the Clinician" May 26, 1988
43. Menninger Clinic Hospital Educational Meeting, "Confidentiality in Everyday Practice" Topeka, KS, September 20, 1988
44. Menninger Clinic Hospital Educational Meeting, "Malpractice Prevention:  Wrongful Discharge" Topeka, KS, December 6, 1988
45. Moderator:  Research Section on General Forensic Issues of the Section on Psychiatry and Behavioral Sciences of the American Academy of Forensic Sciences Annual Meeting, February 16, 1989
46. Kansas Legislative Special Committee on Corrections and Mental Illness, "Mental Health Care Delivery in the Kansas Department of Corrections", July 17, 1989, Topeka, KS
47. Kansas State Finance Counsel, "Legislative Consultation on Mental Health Care in the Kansas Department of Corrections" and "Intermediate Plan for the Evaluation, Triage and Treatment of Segregated Mentally Ill Inmates in the Kansas Department of Corrections"; "Long-Term Plan for the Care of the Mentally Ill in the Kansas Department of Corrections." June 26, 1989 and July 21, 1989, Topeka, KS
48. American Academy of Psychiatry and the Law Annual Meeting, Group Leader in Course on Forensic Report Writing presented by Phillip Resnick, M.D., Washington, D.C., October 22, 1989
49. Osawatomie State Hospital, Hospital Education Meeting, "Prediction of Violent Behavior", Osawatomie, KS, October 26, 1989
50. Washburn University Seminar on Child Sexual Abuse, "The Psychiatric Evaluation of the Incest Offender", Topeka, KS, October 27, 1989
51. Patton State Hospital, "Prediction of Dangerousness" and Maternal Neonaticide and Infanticide, San Bernadino, CA November 2-3, 1989
52. Bulletin Menninger Clinic, manuscript reviewer, 1989. Osawatomie State Hospital, "Evaluation of Potential Violence on Discharge and Quality Assurance."  February 20, 1990.
53. American Academy of Psychiatry and the Law Midwest Chapter Scientific Meeting, "The Devil in New Garb, The Insanity Defense in the Biochemical Age" with Glenn S. Lipson, Ph.D. Kansas City, MO, April 6, 1990

**Presentations:**   (continued)

54. Federal Bureau of Prisons Conference on Forensic Psychiatry, "The Evaluation of Informed Consent"; "Pretrial Preparation for Effective Testimony"; panel member on "Ethical Issues in Forensic Evaluations," Rochester, MN, October 30, 1990
55. Kansas University Medical Center Grand Rounds, "Involuntary Intoxication:  The Insanity Defense of the Biochemical Age," Kansas City, MO, January 11, 1991.
56. Iowa Association of Private Investigators "Through The Mind's Eye:  Private Investigation From a Psychiatric Perspective" Cedar Rapids, Iowa, Friday, April 12, 1991
57. Interview with Walter Rogers, ABC News on "Effects of High Security Confinement" June 20, 1991
58. Presentation for Menninger Clinic Trustees on "Forensic Psychiatry" June 1991
59. Pine Rest Christian Hospital, Seminar and Peer Review of eight suicides with presentation on "The Prevention of Hospital Suicides" Grand Rapids, Michigan, June 6, 1991
60. Shawnee County Youth Center and Shawnee County Court Services Inservice lecture:  "Juvenile Homicides" Topeka, Kansas, September 11, 1991
61. NBC - L.A. Law: Consulted with script writers Matthew W. Kiene and Joseph A. Reinkemeyer, Jr. on adaptation of Perry v. Louisiana III skt. 449 (1990).  Program aired November 7, 1991
62. Kansas Association of Criminal Defense Lawyers, "Pitfalls in State Forensic Mental Examinations" Wichita, Kansas, October 11, 1991
63. American Academy of Psychiatry and the Law 22nd Annual Meeting: Presented paper on "Evaluation of Impaired Physicians" Orlando, Florida, October 17, 1991
64. KTKA - Channel 49, Topeka, Kansas, Interview on topic of "Sexual Homicides" November 1991
65. Karl A. Menninger School of Psychiatry Residents Colloquium February 1992.  The Menninger Clinic, Topeka, Kansas Topic: "Confidentiality and the Duty to Report Crimes"
66. Menninger Military Conference, March 30, 1992, Topeka, Kansas Topic: "The Mind of the Terrorist" with Stephen E. Peterson, M.D.
67. Society for Personality Assessment; March 19, 1993; San Francisco, California.  Topic: "Medication, Adverse Reactions and Involuntary Intoxication" with Glenn Scott Lipson, Ph.D.
68. Jackson County Department of Corrections Annual Caseworker Training; January 6-7, 1994 (12 hours).  Sponsored by the University of Kansas.  Introduction to Forensic Psychiatry, criminal responsibility (Yokelson/Samenow Model), identification of high risk detainees, screening for high risk detainees, special issues (DUI and severely mentally ill), and case discussions.  Faculty Drs. Logan and Peterson.
69. Osawatomie State Hospital; November 16, 1995; Panel Member on The Sexual Predator Act: Issues and Answers.  Topic: Lectured on Recidivism in Sex Offenders
70. Kansas Trial Lawyers Association; April 19, 1996; Overland Park, Kansas.  Topic:  Seminar on The Insanity Defense Changes in Kansas Law.  Topic: The Psychiatric Evaluation of Specific Intent (with Stephen E. Peterson, M.D.).
71. Inns of Court; Thurgood Marshall Inn; March 4, 1997, Omaha, Nebraska.  Topic:  Competence to Stand Trial:  In Whose Best Interest, with Steven E. Achelpohl, J.D.
72. Vanguard Club, September 4, 1997 Kansas City, Missouri.  Topic: The Role of the Forensic Psychiatrist in the Legal System.
73. University of Missouri - Kansas City School of Law Worker's Compensation Seminar; October 10, 1997, Kansas City, Missouri. Topic:  Psychiatric Assessment in Worker's Compensation.  (CLE) with Stephen E. Peterson, M.D.

LOG000042

**Presentations:   (continued)**

74. American Psychiatry and Law Society, March 5, 1998, Redondo
    Beach, California.  Topic:  Dilemmas in the Wake of Hendricks,
    panel discussion with Mary Alice Conroy, PhD, David Mrad, PhD
    and Phillip Lyons, PhD, JD.
75. Osawatomie State Hospital, April 2, 1998, Osawatomie, Kansas.
    The Forensic Patient (staff training in treating forensic
    patients, assessment of dangerousness, writing reports for the
    court, expert testimony.)
76. Lacoursiere, R. B.; Logan, W.S. and Peterson, S.E., Grappling
    with Sexually Violent Predator Evaluations in Kansas; Kansas v.
    Hendricks accepted for presentation at the American Academy of
    Psychiatry and Law Annual Meeting, New Orleans, Louisiana,
    October 22, 1998.
77. Texas Special Prosecution Unit - Civil Division, Sexual
    Predator Evaluations, August 19, 2000.
78. UMKC School of Law and the Kansas City Metropolitan Bar
    association Workers Compensation Institute; Psychiatric
    Analysis of mental/mental and physical/mental injuries in the
    State of Missouri, Overland Park, Kansas, October 13, 2000.
79. Pembroke Hill School; Forensic Psychiatry: Issues and
    Applications of Psychiatry in the Legal System, Prairie
    Village, KS January 9, 2002.
80. Inns of Court, Recreation of Leopold & Loeb Trial-Psychiatric
    Aspects of the Defense; Prairie Village, KS March 12, 2002.
81. Expert Evaluation and Testimony in Capital Habeas Proceedings.
    The National Institute for Trial Advocacy; The Habeas
    Assistance and Training Counsel, the Administrative Office of
    the U.S. Courts.  The Habeas Institute, Kansas City, Missouri
    April 9, 2006.  (Provided Mock Testimony.)

**Publications:**

Logan, W.S., Barnhart, F.D., and Bossett, J.T.:
    The Prognostic Significance of Adolescent Interpersonal
    Relationships During Psychiatric Hospitalization.  In
    Adolescent Psychiatry, Vol. X, Chicago:  The University
    of Chicago Press, 1982, 484-494.

Logan, W.S., Reuterfors, D.L., Bohn, M.J., and Clark, C.L.:
    The Description and Classification of Presidential
    Threateners.  Behavioral Science and the Law, 1984, Vol. 2,
    No. 2, 151-168.

Review:  Informed Consent:  A Study of Decision-Making in
    Psychiatry by Charles W. Lidz, Alan Meisel, Eviatar
    Zerubauel Mary Carter, Regina M. Sestak, and Loren H. Roth.
    Bulletin of the Menninger Clinic  Vol. 49, No. 6, November
    1985.

Logan, W.S., The Evaluation of the Impaired Physician.  In
    Legal Implications of Hospital Policies and Practice
    Ed. Miller, R.M. New Directions in Mental Health Sciences.
    No. 41, Spring 1989, 33-53.

Bresler, S.A., Logan, W.S., Washington, DC.  Hyperthyroidism and
    psychosis: Possible prelude to murder. J. Forensic Sci:
    2000:45(3): 728-731.

LOGO000033

...MATTER OF (Case Name) ...efendant ☐ Appellee
U.S. V. Johnson ...s Petitioner list (up to five) major offenses charged, according to se... of offense.

**10. OFFENSE(S) CHARGED** (Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense. "(IF DEATH RESULTS)"
1) 18 1512A.F -- TAMPER W/WITNESS/ VICTIM/ INFORMANT "(IF DEATH RESULTS)"

## REQUEST AND AUTHORIZATION FOR EXPERT SERVICES

**11. ATTORNEY'S STATEMENT**
As the attorney for the person represented, who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request: **OR**

☐ Authorization to obtain the service. Estimated Compensation and Expenses: $ _____ pursuant to the Criminal Justice Act. (See Instructions)

☒ Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act. (See Instructions)

Signature of Attorney X _Patrick J. Berrigan_     Date 1/4/03

☐ Panel Attorney   ☐ Retained Attorney   ☒ Pro–Se   ☐ Legal Organization   AND MAILING ADDRESS

ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS
Patrick J. Berrigan, 2500 Holmes, WATSON & DAMERON, LLP, KANSAS CITY, MO  64108

Telephone Number: _____

**12. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES** (See Instructions)

Psychiatric evaluation of Angela Johnson

**13. TYPE OF SERVICE PROVIDER**

| | | | |
|---|---|---|---|
| 01 ☐ Investigator | | 15 ☐ Other Medical | |
| 02 ☐ Interpreter/Translator | | 16 ☐ Voice/Audio Analyst | |
| 03 ☐ Psychologist | | 17 ☐ Hair/Fiber Expert | |
| 04 ☒ Psychiatrist | | 18 ☐ Computer (Hardware/ Software/Systems) | |
| 05 ☐ Polygraph | | 19 ☐ Paralegal Services | |
| 06 ☐ Documents Examiner | | 20 ☐ Legal Analyst/Consultant | |
| 07 ☐ Fingerprint Analyst | | 21 ☐ Jury Consultant | |
| 08 ☐ Accountant | | 22 ☐ Mitigation Specialist | |
| 09 ☐ CALR (Westlaw/Lexis, etc.) | | 23 ☐ Duplication Services (See Instructions) | |
| 10 ☐ Chemist/Toxicologist | | 24 ☐ Other (Specify) | |
| 11 ☐ Ballistics | | | |
| 13 ☐ Weapons/Firearms/Explosive Expert | | | |
| 14 ☐ Pathologist/Medical Examiner | | | |

**14. COURT ORDER**   Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in Item 11 is hereby granted.

Signature of Presiding Judicial Officer or By Order of the Court _____

Date of Order _____   Nunc Pro Tunc Date _____

Repayment or partial repayment ordered from the person represented for this service at time of authorization.
☐ YES   ☐ NO

**15. STAGE OF PROCEEDING**   Check the box which corresponds to the stage of the proceeding during which the work claimed at Item 16 was performed even if the work is intended to be used in connection with a later stage of the proceeding. CHECK NO MORE THAN ONE BOX. Submit a separate voucher for each stage of the proceeding.

CAPITAL PROSECUTION
a. ☒ Pre–Trial
b. ☐ Trial
c. ☐ Sentencing
d. ☐ Other Post Trial
e. ☐ Appeal
f. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

HABEAS CORPUS
g. ☐ Habeas Petition
h. ☐ Evidentiary Hearing
i. ☐ Dispositive Motions
j. ☐ Appeal
k. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

OTHER PROCEEDING
l. ☐ Stay of Execution
m. ☐ Appeal of Denial of Stay
n. ☐ Petition for Writ of Certiorari to the U.S. Supreme Court Regarding Denial of Stay
o. ☐ Other _____

## CLAIM FOR SERVICES AND EXPENSES

**FOR COURT USE ONLY**

| 16. SERVICES AND EXPENSES (Attach itemization of services with dates) | AMOUNT CLAIMED | MATH/TECHNICAL ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|
| a. Compensation | $3,450.00 | | |
| b. Travel Expenses (lodging, parking, meals, mileage, etc.) | 2,459.50 | | |
| c. Other Expenses | | | |
| GRAND TOTALS (CLAIMED AND ADJUSTED): | 5,909.50 | | |

**17. PAYEE'S NAME** (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS
Logan & Peterson, P.C.
William S. Logan, MD
428 West 42nd Street
Kansas City, MO  64111

TIN: EIN 43-1646086
Telephone Number: 816–842–2500

CLAIMANT'S CERTIFICATION FOR PERIOD OF SERVICE FROM 12/18/00   TO 7/20/01

CLAIM STATUS   ☒ Final Payment   ☐ Interim Payment Number _____   ☐ Supplemental Payment

I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment (compensation or anything of value) from any other source for these services.

Signature of Claimant/Payee _William S. Logan, M.D._   Date 12/28/02

**18. CERTIFICATION OF ATTORNEY**   I hereby certify that the services were rendered for this case.

Signature of Attorney _Patrick J. Berrigan_   Date 1/6/03

**APPROVED FOR PAYMENT — COURT'S USE ONLY**

| 19. TOTAL COMPENSATION | 20. TRAVEL EXPENSES | 21. OTHER EXPENSES | 22. TOTAL AMOUNT APPROVED/CERTIFIED |
|---|---|---|---|

...of these services does not exceed $300, or prior authorization was obtained; OR ...necessary services could not await prior authorization, even though the

# LOGAN & PETERSON, PC

**FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY**

### WILLIAM S. LOGAN, MD
### STEPHEN E. PETERSON, MD

❏ 428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX:          (816) 842-9980

❏ 7733 FORSYTH BLVD, SUITE 35(
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:          (314) 236-499C

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

July 20, 2001

### Angela Jane Johnson
### (Dob: 11/17/64; SSN: 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)

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:     816-474-3350
Fax:          816-221-1636
Email: wdlaw@kctrialawyer.com

CC:   Alfred E. Willett
      Terpstra, Epping & Willett
      Attorneys at Law
      Higley Building
      118 Third Avenue, SE, Suite 500
      Cedar Rapids, Iowa 52401-1424
      Telephone:   319-364-2467
      Fax:         319-364-2460
      Cell:        319-316-2658

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|---|---|---|---|---|---|
| 12/18/00 | Review of material | 2.50 | $200.00 | $500.00 | $ 500.00 |
| '22/00 | Conference call | .50 | $200.00 | $100.00 | $ 600.00 |
| 1/19/01 | Travel time (KCMO to Cedar Rapids) | 5.25 | $100.00 | $525.00 | $1,125.00 |
| 1/19/01 | Conference with Mr. Willett and Evaluation of A. Johnson | 2.75 | $200.00 | $550.00 | $1,675.00 |

LOG000055

RE: Angela Johnson
Page 2

| | | | | | |
|---|---|---|---|---|---|
| Balance Forward | | | | | $1,675.00 |
| 1/19/01 | Travel time (Cedar Rapids to KCMO) | 5.25 | $100.00 | $525.00 | $2,200.00 |
| 1/19/01 | Mileage (KCMO - Cedar Rapids, rd trip) | 650 @ 31.5 cents/mile | | $204.75 | $2,404.75 |
| 6/21/01 | Consultation with Mr. Willett | .50 | $200.00 | $100.00 | $2,504.75 |
| 6/21/01 | Evaluation of Angela Johnson | 3.00 | $200.00 | $600.00 | $3,104.75 |
| 6/21/01 | Travel time (KCMO-Cedar Rapids, IA) | 10 | $100.00 | $1,000.00 | $4,104.75 |
| 6/21/01 | Mileage (KCMO-Cedar Rapids rd trip) | 650 @ 31.5 cents/mile | | $204.75 | $4,309.50 |
| 7/19-20/01 | Review of notes, records and memo preparation | 8.00 | $200.00 | $1600.00 | $5,909.50 |
| | | | | Balance: | $5,909.50 |

Please make check payable to: Logan & Peterson, P.C.
EIN 43-1646086

LOG000036

| 3. MAG. DKT/DEF NUMBER | 4. DIST DKT/DEF NUMBER 3:01-CC3046-001 | 5. APPEALS DKT/DEF NUMBER | 6. OTHER DKT NUMBER |
|---|---|---|---|

| 7. IN CASE/MATTER OF (Case Name) U.S. v. Johnson | 8. PAYMENT CATEGORY [X] Felony [ ] Petty Offense [ ] Misdemeanor [ ] Other [ ] Appeal | 9. TYPE PERSON REPRESENTED [X] Adult Defendant [ ] Appellant [ ] Juvenile Defendant [ ] Appellee [ ] Other: | 10. REPRESENTATION TYPE (See Instructions) Federal Capital Prosecution |

11. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense.

1   842E.F -- Intentionally Kills or Counsels, Commands in Violation of 18:74(8)(1)(A)

## REQUEST AND AUTHORIZATION FOR EXPERT SERVICES

**12. ATTORNEY'S STATEMENT**

As the attorney for the person represented who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request:

[ ] Authorization to obtain the service. Estimated Compensation and Expenses: $ _____

[X] Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act. (Note: Prior authorization should be obtained for services in excess of $300, excluding expenses)

Signature of Attorney _____Patrick J. Berrigan_____ Date 6-13-05

[X] Panel Attorney [ ] Retained Attorney [ ] Pro-Se [ ] Legal Organization

ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS

Patrick J. Berrigan, Watson & Dameron, LLP, 2500 Holmes, Kansas City, MO 64108

Telephone Number: 816-474-3350

**13. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES** (See Instructions)

Dr. William Logan's Services & Expenses re: Angela Johnson case

**14. TYPE OF SERVICE PROVIDER**

| | | | |
|---|---|---|---|
| 01 [ ] Investigator | | 15 [ ] Other Medical | |
| 02 [ ] Interpreter/Translator | | 16 [ ] Voice/Audio Analyst | |
| 03 [X] Psychologist | | 17 [ ] Hair/Fiber Expert | |
| 04 [ ] Psychiatrist | | 18 [ ] Computer (Hardware/Software/Systems) | |
| 05 [ ] Polygraph | | 19 [ ] Paralegal Services | |
| 06 [ ] Documents Examiner | | 20 [ ] Legal Analyst/Consultant | |
| 07 [ ] Fingerprint Analyst | | 21 [ ] Jury Consultant | |
| 08 [ ] Accountant | | 22 [ ] Mitigation Specialist | |
| 09 [ ] CALR (Westlaw/Lexis, etc.) | | 23 [ ] Duplication Services (See Instructions) | |
| 10 [ ] Chemist/Toxicologist | | 24 [ ] Other (Specify) | |
| 11 [ ] Ballistics | | | |
| 13 [ ] Weapons/Firearms/Explosive Expert | | | |
| 14 [ ] Pathologist/Medical Examiner | | | |

**15. COURT ORDER**

Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in item 12 is hereby granted.

Signature of Presiding Judicial Officer or By Order of the Court _____

Date of Order _____ Nunc Pro Tunc Date _____

Repayment or partial repayment ordered from the person represented for this service at time of authorization. [ ] YES [ ] NO

## CLAIM FOR SERVICES AND EXPENSES

| SERVICES AND EXPENSES (Attach itemization of services with dates) | AMOUNT CLAIMED | MATH/TECHNICAL ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|
| a. Compensation | $12,540.75 | | |
| b. Travel Expenses (lodging, parking, meals, mileage, etc.) | 294.85 | | |
| c. Other Expenses | | | |
| **GRAND TOTALS (CLAIMED AND ADJUSTED):** | $12,835.60 | | |

PAYEE'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS

Logan & Peterson
4128 W. 42nd Street
Kansas City, MO 64111

TIN: 43-1646086

Telephone Number: 816-842-2500

CLAIMANT'S CERTIFICATION FOR PERIOD OF SERVICE FROM 5/13/05 TO 6/6/05

CLAIM STATUS [X] Final Payment [ ] Interim Payment Number _____ [ ] Supplemental Payment

I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment (compensation or anything of value) from any other source for these services.

Signature of Claimant/Payee _____Patrick Berrigan for Dr. Wm. Logan, MD_____ Date 6/13/05

CERTIFICATION OF ATTORNEY I hereby certify that the services were rendered for this case.

Signature of Attorney _____Patrick J. Berrigan_____ Date 6-13-05

## APPROVED FOR PAYMENT — COURT USE ONLY

| TOTAL COMPENSATION | 20. TRAVEL EXPENSES | 21. OTHER EXPENSES | 22. TOTAL AMOUNT APPROVED/CERTIFIED |
|---|---|---|---|
| | | | |

Either the cost (excluding expenses) of these services does not exceed $300, or prior authorization was obtained.

Prior authorization was not obtained, but in the interest of justice the Court finds that timely procurement of these necessary services could not await prior authorization, even though the cost (excluding expenses) exceeds $300.

Signature of Presiding Judicial Officer _____ Date _____ Judge/Mag. Judge Code _____

| TOTAL COMPENSATION | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMOUNT APPROVED |
|---|---|---|---|
| | | | |

YM APPROVED IN EXCESS OF THE STATUTORY THRESHOLD UNDER 18 U.S.C. § 3006A(e)(3)

Signature of Chief Judge, Court of Appeals (or Delegate) _____ Date _____ Judge Code _____

JUN 0 8 2005

By

**LOGAN & PETERSON, PC**
FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

**WILLIAM S. LOGAN, MD**

**STEPHEN E. PETERSON, MD**

428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX:            (816) 842-9980

❏ 231 S. BEMISTON
CLAYTON, MISSOURI 63105
TELEPHONE:  (314) 236-4914
FAX:            (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

Angela Jane Johnson
(Dob: 1/17/64; SSN: 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)

June 8, 2005

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:    816-474-3350
Fax:             816-221-1636
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|------|---------|------|------|--------|-------|
| 5/13/05 | Review Drs. Draskin and Martell tape | 2.25 | $225.00 | $506.25 | $ 506.25 |
| 5/13/04 | Conference with Mr. Berrigan, Dr. Hutchinson & Ms. Goody & Dr. Cunningham by phone | 2.75 | $225.00 | $618.75 | $1125.00 |
| 5/14/05 | Review Goody Production Documents & Interviews | 4.83 | $225.00 | $1086.75 | $2211.75 |
| 5/18/04 | Review Discovery documents Volumes I&II | 6.00 | $225.00 | $1350.00 | $3561.75 |
| 5/21/04 | Review Benton, Blackhawk, Linn & Hardin Co. Jail records, + Mason City 1989 Police Reports | 8.91 | $225.00 | $2004.75 | $5566.50 |
| 5/26/05 | Review Honken trial info, Johnson Indictments and Notice. | 3.7 | $225.00 | $ 843.75 | $6410.25 |
| 5/28/05 | Review and print Drs. Dvoskin and Martell Report | 2.25 | $225.00 | $ 562.50 | $6972.75 |
| 5/28/05 | Review Dvoskin-Martell transcript | 3.00 | $225.00 | $675.00 | $7647.75 |
| 5/28/05 | Telephone conference with Mr. Berrigan | 1.00 | $225.00 | $225.00 | $7872.75 |
| 5/29-30/05 | Review and prepare draft report | 8.50 | $225.00 | $1912.50 | $9785.25 |
| 5/30/05 | Telephone conference with Mr. Berrigan | .33 | $225.00 | $74.25 | $9859.50 |

LOG000038

| Date | Description | Hours/Units | Rate | Amount | Balance |
|---|---|---|---|---|---|
| 5/30/05 | Preparation of shorter report | 1.75 | $225.00 | $393.75 | $10253.25 |
| 6/06/05 | Travel time (KCMO to Sioux City, IA) | 4.75 | $125.00 | $593.75 | $10847.00 |
| 6/06/05 | Mileage | 285 @ .37 cents a mile | | $105.45 | $10952.45 |
| 6/06/05 | Review reports | .50 | $225.00 | $112.50 | $11064.95 |
| 6/06/05 | Meeting with Mr. Berrigan and Ms. Goody | 1.00 | $225.00 | $225.00 | $11289.95 |
| 6/07/05 | Review documents | .50 | $225.00 | $112.50 | $11402.45 |
| 6/07/05 | Meeting with Mr. Berrigan | .50 | $225.00 | $112.50 | $11514.95 |
| 6/07/05 | Court time and testimony | 2.25 | $225.00 | $506.25 | $12021.20 |
| 6/7/05 | Travel time (Sioux City to KCMO) | 5.00 | $125.00 | $625.00 | $12646.20 |
| 6/7/05 | Mileage | 285 @ .37 cents a mile | | $105.45 | $12751.65 |
| 6/6/05 | Hotel | | $ 83.95 | $ 83.95 | $12835.60 |
| | | | | Balance: | $12835.60 |

Please make check payable to:  Logan & Peterson, P.C.
EIN 43-1646086

Angela Johnson

| 3. MAG DKT/DEF. NUMBER | 4. DIST. DKT/DEF. NUMBER 3: 01- 003046 - 001 | 5. APPEALS DKT/DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|
| 7. IN CASE/MATTER OF (Case Name) U.S. v. Angela Johnson | 8. PAYMENT CATEGORY [X] Felony [ ] Petty Offense [ ] Misdemeanor [ ] Other [ ] Appeal | 9. TYPE PERSON REPRESENTED [X] Adult Defendant [ ] Appellant [ ] Juvenile Defendant [ ] Appellee [ ] Other: | 10. REPRESENTATION TYPE (See Instructions) Federal Capital Prosecution |

11. OFFENSE(S) CHARGED (Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense.
1) 21 848 E.F - Intentionally Kills or Counsels, Commands w/ Violation of 18: 841(B)(1)(A)

**REQUEST AND AUTHORIZATION FOR EXPERT SERVICES**

12. ATTORNEY'S STATEMENT
As the attorney for the person represented who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request:
[ ] Authorization to obtain the service. Estimated Compensation and Expenses: $ _____ OR
[X] Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act. (Note: Prior authorization should be obtained for services in excess of $300, excluding expenses)

Signature of Attorney _Patrick J. Berrigan_ Date 5/22/05

[X] Panel Attorney [X] Retained Attorney [ ] Pro-Se [ ] Legal Organization
ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS
Patrick J. Berrigan, Watson & Dameron LLP, 2500 Holmes, Kansas City, MO 64108

Telephone Number: 816-474-3350

13. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES (See Instructions)
Travel Expenses + Compensation to Witness interviews re: Angela Johnson case by Dr. William S. Logan, MD (Defense Specialist)

14. TYPE OF SERVICE PROVIDER
01 [ ] Investigator
02 [ ] Interpreter/Translator
03 [ ] Psychologist
04 [X] Psychiatrist
05 [ ] Polygraph
06 [ ] Documents Examiner
07 [ ] Fingerprint Analyst
08 [ ] Accountant
09 [ ] CALR (Westlaw/Lexis, etc.)
10 [ ] Chemist/Toxicologist
11 [ ] Ballistics
13 [ ] Weapons/Firearms/Explosive Expert
14 [ ] Pathologist/Medical Examiner
15 [ ] Other Medical
16 [ ] Voice/Audio Analyst
17 [ ] Hair/Fiber Expert
18 [ ] Computer (Hardware/Software/Systems)
19 [ ] Paralegal Services
20 [ ] Legal Analyst/Consultant
21 [ ] Jury Consultant
22 [ ] Mitigation Specialist
23 [ ] Duplication Services (See Instructions)
24 [ ] Other (Specify)

15. COURT ORDER
Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in item 12 is hereby granted.

_____
Signature of Presiding Judicial Officer or By Order of the Court

_____ _____
Date of Order     Nunc Pro Tunc Date
Repayment or partial repayment ordered from the person represented for this service at time of authorization.
[ ] YES [ ] NO

**CLAIM FOR SERVICES AND EXPENSES** | **FOR COURT USE ONLY**

| 16. SERVICES AND EXPENSES (Attach itemization of services with dates) | AMOUNT CLAIMED | MATH/TECHNICAL ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|
| a. Compensation | 3,793.50 | | |
| b. Travel Expenses (lodging, parking, meals, mileage, etc.) | 1,393.30 | | |
| c. Other Expenses | — | | |
| GRAND TOTALS (CLAIMED AND ADJUSTED): | 5,186.80 | | |

17. PAYEE'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS William S. Logan, M.D.
Logan & Peterson, P.C.
428 West 42nd Street
Kansas City, MO 64111
TIN: 43-1646086
Telephone Number: _____
CLAIMANT'S CERTIFICATION FOR PERIOD OF SERVICE FROM 5/6/05 TO 5/7/05

CLAIM STATUS [ ] Final Payment [X] Interim Payment Number _____ [ ] Supplemental Payment

I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment (compensation or anything of value) from any other source for these services.

Signature of Claimant/Payee _Patrick Berrigan for Dr. Wm. Logan, MD_ Date 5/22/05

18. CERTIFICATION OF ATTORNEY I hereby certify that the services were rendered for this case.

Signature of Attorney _Patrick Berrigan_ Date 5/22/05

**APPROVED FOR PAYMENT — COURT USE ONLY**

| 19. TOTAL COMPENSATION | 20. TRAVEL EXPENSES | 21. OTHER EXPENSES | 22. TOTAL AMOUNT APPROVED/CERTIFIED |
|---|---|---|---|

23. [ ] Either the cost (excluding expenses) of these services does not exceed $300, or prior authorization was obtained.
[ ] Prior authorization was not obtained, but in the interest of justice the Court finds that timely procurement of these necessary services could not await prior authorization, even though the cost (excluding expenses) exceeds $300.

_____ _____ _____
Signature of Presiding Judicial Officer     Date     Judge/Mag. Judge Code

| 24. TOTAL COMPENSATION | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMOUNT APPROVED |
|---|---|---|---|

28. PAYMENT APPROVED IN EXCESS OF THE STATUTORY THRESHOLD UNDER 18 U.S.C. § 3006A(e)(3)

Case 3:09-cv-03064-MWB-LTS     Document 284-2     Filed 06/23/11     Page 40 of 100
LOG000040

_____ _____ _____
Signature of Chief Judge, Court of Appeals (or Delegate)     Date     Judge Code

# LOGAN & PETERSON, PC
### FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

## WILLIAM S. LOGAN, MD
## STEPHEN E. PETERSON, MD

☑ 428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX: (816) 842-9980

❑ 231 S. BEMISTON
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX: (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

### Angela Jane Johnson
### (Dob: 11/17/64; SSN: 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)

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

May 9, 2005

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone: 816-474-3350
Fax: 816-221-1636
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|---|---|---|---|---|---|
| 5/6/05 | Travel time (KCMO to Mason City) | 4.25 | $125.00 | $531.25 | $ 531.25 |
| 5/6/05 | Mileage (KCMO to Mason City) | 320 @ .345 cents a mile | | $110.40 | $ 641.65 |
| 5/6/05 | Interview Pearl Jean Johnson | 2.60 | $225.00 | $585.00 | $1226.65 |
| 5/06/05 | Interview Holly Dirksen | 1.00 | $225.00 | $225.00 | $1451.65 |
| 5/6/05 | Interview James Johnson, Sr. | 1.25 | $225.00 | $281.25 | $1732.90 |
| 5/6/05 | Interview Pamela "Cookie" Johnson | .75 | $225.00 | $168.75 | $1901.65 |
| 5/6/05 | Telephone interview James Johnson, Jr. | 1.20 | $225.00 | $270.00 | $2171.65 |
| 5/6/05 | Interview Carol Mann | 1.00 | $225.00 | $225.00 | $2396.65 |
| 5/6/05 | Interview Mikell Olsen | .25 | $225.00 | $ 56.25 | $2452.90 |
| 5/6/05 | Interview Dave Nieman | 1.00 | $225.00 | $225.00 | $2677.90 |
| 5/7/05 | Interview Kim Sivale | 1.10 | $225.00 | $247.50 | $2925.40 |
| 5/7/05 | Consult with Dr. Cunningham, Mr. Berrigan, Mr. Stowers & Ms Goody | .5 | $225.00 | $112.50 | $3037.90 |
| 5/7/05 | Telephone interview Wendy Jacobson | 1.50 | $225.00 | $337.50 | $3375.40 |
| 5/7/05 | Telephone interview Mark Jacobson | | $225.00 | $ 38.25 | $3413.65 |

Case 3:09-cv-03064-MWB-LTS Document 284-2 Filed 06/23/11 Page 41 of 100
LOGO000042

Re: Angela Johnson
Page 2

| | | | | | |
|---|---|---|---|---|---|
| Balance forward | | | | | $3413.65 |
| 5/7/05 | Interview Marvea Johnson | .67 | $225.00 | $150.75 | $3564.40 |
| 5/7/09 | Interview Jamie Hays | 1.25 | $225.00 | $281.25 | $3845.65 |
| 5/7/05 | Interview Alyssa Johnson | .87 | $225.00 | $195.75 | $4041.40 |
| 5/7/05 | Interview Arlyn Johnson | .75 | $225.00 | $168.75 | $4210.15 |
| 5/7/05 | Interview Todd Graham | 1.00 | $225.00 | $225.00 | $4435.15 |
| 5/7/05 | Travel time (Mason City, IA to KCMO) | 4.40 | $125.00 | $550.00 | $4985.15 |
| 5/7/05 | Mileage | 320 @ .345 cents a mile | | $110.40 | $5095.55 |
| 5/7/05 | Hotel | | | $ 91.25 | $5186.80 |
| | | | | Balance: | $5186.80 |

Please make check payable to:  Logan & Peterson, P.C.
           EIN 43-1646086

LOG000042

| 3. MAG. DKT./DEF. NUMBER | 4. DIST. DKT./DEF. NUMBER 3:01-CO3O46-OOl | 5. APPEALS DKT./DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|

| 7. IN CASE/MATTER OF (Case Name) | 8. TYPE PERSON REPRESENTED | 9. REPRESENTATION TYPE |
|---|---|---|

U.S. v. Johnson

8. TYPE PERSON REPRESENTED
- ☒ Adult Defendant
- ☐ Habeas Petitioner
- ☐ Appellant
- ☐ Appellee
- ☐ Other:

9. REPRESENTATION TYPE
- ☐ D1 28 U.S.C. § 2254 Habeas (Capital)
- ☒ D2 Federal Capital Prosecution
- ☐ D3 28 U.S.C. § 2255 (Capital)
- ☐ D4 Other (Specify)

**10. OFFENSE(S) CHARGED** (Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense.

1) 21 848 E.F. — Intentionally Kills or Counsels, Command w/ Violation of 18:84

## REQUEST AND AUTHORIZATION FOR EXPERT SERVICES

**11. ATTORNEY'S STATEMENT**

As the attorney for the person represented, who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request:

☐ Authorization to obtain the service. Estimated Compensation and Expenses: $ _____ OR

☒ Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act. (See Instructions)

Signature of Attorney _____ Date 2/4/05

- ☒ Panel Attorney
- ☐ Retained Attorney
- ☐ Pro-Se
- ☐ Legal Organization

ATTORNEY'S NAME (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS

Berrigan, Patrick J.
2500 Holmes
Kansas City MO 64108    Telephone Number: 816-474-3350

**12. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES** (See Instructions)

Psychological Examination of Angela Johnson by Dr. Logan for defense; conference and travel expenses re: same.

**13. TYPE OF SERVICE PROVIDER**

- 01 ☐ Investigator
- 02 ☐ Interpreter/Translator
- 03 ☐ Psychologist
- 04 ☒ Psychiatrist
- 05 ☐ Polygraph
- 06 ☐ Documents Examiner
- 07 ☐ Fingerprint Analyst
- 08 ☐ Accountant
- 09 ☐ CALR (Westlaw/Lexis, etc.)
- 10 ☐ Chemist/Toxicologist
- 11 ☐ Ballistics
- 13 ☐ Weapons/Firearms/Explosive Expert
- 14 ☐ Pathologist/Medical Examiner
- 15 ☐ Other Medical
- 16 ☐ Voice/Audio Analyst
- 17 ☐ Hair/Fiber Expert
- 18 ☐ Computer (Hardware/Software/Systems)
- 19 ☐ Paralegal Services
- 20 ☐ Legal Analyst/Consultant
- 21 ☐ Jury Consultant
- 22 ☐ Mitigation Specialist
- 23 ☐ Duplication Services (See Instructions)
- 24 ☐ Other (Specify)

**14. COURT ORDER**

Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in Item 11 is hereby granted.

Signature of Presiding Judicial Officer or By Order of the Court _____

Date of Order _____ Nunc Pro Tunc Date _____

Repayment or partial repayment ordered from the person represented for this service at time of authorization. ☐ YES ☐ NO

**15. STAGE OF PROCEEDING** Check the box which corresponds to the stage of the proceeding during which the work claimed at Item 16 was performed even if the work is intended to be used in connection with a later stage of the proceeding. CHECK NO MORE THAN ONE BOX. Submit a separate voucher for each stage of the proceeding.

CAPITAL PROSECUTION
- a. ☒ Pre-Trial
- b. ☐ Trial
- c. ☐ Sentencing
- d. ☐ Other Post Trial

- e. ☐ Appeal
- f. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

HABEAS CORPUS
- g. ☐ Habeas Petition
- h. ☐ Evidentiary Hearing
- i. ☐ Dispositive Motions
- j. ☐ Appeal

- k. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

OTHER PROCEEDING
- l. ☐ Stay of Execution
- m. ☐ Appeal of Denial of Stay
- n. ☐ Petition for Writ of Certiorari to the U.S. Supreme Court Regarding Denial of Stay
- o. ☐ Other

## CLAIM FOR SERVICES AND EXPENSES / FOR COURT USE ONLY

| 16. SERVICES AND EXPENSES (Attach itemization of services with dates) | AMOUNT CLAIMED | MATH/TECHNICAL ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|
| a. Compensation | 1,518.75 | | |
| b. Travel Expenses (lodging, parking, meals, mileage, etc.) | 1,328.80 | | |
| c. Other Expenses | | | |
| **GRAND TOTALS (CLAIMED AND ADJUSTED):** | 2,847.55 | | |

**17. PAYEE'S NAME** (First Name, M.I., Last Name, including any suffix), AND MAILING ADDRESS

William S. Logan, MD
Logan + Peterson, PC
428 W. 42nd St.
Kansas City MO 64111

TIN: 43-1646086

Telephone Number: 816-842-2500

CLAIMANT'S CERTIFICATION FOR PERIOD OF SERVICE FROM 11/17/04 — TO 1/26/05

CLAIM STATUS ☐ Final Payment ☒ Interim Payment Number _____ ☐ Supplemental Payment

I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment (compensation or anything of value) from any other source for these services.

Signature of Claimant/Payee _____ for William S. Logan MD    Date 2/4/05

**18. CERTIFICATION OF ATTORNEY** I hereby certify that the services were rendered for this case.

Signature of Attorney _____ Date 2/4/05

## APPROVED FOR PAYMENT — COURT'S USE ONLY

| 19. TOTAL COMPENSATION | 20. TRAVEL EXPENSES | 21. OTHER EXPENSES | 22. TOTAL AMOUNT APPROVED/CERTIFIED |
|---|---|---|---|
| | | | |

23. ☐ Either the cost (excluding expenses) of these services does not exceed $300, or prior authorization was obtained; OR

☐ In the interest of justice the Court finds that timely procurement of these necessary services could not await prior authorization, even though the cost (excluding expenses) exceeds $300.

Signature of Presiding Judicial Officer _____ Date _____ Judge/Mag. Judge Code _____

| TOTAL COMPENSATION | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMOUNT APPROVED |
|---|---|---|---|
| | | | |

28. FOR REPRESENTATIONS COMMENCED AND APPELLATE PROCEEDINGS IN WHICH AN APPEAL IS PERFECTED ON OR AFTER APRIL 24, 1996,

A. Total compensation and expense payments approved to date (include amounts withheld for interim payments) for investigative, expert and other services for this representation is $ _____

B. Payment approved (compensation and expenses) in excess of the statutory threshold for investigative, expert and other services under 21 U.S.C. § 848(q)(10)(B)

Signature of Chief Judge, Court of Appeals (or Delegate) _____ Date _____ Judge Code _____

Case 3:09-cv-03064-MWB-LTS    Document LOG000043    Filed 06/23/11    Page 43 of 100

# LOGAN & PETERSON, PC

### FORENSIC, ADOLESCENT AND ADULT PSYCHIATRY

## WILLIAM S. LOGAN, MD
## STEPHEN E. PETERSON, MD

☑ **428 WEST 42ND STREET**
**KANSAS CITY, MISSOURI 64111**
**TELEPHONE: (816) 842-2500**
**FAX:           (816) 842-9980**

❏ **231 S. BEMISTON**
**CLAYTON, MISSOURI 63105**
**TELEPHONE:  (314) 236-4914**
**FAX:           (314) 236-4990**

**3600 BURLINGAME, SUITE 1A**
**TOPEKA, KANSAS 66611**

January 27, 2005

**Angela Jane Johnson**
**(Dob: 11/17/64; SSN: 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)**

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:     816-474-3350
Fax:                816-221-1636
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|------|---------|------|------|--------|-------|
| 11/17/04 | Review file Conference | 1.50 | $225.00 | $ 337.50 | $ 337.50 |
| 11/17/04 | Conference with Mr. Berrigan | 1.00 | $225.00 | $ 225.00 | $ 562.50 |
| 1/25/05 | Review records | .75 | $225.00 | $ 168.75 | $ 731.25 |
| 1/26/05 | Examination of Ms. Johnson | 3.50 | $225.00 | $ 787.50 | $1518.75 |
| 1/26/05 | Travel time (KCMO to Eldora, IA round trip) | 9.08 | $125.00 | $1135.00 | $2653.75 |
| 1/26/05 | Mileage | | 570 @ .34 cents a mile | $ 193.80 | $2847.55 |
| | | | | Balance: | $2847.55 |

Please make check payable to:  Logan & Peterson, P.C.
                    EIN 43-1646086

LOG000044

| 3. MAG. DKT/DEF. NUMBER | 4. DIST. DKT/DEF. NUMBER 3:01-003046-001 | 5. APPEALS DKT/DEF. NUMBER | 6. OTHER DKT. NUMBER |
|---|---|---|---|

**7. IN CASE/MATTER OF** *(Case Name)*
US v. Johnson

**8. TYPE PERSON REPRESENTED**
☒ Adult Defendant  ☐ Appellant  ☐ Other:
☐ Habeas Petitioner  ☐ Appellee

**9. REPRESENTATION TYPE**
☐ D1 28 U.S.C. § 2254 Habeas (Capital)  ☐ D3 28 U.S.C. § 2255 (Capital)
☒ D2 Federal Capital Prosecution  ☐ D4 Other (Specify)

**10. OFFENSE(S) CHARGED** *(Cite U.S. Code, Title & Section) If more than one offense, list (up to five) major offenses charged, according to severity of offense.*
21 848 E, F - Intentionally Kills or Counsels, Commands w/Violation of 18:841/8

## REQUEST AND AUTHORIZATION FOR EXPERT SERVICES

**11. ATTORNEY'S STATEMENT**
As the attorney for the person represented, who is named above, I hereby affirm that the services requested are necessary for adequate representation. I hereby request:
☐ Authorization to obtain the service. Estimated Compensation and Expenses: $ _____ — OR
☒ Approval of services already obtained to be paid for by the United States pursuant to the Criminal Justice Act. *(See Instructions)*

Signature of Attorney X _Patrick J. Berrigan_    Date X 4-25-05

☒ Panel Attorney  ☐ Retained Attorney  ☐ Pro-Se  ☐ Legal Organization

ATTORNEY'S NAME *(First Name, M.I., Last Name, including any suffix)*, AND MAILING ADDRESS
Patrick J. Berrigan, Watson + Dameron, LLP, 2500 Holmes, Kansas City, Missouri 64108    Telephone Number: 816-474-3350

**12. DESCRIPTION OF AND JUSTIFICATION FOR SERVICES** *(See Instructions)*
Dr. Logan's services in regard to above-named case, including conferences, reviewing of files, Exam of client, various telephone calls and travel expenses.

**13. TYPE OF SERVICE PROVIDER**
| | |
|---|---|
| 01 ☐ Investigator | 15 ☐ Other Medical |
| 02 ☐ Interpreter/Translator | 16 ☐ Voice/Audio Analyst |
| 03 ☐ Psychologist | 17 ☐ Hair/Fiber Expert |
| 04 ☒ Psychiatrist | 18 ☐ Computer (Hardware/Software/Systems) |
| 05 ☐ Polygraph | |
| 06 ☐ Documents Examiner | 19 ☐ Paralegal Services |
| 07 ☐ Fingerprint Analyst | 20 ☐ Legal Analyst/Consultant |
| 08 ☐ Accountant | 21 ☐ Jury Consultant |
| 09 ☐ CALR (Westlaw/Lexis, etc.) | 22 ☐ Mitigation Specialist |
| 10 ☐ Chemist/Toxicologist | 23 ☐ Duplication Services (See Instructions) |
| 11 ☐ Ballistics | 24 ☐ Other (Specify) |
| 13 ☐ Weapons/Firearms/Explosive Expert | |
| 14 ☐ Pathologist/Medical Examiner | |

**14. COURT ORDER** Financial eligibility of the person represented having been established to the Court's satisfaction, the authorization requested in Item 11 is hereby granted.

Signature of Presiding Judicial Officer or By Order of the Court

Date of Order _____ Nunc Pro Tunc Date _____
Repayment or partial repayment ordered from the person represented for this service at time of authorization.  ☐ YES  ☐ NO

**15. STAGE OF PROCEEDING** Check the box which corresponds to the stage of the proceeding during which the work claimed at Item 16 was performed even if the work is intended to be used in connection with a later stage of the proceeding. CHECK NO MORE THAN ONE BOX. Submit a separate voucher for each stage of the proceeding.

CAPITAL PROSECUTION
a. ☒ Pre-Trial  b. ☐ Trial  c. ☐ Sentencing  d. ☐ Other Post Trial
e. ☐ Appeal  f. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

HABEAS CORPUS
g. ☐ Habeas Petition  h. ☐ Evidentiary Hearing  i. ☐ Dispositive Motions  j. ☐ Appeal
k. ☐ Petition for the U.S. Supreme Court Writ of Certiorari

OTHER PROCEEDING
l. ☐ Stay of Execution  m. ☐ Appeal of Denial of Stay  n. ☐ Petition for Writ of Certiorari to the U.S. Supreme Court Regarding Denial of Stay
o. ☐ Other

## CLAIM FOR SERVICES AND EXPENSES | FOR COURT USE ONLY

**16.**
| SERVICES AND EXPENSES *(Attach itemization of services with dates)* | AMOUNT CLAIMED | MATH/TECHNICAL ADJUSTED AMOUNT | ADDITIONAL REVIEW |
|---|---|---|---|
| a. Compensation | 3,600.00 | | |
| b. Travel Expenses *(lodging, parking, meals, mileage, etc.)* | 1,328.80 | | |
| c. Other Expenses | | | |
| **GRAND TOTALS (CLAIMED AND ADJUSTED):** | 4,928.80 | | |

**17. PAYEE'S NAME** *(First Name, M.I., Last Name, including any suffix)*, AND MAILING ADDRESS
Logan + Peterson, P.C.
428 West 42nd St.
Kansas City, MO 64111

TIN: 43-1646086
Telephone Number: 816-842-2500

CLAIMANT'S CERTIFICATION FOR PERIOD OF SERVICE FROM 11/17/04 TO 4/14/05

CLAIM STATUS  ☐ Final Payment  ☒ Interim Payment Number 2  ☐ Supplemental Payment
I hereby certify that the above claim is for services rendered and is correct, and that I have not sought or received payment *(compensation or anything of value)* from any other source for these services.
Signature of Claimant/Payee X _Patrick Berrigan for Dr. Wm. Logan_    Date X 4-25-05

**18. CERTIFICATION OF ATTORNEY** I hereby certify that the services were rendered for this case.

Signature of Attorney X _Patrick J. Berrigan_    Date X 4-25-05

## APPROVED FOR PAYMENT — COURT'S USE ONLY

| 19. TOTAL COMPENSATION | 20. TRAVEL EXPENSES | 21. OTHER EXPENSES | 22. TOTAL AMOUNT APPROVED/CERTIFIED |
|---|---|---|---|
| | | | |

**23.** ☐ Either the cost *(excluding expenses)* of these services does not exceed $300, or prior authorization was obtained; OR
☐ In the interest of justice the Court finds that timely procurement of these necessary services could not await prior authorization, even though the cost *(excluding expenses)* exceeds $300.

Signature of Presiding Judicial Officer _____ Date _____ Judge/Mag. Judge Code _____

| 24. TOTAL COMPENSATION | 25. TRAVEL EXPENSES | 26. OTHER EXPENSES | 27. TOTAL AMOUNT APPROVED |
|---|---|---|---|
| | | | |

**28. FOR REPRESENTATIONS COMMENCED AND APPELLATE PROCEEDINGS IN WHICH AN APPEAL IS PERFECTED ON OR AFTER APRIL 24, 1996.**
A. Total compensation and expense payments approved to date (include amounts withheld for interim payments) for investigative, expert and other services for this representation is $ _____
B. Payment _____ the statutory _____ and other services under 21 U.S.C. § 848(q)(10)(B).

Signature of Chief Judge, Court of Appeals (or Delegate) _____ Date _____

Case 3:09-cv-03064-MWB-LTS   Document 284-2   Filed 06/23/11   Page 45 of 100
LOG000045

**WILLIAM S. LOGAN, MD**

**STEPHEN E. PETERSON, MD**

428 WEST 42ND STREET
KANSAS CITY, MISSOURI 64111
TELEPHONE: (816) 842-2500
FAX:          (816) 842-9980

❑ 231 S. BEMISTON
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:          (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

**Angela Jane Johnson**
**(Dob: 11/17/64; SSN: 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)**

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:    816-474-3350
Fax:          816-221-1636
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|---|---|---|---|---|---|
| 11/17/04 | Review file Conference | 1.50 | $225.00 | $ 337.50 | $ 337.50 |
| 11/17/04 | Conference with Mr. Berrigan | 1.00 | $225.00 | $ 225.00 | $ 562.50 |
| 1/25/05 | Review records | .75 | $225.00 | $ 168.75 | $ 731.25 |
| 1/26/05 | Examination of Ms. Johnson | 3.50 | $225.00 | $ 787.50 | $1518.75 |
| 1/26/05 | Travel time (KCMO to Eldora, IA round trip) | 9.08 | $125.00 | $1135.00 | $2653.75 |
| 1/26/05 | Mileage | 570 @ .34 cents a mile | | $ 193.80 | $2847.55 |
| 2/28/05 | Meeting with Mr. Berrigan | 1.00 | $225.00 | $ 225.00 | $3072.55 |
| 4/12/05 | Telephone conference with M. Goody | 1.25 | $225.00 | $ 281.25 | $3353.80 |
| 4/13-14/05 | Interview Notes/Memos | 5.00 | $225.00 | $1125.00 | $4478.80 |
| 4/13/05 | Telephone conference with M. Goody | .50 | $225.00 | $ 112.50 | $4591.30 |
| 4/14/05 | List of documents not received for M. Goody and review of March '03 chronology | 1.50 | $225.00 | $ 337.50 | $4928.80 |

Balance:   $4928.80

Please make check payable to: Logan & Peterson, M.D., P.C.
EIN 43-1646086

LOG000046

**MEMORANDUM**

**TO:** Pat Berrigan, Trial Lawyer   **Fax:**   **816-221-1636**
Watson & Dameron, LLP

**FROM:** William S. Logan, MD

**DATE:** 1/24/01

**SUBJECT:** **FEE SCHEDULE: ANGELA JOHNSON**

Dear Pat:

My fees are as follows:

$ 60/hour   Travel time and expenses (mileage)

$200/hour   Professional services (includes everything else)

I also need to know the federal reimbursement rate for mileage.

If you need more information I can be reached at 816-304-5566 (cell phone.)

Sincerely,

William S. Logan, MD

LOG000047

July 20, 2001

**Angela Jane Johnson**
**(Dob: 11/17/64; SSN: 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)**

U.S.D.C. for the Northern District of Iowa
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:    816-474-3350
Fax:          816-221-1636
Email: wdlaw@kctrialawyer.com

CC:   Alfred E. Willett
      Terpstra, Epping & Willett
      Attorneys at Law
      Higley Building
      118 Third Avenue, SE, Suite 500
      Cedar Rapids, Iowa 52401-1424
      Telephone:   319-364-2467
      Fax:         319-364-2460
      Cell:        319-316-2658

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|---|---|---|---|---|---|
| 12/18/00 | Review of material | 2.50 | $200.00 | $500.00 | $ 500.00 |
| 12/22/00 | Conference call | .50 | $200.00 | $100.00 | $ 600.00 |
| 1/19/01 | Travel time (KCMO to Cedar Rapids) | 5.25 | $100.00 | $525.00 | $1,125.00 |
| 1/19/01 | Conference with Mr. Willett and Evaluation of A. Johnson | 2.75 | $200.00 | $550.00 | $1,675.00 |

Case 3:09-cv-03064-MWB-LTS    Document 384-2    Filed 06/23/11    Page 48 of 100

RE: Angela Johnson
Page 2

Balance Forward                                                                    $1,675.00

| Date | Description | Hours | Rate | Amount | Balance |
|---|---|---|---|---|---|
| 1/19/01 | Travel time (Cedar Rapids to KCMO) | 5.25 | $100.00 | $525.00 | $2,200.00 |
| 1/19/01 | Mileage (KCMO - Cedar Rapids, rd trip) | 650 @ 31.5 cents/mile | | $204.75 | $2,404.75 |
| 6/21/01 | Consultation with Mr. Willett | .50 | $200.00 | $100.00 | $2,504.75 |
| 6/21/01 | Evaluation of Angela Johnson | 3.00 | $200.00 | $600.00 | $3,104.75 |
| 6/21/01 | Travel time (KCMO-Cedar Rapids, IA) | 10 | $100.00 | $1,000.00 | $4,104.75 |
| 6/21/01 | Mileage (KCMO-Cedar Rapids rd trip) | 650 @ 31.5 cents/mile | | $204.75 | $4,309.50 |
| 7/19-20/01 | Review of notes, records and memo preparation | 8.00 | $200.00 | $1600.00 | $5,909.50 |

Balance: $5,909.50

========================================================================

Please make check payable to: Logan & Peterson, P.C.
                              EIN 43-1646086

LOG000049

**Angela Jane Johnson**
**(Dob: 11/17/64; SSN: 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)**

U.S.D.C. for the Northern District of Iowa  
Case No. CR00-3034-MMW

May 9, 2005

Patrick J. Berrigan  
Trial Lawyer  
Watson & Dameron, LLP  
Trial Attorneys  
2500 Holmes  
Kansas City, MO 64108  
Telephone:   816-474-3350  
Fax:              816-221-1636  
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|------|---------|------|------|--------|-------|
| 5/6/05 | Travel time (KCMO to Mason City) | 4.25 | $125.00 | $531.25 | $ 531.25 |
| 5/6/05 | Mileage (KCMO to Mason City) | 320 @ .345 cents a mile | | $110.40 | $ 641.65 |
| 5/6/05 | Interview Pearl Jean Johnson | 2.60 | $225.00 | $585.00 | $1226.65 |
| 5/06/05 | Interview Holly Dirksen | 1.00 | $225.00 | $225.00 | $1451.65 |
| 5/6/05 | Interview James Johnson, Sr. | 1.25 | $225.00 | $281.25 | $1732.90 |
| 5/6/05 | Interview Pamela "Cookie" Johnson | .75 | $225.00 | $168.75 | $1901.65 |
| 5/6/05 | Telephone interview James Johnson, Jr. | 1.20 | $225.00 | $270.00 | $2171.65 |
| 5/6/05 | Interview Carol Mann | 1.00 | $225.00 | $225.00 | $2396.65 |
| 5/6/05 | Interview Mikell Olsen | .25 | $225.00 | $ 56.25 | $2452.90 |
| 5/6/05 | Interview Dave Nieman | 1.00 | $225.00 | $225.00 | $2677.90 |
| 5/7/05 | Interview Kim Sivale | 1.10 | $225.00 | $247.50 | $2925.40 |
| 5/7/05 | Consult with Dr. Cunningham, Mr. Berrigan, Mr. Stowers & Ms Goody | .5 | $225.00 | $112.50 | $3037.90 |
| 5/7/05 | Telephone interview Wendy Jacobson | 1.50 | $225.00 | $337.50 | $3375.40 |
| 5/7/05 | Telephone interview Mark Jacobson | .17 | $225.00 | $ 38.25 | $3413.65 |

Case 3:09-cv-03064-MWB-LTS   Document 284-2   Filed 06/23/11   Page 50 of 100
CY3000005C

Re: Angela Johnson
Page 2

Balance forward $3413.65

| | | | | | |
|---|---|---|---|---|---|
| 5/7/05 | Interview Marvea Johnson | .67 | $225.00 | $150.75 | $3564.40 |
| 5/7/09 | Interview Jamie Hays | 1.25 | $225.00 | $281.25 | $3845.65 |
| 5/7/05 | Interview Alyssa Johnson | .87 | $225.00 | $195.75 | $4041.40 |
| 5/7/05 | Interview Arlyn Johnson | .75 | $225.00 | $168.75 | $4210.15 |
| 5/7/05 | Interview Todd Graham | 1.00 | $225.00 | $225.00 | $4435.15 |
| 5/7/05 | Travel time (Mason City, IA to KCMO) | 4.40 | $125.00 | $550.00 | $4985.15 |
| 5/7/05 | Mileage | 320 @ .345 cents a mile | | $110.40 | $5095.55 |
| 5/7/05 | Hotel | | | $ 91.25 | $5186.80 |

Balance: $5186.80

============================================================================

Please make check payable to: Logan & Peterson, P.C.
EIN 43-1646086

Paid-----
Johnson, Angela          WSL    06/17/05                    5,186.80

LOG000051

# MEMORANDUM

TO:      Pat Berrigan, Trial Lawyer      **Fax:**   **816-221-1636**
          Attn: Becky Walker

FROM:     William S. Logan, MD

DATE:      6/08/05

SUBJECT:    **BILLING SUMMARY ON ANGELA JOHNSON**

| Billing Date | Amount | Payment | |
|---|---|---|---|
| 2001 | $ 5,909.50 | Paid 2/18/03 | $5,909.50 |
| Jan. 2005 | $ 2,847.55 | | |
| April 2005 | $ 2,081.25 | Paid 5/17/05 | $4928.80 |
| May 9, 2005 | $ 5,186.80 | Paid 6/17/05 | $5186.80 |
| June 8, 2005 | $12,835.60 | | |
| | | | |
| Total billed | $28,860.70 | | |

Your letter of 5/26/05 indicated I was approved for $30,000. Thus there is a surplus of $1,139.30.

Please contact me if there are questions. I was not certain of the mileage rate.

Sincerely,


William S. Logan, MD

LOG000052

**Angela Jane Johnson**
**(Dob: 1/17/64; SSN: 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)**

U.S.D.C. for the Northern District of Iowa                                June 8, 2005
Case No. CR00-3034-MMW

Patrick J. Berrigan
Trial Lawyer
Watson & Dameron, LLP
Trial Attorneys
2500 Holmes
Kansas City, MO 64108
Telephone:      816-474-3350
Fax:                816-221-1636
Email: wdlaw@kctrialawyer.com

| DATE | SERVICE | TIME | RATE | CHARGE | TOTAL |
|---|---|---|---|---|---|
| 5/13/05 | Review Drs. Draskin and Martell tape | 2.25 | $225.00 | $506.25 | $ 506.25 |
| 5/13/04 | Conference with Mr. Berrigan, Dr. Hutchinson & Ms. Goody & Dr. Cunningham by phone | 2.75 | $225.00 | $618.75 | $1125.00 |
| 5/14/05 | Review Goody Production Documents & Interviews | 4.83 | $225.00 | $1086.75 | $2211.75 |
| 5/18/04 | Review Discovery documents Volumes I&II | 6.00 | $225.00 | $1350.00 | $3561.75 |
| 5/21/04 | Review Benton, Blackhawk, Linn & Hardin Co. Jail records, + Mason City 1989 Police Reports | 8.91 | $225.00 | $2004.75 | $5566.50 |
| 5/26/05 | Review Honken trial info, Johnson Indictments and Notice. | 3.7 | $225.00 | $ 843.75 | $6410.25 |
| 5/28/05 | Review and print Drs. Dvoskin and Martell Report | 2.25 | $225.00 | $ 562.50 | $6972.75 |
| 5/28/05 | Review Dvoskin-Martell transcript | 3.00 | $225.00 | $675.00 | $7647.75 |
| 5/28/05 | Telephone conference with Mr. Berrigan | 1.00 | $225.00 | $225.00 | $7872.75 |
| 5/29-30/05 | Review and prepare draft report | 8.50 | $225.00 | $1912.50 | $9785.25 |
| 5/30/05 | Telephone conference with Mr. Berrigan | .33 | $225.00 | $ 74.25 | $9859.50 |

Case 3:09-cv-03064-MWB-LTS     Document 60-3     Filed 06/23/11     Page 53 of 100

LCG0009053

| Date | Description | Hours | Rate | Amount | Balance |
|---|---|---|---|---|---|
| 5/30/05 | Preparation of shorter report | 1.75 | $225.00 | $393.75 | $10253.25 |
| 6/06/05 | Travel time (KCMO to Sioux City, IA) | 4.75 | $125.00 | $593.75 | $10847.00 |
| 6/06/05 | Mileage | | 285 @ .37 cents a mile | $105.45 | $10952.45 |
| 6/06/05 | Review reports | .50 | $225.00 | $112.50 | $11064.95 |
| 6/06/05 | Meeting with Mr. Berrigan and Ms. Goody | 1.00 | $225.00 | $225.00 | $11289.95 |
| 6/07/05 | Review documents | .50 | $225.00 | $112.50 | $11402.45 |
| 6/07/05 | Meeting with Mr. Berrigan | .50 | $225.00 | $112.50 | $11514.95 |
| 6/07/05 | Court time and testimony | 2.25 | $225.00 | $506.25 | $12021.20 |
| 6/7/05 | Travel time (Sioux City to KCMO) | 5.00 | $125.00 | $625.00 | $12646.20 |
| 6/7/05 | Mileage | | 285 @ .37 cents a mile | $105.45 | $12751.65 |
| 6/6/05 | Hotel | | | $ 83.95 | $ 83.95 | $12835.60 |

Balance: $12835.60

===================================================================

Please make check payable to: Logan & Peterson, P.C.
EIN 43-1646086

Johnson, Angela               WSL    06/17/05                          5,186.80

Denise Pickens
U.S. Courthouse
Administrative Office of the US Court
Federal Building
101 First Street, S.E., RM 220
Cedar Rapids, IA 52401

LOGO000054

# MEMORANDUM

| | | | |
|---|---|---|---|
| **TO:** | Pat Berrigan, Trial Lawyer | **Fax:** | **816-221-1636** |
| | Watson & Dameron, LLP | | |
| **FROM:** | William S. Logan, MD | | |
| **DATE:** | 8/18/05 | | |
| **SUBJECT:** | **BILLING ON ANGELA JOHNSON** | | |

Dear Mr. Berrigan:

With my final bill I submitted a memo detailing the billing history in this case.

Your letter of 5/26/05 indicated that I was approved for $30,000.

From 2001 through May 9, 2005 I billed $16,025.10. As of 6/17/05 I had received $16,025.10.

My final bill was for $12,835.60. Added to my previous billings this totals, $28,860.70. If the approval was for $30,000 this should have resulted in a $1,139.30 surplus.

$30,000 less the amount billed through 5/9/05 of $16,025.10 should have left a surplus of $13,974.90. Instead the letter of August 11, 2005 from Jennifer A. Gill indicated there was $11,127.35 in the budget, a difference of $2,847.55. What happened?

Consequently I am receiving $1,728.21 less than what I billed! (12,855.56 – 11,127.55.)

According to the figures in the August 11, 2005 letter, the budge for me was not $30,000 but instead was $27,152.65? (16,025.10 through 5/9/05 + $11,127.55 for the final amount.)

LOGG000055

It has been some time since the case ended.  I am glad to receive the $11,127.35.  It is my opinion, however, that there should be some explanation as to why my allotment was $27,152.65, instead of $30,000, as I was told.

From the 8/11/05 letter, it is indicated that the shortfall in the amount billed vs. amount received of $1,728.21 was not worth presenting to the Eighth Circuit.  I will not debate that issue, but am puzzled, as my total billings actually came in $1,139.30 less than the $30,000 budgeted.  The money should have been there without going to the Eighth Circuit.  I would like some explanation of why the money was not there, so this can be avoided in the future.

Thanks for your help in this matter.

Sincerely,

William S. Logan, MD

P.S.    If there is a presentation to the Eighth Circuit, I would like additional budget modification for my bill to be presented as well, but want it noted that I did bill under the amount I was told was allotted.

(The check for $11,127.35 was received this date, 8/18/05.  Thank you.)

LOGC000056

# WATSON & DAMERO , LLP

### TRIAL ATTORNEYS

Henri J. Watson • Russell S. Dameron

Patrick J. Berrigan • Kathleen M. Hagen* • Michael D. Wallis* • Jesse B. Garcia* • Jason Billam**

Of Counsel: Ramón Murguía

**Licensed in Kansas only

*Licensed in MO & KS

---

November 22, 2000

Dr. William S. Logan, M.D.
228 W. 4th St.
Kansas City, Missouri 64105

**Re:** *United States v. Angela Johnson*
*Northern District of Iowa No. CR00-3034-MWV*

Dear Dr. Logan:

Please find attached a series of newspaper articles which will give you some background on the case in which Al Willett and I have undertaken to represent Ms. Angela Johnson, a thirty-six year old woman now charged with five counts of capital murder in the United States District Court for the Northern District of Iowa. Although the case will be tried in Sioux City beginning on January 14th, 2002, the preliminary proceedings are taking place in Cedar Rapids, and Ms. Johnson is being held in Cedar Rapids at the Linn County Jail downtown.

Having met with Ms. Johnson for two hours on Monday, November 20th, and having spoken to Al Willett about Ms. Johnson on several occasions, I can tell you that she is not presently psychotic and appears to have no immediate mental health concerns. She did attempt suicide by hanging shortly after receiving the news that the jail inmate she had confided in about her case had turned all of that incriminating information over to the government. This was almost two months ago now, and Angela seems to have recovered fully.

Also included are preliminary interviews with two of Angela's four siblings, and one interview of Angela. Of course, we will have much more information for you about Angela's background as our investigation proceeds, but these reports will at least give you a hint that she has had a somewhat troubled upbringing.

Al and I are preparing to submit our request to the court to retain your services in this case. We will need a competency determination, although, frankly, that does not seem to be an issue presently. More importantly, we need to evaluate Angela's mental state both at the time of the commission of the alleged murders (July and November 1993), and at the time she purportedly made incriminating statements to the government's snitch, Robert McNeese. We will be engaged in a suppression motion regarding Angela's alleged statements to McNeese at a hearing to take place some time in February, 2001. Therefore, it will be important to have at least a preliminary indication by that time as to whether Angela's mental state made her unusually susceptible to coercion and/or enticement by McNeese in obtaining these alleged statements.

Case 3:09-cv-03064-MWB-LTS    Document 284-2    Filed 06/23/11    Page 57 of 100

LOG000037

In order to get you started, and to obtain the court order that will be necessary to get you paid, Al and I need a preliminary estimate of your fees and expenses in this case, which should include the probability of testifying at trial, and at least one pretrial hearing. If you could provide your hourly fees, estimated expenses and an educated guess on the amount of time needed to assist us based on your work in past capital cases, perhaps we can come up with some numbers to submit to the magistrate judge. It would be prudent to estimate liberally, Dr. Logan, and then everyone will be pleased if we submit bills below the estimate.

I am very much looking forward to working with you once again. Even if Angela does not have significant mental issues that impact upon her first phase defense (which is "I didn't kill anyone"), I suspect that you will uncover issues in her family history and growing up that will perhaps show her susceptibility to being dominated by a man as intelligent, forceful and domineering as Angela's boyfriend and co-defendant, Dustin Honken.

Obviously, all of our usual rules of legal engagement apply in this case, including the need for strict confidentiality to preserve both the doctor/patient and attorney/client privileges. After you have had a chance to review these materials, I will set up a conference call with you and Al, and we can discuss further how to best proceed. Meanwhile, I have enclosed the applicable federal statutes regarding first degree murder, the defense of mental disease or defect, and how mitigation evidence is defined.

Once again, thank you Dr. Logan for your generosity in assisting us in Angela's case. We well realize the extraordinary sacrifice of your time and energy given the geographic distances involved here and the very serious nature of the case. Hopefully, your talent and energy will help bring us to a satisfactory result.

Very truly yours,

Patrick J. Berrigan
Trial Lawyer

PJB:vem

cc:    Al Willett

# LOGAN & PETERSON, PC
### FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

## WILLIAM S, LOGAN, MD
## STEPHEN E. PETERSON, MD

❏ **228 WEST 4TH STREET**
**KANSAS CITY, MISSOURI 64105**
TELEPHONE: (816) 842-2500
FAX:         (816) 842-9980

❏ **7733 FORSYTH BLVD., SUITE 1450**
**CLAYTON, MISSOURI 63105**
TELEPHONE: (314) 236-4914
FAX:         (314) 236-4990

**3600 BURLINGAME, SUITE 1A**
**TOPEKA, KANSAS 66611**

ANGELA JOHNSON

<u>Synopsis of Offense</u>:     (From newspaper accounts)

<u>Angela Johnson</u> has been indicted in aiding and abetting the murder of five people in 1993 and assisting in the solicitation to commit the murder of two government witnesses in 1996 in the U.S. District Court for the District of Iowa in Cedar Rapids.

<u>Dustin Honken</u> and his childhood friend from Britt, Iowa, <u>Timothy Cutkomp</u> became involved in the manufacture of methamphetamines in Tucson, Arizona and then Iowa.  In March 1993 Mr. Honken was arrested on federal drug charges.  Timothy Cutkomp told investigators Mr. Honken kidnapped witnesses on <u>July 25, 1993</u>.  Johnson and Honken forced <u>Gregory Nicholson</u> to make a videotape stating Honken was not involved in the drug business.  Mr. Nicholson (age 34) disappeared as did <u>Lori Duncan</u> (age 31), a woman Mr. Honken had been seeing about a week; and Ms. Duncan's two children, <u>Kandi</u> (age 8) and Amber (age 6).  Their bodies were not found.

On 11/5/93 Honken and Johnson allegedly killed another potential witness, <u>Terry DeGeus</u>.  His body also was not found.  Without key witnesses the government dropped the charges against Mr. Honken in 1994.

In April 1996 Mr. Honken again was arrested at his home in Mason City, Iowa on federal drug charges.  Honken and Johnson allegedly approach

LOG0000059

two individuals to solicit the murder of two more witness, Timothy Cutkomp and Daniel Cobeen.  On this occasion Mr. Cutkomp provided information to the government.

Mr. Honken pled guilty to two federal methamphetamine charges in June 1997.  In February 1998 he received a 27-year sentence.  At Mr. Honken's sentencing Ms. Johnson allegedly said she would get even with people involved in Honken's arrest if it took the rest of her life.

Angela Johnson was arrested on Saturday 7/29/00.  Her lease on an apartment in Klemme had expired, and she had been traveling in a recreational vehicle.  She pled not guilty in federal court in Cedar Rapids on Monday 7/31/00.

A few weeks before the disappearance of Nicholson and the Duncan's, Ms. Johnson purchased a Tec-9 pistol at a Waterloo, Iowa pawn shop. Cutkomp testified Honken asked him how deep below the ground a farm plow reached and later wanted a backhoe, "to get rid of loose ends." Honken also "wondered aloud how to build an incinerator and how hot the incinerator must be to burn a body."

Greg Nicholson, ages 38, and Terry DeGeus age 32, were customers of Mr. Honken and Mr. Cutkomp.  After dry agents found meth at Nicholson's home he agreed to cooperate in the investigation against Honken.  After reading court documents Honken discovered Nicholson had talked to investigators Honken initially indicated he would plead guilty to the 1993 charges.  Nicholson sought refuge in the home of Lori Duncan, believing Honken was looking for him.

Iowa Division of Criminal Investigation agent William Basler testified an informant said Nicholson and the Duncan's were taken to the country where they were shot one at a time.  The informant said Johnson, Honken's girlfriend, had the duty to watch the people in the car.

The murder weapon was cut into pieces, melted down and spread around the countryside.

LCG000060

Agent Basler testified Terry DeGeus died hard after being beaten and shot.

Ms. Johnson was incarcerated in the Benton County Jail in Vinton, Iowa where she met an inmate named Robert McNeese who was being prosecuted for helping operate a Cedar Rapids drug operation from federal prison. McNesse is an associate of the Lucchese organized crime family in New York where he was serving a life sentence for importing heroin from Europe to the U.S. while he was a federal inmate.  He attempted to bring East Coast mobsters to Cedar Rapids.

Johnson allegedly told McNeese the number of shots fired into the victims; where the shots entered their bodies; the clothes the victims were wearing; how tape was used to tie the victims hands, and the way socks were placed in some victims mouths before they were shot.  Much of this information is in written notes in Johnson's own handwriting according to McNeese.

Johnson's own arrest in July 2000 was based on similar confidences her boyfriend Honken shared with federal inmates who then broke the confidence.  Johnson still confided in McNeese even though she was likely aware he was a government informant in another local case, (Dr. Shultice) who also was represented by Al Willett and is Ms. Johnson's attorney as well.

Based on a map derived from information given by Johnson to McNeese, authorities excavated two sites including a grove of trees just west of the Mason City limits and in a farm field southwest of Mason City.

U.S. Attorney Stephen Rapp indicated he also intended to prosecute Honken for the murders.  The search for the bodies employed a cadaver dog, ground penetrating radar and members of a special FBI team that searched for bodies in Bosnia and Kosovo.

Four bodies were unearthed from a wooded area in Cerro Gordo County, which are believed to be the bodies of Mr. Nicholson and the Duncan's.

LOG000061

Informant Cutkomp received a reduced sentence from Judge Mark Bennett
for telling investigators that Honken claimed to have kidnapped
Nicholson and Duncan, forces them to make a videotape exonerating him
of drug activity, and then shot them to death.

Iowa Division of Criminal Investigation Agent Basler testified Johnson
posed as a saleswoman to get inside the Duncan's house on 7/25/93 to
help Honken kill Nicholson.  Duncan and her children had no knowledge
of Nicholson's drug activity, but were killed so they could never
testify.

Terry DeGeus was Johnson's boyfriend before Johnson began dating
Honken.  He was last seen on November 5, 1993 in Clear Lake, after
receiving a message from his mother, JoAnn DeGeus, that Johnson wanted
to talk to him.  Terry DeGeus' parents ED and JoAnn DeGeus live in
rural Britt, Iowa.

Honken, from Britt, Iowa, had a scholarship to study at North Iowa Area
Community College in Mason City.  By 1991 he had established a list of
customers who paid him to supply marijuana and cocaine.  In January
1992 he moved to his brothers home in Tucson with his childhood friend
Cutkomp.  They invested $7,000 in lab equipment; requested chemical
reactions at a local library, photocopied pages from Scientific
journals and within several months were producing methamphetamines
which he sold in Iowa.  Honken kept meticulous records for use in
writing a book on how to make and market the drug, and planned to
expand the business to the Internet.

As his business grew so did Honken's dependence on meth.  Federal
agents described him s one of Iowa's first methamphetamine "kingpins."
Honken and Cutkomp had been dealing for two years before Honken's April
1993 arrest.  On 7/25/93 Honken was on pretrial release.  Investigators
found a note from Duncan to her neighbor, which read, "Phyllis had to
leave on short notice, will be in touch shortly, Love Lori."

After the death of Nicholson and DeGeus, Honken and Cutkomp obtained
jobs making cheesecakes at Kraft Foods in Mason City.  They set up
another meth lab in Honken's garage using a $5,000 advance from

LOG000062

Johnson's credit card. Their new drug clientele included Kraft coworkers, Daniel Cobeen who invested in the meth lab. He became a government informant in 1995 and testified Holken said, "If I ever crossed him that he knew somebody who could knock on my door and 'boom'."

Honken and Cutkomp were again arrested when with Cobeen's help authorities raided Honken's garage. Honken was released wearing an electronic monitor on his ankle. He was only allowed to leave home to work at the Kraft factory with Cutkomp. At work Honken talked about shooting investigators and a government chemist who raided his garage. He asked others where Cobeen lived. Honken learned to trick the electronic monitor. He purchased a gun from a friend. Honken and Cutkomp staked out a warehouse in Bondurant, Iowa, where they believed authorities were storing components of their lab. Honken was planning to build a bomb before his arrest.

Cutkomp began to fear Honken would link him to the 1993 murders, went to authorities and began to wear a wire. He recorded Honken saying, "I've climbed bigger hills than that little hill. Even if I'm in prison for 15 years, whatever, when I get out he's (Cobeen) dead." Honken admitted his statement referred to murder plots, but stated he was trying to pacify Cutkomp and keep him from killing witnesses. While Honken awaited trial in the Woodbury County Jail, other inmates stated he bragged about the 1993 murders. He continued to make elaborate plans in jail to kill other witnesses, including Cutkomp, his girlfriend (Ms. Johnson) and federal investigators as well as assistant U.S. Attorney Patrick Reinhart. He offered to pay cellmates to kill Cutkomp and drew maps to Cutkomp's home in Britt. Cutkomp testified Honken compared killing to the excitement of a big football game. On tape he said, "Once you go a certain distance, there ain't no turning back."

Honken told Judge Bennett he regretted his life of crime, but denied murder was a part of it. Ms. Johnson also denied involvement in the alleged plot.

It was reported that Honken was the father of Johnson's 15-year-old daughter. (error, actually may be father of Marvea, Dob: 2/14/94.)

LOG000064

# LOGAN & PETERSON, PC

### FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

## WILLIAM S, LOGAN, MD
## STEPHEN E. PETERSON, MD

❏ **228 WEST 4TH STREET**
KANSAS CITY, MISSOURI 64105
TELEPHONE: (816) 842-2500
FAX:     (816) 842-9980

❏ **7733 FORSYTH BLVD., SUITE 1450**
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:     (314) 236-4990

**3600 BURLINGAME, SUITE 1A**
TOPEKA, KANSAS 66611

Collateral Interviews:

    A.    Wendy Jean Jacobson
         4301 Hickory Tree
         Balch Springs, Texas 75180
         1-972-286-7634
         (Dob: 1/4/62; SSN: 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)

Wendy Jacobson age 38, is the older sister of Angela Johnson. She describes their early life is filled with chaos and trauma. In approximately 1967 their parents obtained a divorce. She recalls some spousal abuse. After the divorce the children next resided for several years with a maternal grandmother, Florence Limesand and a man named Andy Jensen, both of whom are now deceased. Wendy recalled that they lived in several locations in Colorado and Iowa. She stated that both of them suffered from a "religious disorder". She remembered Mr. Jensen smashing the TV and gathering all the children's toys and burning them in front of them because they were instruments of idolness. She described that their early childhood was dominated by religion. They were "holy rollers." They were told a daily basis they were filled with demons and were frequently forcibly held on the floor while the adults rebuked the demons out of them. The one who was most resistant was Angie. This practice continued through their childhood. She recalled the children were held in a crucifix position. Both their grandparents and mother cast out the "deaf and dumb demons."

Wendy recalled that they were often hungry during their childhood. They were not allowed to eat during the day, but only one meal after sundown. While they were living in Iowa, they were awakened in the middle of the night by their mother and placed in a car with their grandparents. They were told the world was ending. They preceded to drive the highways of Iowa for three days without food or water. They were basically directed in a random pattern by their mother's "arrow."

LOG000065

This is an arrow shaped scar on one of their mother's legs, which was "showing them the way."  Wendy indicated that she and her siblings were probably hallucinating from hunger because they were "seeing things in the sky."  They eventually went to Charles City, Iowa where the children were fed by parishioners.

Wendy recalled that their mother frequently told them that they were nothing but a burden.  Wendy felt the only attention they were given was negative.  One practice was that on a daily basis Wendy, Angie and Jim would examine each other for the "mark of the beast" or the number "666."  They had been told if they were bad this mark would appear on their heads as a sign they were going to hell.  When Angie was approximately age 8 and Wendy was 10 they were taken to the "Teardrop Drive Orphanage" in Chanute, Kansas.  This was run by a fundamentalist religion.  The proprietors were Ted and Bobbie Dillow.  Wendy recalled that she and Angie were sexually abused by Ted Dillow.  Wendy said that Angie had later talked to her about this.  Wendy believed they were there for six months during which time their mother visited only once.  After both Wendy and Angie attacked Mr. Dillow because of their abuse, their mother retrieved them and returned them to Iowa.  Their attack was to protect their younger brother.  Mr. Dillow attempted to brush Jim's teeth with a hog brush.

After they returned to Iowa the physical beatings slowed.  If one did wrong, all were punished.  Wendy recalled, "frenzied beatings" usually administered by their mother with a wide belt or a plastic paddle.  Angie was the subject of the most severe beatings because she refused to cry.  She would often go to school with welts.  Angie was also afraid to go to the basement of their home because they had been taught there were demons there.  Other children and school friends were not allowed to visit their home until they listened to a Bible lesson.  On one occasion during this time their mother rebuked a Lesbian demon out of Wendy.

Their mother next started a new relationship with a man.  Wendy recalled that he was a "jerk and a control freak."  Their mother continued to tell the children that they were just in the way and a

LCG000066

problem. Wendy left home in early high school years, leaving Angie behind. Wendy stated that she was the primary caregiver for the younger sisters and that Angie was her "helper and sounding board." She recalled that during their childhood their mother would disappear for an extended period of time that were unexplained. She stated that the children, "stuck together because they knew that there was no one else they could trust." Wendy believed that they were all in their mother's way and the only thing she cared about was God. She stated that their mother used "guilt as a control mechanism."

      B.     Information from James Jeffrey Johnson
           1106 Cambridge Lane
           Shorewood, Illinois 60431
           1-815-725-1614
           SSN: 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
           (Dob: 3/2/67)

Mr. Johnson is the younger brother of Angela Johnson. He is currently married to Shelly with whom he has one child Thornton age 4. He has no criminal or mental health history. He graduated from high school in 1986, and the University of Iowa in 1991. Mr. Johnson was about three years old when his mother Pearl Jean Johnson and his father James Jeffrey Johnson were divorced in 1967. He described that Wendy was the primary care giver during his childhood due to his mother's frequent absences and erratic behavior. He described Angie was the fighter in the family, and was always one to take discipline to protect her younger sisters. He has vivid memories of Florence Limesand and Andy Jensen, as well as his mother physically restraining both Wendy and Angie in order to cast out demons from them. At age 10 he recalled that while they were living in Mason City, he and his younger sister, Holly went to the home of a woman who would invite children to her house for a small Sunday School sermon. He and Holly were so hungry that they sneaked away from their home and went to this lady's house. After they received candy, he kept Holly's candy and then ate his own because he knew if Holly ate the candy she would get in trouble. When they arrived home Jim tried to protect his sister Holly by showing a piece of candy to his mother, but all of the children were beaten. Jim

LOG000067

recalled they were beaten at least twice a week, and it was always group punishment. The family moved frequently and never seemed to put down roots. They moved because of his mother's constant fear of being exposed as a "known nut." Mr. Johnson described that during his childhood he was frightened, deprived, optionless and hungry. He broke down and wept for several minutes while talking about his childhood. Like his sister Wendy, he recalled the world-ending incident, being taken to the Chanute Kansas Orphanage, and the frequent beatings of Angie raising welts and bruises. While at the Kansas Orphanage Mr. Dillow forced him to grab an electrified cattle fence to see if it was on. He also recalled their mother rebuking death and dumb demons, and their terror that there were demons living in their basement. He recalled his mother "speaking in tongues." He described that he, like his sister Angie, was a follower. He believed that he was redeemed by his marriage to Shelly. He believed that he and his siblings were programmed as children through religious fear, as well as psychological and physical abuse to be thoughtlessly obedient. He stated, "our childhood was a "state of siege." While describing his childhood, he broke down and wept on several occasions.

LOG000068

# LOGAN & PETERSON, PC
### FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

## WILLIAM S, LOGAN, MD
## STEPHEN E. PETERSON, MD

❏ **228 WEST 4TH STREET**
**KANSAS CITY, MISSOURI 64105**
**TELEPHONE: (816) 842-2500**
**FAX:         (816) 842-9980**

❏ **7733 FORSYTH BLVD., SUITE 1450**
**CLAYTON, MISSOURI 63105**
**TELEPHONE: (314) 236-4914**
**FAX:           (314) 236-4990**

**3600 BURLINGAME, SUITE 1A**
**TOPEKA, KANSAS 66611**

Angela Johnson
DOB: 1/17/64
SSN:  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

Mother:

> Jeanie Johnson
> Mason City, IA
> No Phone
> Can be contacted through friend, Carol Mann at 319-842-2295. Her Aunt
> Florence and maternal grandmother Jensen liver here.

Father/stepmother:

> Jim Johnson and Pam (Cookie)
> Chippewa Falls, Wisconsin
> 715-723-0836

Siblings:

1.  Wendy Kinsman  (Wendy Jean Jacobson)
    4301 Hickory Tree
    Balch Springs, TX
    972-286-1335 or 972-286-7634
    (Dob: 1/4/62)

2.  Angela

3.  Jamie Hays
    Fairbault, MN

4.  Jim Johnson (James Jeffrey Johnson)
    (Dob: 3/2/67)
    1106 Cambridge Lane
    Shorewood, IL 60421 (near Chicago)
    Phone: 815-725-1614

5. Holly Dirksen
Klemme, IA
641-587-7294

Friends:

Rodney Nicholson
Cell phone: 812-449-9169

Dave Nieman
Lives near Forrest City, IA. Has known since 5th grade
641-565-3489

Daughters:

Alyssa (Dob: 8/7/83)
Age 17. Was living with Aunt Wendy. Now has own apartment in Iowa City, but no phone.

Marva Jane Honken (Dob: 2/14/94)
(Living with sister Holly)

Paternal Grandmother:

Winne Sund
LaCrosse, WI
715-835-0760

Documents –

1. Birth Records, Burlington, Wisconsin
2. School records-
   a. Pueblo Colorado – kindergarten
   b. Mason City, Iowa – 1st grade
   c. Thornton, IA – 2nd grade
   d. Chanute, KS – Teardrop Drive Orphanage run by Ted and Bobbi Dillow
   e. Klemmi, IA – 3rd and 4th grades
   f. Forrest City, IA – 5th through 9th grades

3. Employment Records –
   a. Albert Lea Refrigerating Factory, age 17
   b. Clear Lake, Iowa – Pizza Hut (18)

LOG000070

     c. Forrest City – Road construction
     d. Clear Lake – Perkins Restaurant
     e. Forrest City – "The Bullet" bar
     f. Leland, IA – social assistant records
     g. Madison, WI – Country Kitchen
     h. Clear Lake, IA – Country Kitchen
     i. Mason City, IA – Country Club
     j. Urbandale – Country Club
     k. Forrest City, IA – North Beach

4. <u>Medical Records</u> –
     a. Forrest City Community Hospital – tonsillectomy in childhood.
     b. Iowa City Hospital birth records with Alyssa.
     c. Mason City Hospital birth records, Marvea dob: 2/14/94
     d. Counselor n Algona, IA who saw her with Terry DeGeus.
     e. Psychiatric records from psychiatrist in Mason City, IA.
     f. Jail psychiatric records, Vinton, Waterloo, Cedar Rapids, IA.

5. <u>Other individuals</u> –
     a. Carol Mann- mother's friend
     b. Elsa Dirks – Klemme, IA mother's friend
     c. Wayne Hopp – paternal uncle
     d. Heidi Hopp – 1st cousin on father's side, Wayne's daughter
     e. Steve Hugo – 1st husband
     f. Arlin Johnson – 2nd husband, knows of abuse by T. DeGeus
     g. Kirby Thompson – boyfriend, co-owner of "The Bullet"
     h. Terry Olgen – witnessed temper of Terry DeGeus
     i. Doug Wood – Mason City Chief of Police – witnessed quarrel
     j. Dave Nieman – witness to abuse incident
     k. Rodney Nicholson – friend, knows of abuse by Terry DeGeus
     l. Marti and Christi Cole
     m. Scott Galholz, Rockwell, IA
     n. Verline Vanderpool
     o. Rick Summers

6. <u>Additional Documents</u> –
     a. Mason City Police Department domestic disturbance and 911 calls concerning Terry DeGeus.
     b. Allysa's school records.

LOG000071

# TERPSTRA, EPPING & WILLETT
## AN ASSOCIATION OF SOLE PRACTITIONERS

ATTORNEYS AT LAW
HIGLEY BUILDING
118 THIRD AVENUE SE, SUITE 500
CEDAR RAPIDS, IOWA  52401-1424

HARRY R. TERPSTRA 1929-1998
H. RAYMOND TERPSTRA II
GREGORY J. EPPING
ALFRED E. WILLETT
JOHN D. HEDGECOTH
TROY L. SPRINGSTON

TELEPHONE
(319) 364-2467
FAX
(319) 364-2460

January 16, 2001

## VIA TELEFAX AND U.S. MAIL

William S. Logan, M.D.
Logan & Peterson P.C.
911 Main, Suite. 2330
Kansas City, MO  64105-2009

**Re:   U.S. v. Angela Johnson**

Dear Dr.:

I am in receipt of the fax that you sent me this afternoon at approximately 12:45 p.m. advising me that you would not be able to honor your appointment this week with Angela Johnson based upon the fact that your participation in another trial has caused you to reschedule your appointment.

It is my understanding from your fax that you will now be able to come to Cedar Rapids, Iowa on January 29, 2001 at 1:00 p.m. to visit Angela Johnson and you have only set aside one afternoon for that purpose.

As any trial lawyer would, I understand that one's participation in a trial will cause a person to have to reschedule appointments. However, I am disappointed and I am sure Angela is disappointed that you have to delay your trip. The Linn County Jail refuses to take my client off of suicide watch until a psychiatrist advises them that this is appropriate. Needless to say, Angela is getting tired of being on suicide watch.

More importantly, a very important pretrial hearing in this case will be held on March 15 and March 16, 2001 in this case. This deals with the issue of my client making alleged admissions to a jailhouse snitch which were then relayed to law enforcement agents. I wanted to make sure that you had plenty

LOG000072

of time to see Angela and plenty of time to get a report to us before that Messiah hearing.

It was also my previous understanding that you had set aside the afternoon of the following day to see Angela based upon the many death penalty issues that my co-counsel Pat Berrigan is concerned about. I would request that if you cannot come to Cedar Rapids before January 29, 2001, that you adjust your schedule so that you see Angela on Monday afternoon of January 29th and a portion of the day on Tuesday, January 30, 2001 if necessary, before you proceed to Burlington to see my other client.

As far as I am concerned, I will certainly commit my calendar to the dates of January 29 through January 31, 2001.

However, I would urge you that if your schedule allows you to be here earlier than those dates, that you consider making the trip to Cedar Rapids, Iowa before January 29, 2001.

As always, I appreciate your understanding of the timelines that we face in these situations and the needs of my own clients.

Respectfully,

TERPSTRA, EPPING & WILLETT

Alfred E. Willett

AEW:ndl

CC:  Angela Johnson
     Pat Berrigan, Esq.
     Thomas Frerichs, Esq.
     Ray Cornell

LOG000073

INTERVIEW NOTES:

ANGELA JOHNSON

Dob:  1/17/64
Age:  37
SSN:  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


Dates of Interviews:

       1/19/01     2.25 hours
       6/21/01     3.00 hours

**SOCIAL HISTORY:**

A.    Early Childhood History


Ms. Johnson was born in Burlington, Wisconsin.  She was a breech birth.
She did not require oxygen.  Her mother also was a breech birth, as was
her daughter, Allysa.


Ms. Johnson's early childhood development was normal.  She had the
usual childhood illnesses.  She denied any head injuries or unusual
childhood habits.  Her mother has told her she was an outgoing child.


Ms. Johnson's parents divorced when she was four years old.  She
attributed this to her mother's "religious disorder."  She described
that her mother was a Pentecostal who was in love with God.  Her mother
would rebuke Satan.  Her mother would beat her back with a belt.  She
received more beatings than her siblings as she would take the blame
for anything.  Her mother would have the children line up for beatings.
Her mother would beat her more because she wouldn't cry.  She described
they were beaten for lying, tussling, breaking things or complaining.

LOG0000074

Her father divorced her mother.  Sometimes he also was religious, but not as much so as her mother.  After the divorce she would spend two weeks during the summer with her father in Wisconsin.

Ms. Johnson's father worked for Uniroyal.  Her mother did not work but read the Bible a lot and did Bible studies.  Her mother would not allow them to watch TV or listen to the radio.  Ms. Johnson believed her peers thought they were the "freaks of the town."  Her dresses came from Goodwill.  Later she saved money from babysitting jobs to buy her own clothes.  Her mother continued to beat her until she was in the fifth grade.

As a child Ms. Johnson lived in Mason City, Iowa.  Her mother then moved the family to Colorado near Pueblo for about a year.  Ms. Johnson's maternal grandfather lived in Pueblo.  She did not know him well.  She described her maternal grandmother Jensen as a "a real fruit cake."  Her grandmother was odd and very Pentecostal.  She believed she was a prophetess.  Her mother and grandmother would conduct healing services.  Her mother could not make a living.  Her mother would tell them they were poor, but were "right with the Lord."  Her mother would move around because of religious messages from God.

Ms. Johnson has few memories from the time she lived in Mason City as she had tried to "block out" her childhood.

She described that school was hard for her because of the difficulties at home.  She often didn't want to go home because of the "off the wall" things her mother did.  Her mother would tell them they were going to hell and to pray for forgiveness.

After they moved back to Iowa her grandparents moved in with them.  She recalled on one occasion they put a dove in a cage.  They did an exorcism on her for three days to drive all her demons into the dove.  They then let the dove go and threw away all of the children's toys.

Although her siblings also thought their mother was weird, they did not talk about it as they had an understanding.  They were dependent on

their mother for whatever they had.   Her mother took Ms. Johnson
several places to have preachers pray for her.   Ms. Johnson never
talked at school, and never talked about her home situation to anybody.

Ms. Johnson's siblings by her father are Wendy, Jamie, and Jim.   She
was the second oldest.   She has a younger sister by a different father
named Holly.

After staying in Mason City, Iowa with her grandparents for a year,
they moved to Thornton, Iowa.   It was at this point her mother stopped
letting them watch TV.   Her mother began seeing Bob Claus, her sister
Holly's father.   He was married to someone else and died in a motor
vehicle accident before Holly was born.

Her mother next took all the children to an orphanage in Kansas, run by
the Dillows.   Ms. Johnson described the orphanage was a terrible place
where there was a lot of abuse.   Her older sister Wendy was sexually
abused and has always been promiscuous as an adult.   The owner Mr. Ted
Dillow had a number of older men around.   Mr. Dillow once tried to
touch her sexually.   She told him if he tried it again she would come
back to the orphanage later and kill him.   She tried to protect her
little sister and brother.   She did not know what happened to her
mother.

She recalled Bobbie Dillow took them to a barn to let them play with
little rabbits.   He then took the rabbits by the ears, laid them on a
block of wood and smashed the rabbit's heads with a sledge hammer.   He
would then cut their middles and the rabbit's intestines would pour
out.   She recalled they would cry, and she later had nightmares about
this.   Bobbie and Ted would also take them to watch them cut the heads
off chickens, and have the headless chickens chase them around.   The
Dillow's also were physically abusive and used a lot of restraints on
the children or would confine them to a small area.

They were surprised when their mother returned with her friend Carol
Mann and took them back home to Thorton, Iowa.   Ms. Johnson believes

the orphanage was church affiliated. Carol Mann also was very religious.

Ms. Johnson believes her mother had a nervous breakdown after Bob Claus' death. While she was at the Dillow's she attended a school in town.

The family next moved to Klemme, Iowa where her mother's friend Elsa Dirks lived. Ms. Dirks was not quite as "fanatical" about religion and her mother mellowed some. Ms. Johnson recalled they were very poor and lived on welfare. They stayed in Klemme for almost two years. She attended the third and fourth grades there and continued to do poorly in school.

The family then moved to Forrest City, Iowa the summer before her fifth grade year. She did not know the reason for the move. Ms. Johnson did not adjust well to the new school. She decided to quit being a victim. She would not let anyone pick on her. Instead she beat them up and would not back down. She made straight Fs. She did not recall being referred for any educational or mental health evaluation, or being placed in any special classes. She didn't care about school and would just sit in class. She was very athletic and loved gym. She felt like an outcast. She was never in Girl Scouts. Her mother would not let them celebrate the usual holidays like Halloween or Thanksgiving. They had Christmas, but there was no Santa Claus.

Ms. Johnson quit school Forrest City in the ninth grade. Her mother didn't want her to quit but she had no interest in school. She began working in a restaurant run by her mother and a friend when she was 14 years old. Her mother was Laverne while Shirley was her girlfriend Maxine. Her situation improved. She recalled they had a TV by then.

Ms. Johnson described her mother is no longer as preoccupied with religion and is much mellower.

Ms. Johnson's parents were living in Wabash, Wisconsin when they divorced.  After the divorce her mother moved to Mason City.  Her father was not in her life much after the divorce.

Her paternal grandfather Johnson died before she was born.  Her paternal grandmother Winnie Sund lives in LaCrosse, Wisconsin.  She has a paternal Uncle Wayne Hopp who is married to Jane and lives in EauClair, Wisconsin.  He has a daughter Heidi, who was recently married, and a son Christopher, who was killed in a motor vehicle accident when he was age 16 or 17 years old.  Both Heidi and Christopher are younger than Ms. Johnson.  Her paternal Aunt Winnie Baker has been married to six different men.  Ms. Johnson was not close to her.  Ms. Johnson is aware her father drinks alcohol, but is not aware if he has any mental health problems.

<u>ADOLESCENT AND ADULT HISTORY</u>:

Mrs. Johnson was involved in the Pentecostal Church throughout her youth, but did not continue this in her adolescence.  She continued to be disturbed about her previous exorcism and the focus on being possessed.  The church also did nothing for fun.

During her adolescence she smoked a lot of pot with her boyfriend Steve Hugo.  She married Mr. Hugo at age 16 to get away from home.  In contrast to her own family, his family was nice to her.  They were both too young, however.  They were only married nine months, before they decided to divorce.  They had no children.

Ms. Johnson next moved back home.  She then obtained her own apartment in Forrest City.

Throughout her childhood and adolescence, Ms. Johnson was generally healthy.  She denied any history of mental health treatment.  During her early adolescence, she began drinking in bars.  In addition to marijuana she experimented with acid and took speed in the form of White Crosses.  She described that she was happy on acid.  Her only hallucinations were blurred lights, which she called "trailers."  In

LOG000078

contrast white crosses made her feel shaky and she didn't like them. She also began smoking cigarettes, which was actually her favorite.

Ms. Johnson was very attached to her youngest sister Holly. She always took care of Holly, which she stated was her main priority. She noted that her mother never dated. She thought by her actions her mother did not like men by this point.

Ms. Johnson moved to Albert Lee, Minnesota at age 17. She worked at a refrigerator factory, making approximately $8.00 an hour. She continued this job for approximately 8 to 9 months until she was laid off. She would use some of her salary to give gifts to her younger sister, Holly.

Ms. Johnson next moved to Clear Lake, Iowa. There she obtained her own apartment and worked at a Pizza Hut for about a year. She did not engage in any significant dating.

Ms. Johnson next moved back in with her mother who was then living in Forrest City. She worked as a flag girl for a road construction company, a job she loved.

Then Mrs. Johnson's mother wanted to move to Colorado. She took her mother to live with her grandfather in Commerce City, Colorado, a suburb of Denver.

It was at this time she discovered she was pregnant with her first daughter, Alyssa. Alyssa's father is Arlin Johnson or AJ. She and AJ married on February 4, 1983. Alyssa was a breech birth, but was otherwise healthy. Ms. Johnson denied any post-partum depression.

AJ worked at Winnebago. Ms. Johnson described that they had a good relationship. She stated that AJ was a nice guy. He smoked marijuana heavily, however. She reduced her marijuana usage during her pregnancy with her daughter. She stated that she and AJ had a good relationship. She became somewhat tearful when she thought back on this. They were married for three years. They divorced because she had an affair. She

felt that AJ, a workaholic, was boring and selfish.   While he was a
good provider, she felt he mainly did his own thing.   Since she was
pregnant when they married, she wondered if he truly loved her.

Ms. Johnson had an affair with Kerby Thompson.   Kerby worked in road
construction.   They never married but just partied together.   Kerby
introduced her to cocaine.   During this time Ms. Johnson worked at a
Perkins Restaurant in Clear Lake, Iowa.   Kerby continued to work in
road construction and lived in Forrest City.   She continued to live in
Clear Lake but eventually moved to Forrest City was Alyssa was three
years old.   There she began dancing as a stripper about one weekend a
month.   She would earn as much as $300 to $500.   She engaged in this
activity as several of her girlfriends were doing this and she made a
lot of money.   She would go to dances in Des Moines and Austin,
Minnesota.   She described that she was a good, clean, dancer who never
got off stage.   She did not drink while she did this.   Still she began
using crank (methamphetamine) to stay awake.   Her dancing only involved
working several days a month.   She loved doing it.

After she moved to Forrest City, she and Kerby leased a bar called "The
Bullet".   It was open Wednesday through Saturday, from 3:00 pm until
2:00 am.   Her mother had returned from Colorado by this time and cared
for Alyssa.   Alyssa was doing well at school.   Ms. Johnson attributed
this to the fact that she showed Alyssa a lot of love.

After a couple of brief relationships with boyfriends, Ms. Johnson met
Terry DeGeus around 1989.   She described that Terry was the love of her
life for a long time.   He was married to Wendy, with whom he had a
daughter Ashley who was the same age as Alyssa.   Terry wanted to leave
his wife and get a place with her.

Ms. Johnson moved to Leland, just outside of Forrest City.   She quit
working at the Bullet and lived off of her savings, plus government
assistance.   Terry worked construction.   Ms. Johnson described that
Terry was physically abusive and "beat me nearly to death."   He
constantly suspected her of flirting with other men which she denied.
She stated instead she was very devoted to him.   She stated that she

still doesn't know why.  Although he never offered to marry her, he
wanted to know where she was all the time.  He was even jealous of her
relationship with other women.  After they had been together for nine
months Terry punched her in the face, she fell to the ground.  She told
him to leave and never come back, but he never left.  She described
that the beatings became a regular thing.  She wouldn't let him live
with her.  She believed Terry thought he had a right to hit her in the
face.  They broke up several times, but Terry was persuasive and she
loved him.  She described that he was good looking and made her feel
good when he was not making her feel bad.  After the first beating she
was bruised badly.  She did not recall if she received any treatment
for her jaw.  She went to her girlfriend's house and then to her
sister's condo.  AJ had Alyssa.  A friend Terry "Teo" Olgen, asked to
borrow her Monte Carlo.  As they were riding in the Monte Carlo, they
passed Terry who flew into a rage.  She tried to tell him they were
just friends, but he punched her in the face.  She believed he may have
knocked her out. The next thing she knew she was in a ditch.  She
recalled fading in and out of consciousness.  The next morning when
they were in the car together, he ripped the shirt off of her.

She believed that she may have had a concussion.  She wanted to get
help but was afraid he would kill her.  Next the Chief of Police, Doug
Wood, and another policeman pulled up by the side of their car.  They
couldn't see her, but the chief asked if there was a problem.  Terry
said it was just a lover's quarrel.  The police chief walked back to
his car and left her there, as he drove away.  When the police left she
began crying.  Ms. Johnson began to become tearful as she described
that after the police left that Terry beat her more.  She was scared.
She feared that he would kill her.  She did not seek medical help.
Terry next took her to a store, as she had to get something.  When she
went into the convenience store she had a bloody nose.  She told the
girl at the convenience store to call "911".  She believed that Terry
knew what she was doing.  At that point her friend Dave Nieman arrived
at the store.  Dave saw her.  She said, "don't let Terry take me Dave."
She then saw AJ coming down the road.  They flagged AJ down.  He took
her to his house where she hid from Terry.  Although she was no longer
going with AJ they were still friends.

LOG000081

Afterwards she had nightmares of Terry beating her. He abused her in many different ways. She stated he also stalked her.

Ms. Johnson borrowed money from AJ and ran to Madison, Wisconsin. She did ever seek treatment in the hospital. She worked at a Country Kitchen in Madison, Wisconsin and saved her money. Terry found out where she had gone and followed her. He begged her to forgive him. Ms. Johnson decided to reconcile with him, as she stated, "there was only one or two times that he had beaten her that bad." She came home to Leland, Iowa. She then moved to Forrest City. She stated during this time there were quite a few moves. She obtained a job at the Country Kitchen in Clear Lake, Iowa. She moved to Ventura, near Clear Lake. Terry DeGeus went to Florida with his parents.

Ms. Johnson and Terry went together until he as missing near the end of 1993. She stated that Terry DeGeus' body was recently found in a field. She stated that she did not know how she felt about him. She stated, "I loved him, plus he made it difficult." He would follow her and be there on nights when she would go out. She never filed an Order of Protective Custody, because she was afraid of the police and what Terry would do to her if she did so. He was arrested one time when she called the police so she could get out of town.

Ms. Johnson next met a boyfriend named Rodney while Terry was still in the "socking mode". She described that he was neat and cute. Rodney came in while she was working at the Country Kitchen one day and gave her his phone number. By this time Terry was seeing another girl. Rodney then called her. They were together for 2 ½ months. Rodney was married. When he left she hated to see him go. She was brokenhearted that he was married. She and Rodney were in a bar when Terry came in. She described it was not a good scene. The bouncers had to intervene and asked them to leave. She went to her home but Terry showed up. She had to call the police because Rodney wanted to fight him. After Rodney was out of the picture, Terry was even worse. He told her he found someone else, but he was still possessive of her. Gradually he came around less.

LCG000082

Ms. Johnson next went with Marty Cole. She also met him while working at the Country Kitchen. He was separated from his wife. She saw him secretly but still had thoughts about Rodney. She then found out that Marty was not separated from his wife. She got together with his wife Christi Cole. Marty then left and went to California. After this she didn't see anyone for a while.

Ms. Johnson met Dustin Honken through Brian and Terry DeGeus. She believed that Alyssa was nine years old. This would have been in 1992. Dustin knew that she was seeing Terry DeGeus, as she couldn't keep Terry a secret. Dustin traveled between Arizona, Mason City, and Clear Lake. He told her had a van company in Tucson, Arizona. He would come back to Iowa one or two times a month. Dustin was involved with Crank. Terry became involved with Dustin. She began to use crank because she was tired. She stated it made work a breeze and she didn't need as much sleep.

Dustin talked about moving her to Arizona to get away from Terry. A short time later in the spring of 1993, she became pregnant. She was not happy about this and considered having an abortion. Dustin did not believe there was any way the child could be his because she was still seeing Terry. Dustin still wanted her to have the baby. Then she found out from Dustin that he was seeing another woman named Kathy in Mason City.

Dustin next was arrested at the home of Gregory Nicholson and charged with the manufacture of methamphetamines. Dustin Honken was then released on bond, after a short time. He told her that Kathy was stalking him and he did not want to continue a relationship with her. Dustin then moved in with her. Kathy would call him 24 hours a day. She hated Kathy, but didn't like Dustin either. She was scared that Dustin was not going to leave her, but afraid if he did. She soon discovered that Dustin was controlling and made him move out. Kathy continued to be a problem. She described that Kathy was psychotic and obsessed. Dustin was so controlling that she couldn't even call her mom to tell her about her pregnancy with Marvea.

LOG000083

Terry DeGeus had been missing since November 1993. Her daughter Marvea was born on February 14, 1994 at Mason City Hospital. There were no complications. By this point she did not consider continuing a relationship with Dustin as she said this was "unthinkable." She drove herself to the hospital. Dustin wanted to come to pick her up but Alyssa called to tell him to "just drop off the car." Therefore she had to drive herself to the hospital. She did not want to continue seeing Dustin as she stated that she had "some pride." Ms. Johnson stated that Dustin told her that her girlfriend Christie, was hitting on him after she made him move out. She continued that she always felt like she was number 2. She stated she never was in love with him. She ended the relationship with Dustin shortly after Marvea's first birthday. She got her own place in Mason City. He tried to convince her to get back together.

By this time she had met another man through her work named Scott Galhotz, from Rockwell, Iowa. She met him through a girl at work. At this point she was working at the Country Club in Mason City, where she was a waitress. She introduced Scott to her friend Christie Cole, but he wanted to go with her. He was a farmer. They went out a few times. After they went out a few times Chris decided that she would like to date him as well. She believes that they are now married.

Ms. Johnson next moved to Des Moines. She recalled Alyssa was in the 7th grade. She moved because her boss Verline Vanderpool at the Country Club moved to the Urbandale Country Club. Ms. Johnston had been staying with a friend at Clear Lake when Verline called her to help her. Then Verline offered to move her to Des Moines and offer her $2,000 to finance the move. Ms. Johnson was to be her assistant.

Then the FBI, DCI, and DEA began to harass Ms. Johnson. Dustin was in jail again because of the missing people. This included Terry DeGeus. Terry had last told his parents he was going to meet her. Ms. Johnson stated that she did not know the other four people, but they thought she had knowledge.

LOGG000084

Ms. Johnson believes that Dustin Honken was the father of her daughter Marvea. Therefore she continued to have some contact with Mr. Honken, as she would take Marvea to see her father in Sioux City frequently.

Ms. Johnson next began dating Rick Summers. She then moved to Rick's house. By this time Alyssa was 14 and in the 9th grade in high school.

Ms. Johnson moved back to Forrest City, Iowa, after Dustin was again arrested on methamphetamine charges. By this time she was snorting just a line of methamphetamine approximately two to three times a week. She was not selling drugs. She began working at North Beach, where there was an old waterfront, where she had briefly worked before she went to Urbandale. She moved upstairs from where she was working at North Beach. She remained there until she was arrested on July 29, 2000. At the time of her arrest, she was planning to move to Colorado and had just bought a motor home. She had only been out in twice. She had decided to relocate to Manitou Springs, but was arrested the next day.

Ms. Johnson recalled that she saw a psychiatrist before she moved to Urbandale. The psychiatrist was located in Mason City. He prescribed various medications for her, including the antidepressants Prozac, Zoloft and Paxil. She would often call him for refills. She believed that Prozac caused her to have an anxiety reaction. She described that she could not breathe, hyperventilated, had a rapid heart rate, became dizzy, started sweating and thought she would die. She denied any feelings of nausea or vomiting. She does not recall the doses of Zoloft and Paxil she took. She later was placed on Celexa, another antidepressant. She was additionally given the antidepressant Serzone when was incarcerated in Benton County.

Currently her daughter Alyssa is working for Kentucky Fried Chicken. She is getting her GED. Alyssa does not have a boyfriend. Ms. Johnson misses her. Ms. Johnson also misses her daughter Marvea, who she calls approximately twice a week. She would call more but it is $15.00 a call. Marvea is staying with her sister, Holly in Klemme, Iowa, while

LOG000085

Alyssa is in Mason City.  She became depressed and tearful about the fact that she had not touched Marvea for nearly a year.

Ms. Johnson denies any previous arrests or convictions.

Ms. Johnson never obtained her GED after leaving school.

Ms. Johnson has been hospitalized only for the delivery of her two daughters.  Alyssa was born in Iowa City, while Marvea was born in Mason City, Iowa.  Her only other hospitalization was to have a tonsillectomy in childhood.  She believes that most of her medical treatment in childhood would have been through the Forrest City Community Hospital.

**RECENT MENTAL STATE:**

Ms. Johnson knows that she is charged with aiding and abetting in the murder of Gregory Nicholson, Lori Duncan, and her two daughters, Kandi and Amber, as well as the murder of Terry DeGeus.  In all five cases, she is accused of aiding and abetting Dustin Honken.  She is also aware she was later charged with conspiracy to murder two other government witnesses with Dustin Honken in 1996.

Since her arrest she has struggled with depression and suicidal thoughts.  At times she has thought that life in prison without the ability to see her daughters would be unfair, and she has thought she might want to instead receive the death penalty.

After the discovery from her sister that Mr. McNeese had told federal investigators where to locate the bodies, Ms. Johnson became suicidal.  She had a serious suicide attempt by hanging, and was found in an unconscious state on October 13, 2000.  She has been on suicide precaution since that time.  Ms. Johnson had suicidal thoughts several weeks prior to this attempt and had written "goodbye letters" to those close to her.  The suicide attempt was prompted by her receiving news that indicated she could be separated from her daughters indefinitely.

Ms. Johnson was initially examined by this examiner on January 29, 2000. In the preceding several months her level of depression improved. Several factors contributed to this including contact with her daughters, support from her sister Holly, the passage of time, and various antidepressant medications. Ms. Johnson was prescribed antidepressant medication by Ali Saftar, MD. Initially she received Amitriptyline (Elavil) which caused some concern about weight gain. Recently the psychiatric nurse changed her prescription to Trazodone. Her sleep improved and she resolved that suicide would send her daughters the wrong message about how to face problems. She still recognized the seriousness of her legal situation, but had a good relationship with her attorney. She was invested in remaining mentally stable for herself and for her daughters, so she could confidently face her legal situation. She intends to be compliant with treatment. She denied suicidal thoughts or intent.

Ms. Johnson denied any prior suicide attempts. Since her transfer to the jail in Cedar Rapids there have been no further attempts. She was incarcerated in Waterloo, Iowa when the suicide attempt occurred. She learned they had to cut her down to revive her. She does not remember trying to hang herself. After talking to her sister on the phone she felt like she was covered with liquid and seemed numb. She recalled a pressure in her chest. She was talking to her sister about the bodies. Her sister told her they had been found. She described that Mr. McNeese had told her she would go to prison for the rest of her life. He had caused her to doubt the competence of her attorneys. He told her that they were only interested in seeing her in a maximum security prison where she would only see her kids in the future through a glass wall. She described that Mr. McNeese made her feel desperate. She experienced acute despondency when she talked to her sister, Holly Dirksen, which precipitated her suicide attempt.

At the time her daughter Alyssa (Dob: 8/7/83) was staying with her sister Wendy Kinsman in Balch Springs, Texas. She described that she and Wendy never got along very well. Wendy had put blocks on the phone so she could not call. This caused her to feel angry and helpless. One source of support has been Rodney Nicholson who owns Tower Company,

LCG000087

a firm which builds radio towers.  Mr. Nicholson now is in Texas, near where he daughter lived and was able to talk to her.  Mr. Nicholson is married but has had a relationship periodically with Ms. Johnson.  Ms. Johnson's other daughter, Marvea Jane Honken was born on February 14, 1994.  Marvea is living with her sister Holly.  She was able to maintain telephone contact with her.  Ms. Johnson believes that Marvea's father was Dustin Honken.

Ms. Johnson admitted that she had suicidal thoughts prior to her attempt.  She kept a sheet when she did the laundry.  She wrote goodbye letters to Alyssa, Holly, and Rodney in case she did act on her suicidal impulses.

At the time she recalled that she was kept in a maximum-security unit in a single cell where she had no TV or property except a tablet with a pen and a book to read.  At the end of September she was moved out of the Benton County Jail and placed in a jail in Waterloo, Iowa where the suicide attempt occurred on October 13, 2000.

In the Benton County Jail she began to notice difficulty sleeping. There was a bright light above her bed for 24-hours a day.  She was hungry and weepy.  She kept asking to see a doctor.  She tried to talk to her attorney on the phone to get someone to help her.  She was seen by a doctor who prescribed Serzone 150 mg a day.  She only took this medication for a couple of weeks while she was in Benton County.  More recently she has been taking Celexa 5 mg twice a day as well as Trazodone.  She believes that Trazodone causes her stomach to be upset and she has difficulty eating.

In the Waterloo jail she was kept in a glass room.  She still did not see a doctor.  She slept much of the time.  In the hanging attempt she bit off part of her tongue.

Ms. Johnson was transferred to the jail in Cedar Rapids on October 16, 2000.  Initially she was not given medication.  She was then prescribed Amytriptiline.  The Elavil made her gain 20 pounds, so she began to spit the medicine out.  She spit the medicine out in the toilet and

LOG000088

denied storing it.  She then saw a psychiatric nurse who switched her medication to Trazodone.  While was still weepy she was not as much so as before.  She is still struggling to come to grips with the fact that the prosecution has filed for the Death Penalty.  She knows that if she receives the death penalty she would be transferred to a death penalty unit located at a prison in Terre Haute, Indiana.  Her current psychiatrist is Dr. Ali Saftar and has talked about taking her off medication.  She has not received any psychotherapy.  She saw the psychiatric nurse once when she asked to get off suicide precautions.

Ms. Johnson was aware that her current attorneys are Al Willett and Pat Berrigan.  She has also seen Tom Ferricks.  She stated she believes Mr. Ferricks saved her life because he came to see her in Waterloo to check on her because she had been refusing his visits.  She is also aware that there is an investigator on the case named Ray Cornell, as well as a second investigator she has not seen named Mary Goody.

Currently she exercises twice a day and receives recreation four times a week.  She believes at the time of her suicide attempt she was not thinking straight because of her attachment to her children.  She now indicates that she does not want to kill herself because of her attachment to her children.  If she again felt suicidal she believes that she would write to Dr. Saftar or talk to her attorney Mr. Willette.

One of her sources of support is a friend who lives near Forrest City named Dave Nieman.

Ms. Johnson has been struggling with some family conflict.  She began crying when she talked about the fact her sister Wendy had convinced her brother Jim that she only cared about herself.  She believed that Wendy was trying to undermine her relationship with her daughter Alyssa.  Alyssa went to Texas to stay with Wendy shortly before Thanksgiving.  Alyssa only needed several credits to graduate from high school, but wanted to save money to buy a car.  Her relationship traditionally has been strained with Wendy, who she has not talked to in several years.  She believed that Wendy has always been jealous of

LOG000089

# LOGAN & PETERSON, PC

FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

### WILLIAM S, LOGAN, MD
### STEPHEN E. PETERSON, MD

❑ 228 WEST 4TH STREET
KANSAS CITY, MISSOURI 64105
TELEPHONE: (816) 842-2500
FAX:     (816) 842-9980

❑ 7733 FORSYTH BLVD., SUITE 1450
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:     (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

## MEMORANDUM

**TO:**     Captain Brian Gardner — *mailed 1-22-01*
     53 3rd Avenue Bridge
     Linn County Jail
     Cedar Rapids, Iowa 52401

**c/o**     Alfred E. Willett
     Fax: 319-364-2460

**FAXED**
**JAN 2 9 2000** *~g*
*(2001)*

**FROM:**     William S. Logan, MD

**DATE:**     January 22, 2001

**SUBJECT:**     ANGELA JOHNSON-SUICIDE PRECAUTIONS

Dear Captain Gardner:

I met with Angela Johnson for 2.5 hours at the Linn County Jail on Friday, January 19, 2001 at the request of her attorney, Alfred Willett. One purpose of the examination was to evaluate Ms. Johnson's suicide risk. Mr. Willett suggested I talk to Sgt. Lynn Johnson following my meeting with Angela Johnson to provide information concerning the need for ongoing suicide precautions. Sgt. Johnson suggested I write to you concerning this issue.

Ms. Johnson had a serious suicide attempt by hanging and was found in an unconscious state on October 13, 2000. She has been on suicide precaution since that time. Ms. Johnson had suicidal thoughts several weeks prior to her attempt and had written "goodbye letters" to those close to her. The suicide attempt was prompted by her receiving news that indicated she could be separated from her daughter's indefinitely.

LOG000090

To: Captain Brian Gardner
Re: Angela Johnson
Page 2


Over the last several months, Ms. Johnson's level of depression has improved. Several factors have contributed to this improvement including contact with her daughters, support from her sister, the passage of time and antidepressant medication. Most recently Ms. Johnson has taken Amitriptyline (Elavil) which caused her some concern about weight gain. Recently the psychiatric nurse changed her prescription to Trazodone.

Ms. Johnson 's sleep has improved. She has resolved that suicide would send her daughter's the wrong message about how to face problems. She still recognizes the seriousness of her legal situation, but has a good relationship with her attorneys. She is invested in remaining mentally stable for herself and her daughters and to competently face her legal situation. She intends to be compliant with treatment. She denies suicidal thoughts or intent.

It is my opinion as a psychiatrist that suicide precautions are no longer necessary for her safety. This information should be shared with Dr. Saftar, the psychiatrist responsible for her psychiatric treatment of inmates of the Linn County Jail. As an additional recommendation Ms. Johnson's depression also could benefit from the additional of an SSRI antidepressant, such as Paxil 20 mg/day.

If there are any questions or concerns, please do not hesitate to contact me.


Sincerely,

William S. Logan, MD

LOGC000091

# LOGAN & PETERSON, PC

FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

### WILLIAM S, LOGAN, MD
### STEPHEN E. PETERSON, MD

❏ 228 WEST 4TH STREET
KANSAS CITY, MISSOURI 64105
TELEPHONE: (816) 842-2500
FAX:     (816) 842-9980

❏ 7733 FORSYTH BLVD., SUITE 1450
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:     (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

## MEMORANDUM

**TO:** Captain Brian Gardner – *marked 1-22-01*
53 3rd Avenue Bridge
Linn County Jail
Cedar Rapids, Iowa 52401

**c/o** Alfred E. Willett
Fax: 319-364-2460

**FAXED**
JAN 2 9 2000 ~ *g*
*(2001)*

**FROM:** William S. Logan, MD

**DATE:** January 22, 2001

**SUBJECT:** ANGELA JOHNSON-SUICIDE PRECAUTIONS

Dear Captain Gardner:

I met with Angela Johnson for 2.5 hours at the Linn County Jail on Friday, January 19, 2001 at the request of her attorney, Alfred Willett. One purpose of the examination was to evaluate Ms. Johnson's suicide risk. Mr. Willett suggested I talk to Sgt. Lynn Johnson following my meeting with Angela Johnson to provide information concerning the need for ongoing suicide precautions. Sgt. Johnson suggested I write to you concerning this issue.

Ms. Johnson had a serious suicide attempt by hanging and was found in an unconscious state on October 13, 2000. She has been on suicide precaution since that time. Ms. Johnson had suicidal thoughts several weeks prior to her attempt and had written "goodbye letters" to those close to her. The suicide attempt was prompted by her receiving news that indicated she could be separated from her daughter's indefinitely.

LOG0000092

To: Captain Brian Gardner
Re: Angela Johnson
Page 2

Over the last several months, Ms. Johnson's level of depression has improved. Several factors have contributed to this improvement including contact with her daughters, support from her sister, the passage of time and antidepressant medication. Most recently Ms. Johnson has taken Amitriptyline (Elavil) which caused her some concern about weight gain. Recently the psychiatric nurse changed her prescription to Trazodone.

Ms. Johnson 's sleep has improved. She has resolved that suicide would send her daughter's the wrong message about how to face problems. She still recognizes the seriousness of her legal situation, but has a good relationship with her attorneys. She is invested in remaining mentally stable for herself and her daughters and to competently face her legal situation. She intends to be compliant with treatment. She denies suicidal thoughts or intent.

It is my opinion as a psychiatrist that suicide precautions are no longer necessary for her safety. This information should be shared with Dr. Saftar, the psychiatrist responsible for her psychiatric treatment of inmates of the Linn County Jail. As an additional recommendation Ms. Johnson's depression also could benefit from the additional of an SSRI antidepressant, such as Paxil 20 mg/day.

If there are any questions or concerns, please do not hesitate to contact me.

Sincerely,

William S. Logan, MD

LOGO000093

# LOGAN & PETERSON, PC

### FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

### WILLIAM S. LOGAN, MD
### STEPHEN E. PETERSON, MD

☐ 228 WEST 4TH STREET
KANSAS CITY, MISSOURI 64105
TELEPHONE: (816) 842-2500
FAX:        (816) 842-9980

☐ 7733 FORSYTH BLVD, SUITE 1450
CLAYTON, MISSOURI 63105
TELEPHONE: (314) 236-4914
FAX:        (314) 236-4990

3600 BURLINGAME, SUITE 1A
TOPEKA, KANSAS 66611

February 5, 2001

Patrick J. Berrigan
Trial Attorney
Watson & Dameron
2500 Holmes
Kansas City, Missouri 64108

Re:     Fee Schedule in United States v. Angela Johnson
        Northern District of Iowa
        No CR00-3034-MWV

Dear Mr. Berrigan:

I am writing to give a brief description of what a forensic psychiatric examination and services could entail in a capital case. Over the last 20 years I have been involved in numerous capital cases at both the trial, penalty phase, as well as post conviction relief, in both federal and state courts. States in which I have performed evaluations in capital cases include Kansas, Missouri, Nebraska, (Iowa, federal court); Mississippi (federal court); Texas (federal court); Oklahoma; California; Idaho (State and Federal Court); Utah; and Wyoming. Other states in which I have performed forensic evaluations in those accused of homicide include North Carolina, New York; Illinois; and South Dakota. Concerning the various aspects of a forensic evaluation, described as follows, I have been asked to provide assistance in one or more forensic evaluations I have performed.

A psychiatric evaluation of Ms. Johnson would involve the following procedures:

1)      Examination of Ms. Johnson

    a.      Review of birth history

    b.      Assessment of early developmental problems

            History of childhood medical and emotional problems

Patrick J. Berrigan, Esq.
Re: Angela Johnson
Page 2

d.   A review of her family history to include the following:

   (1)   Family history of mental illness and substance abuse.

   (2)   Relationship with parents, siblings, grandparents, and extended family.

   (3)   History of family difficulties including divorces, separations, conflict, spousal abuse, neglect.

   (4)   Loss of significant relationship through illness, divorce, death.

e.   Childhood history of sexual, physical or emotional abuse.

f.   Childhood mental health treatment.

g.   School performance and adjustment.

h.   Religious affiliation

i.   Childhood activities

j.   Peer relationships

k.   Adolescent Adjustment

l.   Any juvenile court of social service contact.

m.   Junior High and High School academic performance, social adjustment, extracurricular activities.

n.   Heterosexual development, including early pregnancy, sexual abuse.

o.   Adolescent work history

p.   Adolescent emotional problems

q.   Adolescent medical problems

r.   Any history of childhood or adult history of head injury or neurological impairment.

s.   Childhood or adolescent substance abuse.

t.   Assessment of difficulties during separtion form home and entry into young adulthood.

u.   Psychiatric difficulties as an adult including the following:

   1.   Traumatic experience

   2.   Brain damage

   3.   Psychotic episodes

   4.   Mood disorders

   5.   Suicide attempts

   6.   Outbursts of aggression

   7.   Substance abuse

   8.   Personality dysfunction

v.   Spousal relationships including any history of spousal abuse.

LOG000095

Patrick J. Berrigan, Esq.
Re:  Angela Johnson
Page 3

w.   Relationship difficulties with parents, children, in-laws or others.

x.   Employment history

y.   Post high school educational history

z.   History of Psychiatric treatment:

aa.  History of significant medical illness or injury.

bb.  Prior legal history

cc.  If requested history of current legal involvement.

dd.  Mental status examination including an assessment in the following areas:

1.   Appearance
2.   General behavior
3.   Attitude
4.   Thought process
5.   Thought contact
6.   Mood
7.   Orientation
8.   Attention span
9.   Long and short term memory
10.  Fund of general information
11.  Ability to use abstract thinking
12.  Insight
13.  Judgment
14.  Phobias
15.  Nightmares
16.  Panic attacks

II:  Review of Relevant Documentation –

1.   Family mental health records.
2.   Family medical records
3.   Individual medical records
4.   Records of past and current mental health treatment
5.   Social service records
6.   Civil court/divorce/custody records.
7.   Prior criminal and law enforcement records.
8.   Legal records concerning current charges.

LOG000096

Patrick J. Berrigan, Esq.
Re:  Angela Johnson
Page 3

w.   Relationship difficulties with parents, children, in-laws or
     others.

x.   Employment history

y.   Post high school educational history

z.   History of Psychiatric treatment:

aa.  History of significant medical illness or injury.

bb.  Prior legal history

cc.  If requested history of current legal involvement.

dd.  Mental status examination including an assessment in the
     following areas:

     1.   Appearance
     2.   General behavior
     3.   Attitude
     4.   Thought process
     5.   Thought contact
     6.   Mood
     7.   Orientation
     8.   Attention span
     9.   Long and short term memory
     10.  Fund of general information
     11.  Ability to use abstract thinking
     12.  Insight
     13.  Judgment
     14.  Phobias
     15.  Nightmares
     16.  Panic attacks

II:  <u>Review of Relevant Documentation</u> –

1.   Family mental health records.
2.   Family medical records
3.   Individual medical records
4.   Records of past and current mental health treatment
5.   Social service records
6.   Civil court/divorce/custody records.
7.   Prior criminal and law enforcement records.
8.   Legal records concerning current charges.

LOG000097

Patrick J. Berrigan, Esq.
Re:  Angela Johnson
Page 4

III.  Coordination with Mitigation Specialist -

1.     To obtain records in Part II.

2.     To facilitate and obtain collateral information from family, friends, spouses, and children.

3.     Interview of collateral informants with pertinent information about Ms. Johnson relationships, psychiatric history, and ability to function.

IV.  Coordination with psychologist to obtain appropriate tests included neuropsychological tests if indicated.

V.   Coordination with other medical specialties to obtain indicated physical, laboratory and x-ray examinations such as EEG, MRI, CT scan, PET scan.

VI.  Re-interview Ms. Johnson concerning discrepancies between records and personal history.

VII.  Consultations with current treatment personnel and attorneys concerning current mental health and physical treatment needs.

VIII. Correlate the above sources of information in preparing a report of findings.

IX.  Consultation with attorney and examination of Ms. Johnson to answer relevant forensic questions to potentially include competence, ability to wave rights, sanity, intent, mitigation.

X.   Testimony a deposition or trial including consultation with attorney about testimony preparation, exhibits, cross-examination, jury selection, including potential testimony in mock trial.

XI.  Review reports of opposing experts and provide consultation concerning cross examination, and additional records needed (raw psychological test data.)

LOG000098

Patrick J. Berrigan, Esq.
Re:  Angela Johnson
Page 5

XII.   Much of the above will involve either travel to Cedar Rapids or
       Sioux City, Iowa.

XIII.  Assistance and/or evaluation of special problems which may arise
       in the course of the defense.  Examples have included the
       assessment of defendants who have attempted or threatened suicide
       or hunger strikes, fired their attorneys so that they could
       proceed pro se; offered to plead guilty and established ongoing
       relationship with prosecutors while failing to communicate with
       defense attorneys, or even situations where attorneys have
       engaged in boundary relations with their clients including sexual
       relationships.

Given the extensive nature of these evaluations and the occasional
difficulties that require additional services, the total cost can range
in the $25,000-$35,000 range on occasion.  My hourly rate is $200/hour
and $100/hour for travel plus routine expenses (mileage and lodging as
necessary at prevailing government rates.)

Please contact me if further information is needed.  My Curriculum
Vitae is enclosed.

Sincerely,

*William S. Logan, M.D.*

William S. Logan
Diplomate, American Board of Psychiatry and Neurology 1982
Diplomate, American Board of Forensic Psychiatry 1987
Subspecialty in Forensic Psychiatry by the
American Board of Psychiatry and Neurology 1994

WSL/sg

Case 3:09-cv-03064-MWB-LTS     Document 234-2     Filed 06/23/11     Page 99 of 100

LOG000099

# LOGAN & PETERSON, PC

### FORENSIC, ADOLESENT AND ADULT PSYCHIATRY

## WILLIAM S, LOGAN, MD
## STEPHEN E. PETERSON, MD

❏ **228 WEST 4TH STREET**
   **KANSAS CITY, MISSOURI 64105**
   **TELEPHONE: (816) 842-2500**
   **FAX:        (816) 842-9980**

❏ **7733 FORSYTH BLVD., SUITE 1450**
   **CLAYTON, MISSOURI 63105**
   **TELEPHONE: (314) 236-4914**
   **FAX:        (314) 236-4990**

**3600 BURLINGAME, SUITE 1A**
**TOPEKA, KANSAS 66611**

MEMORANDUM

TO:          Pat Berrigan & Al Willett

FROM:        William S. Logan, MD

DATE:        7/20/01

RE:          ANGELA JOHNSON

I am forwarding my notes from the interviews I did with Ms. Johnson in
January and June 2001, as well as the current bill.

At this point I have a collection of newspaper articles and three
interviews with Angela, her sister Wendy, and her younger brother Jim.
I have included a list of individuals and other records which could be
the source of useful collateral information.

Please let me know if I should try to coordinate with Ray Cornell
and/or Mary Goody to obtain information for a report to be considered
at sentencing.

To this point I have not discussed any details of the offense with Ms.
Johnson.  With a proposed January 2002 trial I do not want to try to
obtain collateral interviews and records a the last minute.

Please advise.

Thanks,

*W S L*

William S. Logan, MD

*To: Mary Goody*
*From William S Logan, MD*