agree beyond a reasonable doubt it was present.

So the circumstances at the time were that during the course of the time they were in the house Mr. Honken either reveals his plan directly or it becomes obvious to Miss Johnson that this is not going to be merely obtaining a videotaped statement from Greg Nicholson but that people were going to be murdered, and that's the plan of Dustin Honken.  That was his

3979

intention from the beginning, and the change in circumstances we believe is what caused Miss Johnson to be under stress, anxiety, and impairment of her normal judgment, and those circumstances were under the direct influence of Dustin Honken.  So that's our justification for mitigating circumstance number 20.

THE COURT:  Mr. Williams?

MR. WILLIAMS:  I just fundamentally disagree.  I don't think there was a shred of evidence to suggest that at any point she was under substantial influence of Dustin Honken.  Even if you accept the defense argument for how the murders went down, all that shows is that he's the one who planned it and maybe advised her what the plan was at that point, but there's nothing indicating that he had substantial influence on her.

The thing that even causes me more concern the more I've thought about this is the language that on the date of the murders, so forth and so on, she was under unusual stress, anxiety, and impairment.  And the defense specifically kept out of the evidence in this case and out of our ability to examine the defendant what her state of mind was at the time of the murders.  And so for them to tie the date of the murders to anything to do with her state of mind is completely inappropriate, and we would ask that that language be struck.

Page 12

GRN000301

MR. BERRIGAN: I would agree with Mr. Williams' last comments if the stress, anxiety, and impairment weren't directly tied to the substantial influence of Mr. Honken, Your Honor.

3980

We're not claiming that this is some result of some mental disease or defect she suffered stress, anxiety, or impairment, and I've modified that language as you'll recall because I think earlier there was a suggestion there might be a mental defect. I don't remember what we earlier proposed, but it's only because of the influence of Mr. Honken that we're alleging that there's stress, anxiety, and impairment, not because of some mental disease or some type of a mental illness that was present on that day.

THE COURT: And, Mr. Williams, you don't think there's evidence to support 20 at all.

MR. WILLIAMS: I don't.

THE COURT: I don't either, so I'm going to strike 20.

Okay. I think that resolves the -- are there any other contested issues on the mitigators themselves other than the prefatory language issue? And then there are some other matters but . . .

MR. WILLIAMS: No, Your Honor.

THE COURT: What's the government's position with regard to the prefatory language about "Angela Johnson contends"?

MR. WILLIAMS: I think it's fine. I think you have the same prefatory language on page 17 on the government's aggravating factors, and I think it's important that the jury know that these are contentions and not evidence. I understand

3981

Page 13

GRN000302

the defense concerns, but I think they're speculative that the jury's somehow going to read something into that that it's a judgment by the Court of anything.

THE COURT: Mr. Berrigan, anything else you want to add?

MR. BERRIGAN: I'm not sure my letter to you is part of the record, Your Honor.

THE COURT: Only if you file it.

MR. BERRIGAN: Okay. So it isn't, so I should add yes because otherwise it's a complete omission as to our objection. The Court immediately preceding the discussion of the mitigating factors has language in there that says it's the defendant's burden to establish any mitigating factor and then explains what the burden is. Even the sentence that immediately introduces the list of mitigating factors says, Angela Johnson contends that the following mitigating factors have been established by the greater weight of the evidence.

In the preliminary instructions, number 4 specifically, the burden of proof regarding mitigating circumstances being on the defendant and what that is, is again set out in the preliminary instructions that the jurors already have. And for the Court to repeat this language for each and every mitigator we believe suggests to the jury that these mitigating factors are less worthy of consideration by the jury than other elements that they've been allowed to determine

3982

without such prefatory language, specifically the language of the charged offenses and the elements that are contained

Page 14

therein, the gateway factor, the statutory aggravating factors, none of which have language that precedes them as the Court proposes to do here.

Frankly, it's unnecessary. Government counsel's free to argue and undoubtedly will that the mitigating factors are not self-proving. But for the Court to suggest before each one Angela Johnson contends we think suggests a skeptical view of these factors to the jury which could negatively influence the jury's determination.

THE COURT: Well, I guess that same skeptical view would be on the government nonstatutory aggravating factors which would help --

MR. BERRIGAN: It doesn't matter, though. They've already got aggravating circumstances proven. You've already pointed that out. Even if the language applies to the nonstatutory aggravating factors, they already have in the bank the aggravating factors the jury's going to be weighing, and certainly the Court didn't use that with the statutory aggravating factors. We see no reason why we should use a special exception now for the defense mitigating factors all of a sudden in front of each one repeating this language.

THE COURT: It's not a special exception -- that's misleading when you say that because I'm applying it to the

3983

government nonstatutory aggravating factors.

MR. BERRIGAN: They have 4, Your Honor, and we have 20 -- 23. I don't think that's equal application, frankly, and I don't know why at this point in the trial all of a sudden we're particularly concerned that the very plain language that the Court has introduced describing what the burden of proof is

Page 15

GRN000304

is insufficient, particularly when the sentence immediately preceding the mitigating circumstances says these are nothing but contentions. That was sufficient for the preliminary instructions. I don't know why all of a sudden it's insufficient for the final instructions, and we object to it again on the basis of our client's due process rights under the 8th and 14th Amendments.

And I'll just point out that -- and I don't know what your intention is, and I'll raise this later, and I might be premature. But if the jury gets the preliminary instructions to go back with the final instructions, it's going to be patently obvious to them that there's a substantial difference not only in the number of mitigating circumstances and what they are but in this language.

THE COURT: Yeah, but part of the difference is because you're withdrawing some.

MR. BERRIGAN: Well, that's true. No, I agree on that. But they're not going to know that. They're not going to have any idea --

3984

THE COURT: Why do you think they would infer something sinister from it?

MR. BERRIGAN: They could, Your Honor. I don't know what they're going to infer. But one of the inferences, you made a determination that those aggravating circumstances should be in there -- or the mitigating circumstances. And more importantly, the language is going to be very obvious to them, that they weren't given this "Angela Johnson contends" language in the preliminary instructions but it's present for some reason in the final instructions, but one of the inferences is you made

Page 16

GRN000305

a determination.

THE COURT: Mr. Williams, anything else you want to add on it?

MR. WILLIAMS: No, Your Honor.

THE COURT: Well, how about this potential compromise? On page 17, final instruction number 2, the last sentence of the paragraph before it lists the nonstatutory aggravating factors, The prosecution contends that the following nonstatutory aggravating factors have been established beyond a reasonable doubt, what if I put that sentence in either italics or bold and then do the same thing in paragraph 19 -- I'm sorry, page 19, final instruction number 3 on mitigating factors, same thing with the lead-in -- the very last sentence down on the bottom of page 19, Angela Johnson contends that the following mitigating factors have been established by the greater weight of the

3985

evidence in the case, either put that in bold or italics, obviously do the same thing, and then delete the word "contends" in both the nonstatutory aggravating factors and the mitigating factors?

MR. BERRIGAN: That's certainly preferable, Your Honor. I just want to point out, I don't know --

THE COURT: Well, you didn't object to it before -- I mean you didn't object when it was in there before. I guess now --

MR. BERRIGAN: I don't object to the --

THE COURT: Language. You object if I italicize it?

MR. BERRIGAN: Right. Why are we doing that? I don't understand the Court's concern about that. These instructions are very easy to read. They're very plain.

Case 3:09-cv-03064-MWB-LTS    Document 284-16    Filed 06/23/11    Page 6 of 66
GRN000306

THE COURT: Because I'm giving you mitigators that I don't think the evidence supports. That's why.

MR. BERRIGAN: I understand that, Your Honor, but that, frankly, is the jury's determination. And we risk -- we make a risk -- if I put in mitigating circumstances they don't find, then I'm taking a very serious risk. Mr. Williams is going to point that out to them. Mr. Berrigan's not credible when he gets up here and contends that these mitigating factors exist. You shouldn't weigh them, and, by the way, anything else he says isn't particularly credible either. I've tried to narrow the mitigators. I think what you've seen is a paring. I

3986

don't know where we started, but it was a whole lot more than where we are.

THE COURT: Not substantially more.

MR. BERRIGAN: Well, I've tried to pare them when I thought it was appropriate, particularly in response to the Court's concerns about some of these. Number 9, we've completely took it out.

THE COURT: But you've been very thorough, and that's your job. I don't have a problem with the number of mitigators because, like I told you, I could get them down to about 7.

MR. BERRIGAN: Right, and it's not a numbers game, and we're both going to tell the jury that.

THE COURT: Well, it is kind of a numbers game.

MR. BERRIGAN: I truly don't believe that.

THE COURT: Want me to take my best shot at reducing yours to 7?

MR. BERRIGAN: Well, obviously I don't want to do that.

Page 18

GRN000307

THE COURT: You're being a little disingenuous here.

MR. BERRIGAN: I think they're very separate and independent, and I understand you might not agree, but I really think that this instruction's very clear. And whatever doubt the Court may have about mitigators -- and I think the Court may have a different view about mitigating evidence all together which could be the subject of another discussion, but this is a

3987

jury determination, and the standard's very low. It's a preponderance of the evidence. That's all that's required, and they really should be able to consider these --

THE COURT: I take exception with your last comment. I think I've taken a very broad view of mitigating evidence in this case.

MR. BERRIGAN: Well, again, I really don't want to debate that. I just don't understand why the Court's particularly concerned that we need to bold or highlight what's very obvious, that these are mere contentions and the Court tells the jury that in several places in the instructions. And I'm sure Mr. Williams and I will both argue that they're nothing more than contentions by either party that require proof, and if they're going to weigh these mitigators, they have to find them, and they're given a verdict form that specifically instructs them to do just that.

So I think there's plenty of room here already for the jurors to find that there's no mitigating circumstances if they don't think they're present.

THE COURT: Mr. Williams?

MR. WILLIAMS: I don't have a problem at all with your suggestion, Your Honor, and I can't see how any reviewing court

Page 19

GRN000308

would ever suggest that there would be something improper with bolding and italicizing or either one in that sentence, and I think that is a response to the defense concern, frankly, about

3988

the repetition of the language.

MR. BERRIGAN: May I inquire, Your Honor?

THE COURT: Yes.

MR. BERRIGAN: Did the Court find it necessary in Mr. Honken's case to put the contention that these are mere contentions in bold or italics? And if not, what plausible difference is there --

THE COURT: Well, I made a lot of changes.

MR. BERRIGAN: I know that.

THE COURT: Most of which are favorable to you that have been at your request.

MR. BERRIGAN: We've made substantive changes in the mitigating circumstances.

THE COURT: Well, we've done more than make substantive changes. We made a lot of changes in the instructions in wording that's more favorable to the defendant than what Honken either asked for or got. You don't deny that, do you?

MR. BERRIGAN: You know, to be quite honest, I couldn't tell you what Mr. Honken's instructions said. It's the last thing that's been on my mind.

THE COURT: Right.

MR. BERRIGAN: I really meant that as a genuine inquiry. If this was a problem in Mr. Honken's case, I could see the Court's concern here.

3989

Page 20

GRN000309

THE COURT: I think -- what about this? It's even one step down from what I've been thinking. What if we just put the word "contends" in italics both for the government and for the defendant and then take out -- I mean, I'm content to just leave them all in. I don't see how that could possibly be error. I just totally disagree with you.

MR. BERRIGAN: I'll be honest with you, I'd rather have the whole sentence in bold because then it at least doesn't highlight the "contends." So if those are the choices, Your Honor, I'd go with choice number 2.

THE COURT: Okay. Then we'll put the whole sentence in bold or italics.

MR. BERRIGAN: I suppose italics.

THE COURT: Better than bold; right?

MR. BERRIGAN: Who knows?

THE COURT: We have three choices. We have italics bold, bold, or italics.

MR. BERRIGAN: You wouldn't consider smaller font, would you?

THE COURT: How about 4-point font for the government's statutory aggravating factors and 16 font for the mitigators?

MR. BERRIGAN: That would be great, sir.

THE COURT: We'll put the whole sentence in italics, and we'll take out the "Angela Johnson contends," and I guess

3990

we'll just go back to the original language that you had?

MR. BERRIGAN: Yes, sir.

THE COURT: Is there anything else?

Page 21

GRN000310

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELA JOHNSON,<br><br>Defendant. | ‖ | No. CR 01-3046-MWB<br><br>**FINAL "PENALTY PHASE"<br>INSTRUCTIONS<br>TO THE JURY** |

———————————

**TABLE OF CONTENTS**

FINAL "PENALTY PHASE" INSTRUCTIONS . . . . . . . . . . . . . . . . . . 1
   NO. 1 - INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1
   NO. 2 - STEP ONE:  "NON-STATUTORY AGGRAVATING
         FACTORS" . . . . . . . . . . . . . . . . . . . . . 3
   NO. 3 - STEP TWO:  "MITIGATING" FACTORS . . . . . . . . . . . . 5
   NO. 4 - STEP THREE:  WEIGHING THE FACTORS . . . . . . . . . 11
   NO. 5 - EXPERT TESTIMONY REGARDING DEFENDANT'S
         MENTAL CONDITION . . . . . . . . . . . . . . . . . . . . . 15
   NO. 6 - DEFENDANT'S RIGHT NOT TO TESTIFY . . . . . . . . . . 16
   NO. 7 - JUSTICE WITHOUT DISCRIMINATION . . . . . . . . . . . 17
   NO. 8 - VERDICTS . . . . . . . . . . . . . . . . . . . . . . . . 18
   NO. 9 - CONCLUDING INSTRUCTION . . . . . . . . . . . . . . . . 19

"PENALTY PHASE" VERDICT FORM

# FINAL "PENALTY PHASE" INSTRUCTION
## NO. 1 - INTRODUCTION

Members of the jury, the written instructions I gave you at the beginning of the "penalty phase" and the oral instructions I gave you during the "penalty phase" remain in effect. I will now give you some additional "penalty phase" instructions.

The instructions I am about to give you are in writing and will be available to you in the jury room. *All* instructions, whenever given and whether in writing or not, must be followed. This is true even though some of the instructions I gave you at the beginning of the "penalty phase" are not repeated here.

Regardless of any opinion you may have as to what the law may be—or should be—it would be a violation of your oaths as jurors to base your verdict upon any view of the law other than that given to you in these instructions.

Some of the legal principles that you must apply to your "penalty phase" decisions duplicate those you followed in reaching your verdict as to guilt or innocence in the "merits phase," but others are different. The instructions I am giving you now are a complete set of instructions on the law applicable to your "penalty phase" decisions. I have prepared these instructions to ensure that you are clear in your duties at this stage of the case. I have also prepared a special verdict form that you must complete. The verdict form details special findings you must make in this case and will help you perform your duties properly.

You must give separate consideration to whether or not the defendant should be sentenced to death or to a sentence of life imprisonment without possibility of

1

GRN000312

parole on each Count. Therefore, you must return a separate "penalty" verdict on each such Count. *Your determination to impose a death sentence, rather than a sentence of life imprisonment without possibility of parole, on a particular Count must be unanimous.* On the other hand, if any one of you finds that a death sentence should not be imposed on a particular Count, then the death penalty *cannot* be imposed for that Count, and the sentence must, instead, be a sentence of life imprisonment without possibility of parole for that Count

If you find that a death sentence should be imposed on a particular Count, then I am required to impose that sentence. However, you are *never* required to impose a death sentence on any Count. Similarly, if any one of you finds that a death sentence should not be imposed on a particular Count, then I am required to impose a sentence of life imprisonment without possibility of parole on that Count.

Your determination of whether to impose a death sentence or a sentence of life imprisonment without possibility of parole for each Count will proceed in three "steps." I will explain each of these "steps" in detail in the following instructions.

2

GRN000313

## FINAL "PENALTY PHASE" INSTRUCTION NO. 2 - STEP ONE: "NON-STATUTORY AGGRAVATING FACTORS"

In **Step One**, for each Count, you must consider whether the prosecution has proved beyond a reasonable doubt *one or more* of the "Non-statutory Aggravating Factors." These aggravating factors are sometimes called "non-statutory" aggravating factors, because they are not identified by the death penalty statute, although they are identified by other applicable law.

*The prosecution contends that the following "Non-statutory Aggravating Factors" have been established beyond a reasonable doubt in this case:*

(1) for **Counts 1 through 10**, the defendant would be a danger in the future to the lives and safety of other persons;

(2) for **Counts 1 through 10**, the defendant obstructed justice by preventing the victim from providing testimony or information to law enforcement officers or by retaliating against the victim for cooperating with authorities;

(3) for **Counts 1 through 4 and 6 through 9**, the defendant aided and abetted the intentional killing of more than one person in a single criminal episode;

(4) for **Counts 1 through 10**, the effect of the crime upon the victim's family was injurious.

You must unanimously agree that a particular "Non-statutory Aggravating Factor" has been proved beyond a reasonable doubt, or you cannot consider that aggravating factor further. You may consider in **Step Three** any "Non-statutory

3

GRN000314

Aggravating Factor" that you unanimously find that the prosecution has proved beyond a reasonable doubt.

4

GRN000315

## FINAL "PENALTY PHASE" INSTRUCTION
## NO. 3 - STEP TWO: "MITIGATING" FACTORS

In **Step Two**, for each Count, you must consider whether the defendant has proved by the greater weight of the evidence any "Mitigating Factors." A "mitigating factor" is any aspect of a defendant's character or background, any circumstance of the offense in question, or any other relevant fact or circumstance that might indicate that the defendant should receive a sentence of life imprisonment without possibility of parole instead of a death sentence.

Unlike "aggravating factors," which you must unanimously find have been proved beyond a reasonable doubt, the law does not require unanimous agreement with regard to "mitigating factors." Any juror who finds the existence of a "mitigating factor" must consider it in this case, regardless of the number of jurors who agree that the factor has been established. Furthermore, any juror may consider a "mitigating factor" found by another juror, even if the first juror did not find that factor to be mitigating.

It is the defendant's burden to establish any "mitigating factors," but only by the greater weight of the evidence. This is a lesser standard of proof than proof beyond a reasonable doubt. To prove something "by the greater weight of the evidence" means to prove that it is more likely true than not true. The "greater weight of the evidence" is determined by considering all of the evidence and deciding which evidence is more believable. If you find that the evidence is equally

5

GRN000316

balanced on any issue in the case, then you cannot find that the issue has been proved.

The "greater weight of the evidence" is not necessarily determined by the greater number of witnesses or exhibits a party has presented. The testimony of a single witness that produces in your mind a belief in the likelihood of truth is sufficient for proof of any fact and would justify a verdict in accordance with such testimony. This is so, even though a number of witnesses may have testified to the contrary, if, after consideration of all of the evidence in the case, you hold a greater belief in the accuracy and reliability of that one witness.

*Angela Johnson contends that the following "Mitigating Factors" have been established by the greater weight of the evidence in this case:*

(1) even though Angela Johnson is guilty as an aider and abettor, her participation was relatively minor as compared to Dustin Honken's role in these murders;

(2) Angela Johnson does not have a prior criminal record;

(3) there is a strong maternal bond between Angela Johnson and her daughters, Alyssa and Marvea, and this mother-daughter relationship will continue to survive and flourish if Angela Johnson is sentenced to life imprisonment without possibility of parole;

(4) another person, Dustin Honken, who is equally or more culpable in the murders of Greg Nicholson, Lori Duncan, and Terry DeGeus, will not be punishable by death for those murders;

6

GRN000317

(5) two victims, Greg Nicholson and Terry DeGeus, consented to the conduct, methamphetamine manufacturing and distribution, that significantly contributed to the circumstances of their deaths;

(6) Angela Johnson was physically and psychologically abused as a child by her mother and other adults who engaged in exorcisms, casting out of spirits, and other unusual religious practices upon her;

(7) Angela Johnson was inappropriately touched, fondled, and sexually abused by Ted Dillo during the time the Johnson family spent with the Dillos in Chanute, Kansas, when Angela Johnson was approximately nine years old;

(8) if Angela Johnson is incarcerated in a federal penitentiary for life, she would not be a danger to the lives and safety of others;

(9) Angela Johnson was raised in a single-parent household by an emotionally unstable mother who subjected her children to unusual fasting practices, long periods of abandonment and physical detachment, and occasional physical abuse, resulting in Angela Johnson being far more susceptible to escape through illicit drug use, a series of unhealthy relationships with men, and chronic feelings of abandonment and poor self-esteem;

(10) Angela Johnson was physically and emotionally abused as an adult by Terry DeGeus, her former boyfriend, causing her great fear and traumatic stress;

(11) Angela Johnson has loving, lasting relationships with her mother, Pearl Jean Johnson, and her four siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, which will continue into old age if Angela Johnson is sentenced to life imprisonment without possibility of parole;

7

GRN000318

(12) Angela Johnson suffers from anxiety and depression as a result of experiences endured in childhood, and these mental conditions have hampered her ability to make intelligent, thoughtful, and wise choices in many of the important decisions in her life;

(13) Angela Johnson is very much loved by her daughters, Alyssa and Marvea, and that her death would have a profoundly disturbing effect on their young lives, now and for years to come;

(14) Angela Johnson has felt remorse for the role that she played in the deaths of Greg Nicholson, Lori Duncan, Terry DeGeus, and particularly Kandi and Amber Duncan;

(15) Angela Johnson is loved and cherished by her mother, Pearl Jean Johnson, and her siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, all of whom would suffer grievously should Angela Johnson be sentenced to death;

(16) Angela Johnson has been addicted to methamphetamine for most of her adult life, a drug which has profoundly affected her judgment, her personality, her relationships, and her ability to deal with difficult self-esteem and psychological issues, which have plagued her since childhood;

(17) Angela Johnson has demonstrated that she can lead a productive, worthwhile life in prison through her kindness and helpfulness to other inmates, her interest in Bible study and religion, her artistic endeavors, and the furtherance of her education by obtaining a G.E.D. while incarcerated after having dropped out of school years earlier in the ninth grade;

8

GRN000319

(18) in spite of her problems with drugs, men, and her own depression, Angela Johnson has always held a steady job and has consistently worked to provide for the care and comfort of her daughters, Alyssa and Marvea;

(19) although she is guilty of these murders, Angela Johnson was pregnant by Dustin Honken with her daughter, Marvea, at the time of the murders and, as a result, was in a disadvantaged position to resist Mr. Honken, leave him, or turn him in to authorities, which she offers as an explanation of her conduct, not as an excuse;

(20) despite her own personal problems, past drug addiction, and present incarceration, Angela Johnson has always been a good mother to her daughters, in that she communicates with them regularly, stays as active as possible in their lives, and attempts to pass on the values and beliefs that will help her daughters avoid her own fate;

(21) there are other factors in Angela Johnson's background or character that mitigate in favor of a sentence of life imprisonment without possibility of parole and against the death penalty.

In addition to these "Mitigating Factors," you may also consider any residual or lingering doubts that any of you have as to Angela Johnson's guilt or innocence or her role in the offenses in determining which sentence to impose, even though those doubts did not rise to the level of "reasonable doubts" under the instructions given to you during the "merits phase" of the trial.

Finally, you are permitted to consider *anything* else that is established by the greater weight of the evidence about the commission of the crime or about the defendant's background or character that would indicate that the defendant should

9

GRN000320

receive a sentence of life imprisonment without possibility of parole instead of a death sentence, whether or not specifically argued by defense counsel.

A juror must find that a particular "Mitigating Factor" has been proved by the greater weight of the evidence, before that juror or any other juror can consider that "Mitigating Factor" in **Step Three.**

10

GRN000321

## FINAL "PENALTY PHASE" INSTRUCTION
## NO. 4 - STEP THREE:  WEIGHING THE FACTORS

It **Step Three**, for each Count, you must consider whether the "Gateway Aggravating Factor" and the one or more "Statutory Aggravating Factors" that you found for that Count during the "eligibility phase," together with any "Non-statutory Aggravating Factors" for that Count that you find to exist in **Step One** in this "penalty phase," taken together, sufficiently outweigh any "Mitigating Factors" that you find in **Step Two** so that a sentence of death is justified for that Count.  In the absence of any "Mitigating Factors," you must consider whether the "Aggravating Factors" are themselves sufficient to justify a sentence of death.  Based on your weighing of *all* of the factors, you will decide whether to impose a sentence of death or a sentence of life imprisonment without possibility of parole for the Count in question.

For purposes of weighing all of the pertinent factors, I will now remind you of the "Gateway Aggravating Factor" and the "Statutory Aggravating Factors" that you unanimously found beyond a reasonable doubt had been proved in this case. First, for **Counts 1 through 10**, as a "Gateway Aggravating Factor," you found that the defendant intentionally engaged in conduct intending that the victim in question be killed or that lethal force be employed against the victim, which resulted in the death of the victim.  Second, as "Statutory Aggravating Factors," you found the following:  For **Counts 1 and 6**, charging the killing of Gregory Nicholson, **Counts 2 and 7**, charging the killing of Lori Duncan, and **Counts 5 and 10**, charging the

11

GRN000322

killing of Terry DeGeus, you unanimously found that the defendant committed the offenses in question in an especially heinous, cruel, or depraved manner in that it involved both torture and serious physical abuse; for **Counts 5 and 10**, charging the killing of Terry DeGeus, you also found that the defendant committed the offenses in question after substantial planning and premeditation; and for **Counts 3 and 8**, charging the killing of Kandi Duncan, and **Counts 4 and 9**, charging the killing of Amber Duncan, you found that the victims were particularly vulnerable due to their young age.

In determining the appropriate sentence, all of you must weigh the "Aggravating Factors" that you unanimously find to exist, and each of you must weigh any "Mitigating Factors," if any, that you individually find to exist. Each of you may also weigh any "Mitigating Factor" or "Mitigating Factors" that another or others of your fellow jurors find to exist, even if you did not yourself find that factor to be mitigating. In engaging in the weighing process, you must avoid any influence of passion, prejudice, or undue sympathy.

The process of weighing "Aggravating Factors" and "Mitigating Factors" against each other—or weighing "Aggravating Factors" alone, if you find no "Mitigating Factors"—in order to determine whether to impose a sentence of death or a sentence of life imprisonment without possibility of parole is not a mechanical process. You must not simply count the number of "Aggravating Factors" and "Mitigating Factors" to reach your decision; rather, you must consider the weight and value of each factor.

12

GRN000323

The law contemplates that different factors may be given different weights or values by different jurors. Thus, any of you may find that one "Mitigating Factor" outweighs all "Aggravating Factors" combined, or that the "Aggravating Factors" proved do not, standing alone, justify imposing a sentence of death on a particular Count. If one or more of you so find, then the death penalty *cannot* be imposed for that Count. On the other hand, you may find that a particular "Aggravating Factor" sufficiently outweighs all "Mitigating Factors" combined to justify a sentence of death on a particular Count. Each of you must decide what weight or value is to be given to a particular "Aggravating Factor" or "Mitigating Factor" in your decision-making process.

Your determination of the appropriate sentence for each Count is a decision that each of you must make independently, after consulting with your fellow jurors and individually engaging in the weighing process described in this Instruction. You cannot consider imposing a death sentence unless and until you personally find that the "Aggravating Factors" outweigh the "Mitigating Factors," or, in the absence of "Mitigating Factors," that the "Aggravating Factors" are themselves sufficient to justify a sentence of death.

*A determination to impose a death sentence must be unanimous.* If you each find that a death sentence should be imposed for a particular Count, then I am required to impose a death sentence for that Count.

On the other hand, if, after weighing the "Aggravating Factors" proved in the case and all of the "Mitigating Factors" found by any juror, any one of you finds that a sentence of death is not justified on a particular Count, then the death sentence

13

GRN000324

*cannot* be imposed on that Count, and I will impose a sentence of life imprisonment without possibility of parole for that Count.

Regardless of your findings with respect to "Aggravating Factors" and "Mitigating Factors," you are *never* required to impose a death sentence. Thus, even if you find that a sentence of death would be justified after this weighing process, you are never required to return a verdict imposing a sentence of death.

Again, whether or not the circumstances of a particular Count justify a sentence of death or a sentence of life imprisonment without possibility of parole is a decision that the law leaves entirely to you.

14

GRN000325

## FINAL "PENALTY PHASE" INSTRUCTION
## NO. 5 - EXPERT TESTIMONY REGARDING
## DEFENDANT'S MENTAL CONDITION

You have heard expert testimony concerning Angela Johnson's mental condition. This evidence has not been offered for the purpose of explaining Angela Johnson's mental state at the time of the charged killings, and you cannot consider it for that purpose. You may, however, consider it for any other purpose.

15

## FINAL "PENALTY PHASE" INSTRUCTION
## NO. 6 - DEFENDANT'S RIGHT NOT TO TESTIFY

Angela Johnson did not testify during the "penalty phase." The defendant has a constitutional right to remain silent. Also, there is no burden upon a defendant to prove that he or she should not be sentenced to death. The burden is entirely on the prosecution to prove that a sentence of death is justified. Accordingly, the fact that Angela Johnson did not testify must not be considered by you in any way, or even discussed, in arriving at your decision on whether to impose a death sentence or a sentence of life imprisonment without possibility of parole for any Count in this case.

16

GRN000327

# FINAL "PENALTY PHASE" INSTRUCTION
## NO. 7 - JUSTICE WITHOUT DISCRIMINATION

In your consideration of whether to impose the death sentence or a sentence of life imprisonment without possibility of parole on a particular Count, you must not consider the race, color, religious beliefs, national origin, or sex of either the defendant or the victim in question. You are not to return a sentence of death unless you would return a sentence of death for the crime in question without regard to the race, color, religious beliefs, national origin, or sex of either the defendant or any victim.

To emphasize the importance of this consideration, the verdict form contains a certification statement. Each of you should carefully read the statement, enter your juror number in the appropriate place in the first signature block, and then sign your name in the appropriate place in the second signature block, if the statement accurately reflects the manner in which each of you reached your decision. The signature block signed with your names will be sealed, which means that it will not be released to the public.

17

GRN000328

## FINAL "PENALTY PHASE" INSTRUCTION
## NO. 8 - VERDICTS

I have prepared a "Penalty Phase Verdict Form," which is attached to these instructions, to help you during your deliberations and to record your final verdict on whether to impose the death penalty or a sentence of life imprisonment without possibility of parole for each Count. For each Count, the Verdict Form sets out the three "steps" for determination of the sentence to impose. Wherever I have asked you to record "the number of jurors" who so find as to a particular factor or issue, I do *not* mean your juror numbers. Rather, I mean how many of you find that particular factor or issue.

GRN000329

# FINAL "PENALTY PHASE" INSTRUCTION
## NO. 9 - CONCLUDING INSTRUCTION

You have heard emotional testimony presented by both sides in the "penalty phase." Such testimony may have caused emotional responses from persons present in the courtroom, including spectators, participants in the trial, or other court personnel. However, you must not be swayed by the emotional responses of others to the evidence. Let me remind you again that nothing that I have said in these instructions—and nothing that I have said or done during either the "merits phase" or the "penalty phase" of the trial—has been said or done to suggest to you what I think your decision should be. I have no opinion about what your decision should be. That decision is your exclusive responsibility.

Finally, if you want to communicate with me at any time during your deliberations, please write down your message or question and pass the note to the Court Security Officer (CSO) or marshal in attendance. The CSO or marshal will bring the message to my attention. I will respond as promptly as possible, either in writing, or by having you return to the courtroom so that I can address you orally. However, if you send me a message, do *not* tell me any details of your deliberations or how many of you are voting in a particular way on any issue.

**DATED** this 20th day of June, 2005.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

GRN000330

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELA JOHNSON,<br><br>Defendant. | No. CR 01-3046-MWB<br><br>**"PENALTY PHASE"<br>VERDICT FORM** |

As to defendant Angela Johnson, on the "penalty phase" issues submitted for our determination, we, the Jury, find as follows:

GRN000331

Case 3:09-cv-03064-MWB-LTS   Document 26   Filed 06/23/11   Page 32 of 66

| Step One: "Non-statutory" Aggravating Factors | For each Count, which one or more of the "Non-statutory Aggravating Factors," if any, do you unanimously find the prosecution has proved beyond a reasonable doubt? "Non-statutory Aggravating Factors" are identified and explained in Final "Penalty Phase" Instruction No. 2. (Please put a **check mark** in the column for any count for which you find a particular aggravating factor has been proved.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | The defendant would be a danger in the future to the lives and safety of other persons. | | | | | | | | | | |
| | The defendant obstructed justice by preventing the victim from providing testimony or information to law enforcement officers or by retaliating against the victim for cooperating with authorities. | | | | | | | | | | |
| | The defendant aided and abetted the intentional killing of more than one person in a single criminal episode. | | | | | | | | | | |
| | The effect of the crime upon the victim's family was injurious. | | | | | | | | | | |
| | If you unanimously found at least one "Non-statutory Aggravating Factor" for a particular Count, you may consider that factor or those factors in **Step Three**, below, for that Count. Whether or not you find any "Non-statutory Aggravating Factor," go on to **Step Two**. | | | | | | | | | | |

2

Case 3:09-cv-03064-MWB-LTS Document 26-16 Filed 06/23/11 Page 33 of 66

| Step Two: "Mitigating" Factors | Which "Mitigating Factors," if any, do any of you find the defendant has proved by the greater weight of the evidence for a particular count? "Mitigating Factors" specifically asserted by the defendant are identified for you in Final "Penalty Phase" Instruction No. 3. You may also identify any further "Mitigating Factors" that any juror finds. (Please indicate the **number of jurors** finding any "Mitigating Factor" in the column for any count for which those jurors find that the "Mitigating Factor" applies.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | (1) even though Angela Johnson is guilty as an aider and abettor, her participation was relatively minor as compared to Dustin Honken's role in these murders | | | | | | | | | | |
| | (2) Angela Johnson does not have a prior criminal record | | | | | | | | | | |
| | (3) there is a strong maternal bond between Angela Johnson and her daughters, Alyssa and Marvea, and this mother-daughter relationship will continue to survive and flourish if Angela Johnson is sentenced to life imprisonment without possibility of parole | | | | | | | | | | |
| | (4) another person, Dustin Honken, who is equally or more culpable in the murders of Greg Nicholson, Lori Duncan, and Terry DeGeus, will not be punishable by death for those murders | | | | | | | | | | |
| | (5) two victims, Greg Nicholson and Terry DeGeus, consented to the conduct, methamphetamine manufacturing and distribution, that significantly contributed to the circumstances of their deaths | | | | | | | | | | |

3

Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 34 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (6) Angela Johnson was physically and psychologically abused as a child by her mother and other adults who engaged in exorcisms, casting out of spirits, and other unusual religious practices upon her | | | | | | | | | | |
| (7) Angela Johnson was inappropriately touched, fondled, and sexually abused by Ted Dillo during the time the Johnson family spent with the Dillos in Chanute, Kansas, when Angela Johnson was approximately nine years old | | | | | | | | | | |
| (8) if Angela Johnson is incarcerated in a federal penitentiary for life, she would not be a danger to the lives and safety of others | | | | | | | | | | |
| (9) Angela Johnson was raised in a single-parent household by an emotionally unstable mother who subjected her children to unusual fasting practices, long periods of abandonment and physical detachment, and occasional physical abuse, resulting in Angela Johnson being far more susceptible to escape through illicit drug use, a series of unhealthy relationships with men, and chronic feelings of abandonment and poor self-esteem | | | | | | | | | | |
| (10) Angela Johnson was physically and emotionally abused as an adult by Terry DeGeus, her former boyfriend, causing her great fear and traumatic stress | | | | | | | | | | |

Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 35 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (11) Angela Johnson has loving, lasting relationships with her mother, Pearl Jean Johnson, and her four siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, which will continue into old age if Angela Johnson is sentenced to life imprisonment without possibility of parole | | | | | | | | | | |
| (12) Angela Johnson suffers from anxiety and depression as a result of experiences endured in childhood, and these mental conditions have hampered her ability to make intelligent, thoughtful, and wise choices in many of the important decisions in her life | | | | | | | | | | |
| (13) Angela Johnson is very much loved by her daughters, Alyssa and Marvea, and that her death would have a profoundly disturbing effect on their young lives, now and for years to come | | | | | | | | | | |
| (14) Angela Johnson has felt remorse for the role that she played in the deaths of Greg Nicholson, Lori Duncan, Terry DeGeus, and particularly Kandi and Amber Duncan | | | | | | | | | | |

5

Case 3:09-cv-03064-MWB-LTS  Document 28-16  Filed 06/23/11  Page 36 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (15) Angela Johnson is loved and cherished by her mother, Pearl Jean Johnson, and her siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, all of whom would suffer grievously should Angela Johnson be sentenced to death | | | | | | | | | | |
| (16) Angela Johnson has been addicted to methamphetamine for most of her adult life, a drug which has profoundly affected her judgment, her personality, her relationships, and her ability to deal with difficult self-esteem and psychological issues, which have plagued her since childhood | | | | | | | | | | |
| (17) Angela Johnson has demonstrated that she can lead a productive, worthwhile life in prison through her kindness and helpfulness to other inmates, her interest in Bible study and religion, her artistic endeavors, and the furtherance of her education by obtaining a G.E.D. while incarcerated after having dropped out of school years earlier in the ninth grade | | | | | | | | | | |
| (18) in spite of her problems with drugs, men, and her own depression, Angela Johnson has always held a steady job and has consistently worked to provide for the care and comfort of her daughters, Alyssa and Marvea | | | | | | | | | | |

6

Case 3:09-cv-03064-MWB-LTS   Document 33-16   Filed 06/23/11   Page 37 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (19) although she is guilty of these murders, Angela Johnson was pregnant by Dustin Honken with her daughter, Marvea, at the time of the murders and, as a result, was in a disadvantaged position to resist Mr. Honken, leave him, or turn him in to authorities, which she offers as an explanation of her conduct, not as an excuse | | | | | | | | | | |
| (20) despite her own personal problems, past drug addiction, and present incarceration, Angela Johnson has always been a good mother to her daughters, in that she communicates with them regularly, stays as active as possible in their lives, and attempts to pass on the values and beliefs that will help her daughters avoid her own fate | | | | | | | | | | |
| (21) there are other factors in Angela Johnson's background or character that mitigate in favor of a sentence of life imprisonment without possibility of parole and against the death penalty | | | | | | | | | | |

7

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| **"Mitigating Factor"** | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| Any residual or lingering doubts as to Angela Johnson's guilt or innocence or her role in the offenses, even though those doubts did not rise to the level of "reasonable doubts" under the instructions given to you during the "merits phase" of the trial | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |

In **Step Three**, for each Count on which the defendant is "eligible" for consideration of the death penalty, each of you must weigh any mitigating factor or factors that you individually found to exist in this **Step**. Each of you may also weigh any mitigating factor or factors that another or others of your fellow jurors found to exist.

8

Case 3:09-cv-03064-MWB-LTS   Document 28-6   Filed 06/23/11   Page 39 of 66

| Step Three: Weighing The Factors | After weighing the "Aggravating Factors" found in the "eligibility phase," together with any "Non-statutory Aggravating Factors" found in **Step One** of this "penalty phase," and any "Mitigating Factors" found in **Step Two**, as explained in Final "Penalty Phase" Instruction No. 4, what sentence do you impose for each Count? (Please put a **check mark** in the column for any count for which you find a particular sentence must be imposed.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | A sentence of death | | | | | | | | | | |
| | A sentence of life imprisonment without possibility of parole | | | | | | | | | | |
| Certification | By signing below, by juror number, then by name, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same determination regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victim or victims. (See Final "Penalty Phase" Instruction No. 7) | | | | | | | | | | |

_____
Date

**JUROR NUMBERS**

_____          _____          _____
Foreperson                        Juror                             Juror


_____          _____          _____
Juror                             Juror                             Juror

9

Case 3:09-cv-03064-MWB-LTS   Document 23-16   Filed 06/23/11   Page 40 of 66

_____   _____   _____
Juror                                       Juror                                       Juror


_____   _____   _____
Juror                                       Juror                                       Juror

10

Case 3:09-cv-03064-MWB-LTS   Document 234-16   Filed 06/23/11   Page 41 of 66

**JUROR SIGNATURES**

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Foreperson | Juror | Juror |
| _____ | _____ | _____ |
| Juror | Juror | Juror |
| _____ | _____ | _____ |
| Juror | Juror | Juror |
| _____ | _____ | _____ |
| Juror | Juror | Juror |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ANGELA JOHNSON,

    Defendant.

No. CR 01-3046-MWB

**"ELIGIBILITY PHASE" VERDICT FORM**

As to defendant Angela Johnson, on the "eligibility phase" issues submitted for our determination, we, the Jury, unanimously find as follows:

GRN000342

| Step One: "Gateway Aggravating Factors" | For each Count, do you unanimously find that the prosecution has proved the "Gateway Aggravating Factor" beyond a reasonable doubt? The "Gateway Aggravating Factor" is explained in "Eligibility Phase" Instruction No. 3. (You must unanimously agree that this "Gateway Aggravating Factor" has been proved for a particular Count for the defendant to be "eligible" for consideration of the death penalty on that Count. Please put a **check** **mark** in the column for any Count for which you find that the "Gateway Aggravating Factor" has been proved.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | The defendant intentionally engaged in conduct intending that the victim in question be killed or that lethal force be employed against the victim, which resulted in the death of the victim. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

If you unanimously found this "Gateway Aggravating Factor" for a particular Count, go on to **Step Two** for that Count. However, if you did not find this "Gateway Aggravating Factor" for a particular Count, then you **cannot** consider the death penalty on that Count; therefore, do not consider **Step Two** for that Count. Instead, you must enter a "not eligible" verdict for that Count in **Step Three**.

2

Case 3:09-cv-03064-MWB-LTS   Document [illegible]   Filed 06/23/11   Page 44 of 66

Case 3:01-cr-03046-MWB   Document 545   Filed 05/31/2005   Page 3 of 5

| Step Two: "Statutory Aggravating Factors" | If you found the "Gateway Aggravating Factor" for a particular Count, which one or more of the "Statutory Aggravating Factors," if any, do you unanimously find the prosecution has proved beyond a reasonable doubt for that Count? "Statutory Aggravating Factors" are explained in "Eligibility Phase" Instruction No. 4. (You must unanimously agree on one or more of these factors as to a particular Count for the defendant to be "eligible" for consideration of the death penalty for that Count. Please put a **check mark** in the column for any Count for which you find a particular "Statutory Aggravating Factor" has been proved.) | | **VICTIMS AND COUNTS** | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | **Gregory Nicholson** | | **Lori Duncan** | | **Kandi Duncan** | | **Amber Duncan** | | **Terry DeGeus** | |
| | | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | The defendant committed the offense in question after substantial planning and premeditation. | | | | | | | | | | ✓ | ✓ |
| | The defendant committed the offense in question in an especially heinous, cruel, or depraved manner in that it involved torture, serious physical abuse of the victim, or both. (You may find "torture," "serious physical abuse," both, or neither for any particular Count.) | torture | ✓ | ✓ | ✓ | ✓ | | | | | ✓ | ✓ |
| | | serious physical abuse | ✓ | ✓ | ✓ | ✓ | | | | | ✓ | ✓ |
| | The victim was particularly vulnerable due to her young age. | | | | | | ✓ | ✓ | ✓ | ✓ | | |
| | If you unanimously found at least one "Statutory Aggravating Factor" for a particular Count in this **Step**, and you found the "Gateway Aggravating Factor" for that Count in **Step One**, then you must enter an "eligible" verdict for that Count. However, if you did not find any "Statutory Aggravating Factor" for a particular Count, then you **cannot** consider the death penalty on that Count; therefore, you must enter a "not eligible" verdict for that Count. | | | | | | | | | | | |

3

Case 3:09-cv-03064-MWB-LTS    Document 103-16    Filed 06/23/11    Page 45 of 66

Case 3:01-cr-03046-MWB    Document 545    Filed 05/31/2005    Page 4 of 5

| Step Three: "Eligibility" Verdict | As explained in "Eligibility Phase" Instruction No. 5, if you did not find the "Gateway Aggravating Factor" for a particular Count or did not find any "Statutory Aggravating Factor" for that Count, then enter a verdict that the defendant is "not eligible" for consideration of the death penalty on that Count. However, if you found the "Gateway Aggravating Factor" and at least one "Statutory Aggravating Factor" for a particular Count, enter a verdict that the defendant is "eligible" for consideration of the death penalty on that Count. | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | "Not eligible" for consideration of the death penalty on this Count | | | | | | | | | | |
| | "Eligible" for consideration of the death penalty on this Count | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| Certification | By signing below, by juror number, then by name, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same determination regarding the defendant's eligibility for consideration of a sentence of death for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victim or victims. (See "Eligibility Phase" Instruction No. 7) | | | | | | | | | | |

5-31-05
Date

**JUROR NUMBERS**

621
Foreperson

797
Juror

721
Juror

4

504

Juror

513

Juror

509

Juror

108

Juror

170

Juror

147

Juror

55

Juror

469

Juror

600

Juror

GRN000346

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR 01-3046-MWB |
| vs. | **"PENALTY PHASE"** |
| ANGELA JOHNSON, | **VERDICT FORM** |
| Defendant. | |

As to defendant Angela Johnson, on the "penalty phase" issues submitted for our determination, we, the Jury, find as follows:

1

Case 3:09-cv-03064-MWB-LTS    Document 234-16    Filed 06/23/11    Page 47 of 66

GRN000347

Case 3:09-cv-03064-MWB-LTS   Document 103-16   Filed 06/23/11   Page 48 of 66

| Step One: "Non-statutory" Aggravating Factors | For each Count, which one or more of the "Non-statutory Aggravating Factors," if any, do you unanimously find the prosecution has proved beyond a reasonable doubt? "Non-statutory Aggravating Factors" are identified and explained in Final "Penalty Phase" Instruction No. 2. (Please put a check mark in the column for any count for which you find a particular aggravating factor has been proved.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | The defendant would be a danger in the future to the lives and safety of other persons. | | | | | | | | | | |
| | The defendant obstructed justice by preventing the victim from providing testimony or information to law enforcement officers or by retaliating against the victim for cooperating with authorities. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | The defendant aided and abetted the intentional killing of more than one person in a single criminal episode. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ■ | ■ |
| | The effect of the crime upon the victim's family was injurious. | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |

If you unanimously found at least one "Non-statutory Aggravating Factor" for a particular Count, you may consider that factor or those factors in **Step Three**, below, for that Count. Whether or not you find any "Non-statutory Aggravating Factor," go on to **Step Two**.

2

Case 3:09-cv-03064-MWB-LTS   Document 103416   Filed 06/23/11   Page 49 of 66

| Step Two: "Mitigating" Factors | Which "Mitigating Factors," if any, do any of you find the defendant has proved by the greater weight of the evidence for a particular count? "Mitigating Factors" specifically asserted by the defendant are identified for you in Final "Penalty Phase" Instruction No. 3. You may also identify any further "Mitigating Factors" that any juror finds. (Please indicate the **number of jurors** finding any "Mitigating Factor" in the column for any count for which those jurors find that the "Mitigating Factor" applies.) | VICTIMS AND COUNTS | | | | | | | | | |
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| **"Mitigating Factor"** | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (1) even though Angela Johnson is guilty as an aider and abettor, her participation was relatively minor as compared to Dustin Honken's role in these murders | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (2) Angela Johnson does not have a prior criminal record | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| (3) there is a strong maternal bond between Angela Johnson and her daughters, Alyssa and Marvea, and this mother-daughter relationship will continue to survive and flourish if Angela Johnson is sentenced to life imprisonment without possibility of parole | | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 |
| (4) another person, Dustin Honken, who is equally or more culpable in the murders of Greg Nicholson, Lori Duncan, and Terry DeGeus, will not be punishable by death for those murders | | 3 | 3 | 3 | 3 | 0 | 0 | 0 | 0 | 3 | 3 |
| (5) two victims, Greg Nicholson and Terry DeGeus, consented to the conduct, methamphetamine manufacturing and distribution, that significantly contributed to the circumstances of their deaths | | 7 | 7 | 3 | 3 | 3 | 3 | 3 | 3 | 7 | 7 |

3

Case 3:09-cv-03064-MWB-LTS   Document 23416   Filed 06/23/11   Page 50 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (6) Angela Johnson was physically and psychologically abused as a child by her mother and other adults who engaged in exorcisms, casting out of spirits, and other unusual religious practices upon her | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| (7) Angela Johnson was inappropriately touched, fondled, and sexually abused by Ted Dillo during the time the Johnson family spent with the Dillos in Chanute, Kansas, when Angela Johnson was approximately nine years old | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| (8) if Angela Johnson is incarcerated in a federal penitentiary for life, she would not be a danger to the lives and safety of others | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| (9) Angela Johnson was raised in a single-parent household by an emotionally unstable mother who subjected her children to unusual fasting practices, long periods of abandonment and physical detachment, and occasional physical abuse, resulting in Angela Johnson being far more susceptible to escape through illicit drug use, a series of unhealthy relationships with men, and chronic feelings of abandonment and poor self-esteem | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 |
| (10) Angela Johnson was physically and emotionally abused as an adult by Terry DeGeus, her former boyfriend, causing her great fear and traumatic stress | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

4

Case 3:09-cv-03064-MWB-LTS    Document 23-16    Filed 06/23/11    Page 51 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (11) Angela Johnson has loving, lasting relationships with her mother, Pearl Jean Johnson, and her four siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, which will continue into old age if Angela Johnson is sentenced to life imprisonment without possibility of parole | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 |
| (12) Angela Johnson suffers from anxiety and depression as a result of experiences endured in childhood, and these mental conditions have hampered her ability to make intelligent, thoughtful, and wise choices in many of the important decisions in her life | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| (13) Angela Johnson is very much loved by her daughters, Alyssa and Marvea, and that her death would have a profoundly disturbing effect on their young lives, now and for years to come | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 |
| (14) Angela Johnson has felt remorse for the role that she played in the deaths of Greg Nicholson, Lori Duncan, Terry DeGeus, and particularly Kandi and Amber Duncan | 3 | 3 | 3 | 3 | 5 | 5 | 5 | 5 | 4 | 4 |

5

Case 3:09-cv-03064-MWB-LTS    Document 63-16    Filed 06/23/11    Page 52 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (15) Angela Johnson is loved and cherished by her mother, Pearl Jean Johnson, and her siblings, Wendy Jacobson, Jamie Jo Hays, Jimmy Johnson, and Holly Dirksen, all of whom would suffer grievously should Angela Johnson be sentenced to death | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| (16) Angela Johnson has been addicted to methamphetamine for most of her adult life, a drug which has profoundly affected her judgment, her personality, her relationships, and her ability to deal with difficult self-esteem and psychological issues, which have plagued her since childhood | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |
| (17) Angela Johnson has demonstrated that she can lead a productive, worthwhile life in prison through her kindness and helpfulness to other inmates, her interest in Bible study and religion, her artistic endeavors, and the furtherance of her education by obtaining a G.E.D. while incarcerated after having dropped out of school years earlier in the ninth grade | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 |
| (18) in spite of her problems with drugs, men, and her own depression, Angela Johnson has always held a steady job and has consistently worked to provide for the care and comfort of her daughters, Alyssa and Marvea | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 | 7 |

6

Case 3:09-cv-03064-MWB-LTS   Document 103-16   Filed 06/23/11   Page 53 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| (19) although she is guilty of these murders, Angela Johnson was pregnant by Dustin Honken with her daughter, Marvea, at the time of the murders and, as a result, was in a disadvantaged position to resist Mr. Honken, leave him, or turn him in to authorities, which she offers as an explanation of her conduct, not as an excuse | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 6 |
| (20) despite her own personal problems, past drug addiction, and present incarceration, Angela Johnson has always been a good mother to her daughters, in that she communicates with them regularly, stays as active as possible in their lives, and attempts to pass on the values and beliefs that will help her daughters avoid her own fate | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 | 12 |
| (21) there are other factors in Angela Johnson's background or character that mitigate in favor of a sentence of life imprisonment without possibility of parole and against the death penalty | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 |

7

Case 3:09-cv-03064-MWB-LTS    Document 35    Filed 06/23/11    Page 54 of 66

| Step Two: "Mitigating" Factors (Continued) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| "Mitigating Factor" | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| Any residual or lingering doubts as to Angela Johnson's guilt or innocence or her role in the offenses, even though those doubts did not rise to the level of "reasonable doubts" under the instructions given to you during the "merits phase" of the trial | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Additional mitigating factor, if any (please identify): Suicide Attempt | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 | 2 |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |
| Additional mitigating factor, if any (please identify): | | | | | | | | | | |

In **Step Three**, for each Count on which the defendant is "eligible" for consideration of the death penalty, each of you must weigh any mitigating factor or factors that you individually found to exist in this **Step**. Each of you may also weigh any mitigating factor or factors that another or others of your fellow jurors found to exist.

8

Case 3:09-cv-03064-MWB-LTS   Document 23-16   Filed 06/23/11   Page 55 of 66

| Step Three: Weighing The Factors | After weighing the "Aggravating Factors" found in the "eligibility phase," together with any "Non-statutory Aggravating Factors" found in Step One of this "penalty phase," and any "Mitigating Factors" found in Step Two, as explained in Final "Penalty Phase" Instruction No. 4, what sentence do you impose for each Count? (Please put a check mark in the column for any count for which you find a particular sentence must be imposed.) | VICTIMS AND COUNTS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Gregory Nicholson | | Lori Duncan | | Kandi Duncan | | Amber Duncan | | Terry DeGeus | |
| | | Count 1 | Count 6 | Count 2 | Count 7 | Count 3 | Count 8 | Count 4 | Count 9 | Count 5 | Count 10 |
| | A sentence of death | | | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ |
| | A sentence of life imprisonment without possibility of parole | ✓ | ✓ | | | | | | | | |
| Certification | By signing below, by juror number, then by name, each juror certifies that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same determination regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victim or victims. (See Final "Penalty Phase" Instruction No. 7) | | | | | | | | | | |

6-21-05
Date

**JUROR NUMBERS**

621
Foreperson

600
Juror

489
Juror

509
Juror

797
Juror

513
Juror

9

Juror

Juror

Juror

Juror

Juror

Juror

10

GRN000356

A.   Sure.

Q.   You gave some instructions to your mental health experts that they were not to question Angela Johnson about her state of mind at the time of the offense.

A.   Yes, that's right.

Q.   And this was premised in part because of the training you'd received in Salt Lake City, wasn't it?

A.   You know, I don't remember what was said in Salt Lake City, but I had some concerns about this before I ever went to the conference in Salt Lake City.  I think I previously had told the Court I'd had experience with Rule 12.2 right after it was adopted with United States versus Keith Nelson case, and so I had some personal experience with that.  And Salt Lake City, whatever happened there, may have supported my previous position.

Q.   Let's go to Exhibit JJ if you would, please.

A.   Sure.

Q.   And Exhibit JJ are your notes from your conference; is that correct?

A.   Yes, sir.

Q.   And one of the speakers at this conference was -- let me see, Lisa Greenman?  Do you remember Lisa Greenman lecturing?

A.   Would you tell me what page you're on, sir?

Q.   Yeah, let me get to that.

A.   Page --

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript*

Case 3:09-cv-03064-MWB-LTS   Document 284-16   Filed 06/23/11   Page 57 of 66
GRN0008057

Q.   Page 4.

A.   4?  Yes.

Q.   Okay.

A.   David Bruck, Julie Brain, and Lisa Greenman of the Federal Public Defender's Office in Baltimore, Maryland, gave a presentation on litigating new Rule 12.2 mental health issues.

Q.   Okay.  Now, 12.2 is a fairly new rule by the time this case went to trial, wasn't it?

A.   Yes, I believe so.

Q.   Not a lot of decisions out there regarding the application of 12.2.

A.   There had been some previous decisions specifically concerning this issue, whether or not the government would have an opportunity to present mental health evidence as rebuttal testimony.  In fact, there was an Eighth Circuit decision -- and I cannot recall the name -- directly on point.  Rule 12.2 essentially adopted the Eighth Circuit's position and was adopted shortly after that decision.  But it was a new rule, and there had not been a lot of litigation concerning it that I was aware of, not at this time, November of '04.

Q.   Okay.  Now, Miss Greenman was a pretty qualified speaker on this issue, was she not?

A.   Yes.  That Beck -- I recall the case now.  It's page 6, Beckford.  I believe that's an Eighth Circuit decision.  I think that's the one I'm referring to.  And I thought that predated

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript*
Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 58 of 66

Rule 12.2, but if I'm wrong, forgive me.

Q.  Miss Greenman, she was a staff attorney in the mental health division of the federal defender's office in D.C., wasn't she?

A.  All I knew is she was a federal defender -- in the federal defender's office in Baltimore.  She may have been in the mental health section.  I don't know.

Q.  Okay.  She's also part of the Death Penalty Resource Counsel Project?

A.  I don't know her personally, and I'm not sure about that.

Q.  You aware that she regularly lectures in the area of capital defense work?

A.  I suspect she does.  I've certainly heard her name before going to this conference and since.

Q.  Were you aware of her article that she authored in March of 2005 in the Newsletter For Defense Counsel in Federal Capital Cases?

A.  Not unless I made a note of it in these notes.

Q.  In that article she actually cites the Johnson case as only one of only two decisions as of March of 2005 ruling on 12.2.

A.  I'm sorry.  The article was in '05, so obviously she didn't have it in '04.  I don't think that I've seen Miss Greenman's 2005 article.

Q.  Okay.  You're not aware of whether she cites the Johnson decision as a good decision for defense counsel to follow the

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov to purchase a complete copy of the transcript*

Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 59 of 66
GRN000838

procedures you guys followed in this case.

A.    I didn't see the article, so I don't know what she said.

Q.    In this lecture that she provides, she indicates in this meeting that one of the goals of this is to limit what your experts see or your experts have so you can thereby limit what the government has; right?  Isn't that the general sense?

A.    That's one method of doing it, yeah.  I have a note right there at the bottom of page 4, there should be nothing going on in government rebuttal evaluation the defense attorney doesn't know.  Then it goes on so . . .

Q.    Yeah, let's go to page 5 of your notes, same lecture.

A.    Right.

Q.    And at the top there, Angela Johnson.  You have a note -- you're thinking right now as this woman's lecturing, right, about how this applies to Angela Johnson's case; fair?

A.    Right, yeah.  Throughout these notes I make references to capital cases I have pending.  There's another one on page 10, Jamal Shakir.

Q.    Sure.

A.    So that note happened to be about Angela.

Q.    Okay.  And as to Angela Johnson, you say, "If we keep Bill Logan from interviewing Angela Johnson on the murders, will that present -- prevent the government from," and you don't finish the sentence, but what is the end of that sentence?

A.    From doing the same, interviewing her regarding the

Case 3:09-cv-03064-MWB-LTS   Document 284-16   Filed 06/23/11   Page 60 of 66
GRN0003606

murders.

Q. All right. And so you're listening to this expert in this area, and what you're garnering from this is if you limit what you guys -- your experts examine Angela Johnson is it will have the effect of limiting the government.

A. Well, I don't know that. But that's why that's -- that's a question, I presume. I would have said will that -- at the end of that should have been a question mark. But yes, that's a possibility.

Q. Okay. And if you turn to page 6 --

A. Uh-huh.

Q. -- at the bottom here you say don't do personality testing and government won't be able to either.

A. Right.

Q. And again, these are notes you're taking of the lecture you're receiving.

A. Yes.

Q. Okay. And you say the whole idea is to limit what the government can do to pure rebuttal.

A. Exactly.

Q. All right. And if you go on to the next page, page 7, you're talking -- again, this is advice they're giving you, right, at the lecture? They're saying you want to move that the government not get to see the government evaluations until three things happen; right?

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript*
Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 61 of 66

A.   Yes.

Q.   One is that you're in the penalty phase.

A.   Right.

Q.   Two is that the defense has seen the government's report.

A.   Yes.

Q.   Okay.  Before the government sees it; right?

A.   Yes.

Q.   Okay.  And 3, the defense has, after 1 and 2, still decided to go forward with it.

A.   Right, because if we're not going forward, then they don't get to use it.

Q.   And what that does is that gives you the benefit of seeing the government's report.  And if you don't like it, if it's bad at that point, right, you can decide to jettison your mental health defense, and nothing comes in.

A.   You could, yes.

Q.   Okay.  Now, that's not what happened in this case, though, is it?

A.   No.

Q.   Okay.  The judge, in fact, said that you have to make that decision whether you're pursuing it before so the government could actually see its report; right?

A.   Well, I don't specifically recall to be perfectly honest.  I remember there was a taint team set up.  I don't doubt your account.  That may be very well what the judge said.

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript*

Case 3:09-cv-03064-MWB-LTS   Document 284-16   Filed 06/23/11   Page 62 of 66
GRN000302

Q.    I'll see if this refreshes your recollection.

A.    Sure.

Q.    The Court in this case ordered the defense had to produce the raw data to the government of your examinations.  Defense was entitled to the government's data only if she is convicted and confirms her intent to offer during sentencing proceedings the expert evidence on mental condition.  Does that refresh your recollection?

A.    Could you read the beginning of that again, please?

Q.    Sure.  The defense is entitled to the government's data only if she is convicted and confirms her intent to offer during sentencing proceedings -- during sentencing proceedings expert evidence on mental condition.

A.    Yeah, sort of suggests the raw data which would be testing data.  But that might apply to the entire evaluation.  I'm not sure.

Q.    Now, in this case wasn't one of the concerns you had going into this that Angela Johnson was maintaining her innocence?

A.    Well, I think I testified about this last time.  One of the big concerns I had is I didn't know what she was going to say. As we got closer and closer to trial, she was more and more anxious and somewhat erratic.  She was depressed.  There were a lot of issues going on.  She was very upset about her conditions of confinement, particularly here in Linn County which was a disaster.  So I was concerned about -- and just our history.  I

*Contact Shelly Semmler at 712-233-3846 or shelly_semmler@iand.uscourts.gov*
*to purchase a complete copy of the transcript*
Case 3:09-cv-03064-MWB-LTS   Document 284-16   Filed 06/23/11   Page 63 of 66

wasn't sure what -- how she would come across in talking about the murders if she was questioned about that. And, of course, one of the potential aspects would be she'd say I had nothing to do with it or I didn't commit them.

Q. All right.

A. That's a poss -- that was a possibility.

Q. And because that was a possibility and a concern, you instructed your experts not to ask her about her state of mind at the time of the offense.

A. For that and the other reasons I've already talked about.

Q. Okay.

A. I was just not certain about how that was going to go.

Q. All right. And your thought and your strategy of doing this was that if your experts can't do it, you're going to be able to prevent the government from asking about the -- what happened at the time of the offense.

A. Well, yeah. Government witnesses aside, if my witnesses are going to do it and they're going to testify, then the government's going to know about it. So yes, obviously the government will do their evaluation. But I got a problem to begin with with my own witnesses before we even have to worry about the government witnesses so --

Q. So you instruct -- I'm sorry.

A. It was twofold really.

Q. So you instructed your experts don't ask her about what

Case 3:09-cv-03064-MWB-LTS   Document 28-16   Filed 06/23/11   Page 64 of 66
GRN000364

happened about the time of the offense.

A.   I did, right.

Q.   Didn't comply with your request, did they?

A.   I think as a general proposition, they did.

Q.   Okay.  I want you to grab Exhibit HHH, HHH.

A.   Sure.  Okay.

Q.   Now, HHH is the notes by Dr. Hutchinson of her two interviews of Angela Johnson; is that right?

A.   I would take your word for it.  I don't recall these notes.  I mean, I see they're HHH at the bottom, so I presume they are Dr. Hutchinson's notes.  It's been a long time since I've looked at them.

Q.   Now, the first page on HHH, there's no date of when that first interview took place.  Do you --

A.   I agree.

Q.   Now, if you go to page 19 of HHH, this is a second interview of Angela Johnson that takes place on February 24, 2005.  Do you see that?

A.   Yes, sir.

Q.   Okay.  Now, during this -- these two interviews -- we don't know the date of the first one; the second one is on February 24, 2005 -- Angela Johnson is asked some questions in which she actually makes some statements about being innocent and not being present at the time of the murders and so forth, doesn't she?

Case 3:09-cv-03064-MWB-LTS   Document 284-16   Filed 06/23/11   Page 65 of 66
GRN000305

# Michael Burt

**From:** "Lisa Greenman" <lgreenman@rcn.com>
**Date:** Sunday, June 05, 2011 3:45 PM
**To:** "'Michael Burt'" <michael.burt@prodigy.net>
**Subject:** Angela Johnson case

Dear Mr. Burt,

I understand that in the post-conviction proceedings in the Angela Johnson case it has been suggested that trial counsel followed advice I gave in a lecture on the role of counsel in protecting the client during prosecution mental health evaluations. It has been suggested that I advised counsel not to inquire into the defendant's mental state at the time of the offense. You have asked me to appear as a witness to clarify whether or not I offered such advice.

The point I made in that lecture is one I have made in numerous talks and consultations on this topic: the first line of defense against an overreaching prosecution evaluation is in the defense evaluation itself. Because it is permitted only by way of rebuttal, the government's evaluation is limited in important ways by the scope of the defense evaluation. Therefore, defense counsel must be mindful in the way they go about their evaluation and in what they decide to offer up for the government to counter. I did not suggest in my lecture that defense counsel not investigate or ask mental health experts to explore the defendant's mental state at the time of the offense. Mental health evidence is of little value in a capital case if it doesn't help to explain or mitigate the offense. My point was that what is shared with or exposed to the defense expert will necessarily also be made available to the prosecution expert and that defense counsel must focus on that before and not after undertaking the defense evaluation and certainly prior to providing notice under Rule 12.2.

I hope this is helpful by way of clarification. Please let me know if you need anything further.

Sincerely,

Lisa Greenman

GRN000366

6/8/2011