IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ANGELA JOHNSON, | ) | |
| | ) | |
| Petitioner/Defendant, | ) | No. C 09-3064-MWB |
| | ) | (CR 01-3046-MWB) |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent/Plaintiff. | ) | |

**GOVERNMENT'S AMENDED ANSWER TO PETITIONER'S SECOND AMENDED
MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION AND SENTENCE
PURSUANT TO 28 U.S.C. § 2255**

TABLE OF CONTENTS

I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     THE RELATION BACK DOCTRINE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Certain New Ineffective Assistance of Counsel Claims are Barred. . . . . 6

                1.      Claim G – Mere Presence Defense. . . . . . . . . . . . . . . . . . . . . 6

                2.      Section H – Impeaching Prosecution Witnesses. . . . . . . . . . . . 7

                3.      Section I – DeGeus's Alleged Involvement in the Murders. . . . . . 8

                4.      Section J – Battered Woman's Syndrome. . . . . . . . . . . . . . . . . 8

                5.      Claim L – Residual Doubt. . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                6.      Section M – Evidence About Honken. . . . . . . . . . . . . . . . . . . . 9

                7.      Section N – Prosecution's Closing Argument as Evidence. . . . . 10

                8.      Section O – Substantial Influence of Dustin Honken. . . . . . . . . 10

1

9.      Section P – Honken's Plans to Kill a Prosecutor. . . . . . . . . . . . 10

10.     Section R – Future Dangerousness. . . . . . . . . . . . . . . . . . . . . . 11

11.     Section S – Kathy Rick's Alleged Hearsay Testimony. . . . . . . . 11

12.     Section T – Cross Examination of Wendy Jensen. . . . . . . . . . . 11

13.     Section U – Kyla Davis' Testimony. . . . . . . . . . . . . . . . . . . . . . 12

14.     Section W – Alleged Remorse Evidence. . . . . . . . . . . . . . . . . 12

15.     Section X – Effect of Execution on Petitioner's Family. . . . . . . . 12

16.     Section Y – Dr. Gelbort. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

17.     Section Z – Petitioner's 1996 Diagnosis. . . . . . . . . . . . . . . . . . 13

18.     Section CC – Roswell Lee Evans. . . . . . . . . . . . . . . . . . . . . . . 14

19.     Section EE – Drafting of Mitigation Factors. . . . . . . . . . . . . . . 14

20.     Section II – Multiplicitous Counts. . . . . . . . . . . . . . . . . . . . . . . 14

B.      Petitioner's New *Brady* Claim is Barred. . . . . . . . . . . . . . . . . . . . . . 15

IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I.      INTRODUCTION

The Court granted permission to Petitioner's current counsel to file a Second

Amended Motion in this case, and granted the government permission to file an

amended answer to the Motion.  The Court indicated the government could limit its

response to whether it believed Petitioner made any new claims in the amended motion

that are time-barred because they do not relate back to claims raised in the original

motion.  Accordingly, the government's Answer is so limited, with the understanding the

2

government opposed all claims raised in the original motion on their merits, and to the extent the Court finds any new claims do relate back to the original motion, opposes all new claims on their merits.

The government sets forth below the portions of Petitioner's Second Amended Motion which it claims are untimely. Under Petitioner's first claim, asserting ineffective assistance of counsel, there are several new claims that do not related back to her original motion. Likewise, Petitioner's Claim Three, that the government violated its *Brady* obligations, likewise does not relate back to any claim made in her original motion. None of these new claims arise out of the same "conduct, transaction, or occurrence" as the original petition. It must be emphasized that Petitioner's extremely tardy amendment of her Petition significantly prejudices the government to the extent that she raises new claims after the evidentiary hearing was nearly completed. For example, to the extent that she raises new factual claims about trial counsel's alleged errors, government counsel was not put on notice to question Petitioner's trial counsel about those claims when they testified this past spring. Accordingly, this is not merely an academic exercise, but rather, has the potential to inject new claims in the litigation, after the evidentiary hearings, without subjecting those claims to the "crucible of cross examination." 5 John H. Wigmore, Evidence in Trials at Common Law § 1367, at 32 (James H. Cahdbourn ed. 1974) (describing cross examination as the greatest engine for getting at the truth invented by man).

3

## II.    THE RELATION BACK DOCTRINE

Section 2255 contains a one-year statute of limitations that on its face bars those portions of the Petitioner's Second Amended § 2255 Motion that advances new claims for relief, as opposed to a clarification or factual supplementation of an existing claim. 28 U.S.C.A. § 2255; Fed. Rules Civ. Proc. Rule 15(c)(2); *United States v. Thomas*, 221 F.3d 430, 438 (3rd Cir. 2000) (holding that a District Court has discretion to permit an amendment that provides factual clarification or amplification after the expiration of one-year period if petition was timely filed and new claims or new theories of relief are not asserted).

The Second Amended Motion was filed well after the expiration of the applicable one-year period of limitations.  28 U.S.C. § 2255(f); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).  The limitations period began to run on the date the Supreme Court denied the Petitioner's petition for writ of certiorari, October 6, 2008.  *Craycraft*, 167 F.3d at 456.  The year expired on October 6, 2009.  Because well more than a year and a half elapsed before the Petitioner filed the instant amendment, her new claims are barred, unless Petitioner can show they "relate back" to claims raised in her original motion.  *Craycraft*, 167 F.3d at 457.

In order for an untimely claim to "relate back" to the original filing of a Section 2255 motion to vacate a sentence, it must have arisen from the same set of facts as the timely filed claim, not from separate conduct or a separate occurrence in both time and type.  28 U.S.C.A. § 2255; Fed. Rules Civ. Proc. Rule 15(a); *Craycraft*, 167 F.3d at 457. Petitioner's new claims, discussed below, are based on entirely novel premises, and do

4

not merely clarify, amplify or expand any timely-filed contention.  Cf. *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (denying defendant permission to amend when defendant's supplemental motion filed after one year limit, raised completely new claims of ineffective assistance of counsel and did not clarify previous claims).  In short, the claims identified below arise from different facts than those claims set forth in the original 28 U.S.C. § 2255 motion and therefore do not "relate back" to that pleading.  See *Craycraft*, 167 F.3d at 457.

The Supreme Court has held that expansive interpretations of a petitioner's pleadings would eviscerate the statute of limitations by permitting virtually any amendment without regard to the statute of limitations.  *Mayle v. Felix*, 545 U.S. 644, 645 (2005) (holding that allowing claims to relate back simply if they arose from the same "conduct, transaction, or occurrence" is impermissibly broad and comprehensive).  Amendments should only "relate back" when they arise from the same common core of facts as a claim in the timely filed petition.  See *Mayle*, 545 U.S. at 657.  The mere fact that the claim arose out of the same trial and sentencing does not satisfy the relation back standard.  See *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000) (holding that because amended claims arise from the same trial and sentencing proceeding does not mean the amended claims "relate back" as such a broad view of "relation back" would undermine the statutory limitations period).

Furthermore, the Petitioner has made no attempt to show that extraordinary circumstances beyond her control prevented her from previously raising these claims. See *United States v. Martin*, 408 F.3d 1089, 1095 (8th Cir. 2005) (holding that

5

equitable tolling of the one-year limitations period for a habeas petition should only apply where the petitioner or movant has demonstrated diligence in pursuing the matter); *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (holding that equitable tolling of the limitations period is available only when an inmate diligently pursues his claims and demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control). Of course, Petitioner cannot do so, as the claim is premised on the information available within the record. Moreover, here Petitioner allowed 20 months to elapse between the time she filed her original motion and the time she file the instant Second Amended Motion – a passage of time that alone belies the idea that she acted with diligence to amend her motion. Thus, this Court should strike and disregard the Petitioner's untimely claims discussed below.

## III. ARGUMENT

### A. Certain New Ineffective Assistance of Counsel Claims are Barred

Claim One of Petitioner's motion, which sets forth 36 different reasons she asserts shows a denial of her right to effective assistance of counsel, is plagued with new arguments that do not "relate back" to her original motion. The government asserts 20 of these claims are not grounded in facts or legal arguments made in Petitioner's original motion. Each are addressed below.

#### 1. Claim G – Mere Presence Defense

In Section G, Petitioner claims her trial counsel were ineffective by presenting a mere presence defense without investigation, despite petitioner's repeated assertions that she was not present at the Nicholson/Duncan killings. Neither this claim, nor any

6

similar claim, was previously presented in Petitioner's original § 2255 motion. The defense of mere presence was mentioned in passing within a few claims in Petitioner's original motion, but she never claimed her trial counsel were ineffective for presenting that defense. Petitioner's previous claims raised about residual doubt and failure to present a defense were based on an entirely different set of stated facts and are different claims altogether. Further, the claim does not "relate back" as it is based on facts newly introduced in the second amended motion, such as claims that the Petitioner was at work or home the night of the killings, Honken gave the Petitioner a map while in Florence, and that Christi Gaubatz assisted Honken in the Nicholson killings instead of the Petitioner. Petitioner did not allege any of these facts in her original motion.

### 2. Section H – Impeaching Prosecution Witnesses

In Section H, Petitioner claims trial counsel were ineffective in failing to create reasonable doubt through impeachment of prosecution witnesses during the merits phase of the trial. Petitioner's argument under this claim is two-fold; that trial counsel were ineffective in failing to impeach Robert McNeese with the court's findings regarding McNeese's credibility at the *Massiah* hearing and by allegedly ineffectively cross examining Christi Gaubatz. Petitioner raised neither claim in her original motion, and neither claim relates back as each are based on different facts from any claim asserted in the original motion. As to the first argument, defense counsel relies heavily on negative findings with respect to McNeese's credibility in the *Massiah* hearing. These alleged facts were never mentioned in relation to any claim in Petitioner's first motion. Petitioner's second argument regarding Gaubatz is based entirely on a new set

of facts regarding the tumultuous relationship between Petitioner and Gaubatz.

### 3. Section I – DeGeus's Alleged Involvement in the Murders

In Section I, Petitioner claims trial counsel were ineffective in their failure to present evidence of Terry DeGeus's alleged involvement in the killing of Nicholson and the Duncans. In her Second Amended Motion, Petitioner asserts alleged facts as the basis for this claim that were not alleged her original motion as the basis for any claim. Moreover, while Petitioner made many claims of ineffective assistance of counsel in her original motion, she did not claim her trial attorneys were ineffective for failing to present evidence that DeGeus was allegedly responsible for killing Greg Nicholson and the Duncan family.

### 4. Section J – Battered Woman's Syndrome

In Section J, Petitioner claims trial counsel were ineffective in failing to present evidence of Battered Woman's Syndrome to explain the relationship between Petitioner and DeGeus. While there was discussion of DeGeus in Petitioner's original motion, there was no claim alleging Battered Woman's Syndrome or faulting trial counsel for failing to present evidence on Battered Women's Syndrome. This claim rests specifically on facts related to DeGeus' reoccurring beatings of Petitioner and their effect on her. These factual allegations were not raised in Petitioner's original motion with relation to Battered Woman's Syndrome. Petitioner did not allege her trial counsel were ineffective for failing to present evidence allegedly showing these facts.

### 5. Claim L – Residual Doubt

In Section L, Petitioner claims trial counsel: 1) unreasonably failed to introduce Phyllis Proscovec's statements in mitigation; 2) ineffectively failed to offer Honken's

letters to impeach Steven Vest; and, 3) ineffectively failed to impeach Vest by presenting evidence that Honken lied about Petitioner's role in the offenses. This claim and its three subparts, are entirely based in newly introduced facts. In part one, an entirely new set of facts dealing with Proscovec and the events that preceded the Duncan's disappearance is introduced for the first time as a basis for a claim that does not relate to any previous claim. Similarly, Petitioner relies on Steven Vest's trial testimony and a series of letters from Honken, written in 2000 and 2001, as the factual basis for this part of the claim. Petitioner was privy to Vest's trial testimony, as well as to the letters as they were all written almost 10 years before Petitioner's original motion. Yet, Petitioner did not allege these facts or raise this claim in her original motion. In part 3, Petitioner introduces more issues involving Steven Vest's testimony. Again, none of this, nor the underlying facts, were previously introduced in Petitioner's original motion. All parts of Section L involve new claims based on newly introduced facts that do not "relate back" to Petitioner's original motion, and are therefore time-barred.

### 6. Section M – Evidence About Honken

In Section M, Petitioner claims trial counsel were ineffective for failing to present evidence about Honken that would have allegedly refuted the government's argument that Petitioner was worse than Honken. While Petitioner claimed government misconduct somewhat along these lines in her original motion (see claim B in the original motion), she never asserted ineffective assistance of counsel in relation to the presentation of evidence to purportedly rebut this alleged claim. Nor did she raise in her original motion the alleged facts upon which she bases this new claim. Accordingly, this new claim, too, is time barred.

9

### 7. Section N – Prosecution's Closing Argument as Evidence

In Section N, Petitioner makes a claims similar to that in Section M, this time claiming her trial attorneys were ineffective for failing to use the prosecution's arguments at Honken's trial as party admissions to rebut the government's argument. Again, there is nothing in Petitioner's original motion claiming ineffective assistance of counsel in this regard, nor alleging the facts relating to this new claim of ineffective assistance of counsel.

### 8. Section O – Substantial Influence of Dustin Honken

In Section O, Petitioner claim her trial attorneys were ineffective for failing to offer expert and lay testimony that she was under the "substantial influence of Dustin Honken." While in her original motion Petitioner claimed her attorneys were ineffective for failing to present appropriate mental health evidence, she did not claim they were ineffective in this regard. Similarly, she did not raise in her original motion a claim that her attorneys were ineffective for failing to present lay testimony about the alleged substantial influence of Dustin Honken.

### 9. Section P – Honken's Plans to Kill a Prosecutor

In Section P, Petitioner claims her trial attorneys were ineffective for failing to discover and present information regarding Honken's plans to kill prosecutor Reinert and Honken's membership in a white supremacist prison organization. Putting aside for the moment that the information was in the government's discovery file, Petitioner never raised this claim in her original petition or alleged facts relating to such a claim. As is explained in more detail with regard to this claim below, the facts that gave rise to the prosecutor's concerns for his security, Honken's plans to kill the prosecutor and his

10

membership in a white supremacist movement, were in the government's discovery file. The Prosecutor's memoranda to the office's security officer and the FBI about those plans were not, in themselves, *Brady* material.

### 10. Section R – Future Dangerousness

In Section R, Petitioner claims trial counsel ineffectively failed to limit future dangerousness evidence to future danger in prison. Here, Petitioner brings an entirely new claim along with a new legal argument. Petitioner alleges various facts as the basis for this claim, all of which were known and available to serve as a basis for a claim in Petitioner's original motion, but none of which were mentioned. Petitioner asserts no reason while this claim could not have been asserted in the original motion.

### 11. Section S – Kathy Rick's Alleged Hearsay Testimony

In Section S, Petitioner claims trial counsel ineffectively failed to object to Kathy Rick's triple hearsay testimony about petitioner's alleged possession of a gun. Petitioner mentioned Kathy Rick's name in her original motion, however Petitioner alleged no facts regarding Kathy Rick's triple hearsay testimony about Petitioner's possession of a gun. Again, Petitioner knew of this issue before submitting the original motion and provides no reason that it was not raised before.

### 12. Section T – Cross Examination of Wendy Jensen

In Section T, Petitioner claims trial counsel were ineffective for failing to effectively cross examiner her sister, Wendy Jensen. Again, there is nothing in her original motion that can be interpreted as claiming ineffective assistance of counsel in relation to the manner in which trial counsel cross examined Wendy Jensen, or alleging facts relating to the alleged failure to properly cross examine her.

11

### 13. Section U – Kyla Davis' Testimony

In Section U, Petitioner claims trial counsel were ineffective in failing to object to Kyla Davis' testimony that Petitioner tried to find out where she lived and what car she drove. This claim and the underlying facts are introduced for the first time in Petitioner's Second Amended motion. This information was available to Petitioner from the outset and could have been included in her original motion.

### 14. Section W – Alleged Remorse Evidence

In Section W, Petitioner claims her trial attorneys were ineffective for failing to present evidence of remorse through her expert. Again, while Petitioner raised claims in her original motion regarding ineffective assistance of counsel in presenting mental health mitigation evidence, there is nothing in her original motion addressing the alleged failure to elicit remorse evidence from experts. Rather, in her original motion her mental health claims were limited to the allegation that her trial counsel failed to properly investigate and present evidence of her alleged mental health issues as newly discovered by Doctors Woods and Young.

### 15. Section X – Effect of Execution on Petitioner's Family

In Section X, Petitioner claims her trial attorneys were ineffective for failing to elicit evidence of the effect her execution would have on her family. The admissibility of such testimony is questionable. Regardless, it was never raised in Petitioner's original motion in any form, and certainly not under an ineffective assistance of counsel claim. Likewise, no where in Petitioner's original motion did she allege facts to support this new claim.

12

16.     Section Y – Dr. Gelbort

In Section Y, Petitioner claims trial counsel was ineffective with respect to Dr. Gelbort.  Petitioner alleges trial counsel erroneously delayed hiring him, failed to follow up on his recommendations, failed to instruct him to conduct a more thorough battery of neuropsychological tests, failed to retain another neuropsychologist when he refused to testify, failed to incorporate his helpful findings and diagnosis into the testimony of the experts who did testify, and failed to conduct additional neuropsychological and neuroimaging testing of petitioner.

In Petitioner's original motion she raised only the alleged deficient performance by her trial counsel for delaying the hiring of Dr. Gelbort.  In her Second Amended Motion, Petitioner attempts to tack on factually distinct additional substantive claims that are unrelated to the alleged delay in hiring Dr. Gelbort.  These new claims of ineffective assistance of counsel do not relate back to the limited claim Petitioner made in her original motion.

17.     Section Z – Petitioner's 1996 Diagnosis

In Section Z, Petitioner claims trial counsel were ineffective for failing to introduce evidence of, and give trial experts records concerning, her 1996 diagnosis of depression and dependent personality disorder.  Petitioner made no such factual allegations in her original motion, nor did she make and claim that her trial counsel were ineffective in relation to what the did, or failed to do, regarding records of her 1996 diagnosis.  These are new claims and do not relate back to any of the ineffective assistance of counsel claims Petitioner raised in her original motion.

13

### 18.    Section CC – Roswell Lee Evans

In Section CC, Petitioner claims trial counsel were ineffective in failing to provide Roswell Lee Evans with data regarding petitioner's drug history.  Roswell Lee Evans, a psychiatric pharmacologist, testified at trial about methamphetamine and its effects. Petitioner did not call Evans as a witness during the hearing on her § 2255 motion. Petitioner did not mention Evans in her original motion.  In her Second Amended Motion, Petitioner claims that because Evans was not provided with specific information about Petitioner, his testimony was "virtually irrelevant."  Petitioner quotes trial testimony in order to demonstrate this claim, however this information was previously known and could have been previously introduced.  These facts regarding Evans and this specific trial testimony was not brought up in relation to any claim in Petitioner's original motion and does not relate back to that original motion.

### 19.    Section EE – Drafting of Mitigation Factors

In Section EE, Petitioner claims her trial attorneys were ineffective for the manner in which they drafted proposed mitigating factors.  No where in Petitioner's original motion is there any claim relating to trial counsel's drafting of mitigation factors. Nothing put the government on notice this was a claim by Petitioner in her original motion, and Petitioner put trial counsel on the stand in the evidentiary hearing without once asking them about the drafting of the mitigating factors.  This claim is a completely new theory of Petitioner's current counsel and relates back to nothing in the original motion.

### 20.    Section II – Multiplicitous Counts

In Section II, Petitioner claims her trial attorneys were ineffective for failing to

14

raise the alleged unconstitutional skewing effect that allegedly arose from the multiplicitious counts. Again, the original motion does not mention this. There is no claim in the original motion asserting anything close to ineffective assistance of appellate counsel in relation to the multiplicity issue and the alleged skewing effect it might have had. This new claim simply does not relate back to anything in the original motion.

B.      Petitioner's New *Brady* Claim is Barred

In Claim Three Petitioner claims the government violated *Brady* by failing to disclose Honken's planned violent attack on AUSA Reinert and Honken's association with a white supremacist prison organization. While Petitioner did assert a *Brady* claim in her original motion, it had no relation to this particular *Brady* claim. In fact, no claim in Petitioner's original motion bears any relation to this particular argument. These facts are newly raised in the Second Amended motion and are therefore time-barred.

While Petitioner may claim her failure to raise this issue earlier should be excused because she did not receive copies of three memos relating to the issue until recently, this argument is a red herring. The memos relate to a prosecutor reporting about security measures taken or he believes should be taken in light of the security threat posed by Honken. The basis for his concerns, Honken's violence, threats to the prosecutor, and membership in the Odinist, were all part of the discovery file. The prosecutor's views about, plans for, and communication in relation to, security measures do not constitute *Brady* material.

15

## IV. CONCLUSION

The one year Statute of Limitations established by 28 U.S.C. § 2255 bars Petitioner at this time from presenting any new claims which are distinct from those raised in the original motion filed on her behalf, as well as any new claims of ineffective assistance of counsel and any additional legal theories underpinning pre-existing claims. Consequently, this Court should deny those portions of Petitioner's Second Amended Motion set forth above because they are time-barred and do not relate back to her original motion.

Respectfully submitted,

STEPHANIE M. ROSE
United States Attorney

By: s/ C.J. WILLIAMS

C.J. WILLIAMS
Assistant United States Attorney
401 First Street SE, Suite 400
Cedar Rapids, Iowa 52401
319-363-6333
(Fax 319-363-1990)
CJ.Williams@usdoj.gov

CERTIFICATE OF SERVICE

I certify that I electronically served a copy of the foregoing document to which this certificate is attached to the parties or attorneys of record, shown below, on July 5, 2011.

UNITED STATES ATTORNEY

BY:  s/ S. Van Weelden

COPIES TO: Counsel of Record

16